MDL2100

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

**PLEADING NO. 1**

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re: YASMIN / YAZ<br>PRODUCTS LIABILITY LITIGATION | MDL Docket No.: _____ |

## MOTION FOR TRANSFER OF RELATED ACTIONS TO
## THE NORTHERN DISTRICT OF OHIO PURSUANT TO 28 U.S.C. § 1407
## FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the

Judicial Panel on Multidistrict Litigation, the Plaintiffs request transfer of all product

liability actions involving the prescription birth control pills Yasmin and Yaz to the United

States District Court for the Northern District of Ohio. Defendants Bayer Corporation

and its affiliates, predecessors, and/or successors (herein collectively referred to as the

"Bayer Defendants") manufacture both Yasmin and Yaz. Movants are Plaintiffs who

have filed legal actions against the Defendants alleging that Yasmin and Yaz have

caused Plaintiffs to suffer injuries including deep vein thrombosis, pulmonary embolism,

heart attack, stroke, kidney failure, seizures, gall bladder injuries, and death when used

as prescribed. Specifically, Movants have filed legal actions in multiple forums including

**OFFICIAL FILE COPY** IMAGED JUL 3 0 2009

fourteen pending in the Northern District of Ohio, two in the Southern District of Ohio, six in the Eastern District of Pennsylvania, and one in the Eastern District of Wisconsin. Movants represent 23 of the 32 related cases that have been filed in Federal District Courts to date. All related actions, including those actions filed by Movants, by other Plaintiffs, and by future Plaintiffs, involve common questions of law and fact and arise from personal injuries and, in some cases, death caused by Yasmin/Yaz.

The Defendants are in the business of manufacturing and marketing both Yasmin and Yaz. Movants and Plaintiffs in other related actions allege that the Defendants' products cause serious, potentially fatal injuries including deep vein thrombosis, pulmonary embolism, heart attack, stroke, seizures, kidney failure, and gall bladder injuries. Movants propose to also include similar personal injury claims alleging that Plaintiffs were injured by Ocella, a recently-approved generic for Yasmin/Yaz.

Issues common to Movants' claims include causation and whether the Defendants knew of the risks and failed to disclose them to the medical community and/or consumers. All related actions seek damages for personal injury and/or economic damages on behalf of individuals who were injured by the Defendants' product(s). They involve state law claims such as negligence, products liability, breach of warranty, negligent misrepresentation, fraud, and/or commercial causes of action. Movants respectfully request an Order transferring these related actions and future-filed actions to the Northern District of Ohio as the most appropriate and convenient forum.

## I.     Factual basis underlying the Movants' Motion for a Consolidated Proceeding Pursuant to 28 U.S.C. §1407

Yasmin and Yas are prescription combination oral contraceptives ("COC's"), meaning that they contain both an estrogen and a progestin. The estrogen, ethinyl

estradiol, has been used in ordinary birth control pills for generations.  The progestin, drospirenone, is new.  Studies and reports indicate that drospirenone can cause heart rhythm disturbances that can slow the flow of blood to the heart leading to blood clots. As a result of using these products as manufactured and marketed by the Defendants, Movants and Plaintiffs in other related cases have suffered deep vein thrombosis, pulmonary embolism, heart attack, stroke, kidney failure, gall bladder injury, and, in some cases, death.

Pursuant to 28 U.S.C. §1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the 23 Movants submit the following averments and the Memorandum of Law attached hereto in support of their request for coordinated or consolidated pretrial proceedings.  Movants respectfully submit that the Northern District of Ohio would be the most centralized, convenient, and efficient jurisdiction for consolidation and that a significant number of cases have been filed in that District, where they are already rapidly progressing.

## II.   Averments

In support of their Motion, the Movants aver as follows:

1.  The Movants are the Plaintiffs in the following products liability actions, all of which assert substantially similar claims and seek nearly identical relief:

> a.  *Candace L. Fries, Individually and as the Administratrix of the Estate of Deceased Stephanie R. Hoofer v. Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG, John Doe Manufacturers,*

*John Doe Manufacturers*, Case No. 3:09-cv-01085, filed on May 11, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before the Honorable James G. Carr (Docket sheet and Complaint attached hereto as Ex. A);

b. *Angela Beck and Martin Beck v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG, John Doe Manufacturers, John Doe Distributors*, Case No.  3:09-cv-01207, filed on May 27, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before Honorable James G. Carr (Docket sheet and Complaint attached hereto as Ex. B);

c. *Bridget Shafer and Paul Shafer v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG, John Doe Manufacturers, John Doe Distributors*, Case No.  3:09-cv-01315, filed on June 9, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before the Honorable James G. Carr (Docket sheet and Complaint attached hereto as Ex. C);

d. *Marlene Meadows v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, Berlex Laboratories International, Inc.*, Case No.  1:09-cv-01574, filed on July 9, 2009 and

currently pending in the United States District Court for the Northern District of Ohio (Cleveland Division) before the Honorable James S. Gwin (Docket sheet and Complaint attached hereto as Ex. D);

e. *Anne Marie Eakins and Jonathan Eakins v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, Berlex Laboratories International, Inc.*, Case No. 1:09-cv-01579, filed on July 10, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Cleveland Division) before the Honorable Solomon Oliver, Jr. (Docket sheet and Complaint attached hereto as Ex. E);

f. *Lauren L. Murphy v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, Berlex Laboratories International, Inc.*, Case No. 1:09-cv-01582, filed on July 10, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Cleveland Division) before the Honorable James S. Gwin (Docket sheet and Complaint attached hereto as Ex. F);

g. *Marie Claire Keultjes v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC,* Case No. 1:09-cv-01659, filed on July 17, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Cleveland Division) before the Honorable James S. Gwin (Docket sheet and Complaint attached hereto as Ex. G);

h.   *Patti Bradish and Gary Bradish v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc.*, Case No. 3:09-cv-01689, filed on July 21, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before the Honorable Jack Zouhary (Docket sheet and Complaint attached hereto as Ex. H);

i.   *Gail Brinker and Kenneth Brinker v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc.*, Case No. 3:09-cv-01682, filed on July 21, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before the Honorable James G. Carr (Docket sheet and Complaint attached hereto as Ex. I);

j.   *Carla Leigh Brazzel v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc.*, Case No. 3:09-cv-01684, filed on July 21, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before the Honorable Jack Zouhary (Docket sheet and Complaint attached hereto as Ex. J);

k.   *Lauren Cathis v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc.,*

*Berlex Laboratories, Inc., Berlex, Inc.*, Case No. 3:09-cv-01690, filed on July 21, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before the Honorable Jack Zouhary (Docket sheet and Complaint attached hereto as Ex. K);

l. *Brenda Ellyson v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc.*, Case No. 3:09-cv-01687, filed on July 21, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before the Honorable David A. Katz (Docket sheet and Complaint attached hereto as Ex. L);

m. *William Johns and Kathy Johns v. Bayer Corporation, Bayer Healthcare LLC*, Case No. 3:09-cv-01685, filed on July 21, 2009 and currently pending in the United States District Court for the Northern District of Ohio (Toledo Division) before the Honorable David A. Katz (Docket sheet and Complaint attached hereto as Ex. M);

n. *Saretta Main and Christina Maniaci v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc.*, Case No. 3:09-cv-01688, filed on July 21, 2009 and currently pending in the United States District Court for the Northern District of

Ohio (Toledo Division) before the Honorable Jack Zouhary (Docket sheet and Complaint attached hereto as Ex. N);

o.  *Heather Riley v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Bayer Schering Pharma AG, Bayer AG,* Case No. 1:09-cv-00387, filed on May 29, 2009 and currently pending in the United States District Court for the Southern District of Ohio (Cincinnati) before the Honorable Sandra S. Beckwith (Docket sheet and Complaint attached hereto as Ex. O);

p.  *Valerie Kozak and Keith Kozak v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Bayer Healthcare, LLC,* Case No. 3:09-cv-00281, filed on July 22, 2009 and currently pending in the United States District Court for the Southern District of Ohio (Dayton) before the Honorable Thomas M. Rose (Docket sheet and Complaint attached hereto as Ex. P);

q.  *Alyssa S. Britten v. Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc.,* Case No. 2:09-cv-02086, filed on May 14, 2009 and currently pending in the United States District Court for the Eastern District of Pennsylvania (Philadelphia) before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. Q);

r.  *Adine Gauthreaux and Kermick Gauthreaux v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer*

*Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc. Bayer Schering Pharma AG, Bayer AG*, Case No. 2:09-cv-02238, filed on May 19, 2009 and currently pending in the United States District Court for the Eastern District of Pennsylvania (Philadelphia) before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. R);

s.  *Silvia F. Galvan and Javier Galvan v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG*, Case No.  5:09-cv-02739, filed on June 17, 2009 and currently pending in the United States District Court for the Eastern District of Pennsylvania (Allentown) before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. S);

t.  *Lakollier R. Cleveland v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG*, Case No. 2:09-cv-02740, filed on June 17, 2009 and currently pending in the United States District Court for the Eastern District of Pennsylvania (Philadelphia) before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. T);

u.  *Danielle C. Hayat and Adam Hayat v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer*

*Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG*, Case No. 2:09-cv-02753, filed on June 18, 2009 and currently pending in the United States District Court for the Eastern District of Pennsylvania (Philadelphia) before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. U);

v. *Deborah Kay Lane-Christian and Mark D. Christian v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG*, Case No. 2:09-cv-03114, filed on July 14, 2009 and currently pending in the United States District Court for the Eastern District of Pennsylvania (Philadelphia) before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. V); and

w. *Marie Becker v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Berlex Laboratories International, Inc.*, Case No. 1:09-cv-00663, filed on July 7, 2009 and currently pending before the United States District Court for the Eastern District of Wisconsin (Green Bay) before the Honorable William C. Griesbach (Docket sheet and Complaint attached hereto as Ex. W).

2. Counsel for the Movants are aware of other related actions identified in the attached Schedule of Actions (Ex. X).

3. In addition to the actions identified in Averment 1 and the related actions identified in Averment 2 and documented in the Schedule of Actions, the Movants expect that many additional claims will be filed in the future on the basis of the total population of patients who have used, are using, or will in the future use Yasmin and/or Yaz, and thereby suffer the injuries described herein.

4. The actions identified in Averment 1, the related actions identified in Averment 2 and documented in the Schedule of Actions, and all related future-filed actions involve common questions of law and fact, as they allege that Yasmin and Yaz cause deep vein thrombosis, pulmonary embolism, heart attacks, stroke, renal failure, gall bladder injuries, and, in some cases, death.

5. All of these actions also allege the same claims concerning the defects in Yasmin/Yaz, the manufacturers' knowledge of the products' dangerous propensities, and the manufacturers' failure to adequately warn patients of those dangerous propensities.

6. In addition, all related actions name the Bayer Defendants, as they are the manufacturers and marketers of both Yasmin and Yaz.

7. Yasmin and Yaz, as well as the FDA approved generic, Ocella, are similarly defective in design, manufacture, and labeling, and the Complaints for related actions allege that those defects have resulted in blood clots in women in their child-bearing years. As such, the related cases against the Bayer Defendants involve common questions of law and fact.

8. All related actions seek damages for personal injury and/or economic damages on behalf of patients who used Yasmin and/or Yaz and suffered injury,

asserting various state law claims, such as negligence, products liability, breach of warranty, negligent representation, fraud, and/or consumer protection claims regarding the risks of Yasmin and Yaz.

9. On July 10, 2003, the FDA issued a Warning Letter to Berlex Laboratories, the predecessor corporation to Bayer Healthcare. The letter ordered the Bayer Defendants to immediately discontinue a misleading television advertisement for Yasmin. In this ad, the company promoted Yasmin's fourth generation progestin by stating, "[a]sk about Yasmin, and the difference a little chemistry can make." The FDA objected to the characterization that the progestin in Yasmin, drospirenone, was an improvement compared to other progestins, stating "FDA is not aware of substantial evidence or substantial clinical experience demonstrating that Yasmin is superior to other COC's or that the drospirenone in Yasmin is clinically beneficial. On the contrary, FDA is aware of the added clinical risks associated with drospirenone." Further, FDA found that the advertisement "fails to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

10. On October 3, 2008, FDA issued a second Warning Letter to the Bayer Defendants, for another false and misleading advertisement, this time concerning Yaz. FDA found that the Bayer Defendants were attempting to broaden the indications for Yaz to include premenstrual syndrome as opposed to the less serious condition, premenstrual dysphoric disorder. The FDA reiterated that the marketing was misleading because it promoted Yaz as treatment for medical conditions for which the FDA had not approved. In addition, FDA determined that the advertisement was misleading because it failed to disclose that "YAZ has additional risks because it

contains the progestin, drospirenone . . . which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

11. The discovery process in the related actions will involve substantially similar, if not identical, documents and witnesses.

12. Absent the transfer of all related cases to a single forum for coordination and consolidated pretrial proceedings, the Plaintiffs and Defendants will be forced to contend with inconsistent and conflicting pretrial rulings in federal district courts throughout the country.

13. The Movants affirmatively state that the proceedings in the Northern District of Ohio are more advanced than other federal proceedings and have been pending in federal court since May of 2009.  Three cases, *Fries, Beck, and Shafer* are already proceeding on a coordinated track before Chief Judge James G. Carr.  Both *Fries* and *Beck* were the subject of a joint case management conference in the Northern District of Ohio on June 22, 2009.  Scheduling deadlines were established on that date, and the cases were designated to follow a complex track.  Moreover, all three cases are subject to the same Order on Preservation of Evidence.

14. The *Brinker* matter was recently filed and assigned to Chief Judge Carr.

15. Ten additional cases, *Bradish, Brazzel, Cathis, Ellyson, Johns, Main, Meadows, Murphy, Keultjes, and Eakins*, were also recently filed in the Northern District of Ohio.  Plaintiffs in these matters have all filed Complaints in July alleging personal injuries related to Yasmin and Yaz.  Though they were initially assigned to different judges, Movants anticipate that they will also be transferred to Judge Carr.

16. Specifically, the Plaintiffs in *Meadows, Murphy, Keutljes, and Eakins* all filed Notices of Complex Litigation with their Complaints, thereby notifying the Northern District of Ohio that their cases were related to similar cases already pending in the Northern District of Ohio before Judge Carr.  (Complex Litigation Notices in *Meadows, Murphy, Keutljes, and Eakins* attached hereto as Ex. Y).  As such, Movants anticipate those cases will be transferred to Judge Carr in the near future, where they can be consolidated with the cases already pending.

17.  In total, fourteen cases are currently pending in the Northern District of Ohio, more than twice as many as are pending in any other single district.  Movants represent more than two thirds of all Plaintiffs who have filed related actions in federal district courts throughout the country.

18. For the reasons set forth in the accompanying Memorandum of Law, which is incorporated herein by reference, Movants submit that, when taking into consideration the relevant factors in selecting an appropriate transferee forum under 28 U.S.C. §1407, the United States District Court for the Northern District of Ohio is best suited to manage these proceedings and to coordinate these common issues of fact.

WHEREFORE, Movants respectfully request that the Judicial Panel on Multidistrict Litigation enter an Order consolidating all pretrial proceedings for the actions identified herein, together with any similar actions subsequently filed, and transferring that consolidated proceeding to the United States District Court for the Northern District of Ohio.

Dated:  July 24, 2009

Respectfully Submitted,

*Janet G. Abaray*

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and Jonathan Eakins; Lauren L. Murphy; Marie Claire Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the Administratrix of the Estate of Stephanie R. Hoover; Angela and Martin Beck; Bridget and Paul Shafer; Pattie and Gary Bradish; Gail and Kenneth Brinker; Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson; William and Kathy Johns; Saretta Main and Christina Maniaci; Heather Riley*

15

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| In Re:  YASMIN / YAZ<br>PRODUCTS LIABILITY LITIGATION | MDL Docket No.: _____ |

## EXHIBITS IN SUPPORT OF MOTION FOR TRANSFER OF RELATED ACTIONS
## TO THE NORTHERN DISTRICT OF OHIO PURSUANT TO 28 U.S.C. § 1407
## FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Civil Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs submit the following Exhibits in Support of their Motion for Transfer of Actions to the Northern District of Ohio and for Coordinated or Consolidated Pretrial Proceedings, including the Schedule of Actions.

Dated:  July 24, 2009

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

2009 JUL 24  A 10: 04

RECEIVED
CLERK'S OFFICE

Respectfully Submitted,

*Janet G. Abaray*

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and Jonathan Eakins; Lauren L. Murphy; Marie Claire Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the Administratrix of the Estate of Stephanie R. Hoover; Angela and Martin Beck; Bridget and Paul Shafer; Pattie and Gary Bradish; Gail and Kenneth Brinker; Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson; William and Kathy Johns; Saretta Main and Christina Maniaci; Heather Riley*

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

**A**

Armstrong, Cat08, Standard

## U.S. District Court
## Northern District of Ohio (Toledo)
## CIVIL DOCKET FOR CASE #: 3:09-cv-01085-JGC

Fries v. Bayer Corporation et al                    Date Filed: 05/11/2009
Assigned to: Judge James G. Carr                    Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Product Liability          Nature of Suit: 365 Personal Inj. Prod.
                                                    Liability
                                                    Jurisdiction: Diversity

**Plaintiff**

**Candace L Fries**                  represented by   **David W. Zoll**
*individually and as Administratrix of*              Zoll, Kranz & Borgess
*the estate of*                                      Ste. 200
*Deceased*                                           6620 Central Avenue
Stephanie R. Hoover                                  Toledo , OH 43617
                                                     419-841-9623
                                                     Fax: 419-841-9719
                                                     Email: david@toledolaw.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Michelle L. Kranz**
                                                     Zoll, Kranz & Borgess
                                                     Ste. 200
                                                     6620 Central Avenue
                                                     Toledo , OH 43617
                                                     419-841-9623
                                                     Fax: 419-841-9719
                                                     Email: michelle@toledolaw.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Pamela A. Borgess**
                                                     Zoll, Kranz & Borgess
                                                     Ste. 200
                                                     6620 Central Avenue
                                                     Toledo , OH 43617
                                                     419-841-9623
                                                     Fax: 419-841-9719
                                                     Email: pamela@toledolaw.com
                                                     *ATTORNEY TO BE NOTICED*

V.

Northern District of Ohio                                                                                 Page 2 of 6

**Defendant**

**Bayer Corporation**                          represented by   **Adam L. Hoeflich**
                                                                Bartlit Beck Herman Palenchar & Scott
                                                                54 West Hubbard Street
                                                                Ste. 300
                                                                Chicago , IL 60610
                                                                312-494-4000
                                                                Fax: 312-494-4440
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Joseph C. Weinstein**
                                                                Squire, Sanders & Dempsey -
                                                                Cleveland
                                                                4900 Key Tower
                                                                127 Public Square
                                                                Cleveland , OH 44114
                                                                216-479-8500
                                                                Fax: 216-479-8780
                                                                Email: jweinstein@ssd.com

                                                                **Sarah K. Rathke**
                                                                Squire, Sanders & Dempsey -
                                                                Cleveland
                                                                4900 Key Tower
                                                                127 Public Square
                                                                Cleveland , OH 44114
                                                                216-479-8379
                                                                Fax: 216-479-8780
                                                                Email: srathke@ssd.com

**Defendant**

**Bayer Pharmaceuticals Corporation**          represented by   **Adam L. Hoeflich**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Joseph C. Weinstein**
                                                                (See above for address)

                                                                **Sarah K. Rathke**
                                                                (See above for address)

**Defendant**

**Bayer Healthcare LLC**                       represented by   **Adam L. Hoeflich**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Joseph C. Weinstein**

(See above for address)

**Sarah K. Rathke**
(See above for address)

**Defendant**

**Bayer Healthcare Pharmaceuticals
Inc.**                                    represented by   **Adam L. Hoeflich**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Joseph C. Weinstein**
                                                            (See above for address)

                                                            **Sarah K. Rathke**
                                                            (See above for address)

**Defendant**

**Berlex Laboratories, Inc.**             represented by   **Adam L. Hoeflich**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Joseph C. Weinstein**
                                                            (See above for address)

                                                            **Sarah K. Rathke**
                                                            (See above for address)

**Defendant**

**Berlex, Inc.**                          represented by   **Adam L. Hoeflich**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Joseph C. Weinstein**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Sarah K. Rathke**
                                                            (See above for address)

**Defendant**

**Bayer Schering Pharma AG**              represented by   **Sarah K. Rathke**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Bayer AG**                              represented by   **Sarah K. Rathke**
                                                            (See above for address)

Northern District of Ohio                                              Page 4 of 6

**Defendant**

**John Doe Manufacturers**
*A-Z*

**Defendant**

**John Doe Distributors**
*A-Z*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/11/2009 | 1 | **Complaint** with jury demand against Bayer AG, Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG. Filing fee $ 350, receipt number 06470000000003552123, filed by Candace L Fries. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Bayer Corp, # 3 Summons Bayer Pharmaceutical, # 4 Summons Berlex, Inc, # 5 Summons Bayer Healthcare, # 6 Summons Bayer Schering Pharma, # 7 Summons Bayer AG, # 8 Summons Bayer Healthcare, # 9 Summons Berlex Labs) (Zoll, David) (Entered: 05/11/2009) |
| 05/12/2009 | | Judge James G. Carr assigned to case. (M,L) (Entered: 05/12/2009) |
| 05/12/2009 | 2 | Original Summons and Magistrate Consent Form issued for service upon Bayer AG, Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG. (Attachments: # 1 Magistrate Consent Form) (M,L) (Entered: 05/12/2009) |
| 05/20/2009 | 3 | Return of Service Executed upon Bayer Corporation by Certified Mail Return Receipt on 5/15/2009 filed on behalf of Candace L Fries (Zoll, David) (Entered: 05/20/2009) |
| 05/20/2009 | 4 | Return of Service Executed upon Bayer AG by Certified Mail Return Receipt on 5/15/2009 filed on behalf of Candace L Fries (Zoll, David) (Entered: 05/20/2009) |
| 05/20/2009 | 5 | Return of Service Executed upon Bayer Pharmaceuticals Corporations by Certified Mail Return Receipt on 5/14/2009 filed on behalf of Candace L Fries (Zoll, David) (Entered: 05/20/2009) |
| 05/20/2009 | 6 | Return of Service Executed upon Berlex, Inc. by Certified Mail Retrun Receipt on 5/15/2009 filed on behalf of Candace L Fries (Zoll, David) (Entered: 05/20/2009) |
| 05/20/2009 | 7 | Return of Service Executed upon Bayer Healthcare, LLC by Certified Mail Return Receipt on 5/15/2009 filed on behalf of Candace L Fries (Zoll, David) (Entered: 05/20/2009) |
| 05/20/2009 | 8 | Return of Service Executed upon Bayer Schring Pharma AG by Certified Mail Return Receipt on 5/15/2009 filed on behalf of Candace L Fries (Zoll, David) (Entered: 05/20/2009) |

| 05/20/2009 | 9 | Return of Service Executed upon Bayer Healthcare Pharmaceuticals, Inc by Certified Mail Return Receipt on 5/15/2009 filed on behalf of Candace L Fries (Zoll, David) (Entered: 05/20/2009) |
|---|---|---|
| 05/20/2009 | 10 | Return of Service Executed upon Berlex Laboratories, Inc. by Certified Mail Return Receipt on 5/15/2009 filed on behalf of Candace L Fries (Zoll, David) (Entered: 05/20/2009) |
| 06/02/2009 | 11 | Unopposed **Motion** for extension of time until July 2, 2009 to answer *Complaint* filed by Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.. Related document(s) 1 . (Attachments: # 1 Brief in Support)(Weinstein, Joseph) Modified on 6/2/2009 (C,D). (Entered: 06/02/2009) |
| 06/03/2009 | 12 | **Case Management Conference Scheduling Notice:** with case management conference to be held on 6/22/2009 at 10:30 AM at Chambers 210 before Judge James G. Carr. Recommended track: standard. (Attachments: # 1 Magistrate Consent Form)(S,AL) (Entered: 06/03/2009) |
| 06/05/2009 | 13 | **Marginal Entry Order:** Defendants are granted an extension of time until 7/2/2009 to file their Answer to Plaintiff's Complaint. Signed by Judge James G. Carr on 6/5/2009. (Related document 11 ). (S,JM) (Entered: 06/05/2009) |
| 06/11/2009 | 14 | **Motion** for To Appoint Special Process Server filed by Plaintiff Candace L Fries. (Attachments: # 1 Proposed Order Order to Appoint Specal Process Server)(Zoll, David) (Entered: 06/11/2009) |
| 06/17/2009 | 15 | Report of Parties' Planning Meeting. Parties do not consent to this case being assigned to the magistrate judge, filed by all parties. (Zoll, David) (Entered: 06/17/2009) |
| 06/23/2009 | 16 | **Order** granting plaintiff's Motion for an order to appoint a special process server. (Related Doc # 14 ). Judge James G. Carr on 6/23/2009.(S,AL) (Entered: 06/23/2009) |
| 07/01/2009 | 17 | **Order:** Case management conference was held 6/22/2009. The track designation is complex. Leave is granted to Adam Hoeflich to appear pro hac vice or to file application for admission to practice in this District by 8/1/2009. Amended pleadings to be filed or additional parties joined by 12/15/2009. Rule 26 disclosures to be exchanged by 8/1/2009. Further scheduling is held in abeyance pending status telephone conference to be held 10/5/2009, at 3:00 p.m. in Chambers 210 before Judge James G. Carr. Leave is granted to parties to submit preservation order on or before 7/15/2009. Signed by Judge James G. Carr on 7/1/2009. (Parties are to refer to full order for further details.)(Time: 15 min.) (S,JM) (Entered: 07/01/2009) |
| 07/01/2009 | 18 | **Motion** for extension of time until 20 days from the date Plaintiffs file their Amended Complaint to answer filed by Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.. Related document (s) 1 . (Weinstein, Joseph) (Entered: 07/01/2009) |

| 07/14/2009 | 19 | Stipulated Order on the Preservation of Evidence filed by all parties. (Rathke, Sarah) Modified on 7/15/2009 (B,TM). (Entered: 07/14/2009) |
| 07/15/2009 | 20 | **Marginal Entry Order** granting 18 Motion by defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., and Berlex, Inc. for extension of time until 20 days from the date plaintiffs file their Amended Complaint to Answer. Signed by Judge James G. Carr on 7/15/2009.(S,JM) (Entered: 07/15/2009) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 07/17/2009 16:25:27 | | |
| **PACER Login:** | rn0030 | **Client Code:** | 9047/denture cream |
| **Description:** | Docket Report | **Search Criteria:** | 3:09-cv-01085-JGC |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |

IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **CANDACE L. FRIES,**<br>**INDIVIDUALLY AND AS**<br>**ADMINISTRATRIX OF THE**<br>**ESTATE OF STEPHANIE R.**<br>**HOOVER**<br>2370 West County Road 52<br>Tiffin, Ohio 44883<br><br>          Plaintiff,<br><br>     v.<br><br>**BAYER CORPORATION**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215<br><br>and<br><br>**BAYER HEALTHCARE LLC,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215<br><br>and<br><br>**BAYER PHARMACEUTICALS**<br>**CORPORATION,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CASE NO.<br><br>JUDGE<br><br><u>**COMPLAINT WITH JURY DEMAND**</u><br><u>**ENDORSED HEREON**</u><br><br>David W. Zoll  (0008548)<br>Michelle L. Kranz (0062479)<br>Pamela A. Borgess  (0072789)<br>ZOLL, KRANZ & BORGESS, LLC<br>6620 W. Central Ave., Suite 200<br>Toledo, OH  43617<br>(419) 841-9623<br>Fax: (419) 841-9719<br>Email: david@toledolaw.com<br>         michelle@toledolaw.com<br>         pamela@toledolaw.com<br><br>*Counsel for Plaintiff* |

1

Columbus, OH 43215                    )
                                      )
and                                   )
                                      )
**BAYER HEALTHCARE**                  )
**PHARMACEUTICALS INC.**              )
c/o CSC-Lawyers Incorporating         )
Service (Corporation Service          )
Company)                              )
50 W. Broad St. Suite 1800            )
Columbus, OH 43215                    )
                                      )
and                                   )
                                      )
**BERLEX LABORATORIES, INC.**         )
c/o CSC-Lawyers Incorporating         )
Service (Corporation Service          )
Company)                              )
50 W. Broad St. Suite 1800            )
Columbus, OH 43215                    )
                                      )
and                                   )
                                      )
**BERLEX, INC.**                      )
c/o CSC-Lawyers Incorporating         )
Service (Corporation Service          )
Company)                              )
50 W. Broad St. Suite 1800            )
Columbus, OH 43215                    )
                                      )
and                                   )
                                      )
**BAYER SCHERING PHARMA AG**          )
100 Bayer Road, Pittsburgh,           )
Pennsylvania, 15205                   )
                                      )
and                                   )
                                      )
**BAYER AG**                          )
100 Bayer Road, Pittsburgh,           )
Pennsylvania, 15205                   )
                                      )
and                                   )
                                      )
**JOHN DOE MANUFACTURERS**            )
**A-Z**                               )

2

[Real Names and Addresses )
Unknown] )
 )
and )
 )
**JOHN DOE DISTRIBUTORS A-Z** )
[Real Names and Addresses )
Unknown] )
 )
    Defendants. )

---

  Now comes Candace L. Fries, individually and as the Administratrix for the Estate of Stephanie R. Hoover, by and through the undersigned counsel, and for her Complaint hereby avers and states as follows:

**NATURE OF THE ACTION**

1. This is an action for strict product liability (Ohio R. C. §§ 2307.71-2307.80), fraud, civil conspiracy and commercial bribery, and punitive damages brought by Plaintiff for damages associated with Decedent Stephanie R. Hoover's ingestion of the pharmaceutical drug YAZ, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2. As a result of the ingestion of YAZ, Decedent Stephanie R. Hoover died of a massive stroke at age 25, leaving two young children, a husband and other next of kin.

**THE PARTIES**

3. Plaintiff Candace L. Fries, (herein "Plaintiff"), resides in the city of Tiffin, Seneca County, Ohio.

4. At all times relevant herein, Decedent Stephanie R. Hoover was also a resident of the city of Tiffin Seneca County, Ohio.

5. Plaintiff is the mother of the Decedent Stephanie R. Hoover.

3

6.   Decedent Stephanie R. Hoover was prescribed and ingested YAZ, and as a result, died from a massive stroke.

7.   Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

8.   At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

9.   Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

10.  At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

11.  Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

12.  Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

13.  At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio,

4

either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

14. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

15. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

16. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

17. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

18. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YAZ.

19. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

20. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

21. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

22. Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

23. Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

24. Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

25. Defendant BAYER SCHERING PHARMA AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

26. At all times relevant, Defendant BAYER SCHERING PHARMA AG was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

27. Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

28. Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

29. Defendant BAYER AG is the third largest pharmaceutical company in the world.

30. Defendant BAYER AG is the parent/holding company of all other named Defendants.

31. Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

32. At all times relevant, Defendant BAYER AG was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

33. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

34. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or

related entities, pharmaceutical drugs including YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

35. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, Bayer AG, John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

36. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

37. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

38. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

39. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YAZ, as well as the death of Plaintiff's Decedent.

40. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused

tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of YAZ within this District.

41. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

## FACTS

42. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

43. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

44. Combination birth control pills are referred to as combined hormonal oral contraceptives.

45. Yasmin was approved by the FDA in April, 2001.

46. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

47. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

48. In April 2002, the British Medical Journal reported that the Dutch College of General

9

Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

49.  In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

50.  Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

51.  The use of YAZ has a prothrombotic effect resulting in thrombosis such as the stroke suffered by Plaintiff's Decedent.

52.  Defendants ignored the correlation between the use of YAZ and increased thrombosis formation despite the wealth of scientific information available.

53.  Upon information and belief, Defendants knew or should have known about the correlation between the use of YAZ and a prothrombotic effect and still promoted, sold, advertised, and marketed the use of YAZ.

54.  Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff's Decedent, the FDA, and the public in general, that YAZ had been tested and was found to be safe and/or effective for its indicated use.

55.  These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff's Decedent, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or

purchase YAZ for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff's Decedent.

56. Defendants knew and were aware or should have been aware that YAZ had not been sufficiently tested, was defective in its design and testing, and/or that it lacked adequate and/or sufficient warnings.

57. Defendants knew or should have known that YAZ had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

58. In representations to Plaintiff, Plaintiff's Decedent, her healthcare providers, and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

    A.    That YAZ is not as safe as other available contraceptives;

    B.    That the risks of adverse events with YAZ (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

    C.    That the risks of adverse events with YAZ was not adequately tested and/or known by Defendants;

    D.    Plaintiff's Decedent was put at risk of experiencing serious and dangerous side effects including, but not limited to, stroke, as well as other severe and personal injuries, physical pain, mental anguish and death;

    E.    That patients needed to be monitored more regularly than normal while using YAZ; and

    F.    That YAZ was designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

59. Defendants were under a duty to disclose to Plaintiff's Decedent and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of YAZ.

60. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used YAZ, including Plaintiff's Decedent.

61. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff's Decedent, would rely on such in selecting YAZ as a contraceptive.

62. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

63. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

64. Defendants knew that Plaintiff, Plaintiff's Decedent, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding YAZ, as set forth herein.

65. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of YAZ.

66. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff's Decedent, about the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet they failed to provide such warning.

### FACTS REGARDING DECEDENT STEPHANIE R. HOOVER

67. Decedent Stephanie R. Hoover was first prescribed YAZ by her health care provider on approximately April 15, 2006.

68. Decedent Stephanie R. Hoover justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YAZ to her detriment.

69. As a result of using Defendants' product YAZ, Defendant Stephanie Hoover died of a stroke on May 22, 2006 at age 25.

70. Plaintiff did not discover, nor did she have any reason to discover that her daughter Stephanie R. Hoover's death was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

### CAUSES OF ACTION
#### Statutory Products Liability (R.C. § 2307.71-2307.80)

71. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

72. Defendants are manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drug, YAZ.

73. YAZ reached the ultimate users without substantial change in the condition it was sold.

74. The drug was defective due to inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, in its design pursuant to the provisions of Ohio Revised Code § 2307.75 and/or in its failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

75. Said defect was a result of Defendants' failures including, but not limited to:

A.    Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff's Decedent, of the potential risks and serious side effects of the drug;

B.    Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

C.    Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, stroke and death and other serious and life threatening side effects;

D.    Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff's Decedent of the potential risks and other serious side effects associated with the drug, including, among other things, stroke and death and other serious and life threatening side effects;

E.    Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

F.    Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

G.    Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff's Decedent, in order to maximize profit from sales.

76.   Plaintiff's Decedent was using YAZ in the manner for which it was intended and/or in a reasonably foreseeable manner.

77.   Plaintiff's Decedent was not aware of and reasonably could not have discovered the dangerous nature of YAZ.

78.   As a direct and proximate result of the defective product, Plaintiff's Decedent suffered profound injuries and death.

**Fraud**

14

79.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

80.  Defendants having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of YAZ described herein, owed a duty not to deceive the public regarding its drug's safety and to provide accurate and complete information regarding the product.

81.  Since the drug's approval and on multiple occasions to the present date, Defendants fraudulently misrepresented information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's safety.

82.  At the time of Defendants' fraudulent misrepresentations, Plaintiff's Decedent was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

83.  Defendants breached their duties to Plaintiff's Decedent by providing false, incomplete and misleading information regarding their product.

84.  Defendants acted with deliberate intent to deceive and mislead Plaintiff's Decedent, her medical providers, and the public.

85.  Plaintiff's Decedent reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

86.  As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff's Decedent suffered profound injuries and death.

**Civil Conspiracy and Commercial Bribery**

87.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

88. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these entities to use the drug YAZ, and to convince their patients and others of the safety and effectiveness of YAZ.

**Punitive Damages**

89. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

90. Defendants engaged in fraudulent and malicious conduct towards the Plaintiff's Decedent, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff's Decedent and the public.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.    For an award of compensatory damages, including damages against Defendants and each of them for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.    For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.    For reasonable attorneys' fees and costs;

D.    For pre-judgment interest; and

E.    For such further and other relief the court deems just, equitable, and proper.

Dated: May 11, 2009

Respectfully Submitted,

/s/David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH 43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

/s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH 43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com

/s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH 43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

/s/David W. Zoll
David W. Zoll (0008548)

**B**

Armstrong, Cat08

## U.S. District Court
## Northern District of Ohio (Toledo)
## CIVIL DOCKET FOR CASE #: 3:09-cv-01207-JGC

Beck et al v. Bayer Corporation et al
Assigned to: Judge James G. Carr
Cause: 28:1332 Diversity-Product Liability

Date Filed: 05/27/2009
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Angela Beck**

represented by **David W. Zoll**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: david@toledolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: michelle@toledolaw.com
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: pamela@toledolaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Martin Beck**

represented by **David W. Zoll**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**                represented by  **Adam L. Hoeflich**
                                                     Bartlit Beck Herman Palenchar & Scott
                                                     54 West Hubbard Street
                                                     Ste. 300
                                                     Chicago , IL 60610
                                                     312-494-4000
                                                     Fax: 312-494-4440
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Joseph C. Weinstein**
                                                     Squire, Sanders & Dempsey -
                                                     Cleveland
                                                     4900 Key Tower
                                                     127 Public Square
                                                     Cleveland , OH 44114
                                                     216-479-8500
                                                     Fax: 216-479-8780
                                                     Email: jweinstein@ssd.com

                                                     **Sarah K. Rathke**
                                                     Squire, Sanders & Dempsey -
                                                     Cleveland
                                                     4900 Key Tower
                                                     127 Public Square
                                                     Cleveland , OH 44114
                                                     216-479-8379
                                                     Fax: 216-479-8780
                                                     Email: srathke@ssd.com

**Defendant**

**Bayer Healthcare LLC**             represented by  **Adam L. Hoeflich**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

Joseph C. Weinstein
(See above for address)

Sarah K. Rathke
(See above for address)

**Defendant**

**Bayer Pharmaceuticals Corporation**          represented by   **Adam L. Hoeflich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Joseph C. Weinstein
(See above for address)

Sarah K. Rathke
(See above for address)

**Defendant**

**Bayer Healthcare Pharmaceuticals
Inc.**          represented by   **Adam L. Hoeflich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Joseph C. Weinstein
(See above for address)
*ATTORNEY TO BE NOTICED*

Sarah K. Rathke
(See above for address)

**Defendant**

**Berlex Laboratories, Inc.**          represented by   Sarah K. Rathke
(See above for address)

**Defendant**

**Berlex, Inc.**          represented by   Sarah K. Rathke
(See above for address)

**Defendant**

**Bayer Schering Pharma AG**          represented by   Sarah K. Rathke
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bayer AG**          represented by   Sarah K. Rathke
(See above for address)

**Defendant**

**John Doe Manufacturers**
*A-Z*

**Defendant**

**John Doe Distributors**
*A-Z*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/27/2009 | 1 | **Complaint** against all defendants. Filing fee $ 350, receipt number 06470000000003575078, filed by Angela Beck, Martin Beck. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Bayer AG, # 3 Summons Bayer Healthcare, LLC, # 4 Summons Bayer Corporation, # 5 Summons Bayer Pharmaceuticals Corporation, # 6 Summons Berlex Laboratories, Inc., # 7 Summons Bayer Healthcare Pharmaceuticals, Inc., # 8 Summons Bayer Schering Pharma AG, # 9 Summons Berlex, Inc.) (Zoll, David) Modified on 5/28/2009 (M,L). (Entered: 05/27/2009) |
| 05/27/2009 |  | Judge James G. Carr assigned to case. (M,L) (Entered: 05/27/2009) |
| 05/28/2009 | 2 | Original Summons and Magistrate Consent Form issued for service upon Bayer AG, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG. (Attachments: # 1 Magistrate Consent Form) (M,L) (Entered: 05/28/2009) |
| 06/16/2009 |  | Notice [Non Document] of with case management conference to be held on 6/22/2009 at 10:30 AM at Chambers 210 before Judge James G. Carr. (S,AL) (Entered: 06/16/2009) |
| 06/17/2009 | 3 | Return of Service Executed upon Bayer Healthcare LLC by Certified Mail on 6/8/2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 06/17/2009) |
| 06/17/2009 | 4 | Return of Service Executed upon Bayer Corporation by Certified Mail on 6/8/2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 06/17/2009) |
| 06/17/2009 | 5 | Return of Service Executed upon Bayer Pharmaceuticals Corporation by Certified Mail on 6/8/2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 06/17/2009) |
| 06/17/2009 | 6 | Return of Service Executed upon Bayer Healthcare Pharmaceuticals Inc by Certified Mail on 6/8/2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 06/17/2009) |
| 06/17/2009 | 7 | Return of Service Unexecuted upon Berlex, Inc by Certified Mail attempted on 6/11/2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 06/17/2009) |
| 06/17/2009 | 8 | Return of Service Unexecuted upon Berlex Laboratories, Inc by Certified Mail attempted on 6/11/2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 06/17/2009) |
| 06/17/2009 | 9 | Report of Parties' Planning Meeting. Parties do not consent to this case being assigned to the magistrate judge, filed by all parties. (Borgess, Pamela) |

| | | (Entered: 06/17/2009) |
|---|---|---|
| 06/29/2009 | 10 | Unopposed **Motion** for extension of time until (20) days from the date plaintiffs file their amended complaint to answer *Complaint,* filed by Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals Inc.. (Weinstein, Joseph) (Entered: 06/29/2009) |
| 07/01/2009 | 11 | **Order:** Case management conference was held 6/22/2009. The track designation is complex. Leave is granted to Adam Hoeflich to appear pro hac vice or to file application for admission to practice in this District by 8/1/2009. Amended pleadings to be filed or additional parties joined by 12/15/2009. Rule 26 disclosures to be exchanged by 8/1/2009. Further scheduling is held in abeyance pending status telephone conference to be held 10/5/2009, at 3:00 p.m. in Chambers 210 before Judge James G. Carr. Leave is granted to parties to submit preservation order on or before 7/15/2009. Signed by Judge James G. Carr on 7/1/2009. (Parties are to refer to full order for further details.)(Time: 15 min.) (S,JM) (Entered: 07/01/2009) |
| 07/08/2009 | 12 | **Marginal Entry Order** granting 10 Motion by defendants Bayer Healthcare Pharmaceuticals Inc., Bayer HealthCare LLC, Bayer Corporation, and Bayer Pharmaceuticals Corporation for Extension of Time until 20 days from the date plaintiffs file their amended complaint to respond. Signed by Judge James G. Carr on 7/8/2009.(S,JM) Modified on 7/9/2009 (B,TM). (Entered: 07/08/2009) |
| 07/14/2009 | 13 | Stipulated Order on Preservation od Evidence filed by Bayer AG, Angela Beck, John Doe Distributors, Martin Beck, Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG. (Rathke, Sarah) Modified on 7/15/2009 (B,TM). (Entered: 07/14/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/17/2009 16:27:28 | | |
| **PACER Login:** | rn0030 | **Client Code:** | 9047/denture cream |
| **Description:** | Docket Report | **Search Criteria:** | 3:09-cv-01207-JGC |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |

## IN THE U.S. DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ANGELA BECK<br>13125 Kay Street<br>Paulding, Ohio 45879<br><br>and<br><br>**MARTIN BECK**<br>13125 Kay Street<br>Paulding, Ohio 45879<br><br>       Plaintiffs,<br><br>   v.<br><br>**BAYER CORPORATION**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215<br><br>and<br><br>BAYER HEALTHCARE LLC,<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215<br><br>and<br><br>BAYER PHARMACEUTICALS<br>CORPORATION,<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON**<br><br>David W. Zoll  (0008548)<br>Michelle L. Kranz (0062479)<br>Pamela A. Borgess  (0072789)<br>ZOLL, KRANZ & BORGESS, LLC<br>6620 W. Central Ave., Suite 200<br>Toledo, OH  43617<br>(419) 841-9623<br>Fax: (419) 841-9719<br>Email: david@toledolaw.com<br>     michelle@toledolaw.com<br>     pamela@toledolaw.com<br><br>*Counsel for Plaintiffs* |

Company)                                )
50 W. Broad St. Suite 1800              )
Columbus, OH 43215                      )
                                        )
and                                     )
                                        )
BAYER HEALTHCARE                        )
PHARMACEUTICALS INC.                    )
c/o CSC-Lawyers Incorporating           )
Service (Corporation Service            )
Company)                                )
50 W. Broad St. Suite 1800              )
Columbus, OH 43215                      )
                                        )
and                                     )
                                        )
BERLEX LABORATORIES, INC.               )
c/o CSC-Lawyers Incorporating           )
Service (Corporation Service            )
Company)                                )
340 Changebridge Road                   )
Montville, NJ 07405                     )
                                        )
and                                     )
                                        )
BERLEX, INC.                            )
c/o CSC-Lawyers Incorporating           )
Service (Corporation Service            )
Company)                                )
340 Changebridge Road                   )
Montville, NJ 07405                     )
                                        )
and                                     )
                                        )
**BAYER SCHERING PHARMA AG**            )
MÜLLERSTRASSE 178                       )
13353 BERLIN, GERMANY                   )
                                        )
and                                     )
                                        )
BAYER AG                                )
BAYERWERK, GEBÄUDE W11,                 )
KAISER-WILHELM-ALLEE                    )
51368 LEVERKUSEN, GERMANY               )
                                        )
and                                     )

2

JOHN DOE MANUFACTURERS )
A-Z )
[Real Names and Addresses )
Unknown] )
)
and )
)
JOHN DOE DISTRIBUTORS A-Z )
[Real Names and Addresses )
Unknown] )

          Defendants.

---

     Now come Angela and Martin Beck, by and through the undersigned counsel, and for their Complaint hereby aver and state as follows:

## NATURE OF THE ACTION

1.    This is an action for strict product liability (Ohio R. C. §§ 2307.71-2307.80), fraud, civil conspiracy and commercial bribery, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug YAZ, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2.    As a result of the ingestion of YAZ, Plaintiff Angela Beck has suffered injuries to her person including, but not limited to, a pulmonary embolism.

## THE PARTIES

3.    Plaintiff Angela Beck, (herein "Plaintiff"), resides in the village of Paulding, Paulding County, Ohio.

4.    Plaintiff is married to Plaintiff Martin Beck, who also resides in the village of Paulding, Paulding County, Ohio.

5.   Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

6.   At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

7.   Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

8.   At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

9.   Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

10.  Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

11.  At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

4

12. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

13. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

14. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

15. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

16. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YAZ.

17. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

18. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

19. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

20. Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

21. Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

22. Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

23. Defendant BAYER SCHERING PHARMA AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

24. At all times relevant, Defendant BAYER SCHERING PHARMA AG was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

25. Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

26. Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

27. Defendant BAYER AG is the third largest pharmaceutical company in the world.

28. Defendant BAYER AG is the parent/holding company of all other named Defendants.

29. Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

30. At all times relevant, Defendant BAYER AG was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

31. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

32. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or

related entities, pharmaceutical drugs including YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

33. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, Bayer AG, John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

34. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

35. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

36. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

37. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YAZ, as well as Plaintiff's resulting injuries.

38. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused

tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of YAZ within this District.

39. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

## FACTS

40. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

41. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

42. Combination birth control pills are referred to as combined hormonal oral contraceptives.

43. Yasmin was approved by the FDA in April, 2001.

44. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

45. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

46. In April 2002, the British Medical Journal reported that the Dutch College of General

Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

47.  In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

48.  Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

49.  The use of YAZ has a prothrombotic effect resulting in thrombosis such as the pulmonary embolism suffered by Plaintiff.

50.  Defendants ignored the correlation between the use of YAZ and increased thrombosis formation despite the wealth of scientific information available.

51.  Upon information and belief, Defendants knew or should have known about the correlation between the use of YAZ and a prothrombotic effect and still promoted, sold, advertised, and marketed the use of YAZ.

52.  Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that YAZ had been tested and was found to be safe and/or effective for its indicated use.

53.  These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase YAZ for

use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

54. Defendants knew and were aware or should have been aware that YAZ had not been sufficiently tested, was defective in its design and testing, and/or that it lacked adequate and/or sufficient warnings.

55. Defendants knew or should have known that YAZ had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

56. In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

   A. That YAZ is not as safe as other available contraceptives;

   B. That the risks of adverse events with YAZ (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

   C. That the risks of adverse events with YAZ was not adequately tested and/or known by Defendants;

   D. Plaintiff was put at risk of experiencing serious and dangerous side effects including, but not limited to, a pulmonary embolism, as well as other severe and personal injuries, physical pain, and mental anguish;

   E. That patients needed to be monitored more regularly than normal while using YAZ; and

   F. That YAZ was designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

57. Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of YAZ.

58. Defendants had sole access to material facts concerning the defective nature of the product

and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used YAZ, including Plaintiff.

59. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting YAZ as a contraceptive.

60. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

61. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

62. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding YAZ, as set forth herein.

63. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of YAZ.

64. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet they failed to provide such warning.

12

## FACTS REGARDING PLAINTIFF ANGELA BECK

65.   Plaintiff was first prescribed YAZ by her health care provider in approximately April of 2007.

66.   Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YAZ to her detriment.

67.   As a result of using Defendants' product YAZ, a few months later in approximately the end of June, early July 2007, Plaintiff suffered serious and life-threatening side effects including but not limited to, a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

68.   Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

## CAUSES OF ACTION
### Statutory Products Liability (R.C. § 2307.71-2307.80)

69.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

70.   Defendants are manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drug, YAZ.

71.   YAZ reached the ultimate users without substantial change in the condition it was sold.

72.   The drug was defective due to inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, in its design pursuant to the provisions of Ohio Revised

Code § 2307.75 and/or in its failure to conform, when it left the control of Defendants, to

their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

73. Said defect was a result of Defendants' failures including, but not limited to:

A.    Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects of the drug;

B.    Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

C.    Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, a pulmonary embolism, and other serious and life threatening side effects;

D.    Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, a pulmonary embolism and other serious and life threatening side effects;

E.    Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

F.    Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

G.    Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

74. Plaintiff was using YAZ in the manner for which it was intended and/or in a reasonably

foreseeable manner.

75. Plaintiff was not aware of and reasonably could not have discovered the dangerous nature of

YAZ.

14

76. As a result of the foregoing acts and omissions, Plaintiff suffered serious and life-threatening side effects including but not limited to, a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

**<u>Fraud</u>**

77. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

78. Defendants having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of YAZ described herein, owed a duty not to deceive the public regarding its drug's safety and to provide accurate and complete information regarding the product.

79. Since the drug's approval and on multiple occasions to the present date, Defendants fraudulently misrepresented information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's safety.

80. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

81. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding their product.

82. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

83. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

84. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered serious and life-threatening side effects including but not limited to, a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

**Civil Conspiracy and Commercial Bribery**

85. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

86. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these entities to use the drug YAZ, and to convince their patients and others of the safety and effectiveness of YAZ.

**Loss of Consortium**

87. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

88. As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff,

Plaintiff Martin Beck has suffered the loss of companionship, society, services, and consortium of his wife.

### Punitive Damages

89. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

90. Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the public.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants, jointly and severally, as follows:

A.    For an award of compensatory damages, including damages against Defendants and each of them for medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.    For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.    For reasonable attorneys' fees and costs;

D.    For pre-judgment interest; and

E.    For such further and other relief the court deems just, equitable, and proper.

Dated: May 26, 2009

Respectfully Submitted,

 /s/David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

  /s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com


  /s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.


  /s/David W. Zoll
David W. Zoll (0008548)

**C**

Armstrong, Cat08

## U.S. District Court
## Northern District of Ohio (Toledo)
## CIVIL DOCKET FOR CASE #: 3:09-cv-01315-JGC

Shafer et al v. Bayer Corporation et al
Assigned to: Judge James G. Carr
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 06/09/2009
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**Bridget Shafer**                          represented by **David W. Zoll**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: david@toledolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: michelle@toledolaw.com
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: pamela@toledolaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul Shafer**                          represented by **David W. Zoll**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**                    represented by    **Sarah K. Rathke**
                                                            Squire, Sanders & Dempsey -
                                                            Cleveland
                                                            4900 Key Tower
                                                            127 Public Square
                                                            Cleveland , OH 44114
                                                            216-479-8379
                                                            Fax: 216-479-8780
                                                            Email: srathke@ssd.com

**Defendant**

**Bayer Healthcare LLC**                 represented by    **Sarah K. Rathke**
                                                            (See above for address)

**Defendant**

**Bayer Pharmaceuticals Corporation**    represented by    **Sarah K. Rathke**
                                                            (See above for address)

**Defendant**

**Bayer Healthcare Pharmaceuticals,**    represented by    **Sarah K. Rathke**
**Inc.**                                                    (See above for address)

**Defendant**

**Berlex Laboratories, Inc.**            represented by    **Sarah K. Rathke**
                                                            (See above for address)

**Defendant**

**Berlex, Inc.**                         represented by    **Sarah K. Rathke**
                                                            (See above for address)

**Defendant**

**Bayer Schering Pharma AG**             represented by    **Sarah K. Rathke**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Bayer AG**                          represented by  **Sarah K. Rathke**
                                       (See above for address)

**Defendant**

**John Doe Manufacturers**
*A-Z*

**Defendant**

**John Doe Distributors**
*A-Z*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/09/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 0647000000003595322, filed by Bridget Shafer, Paul Shafer. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Bayer AG, # 3 Summons Bayer Healthcare Pharmaceuticals, Inc., # 4 Summons Berlex, Inc, # 5 Summons Bayer Corporation, # 6 Summons Bayer Phamraceuticals Corporation, # 7 Summons Bayer Schering AG, # 8 Summons Bayer Healthcare, LLC, # 9 Summons Berlex Laboratories, Inc) (Zoll, David) (Entered: 06/09/2009) |
| 06/09/2009 |  | Judge Jack Zouhary assigned to case. (M,L) (Entered: 06/09/2009) |
| 06/09/2009 | 2 | Original Summons and Magistrate Consent Form issued for service upon Bayer AG, Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG. (Attachments: # 1 Magistrate Consent Form) (M,L) (Entered: 06/09/2009) |
| 06/11/2009 | 3 | **Order** reassigning case to Judge James G. Carr for all further proceedings as related to 09-1085 Fries v. Bayer. Judge Jack Zouhary no longer assigned to case. Judge Jack Zouhary on 6/11/09. (B,CJ) (Entered: 06/11/2009) |
| 06/16/2009 |  | Notice [Non Document] of with case management conference to be held on 6/22/2009 at 10:30 AM at Chambers 210 before Judge James G. Carr. (S,AL) (Entered: 06/16/2009) |
| 07/07/2009 | 4 | Return of Service Executed upon Bayer Healthcare, LLC by Certified Mail (no date on green card) filed on behalf of all plaintiffs. (Zoll, David) Modified on 7/8/2009 (B,TM). (Entered: 07/07/2009) |
| 07/07/2009 | 5 | Return of Service Executed upon Bayer Pharmaceutcials Corporation by Certifed Mail (no date on green card) filed on behalf of all plaintiffs. (Zoll, David) Modified on 7/8/2009 (B,TM). (Entered: 07/07/2009) |
| 07/07/2009 | 6 | Return of Service Executed upon Bayer Corporation by Certifed Mail Receipt on June 29, 2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 07/07/2009) |

Northern District of Ohio                                                              Page 4 of 4

| 07/07/2009 | 7 | Return of Service Executed upon Bayer Healthcare Pharmaceuticals, Inc., by Certified Mail (no date on green card) filed on behalf of all plaintiffs. (Zoll, David) Modified on 7/8/2009 (B,TM). (Entered: 07/07/2009) |
| --- | --- | --- |
| 07/07/2009 | 8 | Return of Service Unexecuted upon Berlex Laboratories, Inc by Certified Mail Receipt attempted on 7/6/2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 07/07/2009) |
| 07/07/2009 | 9 | Return of Service Unexecuted upon Berlex, Inc. by Certified Mail Receipt attempted on 7/2/2009 filed on behalf of all plaintiffs (Zoll, David) (Entered: 07/07/2009) |
| 07/14/2009 | 10 | Stipulated Order on the Preservation of Evidence filed by all parties. (Rathke, Sarah) Modified on 7/15/2009 (B,TM). (Entered: 07/14/2009) |
| 07/15/2009 | 11 | **Motion** for extension of time until a period of 20 days from the date Plaintiffs file their amended complaint to answer */plead in response to amended complaint* filed by Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc.. Related document(s) 1 . (Rathke, Sarah) (Entered: 07/15/2009) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 07/17/2009 16:28:57 | | |
| **PACER Login:** | rn0030 | **Client Code:** | 9047/denture cream |
| **Description:** | Docket Report | **Search Criteria:** | 3:09-cv-01315-JGC |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

### IN THE U.S. DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **BRIDGET SHAFER**<br>8171 Fenner Road<br>Plymouth, Ohio 44865 | ) ) ) | CASE NO. |
| | ) | JUDGE |
| and | ) ) | |
| **PAUL SHAFER**<br>8171 Fenner Road<br>Plymouth, Ohio 44865 | ) ) ) ) ) | **COMPLAINT WITH JURY DEMAND<br>ENDORSED HEREON** |
| Plaintiffs, | ) ) ) | David W. Zoll   (0008548)<br>Michelle L. Kranz (0062479)<br>Pamela A. Borgess  (0072789) |
| v. | ) ) ) | ZOLL, KRANZ & BORGESS, LLC<br>6620 W. Central Ave., Suite 200<br>Toledo, OH  43617 |
| **BAYER CORPORATION**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | ) ) ) ) ) ) ) ) | (419) 841-9623<br>Fax: (419) 841-9719<br>Email: david@toledolaw.com<br>       michelle@toledolaw.com<br>       pamela@toledolaw.com<br><br>*Counsel for Plaintiffs* |
| and | ) ) ) | |
| **BAYER HEALTHCARE LLC,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | ) ) ) ) ) ) ) | |
| and | ) ) ) | |
| **BAYER PHARMACEUTICALS<br>CORPORATION,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service | ) ) ) ) ) | |

Company)                                    )
50 W. Broad St. Suite 1800                  )
Columbus, OH 43215                          )
                                            )
and                                         )
                                            )
BAYER HEALTHCARE                            )
PHARMACEUTICALS INC.                        )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
50 W. Broad St. Suite 1800                  )
Columbus, OH 43215                          )
                                            )
and                                         )
                                            )
BERLEX LABORATORIES, INC.                   )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
340 Changebridge Road                       )
Montville, NJ 07045                         )
                                            )
and                                         )
                                            )
BERLEX, INC.                                )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
340 Changebridge Road                       )
Montville, NJ 07045                         )
                                            )
and                                         )
                                            )
**BAYER SCHERING PHARMA AG**                )
MÜLLERSTRASSE 178                           )
13353 BERLIN, GERMANY                       )
                                            )
and                                         )
                                            )
BAYER AG                                    )
BAYERWERK, GEBÄUDE W11,                     )
KAISER-WILHELM-ALLEE                        )
51368 LEVERKUSEN, GERMANY                   )
                                            )
and                                         )

JOHN DOE MANUFACTURERS          )
A-Z                             )
[Real Names and Addresses       )
Unknown]                        )
                                )
and                             )
                                )
JOHN DOE DISTRIBUTORS A-Z       )
[Real Names and Addresses       )
Unknown]

               Defendants.

---

Now come Bridget and Paul Shafer, by and through the undersigned counsel, and for their Complaint hereby aver and state as follows:

### NATURE OF THE ACTION

1. This is an action for strict product liability (Ohio R. C. §§ 2307.71-2307.80), fraud, civil conspiracy and commercial bribery, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug YASMIN, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2. As a result of the ingestion of YASMIN, Plaintiff Bridget Shafer has suffered injuries to her person including, but not limited to, severe heart arrhythmias.

### THE PARTIES

3. Plaintiff Bridget Shafer, (herein "Plaintiff"), resides in the village of Plymouth, Huron County, Ohio.

4. Plaintiff is married to Plaintiff Paul Shafer, who also resides in the village of Plymouth, Huron County, Ohio.

3

5.  Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

6.  At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YASMIN.

7.  Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

8.  At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YASMIN.

9.  Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

10. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

11. At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio,

either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YASMIN.

12. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

13. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

14. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

15. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YASMIN.

16. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YASMIN.

17. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

5

18. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

19. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YASMIN.

20. Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

21. Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

22. Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

23. Defendant BAYER SCHERING PHARMA AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

24. At all times relevant, Defendant BAYER SCHERING PHARMA AG was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YASMIN.

25. Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YASMIN.

26. Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

27. Defendant BAYER AG is the third largest pharmaceutical company in the world.

28. Defendant BAYER AG is the parent/holding company of all other named Defendants.

29. Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

30. At all times relevant, Defendant BAYER AG was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YASMIN.

31. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including YASMIN into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

32. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or

related entities, pharmaceutical drugs including YASMIN into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

33. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, Bayer AG, John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

34. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

35. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

36. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

37. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YASMIN, as well as Plaintiff's resulting injuries.

38. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of YASMIN within this District.

39. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

## FACTS

40. YASMIN, known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

41. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

42. Combination birth control pills are referred to as combined hormonal oral contraceptives.

43. YASMIN was approved by the FDA in April, 2001.

44. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

45. The difference between YASMIN /YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

46. YAZ/YASMIN's use of drospirenone, a diuretic, creates unique risks for compared to other oral contraceptives and is known to cause medical problems, including severe heart arrhythmias.

47. Upon information and belief, Defendants knew or should have known about the correlation between the use of YASMIN and YAZ and significantly increased risk of severe heart arrhythmias.

48. Yet, despite the wealth of scientific information available, Defendant ignored the correlation between the use of YASMIN and YAZ and significantly increased risk of severe heart arrhythmias and still promoted, sold, advertised, and marketed the use of YAZ/YASMIN without sufficient warnings.

49. Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YASMIN and YAZ, and minimize serious risks associated with the drug.

50. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that YASMIN and YAZ had been tested and was found to be safe and/or effective for its indicated use.

51. These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase YASMIN and YAZ for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

52. Defendants knew and were aware or should have been aware that YASMIN and YAZ had

not been sufficiently tested, was defective in its design and testing, and/or that it lacked

adequate and/or sufficient warnings.

53.   Defendants knew or should have known that YASMIN and YAZ had a potential to, could,

and would cause severe and grievous injury and death to the users of said product, and that

it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or

down-played warnings.

54.   In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also

fraudulently concealed and intentionally omitted the following material information:

A.   That YASMIN and YAZ is not as safe as other available contraceptives;

B.   That the risks of adverse events with YASMIN and YAZ (drospirenone and ethinyl
estradiol) was higher than those of other available contraceptives;

C.   That the risks of adverse events with YASMIN and YAZ was not adequately tested
and/or known by Defendants;

D.   Plaintiff was put at risk of experiencing serious and dangerous side effects including,
but not limited to, severe heart arrhythmias, as well as other severe and personal
injuries, physical pain, and mental anguish;

E.   That patients needed to be monitored more regularly than normal while using
YASMIN and YAZ; and

F.   That YASMIN and YAZ was designed, tested, manufactured, marketed, produced,
distributed and advertised negligently, defectively, fraudulently and improperly.

55.   Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals,

healthcare providers and/or the FDA the defective nature of YASMIN and YAZ.

56.   Defendants had sole access to material facts concerning the defective nature of the product

and its propensity to cause serious and dangerous side effects, and hence, cause damage to

person who used YASMIN and YAZ, including Plaintiff.

57.   Defendants made the misrepresentations and/or actively concealed information concerning

the safety and efficacy of YASMIN and YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting YASMIN and YAZ as a contraceptive.

58. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of YASMIN and YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

59. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

60. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding YASMIN and YAZ, as set forth herein.

61. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of YASMIN and YAZ.

62. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of YASMIN and YAZ in a timely manner, yet they failed to provide such warning.

**FACTS REGARDING PLAINTIFF BRIDGET SHAFER**

63. Plaintiff was first prescribed YASMIN by her health care provider in approximately 2004.

12

64. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YASMIN to her detriment.

65. As a result of using Defendants' product YASMIN, in approximately July of 2007, Plaintiff began suffering serious and life-threatening side effects including, but not limited to, severe heart arrhythmias, as well as other severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, and the need for ongoing medical treatment, monitoring and/or medications.

66. Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least May of 2009.

### CAUSES OF ACTION
### Statutory Products Liability (R.C. § 2307.71-2307.80)

67. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

68. Defendants are manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drug, YASMIN.

69. YASMIN reached the ultimate users without substantial change in the condition it was sold.

70. The drug was defective due to inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, in its design pursuant to the provisions of Ohio Revised Code § 2307.75 and/or in its failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

71. Said defect was a result of Defendants' failures including, but not limited to:

A.  Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects of the drug;

B.  Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

C.  Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, severe heart arrhythmias, and other serious and life threatening side effects;

D.  Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, severe heart arrhythmias and other serious and life threatening side effects;

E.  Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

F.  Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

G.  Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

72.  Plaintiff was using YASMIN in the manner for which it was intended and/or in a reasonably foreseeable manner.

73.  Plaintiff was not aware of and reasonably could not have discovered the dangerous nature of YASMIN.

74.  As a result of the foregoing acts and omissions, Plaintiff suffered serious and life-threatening side effects including, but not limited to, severe heart arrhythmias, as well as other severe and personal injuries, physical pain and mental anguish, diminished

enjoyment of life, medical, health, incidental and related expenses, and the need for ongoing medical treatment, monitoring and/or medications.

### Fraud

75. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

76. Defendants having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of YASMIN described herein, owed a duty not to deceive the public regarding its drug's safety and to provide accurate and complete information regarding the product.

77. Since the drug's approval and on multiple occasions to the present date, Defendants fraudulently misrepresented information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's safety.

78. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

79. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding their product.

80. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

81. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

82. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered serious and life-threatening side effects including, but not limited to, severe heart arrhythmias, as well as other severe and personal injuries, physical pain and mental

anguish, diminished enjoyment of life, medical, health, incidental and related expenses, and the need for ongoing medical treatment, monitoring and/or medications.

## Civil Conspiracy and Commercial Bribery

83. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

84. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these entities to use the drug YASMIN and YAZ, and to convince their patients and others of the safety and effectiveness of YASMIN and YAZ.

## Loss of Consortium

85. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

86. As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff, Plaintiff Paul Shafer has suffered the loss of companionship, society, services, and consortium of his wife.

## Punitive Damages

87. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.

88. Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical

providers and the public, and thereby acted with willful and wanton and/or conscious and

reckless disregard for the safety of Plaintiff and the public.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants, jointly and severally, as follows:

A.  For an award of compensatory damages, including damages against Defendants and each of them for medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.  For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.  For reasonable attorneys' fees and costs;

D.  For pre-judgment interest; and

E.  For such further and other relief the court deems just, equitable, and proper.

Dated: June 3, 2009

Respectfully Submitted,

/s/David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

/s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com

/s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH 43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

/s/David W. Zoll
David W. Zoll (0008548)

18

**D**

Cat08, McHargh

### U.S. District Court
### Northern District of Ohio (Cleveland)
### CIVIL DOCKET FOR CASE #: 1:09-cv-01574-JG

Meadows v. Bayer Corporation et al  
Assigned to: Judge James S. Gwin  
Cause: 28:1332 Diversity-Product Liability

Date Filed: 07/09/2009  
Jury Demand: Plaintiff  
Nature of Suit: 365 Personal Inj. Prod. Liability  
Jurisdiction: Diversity

**Plaintiff**

**Marlene Meadows**                     represented by **Calvin S. Tregre , Jr.**  
Burg Simpson Eldredge Hersh Jardine - Cincinnati  
Ste. 2090  
312 Walnut Street  
Cincinnati , OH 45202  
513-852-5600  
Fax: 513-852-5611  
Email: ctregre@burgsimpson.com  
*ATTORNEY TO BE NOTICED*

**Janet G. Abaray**  
Burg Simpson Eldredge Hersh Jardine - Cincinnati  
Ste. 2090  
312 Walnut Street  
Cincinnati , OH 45202  
513-852-5600  
Fax: 513-852-5611  
Email: jabaray@burgsimpson.com  
*ATTORNEY TO BE NOTICED*

**Steven M. Goldberg**  
Law Office of Steven M. Goldberg  
Ste. 103  
34055 Solon Road  
Solon , OH 44139  
440-519-9900  
Fax: 887-464-4652  
Email: steven@smglegal.com  
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer Healthcare Pharmaceuticals Inc.**

**Defendant**

**Bayer Healthcare LLC**

**Defendant**

**Berlex Laboratories International, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/09/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 06470000000003639801, filed by Marlene Meadows. (Attachments: # 1 Civil Cover Sheet) (Abaray, Janet) (Entered: 07/09/2009) |
| 07/09/2009 | 2 | Notice *of Complex Litigation* filed by Marlene Meadows. Related document(s) 1 .(Abaray, Janet) (Entered: 07/09/2009) |
| 07/10/2009 | | Judge James S. Gwin assigned to case. (C,BA) (Entered: 07/10/2009) |
| 07/10/2009 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge McHargh. (C,BA) (Entered: 07/10/2009) |
| 07/10/2009 | 3 | Magistrate Consent Form issued to counsel. No summons provided, no summons issued. (C,BA) (Entered: 07/10/2009) |
| 07/10/2009 | 4 | Supplement *Civil Cover Sheet* to 1 Complaint filed by Marlene Meadows. Related document(s) 1 . (Abaray, Janet) (Entered: 07/10/2009) |
| 07/10/2009 | 5 | Supplement *Summons to Bayer Corporation* to 1 Complaint filed by Marlene Meadows. Related document(s) 1 . (Abaray, Janet) (Entered: 07/10/2009) |
| 07/10/2009 | 6 | Supplement *Summons to Bayer Healthcare Pharmaceuticals, Inc.* to 1 Complaint filed by Marlene Meadows. Related document(s) 1 . (Abaray, Janet) (Entered: 07/10/2009) |
| 07/10/2009 | 7 | Supplement *Summons to Bayer Healthcare, LLC* to 1 Complaint filed by Marlene Meadows. Related document(s) 1 . (Abaray, Janet) (Entered: 07/10/2009) |
| 07/10/2009 | 8 | Supplement *Summons to Berlex Laboratories International, Inc.* to 1 Complaint filed by Marlene Meadows. Related document(s) 1 . (Abaray, Janet) (Entered: 07/10/2009) |
| 07/13/2009 | 9 | Original Summons issued on 07/13/09 for service upon Bayer Corporation, Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare LLC, Berlex |

Laboratories International, Inc.. (H,KR) (Entered: 07/13/2009)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/17/2009 16:30:40 | | |
| **PACER Login:** rn0030 | **Client Code:** | 9047/denture cream |
| **Description:** Docket Report | **Search Criteria:** | 1:09-cv-01574-JG |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARLENE MEADOWS** | : | |
| | : | |
| **Plaintiff,** | : | Civil Action No. _____ |
| | : | |
| **v.** | : | |
| | : | |
| **BAYER CORPORATION,** | : | |
| an Indiana corporation | : | |
| | : | |
| **BAYER HEALTHCARE** | : | **COMPLAINT AND** |
| **PHARMACEUTICALS INC.,** | : | **JURY DEMAND** |
| a Delaware corporation | : | |
| | : | |
| **BAYER HEALTHCARE, LLC,** | : | |
| a Delaware corporation | : | |
| | : | |
| **BERLEX LABORATORIES** | : | |
| **INTERNATIONAL, INC.,** | : | |
| a Delaware corporation | : | |
| | : | |
| **Defendants.** | : | |
| ——————————————— | : | |

Plaintiff, by and through counsel, and for her Complaint against Defendants, alleges as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Marlene Meadows is a resident and citizen of Cleveland, OH, located in Cuyahoga County.

2.      Plaintiff Marlene Meadows was prescribed and ingested Yasmin, and while using Yasmin suffered a deep vein thrombosis and pulmonary embolism on May 7, 2007.

3.      Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4.      Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.   Defendant Bayer Corporation is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.   At all relevant times, Defendant Bayer Corporation conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Cuyahoga County.

5.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.   Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex Laboratories.   Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.   At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Cuyahoga County.

6.    Defendant Bayer Healthcare, LLC is a Delaware limited liability company, with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591.  Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories.  Defendant Bayer Healthcare, LLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.  At all relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Cuyahoga County.

7.    Defendant Berlex Laboratories International, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey.  Berlex Laboratories International, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc.  Defendant Berlex Laboratories International, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.  At all relevant times, Defendant Berlex Laboratories International, Inc. conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Cuyahoga County.

8.      Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, and Berlex Laboratories International, Inc. are collectively referred to herein as "Bayer" or "Defendants."

9.      This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in the district as Plaintiff was prescribed and used Yasmin in this district, and because she resided in this district at the time of her injuries.

## FACTUAL BACKGROUND

### Nature of the Case

11.     Plaintiff brings this case against Defendants for damages associated with her ingestion of the pharmaceutical drug Yasmin (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed, and distributed by Defendants.   Specifically, Plaintiff suffered a deep vein thrombosis and pulmonary embolism on May 7, 2007 as a direct result of her use of Yasmin.

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

12.     Yasmin and Yaz are birth control pills manufactured and marketed by Bayer.  They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component.   Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

4

13.    Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

14.    The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

15.    Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

16.    Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

17.    During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel).   These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

18.    During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

19.    Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

20.    However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

21.    Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

22.    One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

23.    Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

24.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

25.     Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

26.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

27.     In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

28.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

29.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

30.     Some deaths reported occurred in women as young as 17 years old.

7

31.    Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

### Over-Promotion of Yasmin and Yaz

32.    Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

33.    However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

34.    For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

35.    In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

36.    The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

37.    More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

38.    Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

39.    In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone … which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

40.    The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

41.    Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

42.    Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

**Plaintiff's Use of Yasmin and Resulting Injuries**

43.    As a result of Defendants' claim regarding the effectiveness and safety of Yasmin, Plaintiff Marlene Meadows' medical provider prescribed and Marlene Meadows began using Yasmin in March of 2006.  Marlene Meadows used Yasmin until May 7, 2007 when she suffered a deep vein thrombosis and pulmonary embolism.

44.     As a direct and proximate result of using Yasmin, Marlene Meadows suffered the injuries described above.

45.     Prior to May 7, 2007, Defendants knew or should have known that use of Yasmin created a higher risk of deep vein thrombosis and pulmonary embolism than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

46.     Therefore, at the time Marlene Meadows used Yasmin Defendants knew or should have known that the use of Yasmin created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

47.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin, Defendants failed to warn Marlene Meadows and/or her health care providers of said serious risks before she used the product.

48.     Had Marlene Meadows and/or her heath care providers known the risks and dangers associated with Yasmin, she would not have used Yasmin and would not have suffered a deep vein thrombosis and pulmonary embolism on May 7, 2007.

49.     At the time of her injuries in May of 2007, Plaintiff Marlene Meadows was unaware that Yasmin was defective and presented a significantly higher risk of injuries, such as deep vein thrombosis and pulmonary embolism, and she had no reason to believe that Defendants' actions or omissions caused her harm.  It wasn't until June of 2009, when Plaintiff viewed a television commercial concerning the risks of injury

associated with Yasmin, that she discovered that Defendants' conduct regarding Yasmin is what could have caused her injuries. Prior to June of 2009, Plaintiff Marlene did not know and had no reason to believe that her injuries were caused by a defective drug or the wrongful conduct of Defendants.

50.     As a direct and proximate result of her use of Yasmin, Marlene Meadows suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her deep vein thrombosis and pulmonary embolism.

51.     As a direct and proximate result of her use of Yasmin, Marlene Meadows has suffered and will continue to suffer pecuniary losses.

## FIRST CAUSE OF ACTION

### Strict Products Liability
### Defective Manufacturing

52.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

53.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

54.     The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

55.     The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that it deviated from product specification such that it was unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

56.     As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marlene Meadows suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

57.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Design Defect

58.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

59.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

60.     The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

61.     The Yasmin birth control pills manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

62.     The foreseeable risks associated with the design or formulation of the Yasmin birth control pills, include, but are not limited to, the fact that the design or formulation of Yasmin is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

63.     As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marlene Meadows suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

64.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

**Strict Products Liability
Defect Due to Inadequate Warning**

65.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

66.     The Yasmin birth control pills manufactured and supplied by Defendants was defective due to inadequate warning or instruction and was unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

13

67.    The Yasmin birth control pills manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction and was unreasonably dangerous to the ordinary user or consumer because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yasmin, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

68.    As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marlene Meadows suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

69.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

### FOURTH CAUSE OF ACTION

#### Negligence

70.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

71.    Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Yasmin into the stream of commerce, including

a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

72.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin into interstate commerce in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

73.     Defendants also failed to exercise ordinary care in the labeling of Yasmin and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yasmin.

74.     Despite the fact that Defendants knew or should have known that Yasmin posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin for use by consumers.

75.     Defendants knew or should have known that consumers such as Plaintiff Marlene Meadows would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

76.     As a direct and proximate result of Defendants' negligence, Plaintiff Marlene Meadows suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

77.     Defendants' conduct as described above, including but not limited to its failure to adequately test Yasmin, to provide adequate warnings, and its continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences malicious actions, aggravated or egregious

fraud, and/or intentional disregard of the rights of Plaintiff, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

78.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

79.     Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and made representations to Plaintiff and her physician regarding the character or quality of Yasmin for guidance in their decision to select Yasmin.

80.     Specifically, Defendants represented that their product was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

81.     Defendants' representations regarding the character or quality of Yasmin were untrue.

82.     Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yasmin created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

83.     Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

84.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her physician.

85.    Plaintiff Marlene Meadows and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Marlene Meadows reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

86.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Marlene Meadows suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

87.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for relief as follows:

1.    Compensatory and punitive damages in excess of the jurisdictional amount, including, but not limited to non-economic damages in excess of $350,000.00;

2.    Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.    Attorneys' fees, expenses, and costs of this action;

17

4.      Punitive damages in excess of twice the compensatory damages award;

5.      Such further relief as this Court deems necessary, just, and proper.

Dated:  July 9, 2009                                        Respectfully submitted,


                                                           /s/ Janet G. Abaray
                                                           Janet G. Abaray (0002943)
                                                           Calvin S. Tregre, Jr. (0073454)
                                                           BURG SIMPSON ELDREDGE
                                                           HERSH & JARDINE, P.C.
                                                           312 Walnut Street, Suite 2090
                                                           Cincinnati, OH 45202
                                                           (513) 852-5600
                                                           (513) 852-5611 (fax)
                                                           jabaray@burgsimpson.com
                                                           ctregre@burgsimpson.com

                                                           Steven M. Goldberg (0041344)
                                                           STEVEN M. GOLDBERG, CO., L.P.A.
                                                           34055 Solon Rd., Suite 103
                                                           Solon, OH 44139
                                                           (440) 519-9900
                                                           (887) 464-4652 (fax)
                                                           steven@smglegal.com

**OF COUNSEL:**

Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com


<u>**JURY DEMAND**</u>

Plaintiff hereby demands a trial by jury on all issues so triable.


                                                           /s/ Janet G. Abaray
                                                           Janet G. Abaray (0002943)

**E**

Northern District of Ohio

Page 1 of 3

Baughman, Cat08

## U.S. District Court
### Northern District of Ohio (Cleveland)
### CIVIL DOCKET FOR CASE #: 1:09-cv-01579-SO

Eakins v. Bayer Corporation et al
Assigned to: Judge Solomon Oliver, Jr
Cause: 28:1332 Diversity-Product Liability

Date Filed: 07/10/2009
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Anne M Eakins**

represented by **Calvin S. Tregre , Jr.**
Burg Simpson Eldredge Hersh Jardine -
Cincinnati
Ste. 2090
312 Walnut Street
Cincinnati , OH 45202
513-852-5600
Fax: 513-852-5611
Email: ctregre@burgsimpson.com
*ATTORNEY TO BE NOTICED*

**Janet G. Abaray**
Burg Simpson Eldredge Hersh Jardine -
Cincinnati
Ste. 2090
312 Walnut Street
Cincinnati , OH 45202
513-852-5600
Fax: 513-852-5611
Email: jabaray@burgsimpson.com
*ATTORNEY TO BE NOTICED*

**Steven M. Goldberg**
Law Office of Steven M. Goldberg
Ste. 103
34055 Solon Road
Solon , OH 44139
440-519-9900
Fax: 887-464-4652
Email: steven@smglegal.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jonathan Eakins**                          represented by   **Calvin S. Tregre , Jr.**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Janet G. Abaray**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Steven M. Goldberg**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer Healthcare Pharmaceuticals
Inc.**

**Defendant**

**Bayer Healthcare, LLC**

**Defendant**

**Berlex Laboratories International,
Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 06470000000003641724, filed by Jonathan Eakins, Anne M Eakins. (Attachments: # 1 Civil Cover Sheet, # 2 Summons to Bayer Corporation, # 3 Summons to Bayer Healthcare, LLC, # 4 Summons to Bayer Healthcare Pharmaceuticals Inc., # 5 Summons to Berlex Laboratories International, Inc.) (Abaray, Janet) (Entered: 07/10/2009) |
| 07/10/2009 | 2 | Notice *of Complex Litigation* filed by all plaintiffs. Related document(s) 1 . (Abaray, Janet) (Entered: 07/10/2009) |
| 07/10/2009 | | Judge Solomon Oliver, Jr assigned to case. (C,B) (Entered: 07/10/2009) |
| 07/10/2009 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Baughman. (C,B) (Entered: 07/10/2009) |
| 07/13/2009 | 3 | Original Summons along with Magistrate Consent Form issued electronically to counsel for service upon Bayer Corporation, Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare, LLC, Berlex Laboratories International, Inc. on 7/13/2009. (Attachments: # 1 Summons, # 2 Summons, # 3 Summons, # 4 |

| | | Magistrate Consent Form) (B,B) (Entered: 07/13/2009) |
|---|---|---|
| 07/14/2009 | 4 | Notice of Magistrate Consent form (D,M) (Entered: 07/14/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/17/2009 16:31:59 | | | |
| PACER Login: | rn0030 | Client Code: | 9047/denture cream |
| Description: | Docket Report | Search Criteria: | 1:09-cv-01579-SO |
| Billable Pages: | 2 | Cost: | 0.16 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANNE MARIE EAKINS, and** | : | |
| **JONATHAN EAKINS** | : | |
| **1059 Glendalough** | : | |
| **Grafton, OH 44044** | : | |
| | : | |
| **Plaintiffs,** | : | Civil Action No. _____ |
| | : | |
| **v.** | : | |
| | : | |
| **BAYER CORPORATION,** | : | |
| an Indiana corporation | : | |
| c/o CSC-Lawyers Incorporating | : | |
| Service (Corporation Service Company) | : | |
| 50 W. Broad St. Suite 1800 | : | |
| Columbus, OH 43215 | : | |
| | : | **COMPLAINT AND** |
| **BAYER HEALTHCARE** | : | **JURY DEMAND** |
| **PHARMACEUTICALS INC.,** | : | |
| a Delaware corporation | : | |
| c/o CSC-Lawyers Incorporating | : | |
| Service (Corporation Service Company) | : | |
| 50 W. Broad St. Suite 1800 | : | |
| Columbus, OH 43215 | : | |
| | : | |
| **BAYER HEALTHCARE, LLC,** | : | |
| a Delaware corporation | : | |
| c/o CSC-Lawyers Incorporating | : | |
| Service (Corporation Service Company) | : | |
| 50 W. Broad St. Suite 1800 | : | |
| Columbus, OH 43215 | : | |
| | : | |
| **BERLEX LABORATORIES** | : | |
| **INTERNATIONAL, INC.,** | : | |
| a Delaware corporation | : | |
| c/o CSC-Lawyers Incorporating | : | |
| Service (Corporation Service Company) | : | |
| 50 W. Broad St. Suite 1800 | : | |
| Columbus, OH 43215 | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

Plaintiffs, by and through counsel, and for their Complaint against Defendants, allege as follows:

<u>**PARTIES AND JURISDICTION**</u>

1.    Plaintiff Anne Marie Eakins is a resident and citizen of Grafton, OH, located in Lorain County.

2.    Plaintiff Jonathan Eakins is the husband of Anne Marie Eakins and also a resident and citizen of Grafton, OH, located in Lorain County.

3.    Plaintiff Anne Marie Eakins was prescribed and ingested Yaz, and while using Yaz suffered multiple bilateral pulmonary emboli on November 29, 2007.

4.    Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5.    Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. Defendant Bayer Corporation is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz. At all relevant times, Defendant Bayer Corporation conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Lorain County.

6.    Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470. Bayer Healthcare Pharmaceuticals, Inc. was created by the integration

of Bayer Healthcare and Berlex Laboratories.    Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz.  At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Lorain County.

      7.      Defendant Bayer Healthcare, LLC is a Delaware limited liability company, with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591.  Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories.  Defendant Bayer Healthcare, LLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz. At all relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Lorain County.

      8.      Defendant Berlex Laboratories International, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey.  Berlex Laboratories International, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc.  Defendant Berlex Laboratories International, Inc. was engaged in the business of researching, developing, designing,

licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz. At all relevant times, Defendant Berlex Laboratories International, Inc. conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Lorain County.

9.     Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, and Berlex Laboratories International, Inc. are collectively referred to herein as "Bayer" or "Defendants."

10.     This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.     Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in the district as Plaintiff Anne Marie Eakins was prescribed and used Yaz in this district, and because she resided in this district at the time of her injuries.

## FACTUAL BACKGROUND

### Nature of the Case

12.     Plaintiffs brings this case against Defendants for damages associated with Plaintiff Anne Marie Eakin's ingestion of the pharmaceutical drug Yaz (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed, and distributed by Defendants. Specifically, Plaintiff suffered multiple bilateral pulmonary

4

emboli on November 29, 2007 as a direct result of her use of Yaz.  Her husband, Jonathan Eakins has suffered a loss of consortium.

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

13.    Yasmin and Yaz are birth control pills manufactured and marketed by Bayer.  They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component.    Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

14.    Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

15.    The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

16.    Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

17.    Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of

estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

18.    During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel).    These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

19.    During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

20.    Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

21.    However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

22.    Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that

are different from those of traditional second generation progestins, and potentially more dangerous.

23.    One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

24.    Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

25.    If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

26.    Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

27.    In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

28.    In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

7

29.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

30.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

31.     Some deaths reported occurred in women as young as 17 years old.

32.     Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

## Over-Promotion of Yasmin and Yaz

33.     Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

34.     However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

35.     For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

36.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to

other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

37.     The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

38.     More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

39.     Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

40.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone … which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

41.     The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

42.     Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

43.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

### Plaintiff's Use of Yaz and Resulting Injuries

44.     As a result of Defendants' claim regarding the effectiveness and safety of Yaz, Plaintiff Anne Marie Eakins medical provider prescribed and Anne Marie Eakins began using Yaz in August of 2007. Anne Marie Eakins used Yaz until November 29, 2007 when she suffered multiple bilateral pulmonary emboli.

45.     As a direct and proximate result of using Yaz, Anne Marie Eakins suffered the injuries described above.

46.     Prior to Plaintiff's use of Yaz, Defendants knew or should have known that use of Yaz created a higher risk of pulmonary embolism than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

47.     Therefore, at the time Anne Marie Eakins used Yaz Defendants knew or should have known that the use of Yaz created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

48.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz, Defendants failed to warn Anne Marie Eakins and/or her health care providers of said serious risks before she used the product.

49.     Had Anne Marie Eakins and/or her heath care providers known the risks and dangers associated with Yaz, she would not have used Yaz and would not have suffered multiple bilateral pulmonary emboli on November 29, 2007.

50.     As a direct and proximate result of her use of Yaz, Plaintiff Anne Marie Eakins suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her multiple bilateral pulmonary emboli.

51.     As a direct and proximate result of her use of Yaz, Plaintiff Anne Marie Eakins has suffered and will continue to suffer pecuniary losses.

52.     As a direct and proximate result of Plaintiff Anne Marie Eakins' use of Yaz and resulting injuries, her husband, Plaintiff Jonathan Eakins, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort.

### FIRST CAUSE OF ACTION

**Strict Products Liability
Defective Manufacturing**

53.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

54.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz.

55.     The Yaz birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

56.    The Yaz birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that it deviated from product specification such that it was unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

57.    As a direct and proximate result of Plaintiff's use of Yaz as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Anne Marie Eakins suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

58.    As a direct and proximate result of Plaintiff Anne Marie Eakins' use of Yaz and resulting injuries, her husband, Plaintiff Jonathan Eakins, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

59.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Design Defect

60.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

12

61.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz.

62.    The Yaz birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

63.    The Yaz birth control pills manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

64.    The foreseeable risks associated with the design or formulation of the Yaz birth control pills, include, but are not limited to, the fact that the design or formulation of Yaz is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

65.    As a direct and proximate result of Plaintiff's use of Yaz as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Anne Marie Eakins suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

66.    As a direct and proximate result of Plaintiff Anne Marie Eakins' use of Yaz and resulting injuries, her husband, Plaintiff Jonathan Eakins, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

13

67.   Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

### Strict Products Liability
### Defect Due to Inadequate Warning

68.   Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

69.   The Yaz birth control pills manufactured and supplied by Defendants was defective due to inadequate warning or instruction and was unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

70.   The Yaz birth control pills manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction and was unreasonably dangerous to the ordinary user or consumer because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yaz, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

71.   As a direct and proximate result of Plaintiff's use of Yaz as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants,

Plaintiff Anne Marie Eakins suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

72.     As a direct and proximate result of Plaintiff Anne Marie Eakins' use of Yaz and resulting injuries, her husband, Plaintiff Jonathan Eakins, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

73.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

### FOURTH CAUSE OF ACTION

**Negligence**

74.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

75.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Yaz into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

76.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yaz into interstate commerce in that Defendants knew or

should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

77.    Defendants also failed to exercise ordinary care in the labeling of Yaz and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yaz.

78.    Despite the fact that Defendants knew or should have known that Yaz posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yaz for use by consumers.

79.    Defendants knew or should have known that consumers such as Plaintiff Anne Marie Eakins would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

80.    As a direct and proximate result of Defendants' negligence, Plaintiff Anne Marie Eakins suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

81.    As a direct and proximate result of Plaintiff Anne Marie Eakins' use of Yaz and resulting injuries, her husband, Plaintiff Jonathan Eakins, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

82.    Defendants' conduct as described above, including but not limited to its failure to adequately test Yaz, to provide adequate warnings, and its continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences malicious actions, aggravated or egregious

fraud, and/or intentional disregard of the rights of Plaintiffs, so as to warrant the imposition of punitive damages.

### FIFTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

83.   Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

84.   Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yaz and made representations to Plaintiff and her physician regarding the character or quality of Yaz for guidance in their decision to select Yaz.

85.   Specifically, Defendants represented that their product was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

86.   Defendants' representations regarding the character or quality of Yaz were untrue.

87.   Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yaz created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

88.   Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

89.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her physician.

90.    Plaintiff Anne Marie Eakins and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Anne Marie Eakins reasonably relied upon Defendants' representations to her and/or her health care providers that Yaz was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

91.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Anne Marie Eakins suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

92.    As a direct and proximate result of Plaintiff Anne Marie Eakins' use of Yaz and resulting injuries, her husband, Plaintiff Jonathan Eakins, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

93.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for relief as follows:

1.    Compensatory and punitive damages in excess of the jurisdictional amount, including, but not limited to non-economic damages in excess of $350,000.00;

2.    Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.    Attorneys' fees, expenses, and costs of this action;

4.    Punitive damages in excess of twice the compensatory damages award;

5.    Such further relief as this Court deems necessary, just, and proper.

Dated:  July 10, 2009                          Respectfully submitted,

                                               /s/ Janet G. Abaray
                                               Janet G. Abaray (0002943)
                                               Calvin S. Tregre, Jr. (0073454)
                                               BURG SIMPSON ELDREDGE
                                               HERSH & JARDINE, P.C.
                                               312 Walnut Street, Suite 2090
                                               Cincinnati, OH 45202
                                               (513) 852-5600
                                               (513) 852-5611 (fax)
                                               jabaray@burgsimpson.com
                                               ctregre@burgsimpson.com

                                               Steven M. Goldberg (0041344)
                                               STEVEN M. GOLDBERG, CO., L.P.A.
                                               34055 Solon Rd., Suite 103
                                               Solon, OH 44139
                                               (440) 519-9900
                                               (887) 464-4652 (fax)
                                               steven@smglegal.com

**OF COUNSEL:**
Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Janet G. Abaray
Janet G. Abaray (0002943)

F

Northern District of Ohio

Page 1 of 2

Cat08, McHargh

## U.S. District Court
## Northern District of Ohio (Cleveland)
## CIVIL DOCKET FOR CASE #: 1:09-cv-01582-JG

Murphy v. Bayer Corporation et al
Assigned to: Judge James S. Gwin
Cause: 28:1332 Diversity-Product Liability

Date Filed: 07/10/2009
Jury Demand: Both
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Lauren L. Murphy**

represented by **Calvin S. Tregre , Jr.**
Burg Simpson Eldredge Hersh Jardine -
Cincinnati
Ste. 2090
312 Walnut Street
Cincinnati , OH 45202
513-852-5600
Fax: 513-852-5611
Email: ctregre@burgsimpson.com
*ATTORNEY TO BE NOTICED*

**Janet G. Abaray**
Burg Simpson Eldredge Hersh Jardine -
Cincinnati
Ste. 2090
312 Walnut Street
Cincinnati , OH 45202
513-852-5600
Fax: 513-852-5611
Email: jabaray@burgsimpson.com
*ATTORNEY TO BE NOTICED*

**Steven M. Goldberg**
Law Office of Steven M. Goldberg
Ste. 103
34055 Solon Road
Solon , OH 44139
440-519-9900
Fax: 887-464-4652
Email: steven@smglegal.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer Healthcare Pharmaceuticals, Inc.**

**Defendant**

**Bayer Healthcare LLC**

**Defendant**

**Berlex Laboratories International, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 06470000000003641798, filed by Lauren L. Murphy. (Attachments: # 1 Civil Cover Sheet, # 2 Summons to Bayer Corporation, # 3 Summons to Bayer Healthcare, LLC, # 4 Summons to Bayer Healthcare Pharmaceuticals, Inc., # 5 Summons Berlex Laboratories International, Inc.) (Abaray, Janet) (Entered: 07/10/2009) |
| 07/10/2009 | 2 | Notice *of Complex Litigation* filed by Lauren L. Murphy. Related document(s) 1 .(Abaray, Janet) (Entered: 07/10/2009) |
| 07/10/2009 | | Judge James S. Gwin assigned to case. (C,BA) (Entered: 07/10/2009) |
| 07/10/2009 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge McHargh. (C,BA) (Entered: 07/10/2009) |
| 07/13/2009 | 3 | Original Summons and Magistrate Consent Form issued for service upon Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, and Berlex Laboratories International, Inc. (Attachments: # 1 summons - Bayer Healthcare, # 2 summons - Bayer Healthcare Pharmaceuticals, # 3 summons - Berlex Laboratories, # 4 Magistrate Consent Form) (C,B) (attachment(s) refiled, as the previously filed attachment weren't filled in, on 7/13/2009: # ). Modified on 7/13/2009 (C,B). (Entered: 07/13/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/17/2009 16:31:19 | | |
| PACER Login: | rn0030 | Client Code: | 9047/denture cream |
| Description: | Docket Report | Search Criteria: | 1:09-cv-01582-JG |
| Billable Pages: | 2 | Cost: | 0.16 |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **LAUREN L. MURPHY**<br>**1127 Euclid Ave. #810**<br>**Cleveland, OH 44115** | : | |
| | : | |
| **Plaintiff,** | : | Civil Action No. _____ |
| | : | |
| **v.** | : | |
| | : | |
| **BAYER CORPORATION,**<br>an Indiana corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | : | |
| | : | **COMPLAINT AND** |
| **BAYER HEALTHCARE**<br>**PHARMACEUTICALS INC.,**<br>a Delaware corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | : | **JURY DEMAND** |
| | : | |
| **BAYER HEALTHCARE, LLC,**<br>a Delaware corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | : | |
| | : | |
| **BERLEX LABORATORIES**<br>**INTERNATIONAL, INC.,**<br>a Delaware corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | : | |
| | : | |
| **Defendants.** | : | |

Plaintiff, by and through counsel, and for her Complaint against Defendants, alleges as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff Lauren Murphy is a resident and citizen of Cleveland, OH, located in Cuyahoga County.

2.      Plaintiff Lauren Murphy was prescribed and ingested Yaz, and while using Yaz suffered a deep vein thrombosis and pulmonary embolism on July 18, 2008.

3.      Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4.      Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.  Defendant Bayer Corporation is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz.  At all relevant times, Defendant Bayer Corporation conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Cuyahoga County.

5.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.  Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex Laboratories.  Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing,

licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz. At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Cuyahoga County.

6.     Defendant Bayer Healthcare, LLC is a Delaware limited liability company, with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591. Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories. Defendant Bayer Healthcare, LLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz. At all relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Cuyahoga County.

7.     Defendant Berlex Laboratories International, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey. Berlex Laboratories International, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc. Defendant Berlex Laboratories International, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities,

3

its products, including the prescription drug Yaz. At all relevant times, Defendant Berlex Laboratories International, Inc. conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Cuyahoga County.

8.    Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, and Berlex Laboratories International, Inc. are collectively referred to herein as "Bayer" or "Defendants."

9.    This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.    Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in the district as Plaintiff was prescribed and used Yaz in this district, and because she resided in this district at the time of her injuries.

## FACTUAL BACKGROUND

### Nature of the Case

11.    Plaintiff brings this case against Defendants for damages associated with her ingestion of the pharmaceutical drug Yaz (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed, and distributed by Defendants. Specifically, Plaintiff suffered a deep vein thrombosis and pulmonary embolism on July 18, 2008 as a direct result of her use of Yaz.

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

12.     Yasmin and Yaz are birth control pills manufactured and marketed by Bayer.  They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component.    Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

13.     Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

14.     The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

15.     Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

16.     Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

17.    During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel).   These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

18.    During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").   As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

19.    Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

20.    However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.   No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

21.    Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.   Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

22.     One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

23.     Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia. If left untreated, hyperkalemia can be fatal.

24.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

25.     Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

26.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

27.     In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

28.    In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

29.    These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

30.    Some deaths reported occurred in women as young as 17 years old.

31.    Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

### Over-Promotion of Yasmin and Yaz

32.    Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

33.    However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

34.    For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

35.    In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to

other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

36.    The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

37.    More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

38.    Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

39.    In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone ... which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

40.    The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

41.    Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

42.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

### Plaintiff's Use of Yaz and Resulting Injuries

43.     As a result of Defendants' claim regarding the effectiveness and safety of Yaz, Plaintiff Lauren Murphy's medical provider prescribed and Lauren Murphy began using Yaz in February of 2008. Lauren Murphy used Yaz until July 18, 2008 when she suffered a deep vein thrombosis and pulmonary embolism.

44.     As a direct and proximate result of using Yaz, Lauren Murphy suffered the injuries described above.

45.     Prior to Plaintiff's use of Yaz, Defendants knew or should have known that use of Yaz created a higher risk of deep vein thrombosis and pulmonary embolism than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

46.     Therefore, at the time Lauren Murphy used Yaz Defendants knew or should have known that the use of Yaz created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

47.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz, Defendants failed to warn Lauren Murphy and/or her health care providers of said serious risks before she used the product.

48.      Had Lauren Murphy and/or her heath care providers known the risks and dangers associated with Yaz, she would not have used Yaz and would not have suffered a deep vein thrombosis and pulmonary embolism on July 18, 2008.

49.      As a direct and proximate result of her use of Yaz, Plaintiff Lauren Murphy suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her deep vein thrombosis and pulmonary embolism.

50.      As a direct and proximate result of her use of Yaz, Plaintiff Lauren Murphy has suffered and will continue to suffer pecuniary losses.

### FIRST CAUSE OF ACTION

**Strict Products Liability
Defective Manufacturing**

51.      Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

52.      Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz.

53.      The Yaz birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

54.      The Yaz birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that it deviated from product specification such that it was unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

55.    As a direct and proximate result of Plaintiff's use of Yaz as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Lauren Murphy suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

56.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Design Defect

57.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

58.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yaz.

59.    The Yaz birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

60.    The Yaz birth control pills manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

61.    The foreseeable risks associated with the design or formulation of the Yaz birth control pills, include, but are not limited to, the fact that the design or formulation of

Yaz is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

62.     As a direct and proximate result of Plaintiff's use of Yaz as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Lauren Murphy suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

63.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

**Strict Products Liability**
**Defect Due to Inadequate Warning**

64.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

65.     The Yaz birth control pills manufactured and supplied by Defendants was defective due to inadequate warning or instruction and was unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

66.     The Yaz birth control pills manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction and was unreasonably dangerous to the ordinary user or consumer because, after Defendants

knew or should have known of the risk of serious bodily harm and death from the use of Yaz, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

67.     As a direct and proximate result of Plaintiff's use of Yaz as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Lauren Murphy suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

68.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence

69.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

70.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Yaz into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

71.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yaz into interstate commerce in that Defendants knew or

should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

72.    Defendants also failed to exercise ordinary care in the labeling of Yaz and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yaz.

73.    Despite the fact that Defendants knew or should have known that Yaz posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yaz for use by consumers.

74.    Defendants knew or should have known that consumers such as Plaintiff Lauren Murphy would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

75.    As a direct and proximate result of Defendants' negligence, Plaintiff Lauren Murphy suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

76.    Defendants' conduct as described above, including but not limited to its failure to adequately test Yaz, to provide adequate warnings, and its continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences malicious actions, aggravated or egregious fraud, and/or intentional disregard of the rights of Plaintiff, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

77.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

78.    Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yaz and made representations to Plaintiff and her physician regarding the character or quality of Yaz for guidance in their decision to select Yaz.

79.    Specifically, Defendants represented that their product was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

80.    Defendants' representations regarding the character or quality of Yaz were untrue.

81.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yaz created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

82.    Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

83.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her physician.

16

84.     Plaintiff Lauren Murphy and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Lauren Murphy reasonably relied upon Defendants' representations to her and/or her health care providers that Yaz was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

85.     As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Lauren Murphy suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

86.     Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for relief as follows:

1.     Compensatory and punitive damages in excess of the jurisdictional amount, including, but not limited to non-economic damages in excess of $350,000.00;

2.     Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.     Attorneys' fees, expenses, and costs of this action;

4.     Punitive damages in excess of twice the compensatory damages award;

5.     Such further relief as this Court deems necessary, just, and proper.

Dated:  July 10, 2009                          Respectfully submitted,

                                               /s/ Janet G. Abaray
                                               Janet G. Abaray (0002943)
                                               Calvin S. Tregre, Jr. (0073454)
                                               BURG SIMPSON ELDREDGE
                                               HERSH & JARDINE, P.C.
                                               312 Walnut Street, Suite 2090
                                               Cincinnati, OH 45202
                                               (513) 852-5600
                                               (513) 852-5611 (fax)
                                               jabaray@burgsimpson.com
                                               ctregre@burgsimpson.com

                                               Steven M. Goldberg (0041344)
                                               STEVEN M. GOLDBERG, CO., L.P.A.
                                               34055 Solon Rd., Suite 103
                                               Solon, OH 44139
                                               (440) 519-9900
                                               (887) 464-4652 (fax)
                                               steven@smglegal.com

**OF COUNSEL:**

Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

                                               /s/ Janet G. Abaray
                                               Janet G. Abaray (0002943)

**G**

Northern District of Ohio                                        Page 1 of 2

Cat08, Gallas

## U.S. District Court
## Northern District of Ohio (Cleveland)
## CIVIL DOCKET FOR CASE #: 1:09-cv-01659-JG

Keultjes v. Bayer Corporation et al                 Date Filed: 07/17/2009
Assigned to: Judge James S. Gwin                    Jury Demand: Defendant
Cause: 28:1332 Diversity-Product Liability          Nature of Suit: 365 Personal Inj. Prod.
                                                    Liability
                                                    Jurisdiction: Diversity

**Plaintiff**

**Marie Claire Keultjes**            represented by  **Calvin S. Tregre , Jr.**
                                                     Burg Simpson Eldredge Hersh Jardine -
                                                     Cincinnati
                                                     Ste. 2090
                                                     312 Walnut Street
                                                     Cincinnati , OH 45202
                                                     513-852-5600
                                                     Fax: 513-852-5611
                                                     Email: ctregre@burgsimpson.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Janet G. Abaray**
                                                     Burg Simpson Eldredge Hersh Jardine -
                                                     Cincinnati
                                                     Ste. 2090
                                                     312 Walnut Street
                                                     Cincinnati , OH 45202
                                                     513-852-5600
                                                     Fax: 513-852-5611
                                                     Email: jabaray@burgsimpson.com
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer Healthcare Pharmaceuticals
Inc.**

**Defendant**

**Bayer Healthcare LLC**

Northern District of Ohio                                                Page 2 of 2

| Date Filed | # | Docket Text |
|---|---|---|
| 07/17/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 06470000000003652463, filed by Marie Claire Keultjes. (Attachments: # 1 Civil Cover Sheet, # 2 Summons to Bayer Corporation, # 3 Summons to Bayer Healthcare LLC., # 4 Summons to Bayer Healthcare Pharmaceuticals Inc.) (Abaray, Janet) (Entered: 07/17/2009) |
| 07/17/2009 | 2 | Notice *of Complex Litigation* filed by Marie Claire Keultjes. Related document (s) 1 .(Abaray, Janet) (Entered: 07/17/2009) |
| 07/17/2009 | | Judge James S. Gwin assigned to case. (C,B) (Entered: 07/17/2009) |
| 07/17/2009 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Gallas. (C,B) (Entered: 07/17/2009) |
| 07/20/2009 | 3 | Original Summons and Magistrate Consent Form issued for service upon Bayer Corporation, Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare LLC. (Attachments: # 1 summons - Bayer Healthcare, # 2 summons - Bayer Healthcare Pharmaceuticals, # 3 Magistrate Consent Form) (C,B) (Summons for Bayer Healcare Pharmaceuticals added on 7/20/2009)(C,B). Modified on 7/20/2009 (C,B). (Entered: 07/20/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/20/2009 13:10:38 | | | |
| **PACER Login:** | rn0030 | **Client Code:** | 9031/yaz |
| **Description:** | Docket Report | **Search Criteria:** | 1:09-cv-01659-JG |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **MARIE CLAIRE KEULTJES**<br>**228 Bowland Road**<br>**Mansfield, OH 44907**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**BAYER CORPORATION,**<br>an Indiana corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215<br><br>**BAYER HEALTHCARE**<br>**PHARMACEUTICALS INC.,**<br>a Delaware corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215<br><br>**BAYER HEALTHCARE, LLC,**<br>a Delaware corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215<br><br>    **Defendants.** | Civil Action No. _____<br><br>Judge _____<br><br><br><br><br><br>**COMPLAINT AND**<br>**JURY DEMAND** |

Plaintiff, by and through counsel, and for her Complaint against Defendants, alleges as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff Marie Claire Keultjes is a resident and citizen of Mansfield, OH, located in Richland County.

2.      Plaintiff Marie Claire Keultjes was prescribed and ingested Yasmin, and while using Yasmin suffered a stroke on July 31, 2007.

3.      Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4.      Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.  Defendant Bayer Corporation is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.  At all relevant times, Defendant Bayer Corporation conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Richland County.

5.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.  Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex Laboratories.   Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.  At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in

Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Richland County.

6.      Defendant Bayer Healthcare, LLC is a Delaware limited liability company, with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591. Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories. Defendant Bayer Healthcare, LLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin. At all relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Richland County.

7.      Berlex Laboratories International, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey. Berlex Laboratories International, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc. Prior to being integrated with Bayer Healthcare to create Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories International, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin. At all relevant times, Berlex Laboratories International, Inc. conducted regular and sustained business in Ohio by selling and distributing its

products in Ohio and engaged in substantial commerce and business activity in Richland County.

8.      Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., and Bayer Healthcare, LLC are collectively referred to herein as "Bayer" or "Defendants."

9.      This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in this district since Plaintiff was prescribed and used Yasmin in this district, and because this was the district of Plaintiff's permanent residency at the time of her injuries.

## **FACTUAL BACKGROUND**

### **Nature of the Case**

11.     Plaintiff brings this case against Defendants for damages associated with her ingestion of the pharmaceutical drug Yasmin (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed, and distributed by Defendants. Specifically, Plaintiff suffered a stroke on July 31, 2007 as a direct result of her use of Yasmin.

### **Bayer's Combined Oral Contraceptives – Yasmin and Yaz**

12.     Yasmin and Yaz are birth control pills manufactured and marketed by Bayer. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component. Together, these steroidal

4

components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

13.    Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

14.    The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

15.    Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

16.    Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

17.    During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel).    These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl

estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

18.    During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").   As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

19.    Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

20.    However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

21.    Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

22.    One possible mechanism of action is that drospirenone interacts differently with ethinyl estradiol compared to other progestins, such that it does not sufficiently counterbalance the clotting effects of estrogen as do other progestins, particularly the second generation progestins.

23.     Another possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

24.     Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

25.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

26.     Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

27.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

28.     In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

29.    In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

30.    These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

31.    Some deaths reported occurred in women as young as 17 years old.

32.    Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

### Over-Promotion of Yasmin and Yaz

33.    Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

34.    However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

35.    For example, prior to being integrated with Defendant Bayer in 2006, Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

36.    In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to

other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

37.     The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

38.     More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

39.     Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

40.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone … which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

41.     The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

42.     Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

43.    Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

### Plaintiff's Use of Yasmin and Resulting Injuries

44.    As a result of Defendants' claim regarding the effectiveness and safety of Yasmin, Plaintiff Marie Claire Keultjes' medical provider prescribed and Plaintiff began using Yasmin in or about February of 2007.  Marie Claire Keultjes used Yasmin for approximately six months until July 31, 2007 when she suffered a stroke.

45.    At the time of her stroke, Plaintiff Marie Claire Keultjes was using Yasmin from a prescription that had been filled in Mansfield, Ohio.

46.    As a direct and proximate result of using Yasmin, Marie Claire Keultjes suffered the injuries described above.

47.    Prior to Plaintiff's use of Yasmin, Defendants knew or should have known that use of Yasmin created a higher risk of stroke than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

48.    Therefore, at the time Marie Claire Keultjes used Yasmin Defendants knew or should have known that the use of Yasmin created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

49.    Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin, Defendants failed to warn Marie

Claire Keultjes and/or her health care providers of said serious risks before she used the product.

50.    Had Marie Claire Keultjes and/or her heath care providers known the risks and dangers associated with Yasmin, she would not have used Yasmin and would not have suffered a stroke on July 31, 2007.

51.    As a direct and proximate result of her use of Yasmin, Plaintiff Marie Claire Keultjes suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her stroke.

52.    As a direct and proximate result of her use of Yasmin, Plaintiff Marie Claire Keultjes has suffered and will continue to suffer pecuniary losses.

## FIRST CAUSE OF ACTION

### Strict Products Liability
### Defective Manufacturing

53.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

54.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

55.    The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

56.    The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that it deviated

from product specification such that it was unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

57.    As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marie Claire Keultjes suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

58.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Design Defect

59.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

60.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

61.    The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

62.    The Yasmin birth control pills manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants,

12

the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

63.     The foreseeable risks associated with the design or formulation of the Yasmin birth control pills, include, but are not limited to, the fact that the design or formulation of Yasmin is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

64.     As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marie Claire Keultjes suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

65.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

**Strict Products Liability**
**Defect Due to Inadequate Warning**

66.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

67.     The Yasmin birth control pills manufactured and supplied by Defendants was defective due to inadequate warning or instruction and was unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to

13

consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

68.   The Yasmin birth control pills manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction and was unreasonably dangerous to the ordinary user or consumer because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yasmin, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

69.   As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marie Claire Keultjes suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

70.   Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

### FOURTH CAUSE OF ACTION

#### Negligence

71.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

72.    Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Yasmin into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

73.    Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin into interstate commerce in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

74.    Defendants also failed to exercise ordinary care in the labeling of Yasmin and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yasmin.

75.    Despite the fact that Defendants knew or should have known that Yasmin posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin for use by consumers.

76.    Defendants knew or should have known that consumers such as Plaintiff Marie Claire Keultjes would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

77.    As a direct and proximate result of Defendants' negligence, Plaintiff Marie Claire Keultjes suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

78.    Defendants' conduct as described above, including but not limited to its failure to adequately test Yasmin, to provide adequate warnings, and its continued

manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences malicious actions, aggravated or egregious fraud, and/or intentional disregard of the rights of Plaintiff, so as to warrant the imposition of punitive damages.

### FIFTH CAUSE OF ACTION

#### Negligent Misrepresentation and/or Fraud

79.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

80.    Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and made representations to Plaintiff and her physician regarding the character or quality of Yasmin for guidance in their decision to select Yasmin.

81.    Specifically, Defendants represented that their product was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

82.    Defendants' representations regarding the character or quality of Yasmin were untrue.

83.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yasmin created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

84.    Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

85.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her physician.

86.    Plaintiff Marie Claire Keultjes and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Marie Claire Keultjes reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

87.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Marie Claire Keultjes suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

88.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for relief as follows:

1.    Compensatory and punitive damages in excess of the jurisdictional amount, including, but not limited to non-economic damages in excess of $350,000.00;

2.    Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.    Attorneys' fees, expenses, and costs of this action;

4.      Punitive damages in excess of twice the compensatory damages award;

5.      Such further relief as this Court deems necessary, just, and proper.

Dated:  July 17, 2009

Respectfully submitted,

/s/ Janet G. Abaray
Janet G. Abaray (0002943)
Calvin S. Tregre, Jr. (0073454)
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (fax)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

**OF COUNSEL:**

Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Janet G. Abaray
Janet G. Abaray (0002943)

18

**H**

Northern District of Ohio                                                    Page 1 of 3

Armstrong, Cat08

## U.S. District Court
### Northern District of Ohio (Toledo)
### CIVIL DOCKET FOR CASE #: 3:09-cv-01689-JZ

Bradish et al v. Bayer Corporation et al       Date Filed: 07/21/2009
Assigned to: Judge Jack Zouhary            Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury       Nature of Suit: 365 Personal Inj. Prod.
                                              Liability
                                              Jurisdiction: Diversity

**Plaintiff**

**Patti Bradish**                represented by  **David W. Zoll**
                                              Zoll, Kranz & Borgess
                                              Ste. 200
                                              6620 Central Avenue
                                              Toledo , OH 43617
                                              419-841-9623
                                              Fax: 419-841-9719
                                              Email: david@toledolaw.com

                                              **Michelle L. Kranz**
                                              Zoll, Kranz & Borgess
                                              Ste. 200
                                              6620 Central Avenue
                                              Toledo , OH 43617
                                              419-841-9623
                                              Fax: 419-841-9719
                                              Email: michelle@toledolaw.com
                                              *ATTORNEY TO BE NOTICED*

                                              **Pamela A. Borgess**
                                              Zoll, Kranz & Borgess
                                              Ste. 200
                                              6620 Central Avenue
                                              Toledo , OH 43617
                                              419-841-9623
                                              Fax: 419-841-9719
                                              Email: pamela@toledolaw.com
                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gary Bradish**                 represented by  **David W. Zoll**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer Healthcare LLC**

**Defendant**

**Bayer Pharmaceuticals Corporation**

**Defendant**

**Bayer Healthcare Pharmaceuticals Inc.**

**Defendant**

**Berlex Laboratories, Inc.**

**Defendant**

**Berlex, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 06470000000003656640, filed by Patti Bradish, Gary Bradish. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Bayer Corp, # 3 Summons Bayer Healthcare, LLC # 4 Summons Bayer Pharma Corp, # 5 Summons Bayer Healthcre Pharma, Inc, # 6 Summons Berlex Labs, Inc, # 7 Summons Berlex Inc) (Zoll, David) Modified on 7/22/2009 (L,V). (Entered: 07/21/2009) |
| 07/22/2009 |  | Judge Jack Zouhary assigned to case. (M,C) (Entered: 07/22/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/22/2009 12:34:23 | | | |
| **PACER Login:** | bs1052 | **Client Code:** | yasmin |
| **Description:** | Docket Report | **Search Criteria:** | 3:09-cv-01689-JZ |

| Billable Pages: | 2 | Cost: | 0.16 |
| --- | --- | --- | --- |

**IN THE U.S. DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PATTI BRADISH**<br>3705 South Berkey-Southern<br>Swanton, OH 43558 | )<br>)<br>) | CASE NO. |
| | )<br>) | JUDGE |
| and | )<br>) | |
| **GARY BRADISH**<br>3705 South Berkey-Southern<br>Swanton, OH 43558 | )<br>)<br>)<br>) | **COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON**<br><br>David W. Zoll  (0008548) |
| Plaintiffs, | )<br>) | Michelle L. Kranz (0062479)<br>Pamela A. Borgess  (0072789)<br>ZOLL, KRANZ & BORGESS, LLC |
| v. | )<br>)<br>) | 6620 W. Central Ave., Suite 200<br>Toledo, OH  43617<br>(419) 841-9623 |
| **BAYER CORPORATION**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>)<br>) | Fax: (419) 841-9719<br>Email: david@toledolaw.com<br>       michelle@toledolaw.com<br>       pamela@toledolaw.com<br><br>*Counsel for Plaintiffs* |
| and | )<br>) | |
| **BAYER HEALTHCARE LLC,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| **BAYER PHARMACEUTICALS**<br>**CORPORATION,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800 | )<br>)<br>)<br>)<br>)<br>) | |

Case MDL No. 2100   Document 1   Filed 07/30/09   Page 184 of 638

Case 3:09-cv-01689    Document 1    Filed 07/21/2009    Page 2 of 21

Columbus, OH 43215        )
                                        )

and                              )
                                        )

**BAYER HEALTHCARE**
**PHARMACEUTICALS INC.**
c/o CSC-Lawyers Incorporating
Service (Corporation Service
Company)
50 W. Broad St. Suite 1800
Columbus, OH 43215

and

**BERLEX LABORATORIES, INC.**
c/o CSC-Lawyers Incorporating
Service (Corporation Service
Company)
340 Changebridge Road
Montville, NJ 07045

and

**BERLEX, INC.**
c/o CSC-Lawyers Incorporating
Service (Corporation Service
Company)
340 Changebridge Road
Montville, NJ 07045

and

**JOHN DOE MANUFACTURERS**
**A-Z**
[Real Names and Addresses
Unknown]

and

**JOHN DOE DISTRIBUTORS A-Z**
[Real Names and Addresses
Unknown]

                Defendants.

---

Now come Plaintiffs, by and through the undersigned counsel, and for their Complaint hereby aver and state as follows:

## NATURE OF THE ACTION

1.  This is an action for strict product liability (Ohio R.C. § 2307.71 *et seq.*), fraudulent misrepresentation, civil conspiracy and commercial bribery, loss of consortium, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug YAZ, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2.  As a result of the ingestion of YAZ, Plaintiff Patti Bradish suffered injuries to her person including, but not limited to, deep vein thrombosis and a pulmonary embolism in October of 2007.

## THE PARTIES

3.  Plaintiff Patti Bradish, (herein "Plaintiff"), resides in the village of Swanton, Lucas County, Ohio.

4.  Plaintiff is married to Plaintiff Gary Bradish, who also resides in the village of Swanton, Lucas County, Ohio.

5.  Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

6.  At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly

through third parties, subsidiaries or related entities, the oral contraceptive, YAZ and its predecessor, Yasmin.

7. Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

8. At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

9. Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

10. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

11. At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

12. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

13. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

14. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

15. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

16. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. applied for and received U.S. marketing approval of Yasmin and YAZ by the FDA, and is the holder of approved New Drug Application ("NDA") for Yasmin and YAZ.

17. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

18. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

19. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

20. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

21. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

22. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., and John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

23. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

24. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

26. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YAZ, as well as Plaintiff's resulting injuries.

27. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of Yasmin and YAZ within this District.

28. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

## FACTS

### Yasmin and YAZ Background

29. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

30. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

31. Combination birth control pills are referred to as combined hormonal oral contraceptives.

32. Yasmin was approved by the FDA in April, 2001.

33. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

34. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

35. Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels

reduced, so too did the risk of blood clots, heart attacks and strokes.

36. During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

37. During the 1990s, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

38. Yasmin and YAZ contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

39. However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and YAZ marketed under the trade name, Ocella.

40. Since drospirenone in birth control is new, there are not decades of data available to support its safe use as there are with second generation progestins. Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

41. One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

42. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses or bradycardia. If left untreated, hyperkalemia can be fatal.

43. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

44. Another effect is a substantially increased risk of gallbladder complications.

45. During the brief time that Yasmin and YAZ have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

46. In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

47. In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

48. In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and YAZ have been filed with the FDA.

49. These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism and stroke in women in their child bearing years.

50. Some deaths reported occurred in women as young as 17 years old.

51. Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or YAZ.

### Defendants' Over-Promotion, Fraud and Failures Regarding Yasmin and YAZ

52. Defendants market Yasmin and YAZ as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

53. However, because Yasmin and YAZ contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

54. Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

55. Indeed, the FDA felt Defendants' over-promotion of YAZ was so severe that it required Bayer to run new TV advertisements to correct the previous misleading YAZ advertisements.

56. Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all YAZ advertisements to the FDA for advanced screening for the next six years.

57. Defendants ignored the correlation between the use of Yasmin and YAZ and increased thrombosis formation despite the wealth of scientific information available.

58. Upon information and belief, Defendants knew or should have known about the correlation between the use of Yasmin and YAZ and a prothrombotic effect and still promoted, sold, advertised, and marketed the use of Yasmin and YAZ.

59. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that Yasmin and YAZ had been tested and was found to be safe and/or effective for its indicated use.

60. These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase Yasmin and YAZ for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

61. Defendants knew and were aware or should have been aware that Yasmin and YAZ had not been sufficiently tested, was defective in its design and testing, and/or lacked adequate and/or sufficient warnings.

62. Defendants knew or should have known that Yasmin and YAZ had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate and/or down-played warnings.

63. In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

a.   That Yasmin/YAZ is not as safe as other available contraceptives;

b.   That the risks of adverse events with Yasmin/YAZ (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

c.   That the risks of adverse events with Yasmin/YAZ was not adequately tested and/or known by Defendants;

d.   Plaintiff was put at risk of experiencing serious and dangerous side effects including, but not limited to, deep vein thrombosis, pulmonary embolisms, as well as other severe and personal injuries, physical pain, and mental anguish;

e.   That patients needed to be monitored more regularly than normal while using Yasmin/YAZ; and/or

f.   That Yasmin/YAZ was designed, tested, manufactured, marketed, produced,

distributed and advertised negligently, defectively, fraudulently and improperly.

64. Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of Yasmin and YAZ.

65. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used Yasmin and YAZ, including Plaintiff.

66. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Yasmin and YAZ as a contraceptive.

67. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

68. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

69. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Yasmin and YAZ, as set forth herein.

70. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.    Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of Yasmin and YAZ.

13

71. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet they failed to provide such warning.

### FACTS REGARDING PLAINTIFF PATTI BRADISH

72. Plaintiff was prescribed YAZ by her health care provider.

73. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YAZ to her detriment.

74. As a result of using Defendants' product YAZ, in October of 2007, Plaintiff suffered serious and life-threatening side effects including but not limited to, deep vein thrombosis and a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

75. Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least July of 2009.

### CAUSES OF ACTION

#### COUNTS I-IV
**Defective Manufacturing/Construction (R.C. § 2307.74)**
**Defective Design/Formulation (R.C. § 2307.75)**
**Defective Warning/Instruction (R.C. § 2307.76)**
**Defective Due to Nonconformity with Representation (R.C. § 2307.77)**

14

76. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

77. At all times relevant to this action, Defendants were the manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drugs, Yasmin and YAZ, that were placed into the stream of commerce.

78. The Yasmin and YAZ birth control pills were expected to and did reach the ultimate users, including Plaintiff, without substantial change in the condition they were sold.

79. The Yasmin and YAZ birth control pills manufactured, designed, sold, distributed, supplied, promoted and/or place in the stream of commerce by Defendant were defective in their:

a.   Manufacture and construction pursuant to the provisions of Ohio Revised Code § 2307.74;

b.   Design pursuant to the provisions of Ohio Revised Code § 2307.75;

c.   Inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, and/or

d.   Failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

80. Specifically, Defendants' failures, which permitted defective drugs, Yasmin and YAZ, to be placed in the stream of commerce, include, but are not necessarily limited to:

a.   Defendants' failure to exercise reasonable care in the manufacture, design and testing of Yasmin and YAZ;

b.   Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the substantially increased risks and serious side effects of the drug;

c.   Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

d.   Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious increased side

effects, including, but not limited to, deep vein thrombosis, pulmonary embolism, and other serious and life threatening side effects;

e.  Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, deep vein thrombosis, pulmonary embolism and other serious and life threatening side effects;

f.  Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

g.  Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

h.  Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

81. Yasmin and YAZ were unsafe for normal or reasonably anticipated use.

82. Plaintiff was using the drug in the manner for which it was intended and/or in a reasonably foreseeable manner.

83. Plaintiff could not, through the exercise of reasonable care, have discovered the defects or perceived the dangers posed by the drug.

84. As a direct and proximate result of this defective product, Plaintiff has been injured and incurred substantial damages, including, but not limited to, deep vein thrombosis and a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

16

85. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to recover punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

**COUNT V**
**Fraudulent Misrepresentation**

86. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

87. Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of Yasmin and YAZ, owed a duty not to deceive the Plaintiff, her health care providers and the public regarding the character, safety, quality and/or effectiveness of their drug.

88. The duty not to deceive is distinct from than the duty to warn and thus, was not abrogated by the Ohio Product Liability Act found at Ohio R.C. § 2307.71 *et seq.*

89. Since the drug's approval in April of 2001, and on multiple occasions to the present date, Defendants fraudulently misrepresented and published information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality and/or effectiveness, including, but not limited to, the public ad campaigns which were the subject of the FDA's 2003, 2008 and 2009 warnings.

90. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

91. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding Yasmin and YAZ.

92. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

93. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

94. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered serious and life-threatening side effects including but not limited to, deep vein thrombosis and a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

95. Defendants' conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety to patients/consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

## COUNTS VI-VII
### Civil Conspiracy and Commercial Bribery

96. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

97. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these

entities to use the drugs Yasmin and YAZ, and to convince their patients and others of the safety and effectiveness of Yasmin and YAZ.

**COUNT VIII**
**Loss of Consortium**

98. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

99. As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff, Plaintiff Gary Bradish has suffered the loss of companionship, society, services, and consortium of his wife.

**COUNT IX**
**Punitive Damages**

100. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

101. Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the public.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.   For an award of compensatory damages, including damages against Defendants and each of them for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.   For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.      For reasonable attorneys' fees and costs;

D.      For pre-judgment interest; and

E.      For such further and other relief the court deems just, equitable, and proper.

Dated: July 21, 2009

Respectfully Submitted,

 /s/David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

 /s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com

 /s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

/s/David W. Zoll
David W. Zoll (0008548)

I

Northern District of Ohio                                                    Page 1 of 3

Armstrong, Cat08

## U.S. District Court
## Northern District of Ohio (Toledo)
## CIVIL DOCKET FOR CASE #: 3:09-cv-01682-JGC

Brinker et al v. Bayer Corporation et al             Date Filed: 07/21/2009
Assigned to: Judge James G. Carr                     Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury             Nature of Suit: 365 Personal Inj. Prod.
                                                     Liability
                                                     Jurisdiction: Diversity

**Plaintiff**

**Gail Brinker**                    represented by   **David W. Zoll**
                                                     Zoll, Kranz & Borgess
                                                     Ste. 200
                                                     6620 Central Avenue
                                                     Toledo , OH 43617
                                                     419-841-9623
                                                     Fax: 419-841-9719
                                                     Email: david@toledolaw.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Michelle L. Kranz**
                                                     Zoll, Kranz & Borgess
                                                     Ste. 200
                                                     6620 Central Avenue
                                                     Toledo , OH 43617
                                                     419-841-9623
                                                     Fax: 419-841-9719
                                                     Email: michelle@toledolaw.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Pamela A. Borgess**
                                                     Zoll, Kranz & Borgess
                                                     Ste. 200
                                                     6620 Central Avenue
                                                     Toledo , OH 43617
                                                     419-841-9623
                                                     Fax: 419-841-9719
                                                     Email: pamela@toledolaw.com
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth Brinker**                 represented by   **David W. Zoll**

Northern District of Ohio                                                    Page 2 of 3

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**Bayer Corporation**

<u>Defendant</u>

**Bayer Healthcare LLC**

<u>Defendant</u>

**Bayer Pharmaceuticals Corporation**

<u>Defendant</u>

**Bayer Healthcare Pharmaceuticals Inc.**

<u>Defendant</u>

**Berlex Laboratories, Inc.**

<u>Defendant</u>

**Berlex, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 0647000000003656268, filed by Gail Brinker, Kenneth brinker. (Attachments: # 1 Civil Cover Sheet, # 2 Summons bayer corporation, # 3 Summons bayer healthcare, # 4 Summons bayer healthcare pharmaceuticals, # 5 Summons bayer pharmaceuticals, # 6 Summons berlex laboratories, # 7 Summons berlex, inc) (Zoll, David) (Entered: 07/21/2009) |
| 07/22/2009 | | Judge James G. Carr assigned to case. (M,C) (Entered: 07/22/2009) |

**PACER Service Center**

**Transaction Receipt**

| 07/22/2009 12:26:36 | | | |
|---|---|---|---|
| PACER Login: | bs1052 | Client Code: | yasmin |
| Description: | Docket Report | Search Criteria: | 3:09-cv-01682-JGC |
| Billable Pages: | 2 | Cost: | 0.16 |

**IN THE U.S. DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **GAIL BRINKER** | ) | CASE NO. |
| 15630 Zepernick Rd. | ) | |
| Pemberville, OH 43450 | ) | JUDGE |
| | ) | |
| and | ) | **COMPLAINT WITH JURY DEMAND** |
| | ) | **ENDORSED HEREON** |
| **KENNETH BRINKER** | ) | |
| 15630 Zepernick Rd. | ) | David W. Zoll  (0008548) |
| Pemberville, OH 43450 | ) | Michelle L. Kranz (0062479) |
| | ) | Pamela A. Borgess  (0072789) |
| Plaintiffs, | ) | ZOLL, KRANZ & BORGESS, LLC |
| | ) | 6620 W. Central Ave., Suite 200 |
| v. | ) | Toledo, OH  43617 |
| | ) | (419) 841-9623 |
| **BAYER CORPORATION** | ) | Fax: (419) 841-9719 |
| c/o CSC-Lawyers Incorporating | ) | Email: david@toledolaw.com |
| Service (Corporation Service | ) | michelle@toledolaw.com |
| Company) | ) | pamela@toledolaw.com |
| 50 W. Broad St. Suite 1800 | ) | |
| Columbus, OH 43215 | ) | *Counsel for Plaintiffs* |
| | ) | |
| and | ) | |
| | ) | |
| **BAYER HEALTHCARE LLC,** | ) | |
| c/o CSC-Lawyers Incorporating | ) | |
| Service (Corporation Service | ) | |
| Company) | ) | |
| 50 W. Broad St. Suite 1800 | ) | |
| Columbus, OH 43215 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **BAYER PHARMACEUTICALS** | ) | |
| **CORPORATION,** | ) | |
| c/o CSC-Lawyers Incorporating | ) | |
| Service (Corporation Service | ) | |
| Company) | ) | |
| 50 W. Broad St. Suite 1800 | ) | |

1

Columbus, OH 43215                               )
                                                 )
and                                              )
                                                 )
**BAYER HEALTHCARE**                             )
**PHARMACEUTICALS INC.**                         )
c/o CSC-Lawyers Incorporating                    )
Service (Corporation Service                     )
Company)                                         )
50 W. Broad St. Suite 1800                       )
Columbus, OH 43215                               )
                                                 )
and                                              )
                                                 )
**BERLEX LABORATORIES, INC.**                    )
c/o CSC-Lawyers Incorporating                    )
Service (Corporation Service                     )
Company)                                         )
340 Changebridge Road                            )
Montville, NJ 07045                              )
                                                 )
and                                              )
                                                 )
**BERLEX, INC.**                                 )
c/o CSC-Lawyers Incorporating                    )
Service (Corporation Service                     )
Company)                                         )
340 Changebridge Road                            )
Montville, NJ 07045                              )
                                                 )
and                                              )
                                                 )
**JOHN DOE MANUFACTURERS**                       )
**A-Z**                                          )
[Real Names and Addresses                        )
Unknown]                                         )
                                                 )
and                                              )
                                                 )
**JOHN DOE DISTRIBUTORS A-Z**                    )
[Real Names and Addresses                        )
Unknown]                                         )
                                                 )
              Defendants.                        )

Now come Gail and Kenneth Brinker, by and through the undersigned counsel, and for their Complaint hereby aver and state as follows:

## NATURE OF THE ACTION

1.  This is an action for strict product liability (Ohio R.C. § 2307.71 *et seq.*), fraudulent misrepresentation, civil conspiracy and commercial bribery, loss of consortium, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug YAZ, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2.  As a result of the ingestion of YAZ, Plaintiff Gail Brinker has suffered injuries to her person including, but not limited to, a pulmonary embolism.

## THE PARTIES

3.  Plaintiff Gail Brinker, (herein "Plaintiff"), resides in the village of Pemberville, Wood County, Ohio.

4.  Plaintiff is married to Plaintiff Kenneth Brinker, who also resides in the village of Pemberville, Wood County, Ohio.

5.  Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

6.  At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

3

7.  Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

8.  At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

9.  Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

10. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

11. At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

12. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

13. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a

principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

14. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

15. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

16. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. applied for and received U.S. marketing approval of Yasmin and YAZ by the FDA, and is the holder of approved New Drug Application ("NDA") for Yasmin and YAZ.

17. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

18. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

19. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio,

either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

20. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

21. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

22. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., and John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

23. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of

6

any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

24. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

### JURISDICTION AND VENUE

25. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

26. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YAZ, as well as Plaintiff's resulting injuries.

27. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of Yasmin and YAZ within this District.

28. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

### FACTS

## Yasmin and YAZ Background

29. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

30. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

31. Combination birth control pills are referred to as combined hormonal oral contraceptives.

32. Yasmin was approved by the FDA in April, 2001.

33. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

34. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

35. Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks and strokes.

36. During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when

combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

37. During the 1990s, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

38. Yasmin and YAZ contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

39. However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and YAZ marketed under the trade name, Ocella.

40. Since drospirenone in birth control is new, there are not decades of data available to support its safe use as there are with second generation progestins. Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

41. One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

42. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses or bradycardia. If left untreated, hyperkalemia can be fatal.

43. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the

heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

44. Another effect is a substantially increased risk of gallbladder complications.

45. During the brief time that Yasmin and YAZ have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

46. In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

47. In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

48. In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and YAZ have been filed with the FDA.

49. These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism and stroke in women in their child bearing years.

50. Some deaths reported occurred in women as young as 17 years old.

51. Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or YAZ.

**Defendants' Over-Promotion, Fraud and Failures Regarding Yasmin and YAZ**

52. Defendants market Yasmin and YAZ as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

53. However, because Yasmin and YAZ contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

54. Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

55. Indeed, the FDA felt Defendants' over-promotion of YAZ was so severe that it required Bayer to run new TV advertisements to correct the previous misleading YAZ advertisements.

56. Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all YAZ advertisements to the FDA for advanced screening for the next six years.

57. Defendants ignored the correlation between the use of Yasmin and YAZ and increased thrombosis formation despite the wealth of scientific information available.

58. Upon information and belief, Defendants knew or should have known about the correlation between the use of Yasmin and YAZ and a prothrombotic effect and still promoted, sold, advertised, and marketed the use of Yasmin and YAZ.

59. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that Yasmin and YAZ had been tested and was found to be safe and/or effective for its indicated use.

60. These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and

healthcare community in particular, to recommend, dispense and/or purchase Yasmin and YAZ

for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference

to the health, safety and welfare of Plaintiff.

61. Defendants knew and were aware or should have been aware that Yasmin and YAZ

had not been sufficiently tested, was defective in its design and testing, and/or lacked adequate

and/or sufficient warnings.

62. Defendants knew or should have known that Yasmin and YAZ had a potential to,

could, and would cause severe and grievous injury and death to the users of said product, and

that it was inherently dangerous in a manner that exceeded any purported, inaccurate and/or

down-played warnings.

63. In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants

also fraudulently concealed and intentionally omitted the following material information:

   a.     That Yasmin/YAZ is not as safe as other available contraceptives;

   b.     That the risks of adverse events with Yasmin/YAZ (drospirenone and ethinyl
          estradiol) was higher than those of other available contraceptives;

   c.     That the risks of adverse events with Yasmin/YAZ was not adequately tested
          and/or known by Defendants;

   d.     Plaintiff was put at risk of experiencing serious and dangerous side effects
          including, but not limited to, a pulmonary embolism, as well as other severe and
          personal injuries, physical pain, and mental anguish;

   e.     That patients needed to be monitored more regularly than normal while using
          Yasmin/YAZ; and/or

   f.     That Yasmin/YAZ was designed, tested, manufactured, marketed, produced,
          distributed and advertised negligently, defectively, fraudulently and improperly.

64. Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals,

healthcare providers and/or the FDA the defective nature of Yasmin and YAZ.

65. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used Yasmin and YAZ, including Plaintiff.

66. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Yasmin and YAZ as a contraceptive.

67. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

68. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

69. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Yasmin and YAZ, as set forth herein.

70. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.   Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of Yasmin and YAZ.

71. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet

they failed to provide such warning.

## FACTS REGARDING PLAINTIFF GAIL BRINKER

72. Plaintiff was prescribed YAZ by her health care provider.

73. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YAZ to her detriment.

74. As a result of using Defendants' product YAZ, in March of 2008, Plaintiff suffered serious and life-threatening side effects including but not limited to, a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

75. Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

## CAUSES OF ACTION

### COUNTS I-IV
**Defective Manufacturing/Construction (R.C. § 2307.74)**
**Defective Design/Formulation (R.C. § 2307.75)**
**Defective Warning/Instruction (R.C. § 2307.76)**
**Defective Due to Nonconformity with Representation (R.C. § 2307.77)**

76. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

77. At all times relevant to this action, Defendants were the manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drugs, Yasmin and YAZ, that were placed into the stream of commerce.

78. The Yasmin and YAZ birth control pills were expected to and did reach the ultimate users, including Plaintiff, without substantial change in the condition they were sold.

79. The Yasmin and YAZ birth control pills manufactured, designed, sold, distributed, supplied, promoted and/or place in the stream of commerce by Defendant were defective in their:

   a.   Manufacture and construction pursuant to the provisions of Ohio Revised Code § 2307.74;

   b.   Design pursuant to the provisions of Ohio Revised Code § 2307.75;

   c.   Inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, and/or

   d.   Failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

80. Specifically, Defendants' failures, which permitted defective drugs, Yasmin and YAZ, to be placed in the stream of commerce, include, but are not necessarily limited to:

   a.   Defendants' failure to exercise reasonable care in the manufacture, design and testing of Yasmin and YAZ;

   b.   Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the substantially increased risks and serious side effects of the drug;

   c.   Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

   d.   Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious increased side effects, including, but not limited to, a pulmonary embolism, and other serious and life threatening side effects;

e.  Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, a pulmonary embolism and other serious and life threatening side effects;

f.  Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

g.  Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

h.  Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

81. Yasmin and YAZ were unsafe for normal or reasonably anticipated use.

82. Plaintiff was using the drug in the manner for which it was intended and/or in a reasonably foreseeable manner.

83. Plaintiff could not, through the exercise of reasonable care, have discovered the defects or perceived the dangers posed by the drug.

84. As a direct and proximate result of this defective product, Plaintiff has been injured and incurred substantial damages, including, but not limited to, a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

85. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to recover punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

**COUNT V**
**Fraudulent Misrepresentation**

86. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

87. Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of Yasmin and YAZ, owed a duty not to deceive the Plaintiff, her health care providers and the public regarding the character, safety, quality and/or effectiveness of their drug.

88. The duty not to deceive is distinct from than the duty to warn and thus, was not abrogated by the Ohio Product Liability Act found at Ohio R.C. § 2307.71 *et seq.*

89. Since the drug's approval in April of 2001, and on multiple occasions to the present date, Defendants fraudulently misrepresented and published information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality and/or effectiveness, including, but not limited to, the public ad campaigns which were the subject of the FDA's 2003, 2008 and 2009 warnings.

90. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

91. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding Yasmin and YAZ.

92. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

93. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

94. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered serious and life-threatening side effects including but not limited to, a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

95. Defendants' conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety to patients/consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

## COUNTS VI-VII
### Civil Conspiracy and Commercial Bribery

96. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

97. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these

entities to use the drugs Yasmin and YAZ, and to convince their patients and others of the safety and effectiveness of Yasmin and YAZ.

## COUNT VIII
### Loss of Consortium

98. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

99. As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff. Plaintiff Kenneth Brinker has suffered the loss of companionship, society, services, and consortium of his wife.

## COUNT IX
### Punitive Damages

100. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

101. Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the public.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

    A.    For an award of compensatory damages, including damages against Defendants and each of them for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

    B.    For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.      For reasonable attorneys' fees and costs;

D.      For pre-judgment interest; and

E.      For such further and other relief the court deems just, equitable, and proper.

Dated: July 21, 2009

Respectfully Submitted,

  /s/David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

  /s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com

  /s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

/s/David W. Zoll
David W. Zoll (0008548)

J

Armstrong, Cat08

**U.S. District Court**
**Northern District of Ohio (Toledo)**
**CIVIL DOCKET FOR CASE #: 3:09-cv-01684-JZ**

Brazzel v. Bayer Corporation et al                    Date Filed: 07/21/2009
Assigned to: Judge Jack Zouhary                        Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury               Nature of Suit: 365 Personal Inj. Prod.
                                                        Liability
                                                        Jurisdiction: Diversity

**Plaintiff**

**Carla Leigh Brazzel**                 represented by   **David W. Zoll**
                                                        Zoll, Kranz & Borgess
                                                        Ste. 200
                                                        6620 Central Avenue
                                                        Toledo , OH 43617
                                                        419-841-9623
                                                        Fax: 419-841-9719
                                                        Email: david@toledolaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Daniel N. Gallucci**
                                                        Roda & Nast
                                                        801 Estelle Drive
                                                        Lancaster , PA 17601
                                                        717-892-3000
                                                        Fax: 717-892-1200
                                                        Email: dgallucci@rodanast.com

                                                        **Joanne E. Matusko**
                                                        Roda & Nast
                                                        801 Estelle Drive
                                                        Lancaster , PA 17601
                                                        717-892-3000
                                                        Fax: 717-892-1200
                                                        Email: jmatusko@rodanast.com

                                                        **Pamela A. Borgess**
                                                        Zoll, Kranz & Borgess
                                                        Ste. 200
                                                        6620 Central Avenue
                                                        Toledo , OH 43617
                                                        419-841-9623

Northern District of Ohio                                                    Page 2 of 2

Fax: 419-841-9719
Email: pamela@toledolaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer Healthcare LLC**

**Defendant**

**Bayer Pharmaceuticals Corporation**

**Defendant**

**Bayer Healthcare Pharmaceuticals, Inc.**

**Defendant**

**Berlex Laboratories, Inc.**

**Defendant**

**Berlex, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 0647000000003656517, filed by Carla Leigh Brazzel. (Attachments: # 1 Civil Cover Sheet, # 2 Summons bayer corporation, # 3 Summons bayer pharmaceuticals, # 4 Summons bayer pharma, # 5 Summons berlex labs, # 6 Summons berlex inc, # 7 Summons bayer healthcare) (Zoll, David). Modified on 7/22/200: Complaint not signed. Attorney notified. (M,C) (Entered: 07/21/2009) |
| 07/22/2009 | 2 | Supplement: Complaint signed by attorney, filed by plaintiff. Related document 1 (Borgess, Pamela). Modified on 7/22/2009 (M,C). (Entered: 07/22/2009) |
| 07/22/2009 | | Judge Jack Zouhary assigned to case. (M,C) (Entered: 07/22/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/22/2009 12:27:16 | | | |
| PACER Login: | bs1052 | Client Code: | yasmin |
| Description: | Docket Report | Search Criteria: | 3:09-cv-01684-JZ |
| Billable Pages: | 2 | Cost: | 0.16 |

**IN THE U.S. DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **CARLA LEIGH BRAZZEL,**<br>127 W. Chase Drive, West<br>Monroe, Louisiana 71291,<br><br>        Plaintiff,<br><br>    v.<br><br>**BAYER CORPORATION;**<br>**BAYER HEALTHCARE, LLC;**<br>**BAYER PHARMACEUTICALS**<br>**CORPORATION; BAYER**<br>**HEALTHCARE**<br>**PHARMACEUTICALS, INC.,**<br>**BERLEX LABORATORIES,**<br>**INC., BERLEX, INC.; BAYER**<br>**SCHERING PHARMA AG; and**<br>**BAYER AG,**<br><br>        Defendants. | ) Civil Action No. _____<br>)<br>) **COMPLAINT WITH JURY DEMAND**<br>) **ENDORSED HEREON**<br>)<br>)<br>) David W. Zoll  (0008548)<br>) Pamela A. Borgess  (0072789)<br>) ZOLL, KRANZ & BORGESS, LLC<br>) 6620 W. Central Ave., Suite 200<br>) Toledo, OH  43617<br>) (419) 841-9623<br>) Fax: (419) 841-9719<br>) Email: david@toledolaw.com<br>)         pamela@toledolaw.com<br>)<br>) Daniel N. Gallucci (Pa. 81995)<br>) Joanne E. Matusko (Pa. 91059)<br>) RODANAST, P.C.<br>) 801 Estelle Drive<br>) Lancaster, PA 17601<br>) (717) 892-3000<br>) Fax: (717) 892-1200<br>) Email: dgallucci@rodanast.com<br>)         jmatusko@rodanast.com<br>)<br>) *Counsel for Plaintiff* |

**COMPLAINT**

NOW COMES Plaintiff for her multiple causes of action against Defendants

and alleges and states the following:

1

## THE PARTIES

1.      Plaintiff Carla Leigh Brazzel ("Plaintiff") resides in West Monroe, Louisiana.

2.      Plaintiff was prescribed and ingested YAZ and/or YASMIN and suffered injury, including, but not limited to, the development of a deep vein thrombosis.

3.      Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

4.      Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, PA 15205.

5.      Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

6.      Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

7.      As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

8.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

9.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

10.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YAZ.

11.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YASMIN.

12.     Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

13.     Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

14.     Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of

3

the Federal Republic of German, having a principal place of business at

Müllerstrasse 178, 13353 Berlin, Germany.

15.     Defendant BAYER SCHERING PHARMA AG is a corporate successor to

Schering AG.

16.     Schering AG was renamed BAYER SCHERING PHARMA AG effective

December 29, 2006.

17.     Defendant BAYER SCHERING PHARMA AG'S headquarters and principal

place of business in the United States is located at 100 Bayer Road, Pittsburgh,

Pennsylvania, 15205.

18.     Defendant BAYER SCHERING PHARMA AG is the current owner of the

patent(s) relating to the oral contraceptive, YASMIN.

19.     Defendant BAYER SCHERING PHARMA AG is the current owner of the

patent(s) relating to the oral contraceptive, YAZ.

20.     Defendant BAYER AG is a German chemical and pharmaceutical

company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

21.     Defendant BAYER AG is the third largest pharmaceutical company in

the world.

22.     Defendant BAYER AG is the parent/holding company of all other named

Defendants.

23.     Defendant BAYER AG's headquarters and principal place of business in

the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

24.    Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, and Bayer AG, shall be referred to herein individually by name or jointly as "Defendants."

25.    At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

26.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

27.    At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptives, YAZ and YASMIN.

## JURISDICTION AND VENUE

28.    Plaintiff alleges damages in excess of one hundred fifty thousand dollars ($150,000.00), exclusive of costs and interests.

5

29.    This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

30.    Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. §1391, as a substantial part of the events or omissions giving rise to the claim occurred within this District, including, but not limited to, the development, design, licensing, labeling, manufacturing and/or marketing of the defective drug, as well as Defendant's fraud and conspiracy to actively concealed and/or misrepresent information concerning the safety and efficacy of YASMIN and YAZ with the intention and specific desire to mislead the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.

### FACTUAL BACKGROUND

31.    Plaintiff took YAZ and/or YASMIN.

32.    Plaintiff suffered serious personal injuries caused by YAZ and/or YASMIN, including, but not limited to, the development of a deep vein thrombosis.

33.    At all relevant times, Defendants designed, manufactured, marketed, and distributed the pharmaceutical drugs YAZ and YASMIN, both which are oral contraceptives.

34.    YASMIN received FDA approval first in 2001.  It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen.

6

35.    YAZ received approval from the FDA in 2006 and is essentially the same as YASMIN, with the only difference being a slightly smaller amount of ethinyl estradiol.

36.    YAZ/YASMIN are indicated for the prevention of pregnancy in women who elect to use an oral contraceptive.

37.    Combination birth control pills are referred to as combined hormonal oral contraceptives.

38.    The difference between YASMIN/YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

39.    YAZ/YASMIN's use of drospirenone, a diuretic, creates unique risks compared to other oral contraceptives and is known to cause problems with the development of pulmonary embolism and deep vein thrombosis.

40.    Upon information and belief, Defendants knew or should have known about the correlation between the use of YASMIN and YAZ and the significantly increased risk of the development of pulmonary embolism and deep vein thrombosis.

41.    Yet, despite the wealth of scientific information available, Defendants ignored the correlation between the use of YASMIN and YAZ and the significantly increased risk of the development of pulmonary embolism and deep vein thrombosis and still promoted, sold, advertised, and marketed the use of YAZ/YASMIN without sufficient warnings.

42.    Defendants have been warned at least three times by the FDA, in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YASMIN and YAZ, and minimize serious risks associated with the drug.

43.    Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this complaint.

44.    As a result of the manufacture, marketing, advertising, promotion, distribution, the sale of YAZ/YASMIN without adequate warnings about the risks of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

**FACTS REGARDING PLAINTIFF CARLA LEIGH BRAZZEL**

45.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YASMIN and/or YAZ to her detriment.

46.    As a result of using Defendants' product YASMIN and/or YAZ, on or about July 28, 2008 Plaintiff suffered serious and life-threatening side effects including but not limited to, the development of a deep vein thrombosis, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

47.    Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT

48.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

49.    Prior to Plaintiff's use of YAZ/YASMIN and during the period in which Plaintiff actually used YAZ/YASMIN, Defendants fraudulently suppressed material information regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, pre and post marketing deaths, a high rate of severe adverse event reports compared to other birth control pills, and the unique gallbladder dangers.  Furthermore, Defendants fraudulently concealed the safety information about the use of drospirenone, the only birth control pill using this ingredient.  As described above, drospirenone has several well known serious side effects that are not seen in other forms of birth control.  Plaintiff believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of YAZ/YASMIN strong.

50.    Defendants fraudulently concealed safety issues with YAZ/YASMIN in order to induce physicians to prescribe and patients, including Plaintiff, to purchase and use YAZ/YASMIN.

51.    At the time Defendants concealed the fact that YAZ/YASMIN was not safe, Defendants were under a duty to communicate this information to physicians, the FDA, the Healthcare community, and the general public in such a manner that they could appreciate the risks associated with using YAZ/YASMIN.

52.    Plaintiff and the Plaintiff's prescribing doctor relied upon the Defendants' outrageous untruths regarding the safety of YAZ/YASMIN.

53.    As a direct and proximate result of Defendants' malicious and or intentional concealment of material life altering information from Plaintiff and Plaintiff's prescribing doctor, Defendants caused or contributed to Plaintiff's injuries.

54.    It is unconscionable and outrageous that Defendants would risk the lives of consumers.  Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct rises to the level necessary that Plaintiff should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

55.    Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of YAZ/YASMIN as described herein.  Defendants did not disclose this information to the Plaintiff, the prescribing doctor, the Healthcare community and the general public.  Without full knowledge of the dangers of YAZ/YASMIN, Plaintiff and

Plaintiff's lawyer could not evaluate whether a person who was injured by YAZ/YASMIN had a valid claim.

WHEREFORE, Plaintiff demands judgment against Defendants for such compensatory damages and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this Court, plus interest and costs.

## COUNT II
## STRICT LIABILITY

56.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

57.    At the time of Plaintiff's injury, Defendants' pharmaceutical, YAZ/YASMIN, was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

58.    The YAZ/YASMIN used by Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants.

59.    Plaintiff did not misuse or materially alter the YAZ/YASMIN.

60.    Defendants are strictly liable for Plaintiff's injury in the following ways:

      a.    The pharmaceutical YAZ/YASMIN as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b.   Defendants failed to properly market, design, manufacture, distribute, supply and sell YAZ/YASMIN;

c.   Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

d.   Defendants failed to adequately test YAZ/YASMIN;

e.   Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of YAZ/YASMIN; and

f.   A feasible alternative design existed that was capable of preventing Plaintiff's injury.

61.   Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injury.

62.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

64.     At the time Defendants marketed, distributed and sold YAZ/YASMIN to Plaintiff, Defendants warranted that YAZ/YASMIN was merchantable and fit for the ordinary purposes for which it was intended.

65.     Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

66.     YAZ/YASMIN was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint.

67.     Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and free of defects and was a safe means of birth control.

68.     Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury.

69.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

70.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

71.     Defendants sold YAZ/YASMIN with an implied warranty that it was fit for the particular purpose of safe birth control, which offered other benefits, such as reduced bloating, reduced mood swings, improved complexion, and reduced the severity of women's menstruation.

72.     Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

73.     YAZ/YASMIN was not fit for the particular purpose of a safe birth control pill without serious risk of personal injury, which risk is much higher than other birth control pills.

74.     Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and effective for use as a birth control method.

75.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injury.

76.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including

Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs as allowed by law and punitive damages.

## COUNT V
## NEGLIGENT FAILURE TO WARN

77.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

78.   Before Plaintiff used YAZ/YASMIN, and during the period in which she used it, Defendants knew or had reason to know that YAZ/YASMIN was dangerous and created an unreasonable risk of bodily harm to consumers.

79.   Defendants had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made YAZ/YASMIN likely to be dangerous.

80.   Despite the fact that Defendants knew or had reason to know that YAZ/YASMIN was dangerous, Defendants failed to exercise reasonable care in warning the medical community and consumers, including Plaintiff, of the dangerous conditions and facts that made YAZ/YASMIN likely to be dangerous.

81.   The Plaintiff's injury was a direct and proximate result of Defendants' failure to warn of the dangers of YAZ/YASMIN.

82.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

**COUNT VI
NEGLIGENCE**

83.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

84.     Defendants had a duty to exercise reasonable care in the manufacture, sale and distribution of YAZ/YASMIN, including a duty to assure that the product did not cause unreasonable, dangerous side effects to users.

85.     Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of YAZ/YASMIN in that Defendants knew or should have known that the drug created a high risk of unreasonable harm.

86.     Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of YAZ/YASMIN in that, among other things, they:

a.   Failed to use due care in designing and manufacturing YAZ/YASMIN so as to avoid the aforementioned risks to individuals;

b.   Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects. The warnings given did not reflect accurately the symptoms, scope or severity of the side effects;

c.   Failed to provide adequate training and instruction to medical care providers for appropriate use of YAZ/YASMIN;

d.   Placed an unsafe product into the stream of commerce; and

e.   Were otherwise careless or negligent.

87.   Despite the fact that Defendants knew or should have known that YAZ/YASMIN caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market YAZ/YASMIN to consumers, including the medical community and Plaintiff.

88.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

### COUNT VII
### NEGLIGENT MISREPRESENTATION

89.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

90.    Prior to Plaintiff first using YAZ/YASMIN and during the period in which she used YAZ/YASMIN, Defendants misrepresented that YAZ/YASMIN was a safe and effective means of birth control.  Defendants also failed to disclose material facts regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, harmful side effects, and results of clinical studies showing that use of the medication could be life threatening.

91.    Defendants had a duty to provide Plaintiff, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold.

92.    Defendants knew or should have known, based on their prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with YAZ/YASMIN, that their representations regarding YAZ/YASMIN were false, and that they had a duty to disclose the dangers of YAZ/YASMIN.

93.    Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiff, to act in reliance by purchasing YAZ/YASMIN.

94.     Plaintiff justifiably relied on Defendants' representations and nondisclosures by purchasing and using YAZ/YASMIN.

95.     Defendants' misrepresentations and omissions regarding the safety and efficacy of YAZ/YASMIN was the direct and proximate cause of Plaintiff's injuries.

96.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT VIII
## BREACH OF EXPRESS WARRANTY

97.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

98.     Defendants expressly warranted that YAZ/YASMIN was safe and effective to members of the consuming public, including Plaintiff.

99.     Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

100.   Defendants marketed, promoted and sold YAZ/YASMIN as a safe method of birth control.

101.   YAZ/YASMIN does not conform to these express representations because YAZ/YASMIN is not safe and has serious side effects, including death.

102.   Defendants breached their express warranty in one or more of the following ways:

      a.    YAZ/YASMIN, as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

      b.    Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

      c.    Defendants failed to adequately test YAZ/YASMIN; and

      d.    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from YAZ/YASMIN.

103.   Plaintiff reasonably relied upon Defendants' warranty that YAZ/YASMIN was safe and effective when she purchased and used the medication.

104.   Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranty.

105.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including

Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

**COUNT IX**
**FRAUD**

106.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

107.   Defendants widely advertised and promoted YAZ/YASMIN as a safe and effective medication.

108.   Defendants had a duty to disclose material information about serious side effects to consumers such as Plaintiff.

109.   Additionally, by virtue of Defendants' partial disclosures about the medication, in which Defendants' touted YAZ/YASMIN as a safe and effective medication, Defendants had a duty to disclose all facts about the risks associated with use of the medication, including the risks described in this complaint. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, such as Plaintiff, to purchase Defendants' dangerous product.

110.   Had Plaintiff been aware of the hazards associated with YAZ/YASMIN, Plaintiff would not have consumed the product that led proximately to Plaintiff's adverse health effects.

111.   Defendants' advertisements regarding YAZ/YASMIN made material misrepresentations to the effect that YAZ/YASMIN was a safe and effective medication, which misrepresentations Defendants knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiff, to purchase such product. Plaintiff relied on these material misrepresentations when deciding to purchase and consume YAZ/YASMIN.

112.   Upon information and belief, Plaintiff avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the hazards associated with YAZ/YASMIN with the purpose of preventing consumers, such as Plaintiff, from discovering these hazards.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.   For an award of compensatory damages, including damages against Defendants and each of them for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.   For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.      For reasonable attorneys' fees and costs;

D.      For pre-judgment interest; and

E.      For such further and other relief the court deems just, equitable, and
proper.


Dated:        July 21, 2009

                              Respectfully Submitted,

                                 /s/ David W. Zoll

                              David W. Zoll (0008548)
                              Pamela A. Borgess (0072789)
                              ZOLL, KRANZ & BORGESS, LLC
                              6620 W. Central Ave., Suite 200
                              Toledo, OH  43617
                              (419) 841-9623
                              Fax: (419) 841-9719
                              Email:  david@toledolaw.com
                                      pamela@toledolaw.com

                              Daniel N. Gallucci (PA 81995)
                              Joanne E. Matusko (PA 91059)
                              RODANAST, P.C.
                              801 Estelle Drive
                              Lancaster, PA 17601
                              (717) 892-3000
                              Fax: (717) 892-1200
                              Email:  dgallucci@rodanast.com
                                      jmatusko@rodanast.com

                              *Counsel for Plaintiff*

23

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

_/s/ David W. Zoll_

**K**

Armstrong, Cat08

**U.S. District Court**
**Northern District of Ohio (Toledo)**
**CIVIL DOCKET FOR CASE #: 3:09-cv-01690-JZ**

Cathis v. Bayer Corporation et al                    Date Filed: 07/21/2009
Assigned to: Judge Jack Zouhary                    Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury            Nature of Suit: 365 Personal Inj. Prod.
                                                    Liability
                                                    Jurisdiction: Diversity

**Plaintiff**

**Lauren Cathis**                    represented by   **David W. Zoll**
                                                    Zoll, Kranz & Borgess
                                                    Ste. 200
                                                    6620 Central Avenue
                                                    Toledo , OH 43617
                                                    419-841-9623
                                                    Fax: 419-841-9719
                                                    Email: david@toledolaw.com
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Michelle L. Kranz**
                                                    Zoll, Kranz & Borgess
                                                    Ste. 200
                                                    6620 Central Avenue
                                                    Toledo , OH 43617
                                                    419-841-9623
                                                    Fax: 419-841-9719
                                                    Email: michelle@toledolaw.com
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Pamela A. Borgess**
                                                    Zoll, Kranz & Borgess
                                                    Ste. 200
                                                    6620 Central Avenue
                                                    Toledo , OH 43617
                                                    419-841-9623
                                                    Fax: 419-841-9719
                                                    Email: pamela@toledolaw.com
                                                    *ATTORNEY TO BE NOTICED*

V.

**Defendant**

Northern District of Ohio                                          Page 2 of 2

**Bayer Corporation**

<u>Defendant</u>

**Bayer Healthcare, LLC**

<u>Defendant</u>

**Bayer Pharmaceuticals Corporation**

<u>Defendant</u>

**Bayer Healthcare Pharmaceuticals
Inc.**

<u>Defendant</u>

**Berlex Laboratories, Inc.**

<u>Defendant</u>

**Berlex, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2009 | 1 | **Complaint** with jury demand against Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.. Filing fee $ 350, receipt number 06470000000003656646, filed by Lauren Cathis. (Attachments: # <u>1</u> Civil Cover Sheet, # <u>2</u> Summons Bayer Corporation, # <u>3</u> Summons Bayer Healthcare, LLC, # <u>4</u> Summons Bayer Pharmaceuticals Corporation, # <u>5</u> Summons Bayer Healthcare Pharmaceuticals, Inc., # <u>6</u> Summons Berlex Laboratories, Inc., # <u>7</u> Summons Berlex, Inc.) (Borgess, Pamela) (Entered: 07/21/2009) |
| 07/22/2009 | | Judge Jack Zouhary assigned to case. (M,C) (Entered: 07/22/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/22/2009 12:34:45 | | |
| PACER Login: | bs1052 | Client Code: | yasmin |
| Description: | Docket Report | Search Criteria: | 3:09-cv-01690-JZ |
| Billable Pages: | 1 | Cost: | 0.08 |

## IN THE U.S. DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **LAUREN CATHIS** | ) | CASE NO. |
| 2829 Prairie College St. SW | ) | |
| Canton, OH 44706 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | **COMPLAINT WITH JURY DEMAND** |
| | ) | **ENDORSED HEREON** |
| v. | ) | |
| | ) | David W. Zoll (0008548) |
| **BAYER CORPORATION** | ) | Michelle L. Kranz (0062479) |
| c/o CSC-Lawyers Incorporating | ) | Pamela A. Borgess  (0072789) |
| Service (Corporation Service | ) | ZOLL, KRANZ & BORGESS, LLC |
| Company) | ) | 6620 W. Central Ave., Suite 200 |
| 50 W. Broad St. Suite 1800 | ) | Toledo, OH  43617 |
| Columbus, OH 43215 | ) | (419) 841-9623 |
| | ) | Fax: (419) 841-9719 |
| and | ) | Email: david@toledolaw.com |
| | ) | michelle@toledolaw.com |
| **BAYER HEALTHCARE LLC,** | ) | pamela@toledolaw.com |
| c/o CSC-Lawyers Incorporating | ) | |
| Service (Corporation Service | ) | *Counsel for Plaintiff* |
| Company) | ) | |
| 50 W. Broad St. Suite 1800 | ) | |
| Columbus, OH 43215 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **BAYER PHARMACEUTICALS** | ) | |
| **CORPORATION,** | ) | |
| c/o CSC-Lawyers Incorporating | ) | |
| Service (Corporation Service | ) | |
| Company) | ) | |
| 50 W. Broad St. Suite 1800 | ) | |
| Columbus, OH 43215 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **BAYER HEALTHCARE** | ) | |

**PHARMACEUTICALS INC.**                    )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
50 W. Broad St. Suite 1800                  )
Columbus, OH 43215                          )
                                            )
and                                         )
                                            )
**BERLEX LABORATORIES, INC.**               )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
340 Changebridge Road                       )
Montville, NJ 07045                         )
                                            )
and                                         )
                                            )
**BERLEX, INC.**                            )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
340 Changebridge Road                       )
Montville, NJ 07045                         )
                                            )
and                                         )
                                            )
**JOHN DOE MANUFACTURERS**                  )
**A-Z**                                      )
[Real Names and Addresses                   )
Unknown]                                     )
                                            )
and                                         )
                                            )
**JOHN DOE DISTRIBUTORS A-Z**               )
[Real Names and Addresses                   )
Unknown]                                     )
                                            )
            Defendants.                      )

---

Now comes Plaintiff, by and through the undersigned counsel, and for her Complaint

hereby avers and states as follows:

## NATURE OF THE ACTION

1.  This is an action for strict product liability (Ohio R.C. § 2307.71 *et seq.*), fraudulent misrepresentation, civil conspiracy and commercial bribery, loss of consortium, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug Yasmin, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2.  As a result of the ingestion of Yasmin, Plaintiff suffered injuries to her person including, but not limited to, the removal of her gallbladder in December of 2007.

### THE PARTIES

3.  Plaintiff Lauren Cathis, (herein "Plaintiff"), resides in the city of Canton, Stark County, Ohio.

4.  Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

5.  At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

6.  Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

7.  At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or

indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

8. Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

9. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

10. At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

11. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

12. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

13. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

14. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling,

marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

15. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. applied for and received U.S. marketing approval of Yasmin and YAZ by the FDA, and is the holder of approved New Drug Application ("NDA") for Yasmin and YAZ.

16. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

17. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

18. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

19. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities,

pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

20. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

21. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., and John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

22. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

23. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

25. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YAZ, as well as Plaintiff's resulting injuries.

26. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of Yasmin and YAZ within this District.

27. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

## FACTS

### Yasmin and YAZ Background

28. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

29. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of

drospirenone and 0.03 mg of ethinyl estradiol per tablet).

30. Combination birth control pills are referred to as combined hormonal oral contraceptives.

31. Yasmin was approved by the FDA in April, 2001.

32. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

33. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

34. Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks and strokes.

35. During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

36. During the 1990s, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has

required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

37. Yasmin and YAZ contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

38. However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and YAZ marketed under the trade name, Ocella.

39. Since drospirenone in birth control is new, there are not decades of data available to support its safe use as there are with second generation progestins. Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

40. One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

41. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses or bradycardia. If left untreated, hyperkalemia can be fatal.

42. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form, including deep vein thrombosis. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

43. Another effect is a substantially increased risk of gallbladder complications.

44. During the brief time that Yasmin and YAZ have been sold in the United States,

hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

**Defendants' Over-Promotion, Fraud and Failures Regarding Yasmin and YAZ**

45. Defendants market Yasmin and YAZ as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

46. However, because Yasmin and YAZ contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

47. Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

48. Indeed, the FDA felt Defendants' over-promotion of YAZ was so severe that it required Bayer to run new TV advertisements to correct the previous misleading YAZ advertisements.

49. Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all YAZ advertisements to the FDA for advanced screening for the next six years.

50. Defendants ignored the correlation between the use of Yasmin and YAZ and increased thrombosis formation despite the wealth of scientific information available.

51. Upon information and belief, Defendants knew or should have known about the correlation between the use of Yasmin and YAZ and gallbladder complications and still promoted, sold, advertised, and marketed the use of Yasmin and YAZ.

52. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that Yasmin and YAZ had been tested and was found to be safe and/or effective for its indicated use.

53. These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase Yasmin and YAZ for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

54. Defendants knew and were aware or should have been aware that Yasmin and YAZ had not been sufficiently tested, was defective in its design and testing, and/or lacked adequate and/or sufficient warnings.

55. Defendants knew or should have known that Yasmin and YAZ had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate and/or down-played warnings.

56. In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

a.    That Yasmin/YAZ is not as safe as other available contraceptives;

b.    That the risks of adverse events with Yasmin/YAZ (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

c.    That the risks of adverse events with Yasmin/YAZ was not adequately tested and/or known by Defendants;

d.    Plaintiff was put at risk of experiencing serious and dangerous side effects including, but not limited to, gallbladder complications, as well as other severe and personal injuries, physical pain, and mental anguish;

e.    That patients needed to be monitored more regularly than normal while using Yasmin/YAZ; and/or

f.    That Yasmin/YAZ was designed, tested, manufactured, marketed, produced,

distributed and advertised negligently, defectively, fraudulently and improperly.

57. Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of Yasmin and YAZ.

58. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used Yasmin and YAZ, including Plaintiff.

59. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Yasmin and YAZ as a contraceptive.

60. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

61. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

62. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Yasmin and YAZ, as set forth herein.

63. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.   Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of Yasmin and YAZ.

64. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet they failed to provide such warning.

### FACTS REGARDING PLAINTIFF LAUREN CATHIS

65. Plaintiff Lauren Cathis was prescribed Yasmin by her health care provider.

66. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Yasmin to her detriment.

67. As a result of using Defendants' product Yasmin, Plaintiff sustained serious side effects including, but not limited to, removal of her gallbladder in December of 2007, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, medical monitoring and/or medications, and the fear of developing additional health consequences.

68. Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least July of 2009.

### CAUSES OF ACTION

#### COUNTS I-IV
**Defective Manufacturing/Construction (R.C. § 2307.74)**
**Defective Design/Formulation (R.C. § 2307.75)**
**Defective Warning/Instruction (R.C. § 2307.76)**
**Defective Due to Nonconformity with Representation (R.C. § 2307.77)**

69. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

70. At all times relevant to this action, Defendants were the manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drugs, Yasmin and YAZ, that were placed into the stream of commerce.

71. The Yasmin and YAZ birth control pills were expected to and did reach the ultimate users, including Plaintiff, without substantial change in the condition they were sold.

72. The Yasmin and YAZ birth control pills manufactured, designed, sold, distributed, supplied, promoted and/or place in the stream of commerce by Defendant were defective in their:

   a.   Manufacture and construction pursuant to the provisions of Ohio Revised Code § 2307.74;

   b.   Design pursuant to the provisions of Ohio Revised Code § 2307.75;

   c.   Inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, and/or

   d.   Failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

73. Specifically, Defendants' failures, which permitted defective drugs, Yasmin and YAZ, to be placed in the stream of commerce, include, but are not necessarily limited to:

   a.   Defendants' failure to exercise reasonable care in the manufacture, design and testing of Yasmin and YAZ;

   b.   Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the substantially increased risks and serious side effects of the drug;

   c.   Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

   d.   Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious increased side effects, including, but not limited to, gallbladder complications, and other serious and life threatening side effects;

e.   Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, gallbladder complications and other serious and life threatening side effects;

f.   Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

g.   Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

h.   Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

74. Yasmin and YAZ were unsafe for normal or reasonably anticipated use.

75. Plaintiff was using the drug in the manner for which it was intended and/or in a reasonably foreseeable manner.

76. Plaintiff could not, through the exercise of reasonable care, have discovered the defects or perceived the dangers posed by the drug.

77. As a direct and proximate result of this defective product, Plaintiff sustained serious side effects including, but not limited to, removal of her gallbladder, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, medical monitoring and/or medications, and the fear of developing additional health consequences.

78. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to recover punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

## COUNT V
### Fraudulent Misrepresentation

79. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

80. Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of Yasmin and YAZ, owed a duty not to deceive the Plaintiff, her health care providers and the public regarding the character, safety, quality and/or effectiveness of their drug.

81. The duty not to deceive is distinct from than the duty to warn and thus, was not abrogated by the Ohio Product Liability Act found at Ohio R.C. § 2307.71 *et seq.*

82. Since the drug's approval in April of 2001, and on multiple occasions to the present date, Defendants fraudulently misrepresented and published information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality and/or effectiveness, including, but not limited to, the public ad campaigns which were the subject of the FDA's 2003, 2008 and 2009 warnings.

83. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

84. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding Yasmin and YAZ.

85. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

86. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

87. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff sustained serious side effects including, but not limited to, removal of her gallbladder, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, medical monitoring and/or medications, and the fear of developing additional health consequences.

88. Defendants' conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety to patients/consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

## COUNTS VI-VII
### Civil Conspiracy and Commercial Bribery

89. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

90. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these entities to use the drugs Yasmin and YAZ, and to convince their patients and others of the safety and effectiveness of Yasmin and YAZ.

## COUNT VIII
### Punitive Damages

102.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

103.   Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the public.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.   For an award of compensatory damages, including damages against Defendants and each of them for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.   For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.   For reasonable attorneys' fees and costs;

D.   For pre-judgment interest; and

E.   For such further and other relief the court deems just, equitable, and proper.

Dated: July 21, 2009

Respectfully Submitted,

/s/David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

/s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719

Email: michelle@toledolaw.com


  /s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.


  /s/David W. Zoll
David W. Zoll (0008548)

**L**

Armstrong, Cat08

## U.S. District Court
### Northern District of Ohio (Toledo)
### CIVIL DOCKET FOR CASE #: 3:09-cv-01687-DAK

Ellyson v. Bayer Corporation et al
Assigned to: Judge David A. Katz
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 07/21/2009
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Brenda Ellyson**                  represented by  **David W. Zoll**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: david@toledolaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: michelle@toledolaw.com
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
Zoll, Kranz & Borgess
Ste. 200
6620 Central Avenue
Toledo , OH 43617
419-841-9623
Fax: 419-841-9719
Email: pamela@toledolaw.com
*ATTORNEY TO BE NOTICED*

V.

Northern District of Ohio                                                    Page 2 of 2

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer Healthcare, LLC**

**Defendant**

**Bayer Pharmaceuticals Corporation**

**Defendant**

**Bayer Healthcare Pharmaceuticals Inc.**

**Defendant**

**Berlex Laboratories, Inc.**

**Defendant**

**Berlex, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2009 | 1 | **Complaint** with jury demand against Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.. Filing fee $ 350, receipt number 0647000000003656607, filed by Brenda Ellson. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Bayer Corporation, # 3 Summons Bayer Healthcare, LLC, # 4 Summons Bayer Pharmaceuticals Corporation, # 5 Summons Bayer Healthcare Pharmaceuticals, Inc., # 6 Summons Berlex Laboratories, Inc., # 7 Summons Berlex, Inc.) (Borgess, Pamela) (Entered: 07/21/2009) |
| 07/22/2009 | | Judge David A. Katz assigned to case. (M,C) (Entered: 07/22/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/22/2009 12:33:31 | | |
| PACER Login: | bs1052 | Client Code: | yasmin |
| Description: | Docket Report | Search Criteria: | 3:09-cv-01687-DAK |
| Billable Pages: | 2 | Cost: | 0.16 |

IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **BRENDA ELLYSON**<br>26 Jenning Ave.<br>Cuyahoga Falls, OH 44221 | ) <br> ) <br> ) <br> ) | CASE NO.<br><br>JUDGE |
| Plaintiff, | ) <br> ) | **COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON** |
| v. | ) <br> ) | |
| **BAYER CORPORATION**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | David W. Zoll  (0008548)<br>Michelle L. Kranz (0062479)<br>Pamela A. Borgess  (0072789)<br>ZOLL, KRANZ & BORGESS, LLC<br>6620 W. Central Ave., Suite 200<br>Toledo, OH  43617<br>(419) 841-9623<br>Fax: (419) 841-9719 |
| and | ) <br> ) | Email: david@toledolaw.com<br>        michelle@toledolaw.com |
| **BAYER HEALTHCARE LLC,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | ) <br> ) <br> ) <br> ) <br> ) <br> ) | pamela@toledolaw.com<br><br>*Counsel for Plaintiff* |
| and | ) <br> ) | |
| **BAYER PHARMACEUTICALS**<br>**CORPORATION,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| and | ) <br> ) <br> ) | |

**BAYER HEALTHCARE** )
**PHARMACEUTICALS INC.** )
c/o CSC-Lawyers Incorporating )
Service (Corporation Service )
Company) )
50 W. Broad St. Suite 1800 )
Columbus, OH 43215 )
)
and )
)
**BERLEX LABORATORIES, INC.** )
c/o CSC-Lawyers Incorporating )
Service (Corporation Service )
Company) )
340 Changebridge Road )
Montville, NJ 07045 )
)
and )
)
**BERLEX, INC.** )
c/o CSC-Lawyers Incorporating )
Service (Corporation Service )
Company) )
340 Changebridge Road )
Montville, NJ 07045 )
)
and )
)
**JOHN DOE MANUFACTURERS** )
**A-Z** )
[Real Names and Addresses )
Unknown] )
)
and )
)
**JOHN DOE DISTRIBUTORS A-Z** )
[Real Names and Addresses )
Unknown] )
)
    Defendants. )

---

  Now comes Plaintiff, by and through the undersigned counsel, and for her Complaint

hereby avers and states as follows:

## NATURE OF THE ACTION

1. This is an action for strict product liability (Ohio R.C. § 2307.71 *et seq.*), fraudulent misrepresentation, civil conspiracy and commercial bribery, loss of consortium, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug YAZ, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2. As a result of the ingestion of YAZ, Plaintiff suffered injuries to her person including, but not limited to, deep vein thrombosis.

## THE PARTIES

3. Plaintiff Brenda Ellyson, (herein "Plaintiff"), resides in the city of Cuyahoga Falls, Summit County, Ohio.

4. Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

5. At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

6. Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

7. At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing,

and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

8. Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

9. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

10. At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

11. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

12. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

13. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

14. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

15. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. applied for and received U.S. marketing approval of Yasmin and YAZ by the FDA, and is the holder of approved New Drug Application ("NDA") for Yasmin and YAZ.

16. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

17. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

18. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

19. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching,

selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

20. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

21. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., and John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

22. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

23. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

25. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YAZ, as well as Plaintiff's resulting injuries.

26. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of Yasmin and YAZ within this District.

27. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

## FACTS

### Yasmin and YAZ Background

28. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

29. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of

drospirenone and 0.03 mg of ethinyl estradiol per tablet).

30. Combination birth control pills are referred to as combined hormonal oral contraceptives.

31. Yasmin was approved by the FDA in April, 2001.

32. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

33. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

34. Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks and strokes.

35. During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

36. During the 1990s, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has

required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

37. Yasmin and YAZ contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

38. However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and YAZ marketed under the trade name, Ocella.

39. Since drospirenone in birth control is new, there are not decades of data available to support its safe use as there are with second generation progestins. Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

40. One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

41. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses or bradycardia. If left untreated, hyperkalemia can be fatal.

42. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form, including deep vein thrombosis. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

43. Another effect is a substantially increased risk of gallbladder complications.

44. During the brief time that Yasmin and YAZ have been sold in the United States,

hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

45. In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

46. In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

47. In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and YAZ have been filed with the FDA.

48. These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism and stroke in women in their child bearing years.

49. Some deaths reported occurred in women as young as 17 years old.

50. Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or YAZ.

### Defendants' Over-Promotion, Fraud and Failures Regarding Yasmin and YAZ

51. Defendants market Yasmin and YAZ as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

52. However, because Yasmin and YAZ contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

53. Defendants have been warned at least three times by the FDA; in 2003, 2008 and

2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

54. Indeed, the FDA felt Defendants' over-promotion of YAZ was so severe that it required Bayer to run new TV advertisements to correct the previous misleading YAZ advertisements.

55. Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all YAZ advertisements to the FDA for advanced screening for the next six years.

56. Defendants ignored the correlation between the use of Yasmin and YAZ and increased thrombosis formation despite the wealth of scientific information available.

57. Upon information and belief, Defendants knew or should have known about the correlation between the use of Yasmin and YAZ and a prothrombotic effect and still promoted, sold, advertised, and marketed the use of Yasmin and YAZ.

58. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that Yasmin and YAZ had been tested and was found to be safe and/or effective for its indicated use.

59. These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase Yasmin and YAZ for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

60. Defendants knew and were aware or should have been aware that Yasmin and YAZ had not been sufficiently tested, was defective in its design and testing, and/or lacked adequate

and/or sufficient warnings.

61. Defendants knew or should have known that Yasmin and YAZ had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate and/or down-played warnings.

62. In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

a.     That Yasmin/YAZ is not as safe as other available contraceptives;

b.     That the risks of adverse events with Yasmin/YAZ (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

c.     That the risks of adverse events with Yasmin/YAZ was not adequately tested and/or known by Defendants;

d.     Plaintiff was put at risk of experiencing serious and dangerous side effects including, but not limited to, deep vein thrombosis, as well as other severe and personal injuries, physical pain, and mental anguish;

e.     That patients needed to be monitored more regularly than normal while using Yasmin/YAZ; and/or

f.     That Yasmin/YAZ was designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

63. Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of Yasmin and YAZ.

64. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used Yasmin and YAZ, including Plaintiff.

65. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ with the intention and specific desire that

the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Yasmin and YAZ as a contraceptive.

66. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

67. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

68. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Yasmin and YAZ, as set forth herein.

69. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.   Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of Yasmin and YAZ.

70. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet they failed to provide such warning.

## FACTS REGARDING PLAINTIFF BRENDA ELLYSON

71. Plaintiff Brenda Ellyson was prescribed YAZ by her health care provider.

72.  Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YAZ to her detriment.

73. As a result of using Defendants' product YAZ, on or about June 23, 2009, Plaintiff sustained serious and life-threatening side effects including, but not limited to, deep vein thrombosis (DVT), future thromboembolic events, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

## CAUSES OF ACTION

### COUNTS I-IV
**Defective Manufacturing/Construction (R.C. § 2307.74)**
**Defective Design/Formulation (R.C. § 2307.75)**
**Defective Warning/Instruction (R.C. § 2307.76)**
**Defective Due to Nonconformity with Representation (R.C. § 2307.77)**

74. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

75. At all times relevant to this action, Defendants were the manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drugs, Yasmin and YAZ, that were placed into the stream of commerce.

76. The Yasmin and YAZ birth control pills were expected to and did reach the ultimate users, including Plaintiff, without substantial change in the condition they were sold.

77. The Yasmin and YAZ birth control pills manufactured, designed, sold, distributed, supplied, promoted and/or place in the stream of commerce by Defendant were defective in their:

   a.   Manufacture and construction pursuant to the provisions of Ohio Revised Code § 2307.74;

   b.   Design pursuant to the provisions of Ohio Revised Code § 2307.75;

    c.    Inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, and/or

    d.    Failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

78. Specifically, Defendants' failures, which permitted defective drugs, Yasmin and YAZ, to be placed in the stream of commerce, include, but are not necessarily limited to:

    a.    Defendants' failure to exercise reasonable care in the manufacture, design and testing of Yasmin and YAZ;

    b.    Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the substantially increased risks and serious side effects of the drug;

    c.    Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

    d.    Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious increased side effects, including, but not limited to, deep vein thrombosis, and other serious and life threatening side effects;

    e.    Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, deep vein thrombosis and other serious and life threatening side effects;

    f.    Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

    g.    Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

    h.    Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

79. Yasmin and YAZ were unsafe for normal or reasonably anticipated use.

80. Plaintiff was using the drug in the manner for which it was intended and/or in a reasonably foreseeable manner.

81. Plaintiff could not, through the exercise of reasonable care, have discovered the defects or perceived the dangers posed by the drug.

82. As a direct and proximate result of this defective product, Plaintiff has been injured and incurred substantial damages, including, but not limited to, deep vein thrombosis, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

83. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to recover punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

**COUNT V**
**Fraudulent Misrepresentation**

84. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

85. Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of Yasmin and YAZ, owed a duty not to deceive the Plaintiff, her health care providers and the public regarding the character, safety, quality and/or effectiveness of their drug.

86. The duty not to deceive is distinct from than the duty to warn and thus, was not abrogated by the Ohio Product Liability Act found at Ohio R.C. § 2307.71 *et seq.*

87. Since the drug's approval in April of 2001, and on multiple occasions to the present date, Defendants fraudulently misrepresented and published information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality and/or effectiveness, including, but not limited to, the public ad campaigns which were the subject of the FDA's 2003, 2008 and 2009 warnings.

88. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

89. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding Yasmin and YAZ.

90. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

91. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

92. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered serious and life-threatening side effects including but not limited to, deep vein thrombosis, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

93. Defendants' conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety to patients/consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

## COUNTS VI-VII
### Civil Conspiracy and Commercial Bribery

94. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

95. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these entities to use the drugs Yasmin and YAZ, and to convince their patients and others of the safety and effectiveness of Yasmin and YAZ.

## COUNT VIII
### Punitive Damages

102.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

103.  Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the public.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.     For an award of compensatory damages, including damages against Defendants and each of them for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.     For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.     For reasonable attorneys' fees and costs;

D.     For pre-judgment interest; and

E.     For such further and other relief the court deems just, equitable, and proper.

Dated: July 21, 2009

Respectfully Submitted,

/s/David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

/s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com

/s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

/s/David W. Zoll
David W. Zoll (0008548)

**M**

Armstrong, Cat08

# U.S. District Court
## Northern District of Ohio (Toledo)
## CIVIL DOCKET FOR CASE #: 3:09-cv-01685-DAK

Johns et al v. Bayer Corporation et al
Assigned to: Judge David A. Katz
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 07/21/2009
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**William Johns**                                        represented by **David W. Zoll**
                                                          Zoll, Kranz & Borgess
                                                          Ste. 200
                                                          6620 Central Avenue
                                                          Toledo , OH 43617
                                                          419-841-9623
                                                          Fax: 419-841-9719
                                                          Email: david@toledolaw.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Michelle L. Kranz**
                                                          Zoll, Kranz & Borgess
                                                          Ste. 200
                                                          6620 Central Avenue
                                                          Toledo , OH 43617
                                                          419-841-9623
                                                          Fax: 419-841-9719
                                                          Email: michelle@toledolaw.com
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Pamela A. Borgess**
                                                          Zoll, Kranz & Borgess
                                                          Ste. 200
                                                          6620 Central Avenue
                                                          Toledo , OH 43617
                                                          419-841-9623
                                                          Fax: 419-841-9719
                                                          Email: pamela@toledolaw.com
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kathy Johns**                                          represented by **David W. Zoll**

Northern District of Ohio                                                      Page 2 of 2

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**

**Defendant**

**Bayer Healthcare LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2009 | 1 | **Complaint** with jury demand against all defendants. Filing fee $ 350, receipt number 06470000000003656604, filed by Kathy Johns, William Johns. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Bayer Healthcare, LLC, # 3 Summons Bayer Pharma Corp, # 4 Summons Bayer Healthcare Pharma Inc, # 5 Summons Berlex Inc, # 6 Summons Berlex Labs, # 7 Summons Bayer Corp) (Zoll, David) Modified on 7/22/2009 (L,V). (Entered: 07/21/2009) |
| 07/22/2009 | | Judge David A. Katz assigned to case. (M,C) (Entered: 07/22/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/22/2009 12:26:08 | | |
| **PACER Login:** bs1052 | **Client Code:** | yasmin |
| **Description:** Docket Report | **Search Criteria:** | 3:09-cv-01685-DAK |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

**IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **KATHY JOHNS**<br>12167 Crockett Highway<br>Blissfield, MI 49228 | ) <br> ) <br> ) <br> ) | CASE NO.<br><br>JUDGE |
| and | ) <br> ) | **COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON** |
| **WILLIAM JOHNS**<br>12167 Crockett Highway<br>Blissfield, MI 49228 | ) <br> ) <br> ) <br> ) | David W. Zoll  (0008548)<br>Michelle L. Kranz (0062479)<br>Pamela A. Borgess  (0072789) |
| Plaintiffs, | ) <br> ) | ZOLL, KRANZ & BORGESS, LLC<br>6620 W. Central Ave., Suite 200<br>Toledo, OH  43617 |
| v. | ) <br> ) <br> ) | (419) 841-9623<br>Fax: (419) 841-9719<br>Email: david@toledolaw.com |
| **BAYER CORPORATION**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | michelle@toledolaw.com<br>pamela@toledolaw.com<br><br>*Counsel for Plaintiffs* |
| and | ) <br> ) | |
| **BAYER HEALTHCARE LLC,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| and | ) <br> ) | |
| **BAYER PHARMACEUTICALS**<br>**CORPORATION,**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service | ) <br> ) <br> ) <br> ) | |

1

Company)                                    )
50 W. Broad St. Suite 1800                  )
Columbus, OH 43215                          )
                                            )
and                                         )
                                            )
**BAYER HEALTHCARE**                        )
**PHARMACEUTICALS INC.**                    )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
50 W. Broad St. Suite 1800                  )
Columbus, OH 43215                          )
                                            )
and                                         )
                                            )
**BERLEX LABORATORIES, INC.**               )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
340 Changebridge Road                       )
Montville, NJ 07045                         )
                                            )
and                                         )
                                            )
**BERLEX, INC.**                            )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
340 Changebridge Road                       )
Montville, NJ 07045                         )
                                            )
and                                         )
                                            )
**JOHN DOE MANUFACTURERS**                  )
**A-Z**                                     )
[Real Names and Addresses                   )
Unknown]                                    )
                                            )
and                                         )
                                            )
**JOHN DOE DISTRIBUTORS A-Z**               )
[Real Names and Addresses                   )
Unknown]                                    )
                                            )
                    Defendants.             )

2

Now come Plaintiffs, by and through the undersigned counsel, and for their Complaint hereby aver and state as follows:

## NATURE OF THE ACTION

1. This is an action for strict product liability (Ohio R.C. § 2307.71 *et seq.*), fraudulent misrepresentation, civil conspiracy and commercial bribery, loss of consortium, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug YAZ, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2. As a result of the ingestion of YAZ, Plaintiff Kathy Johns has suffered injuries to her person including, but not limited to, deep vein thrombosis and pulmonary embolism.

## THE PARTIES

3. Plaintiff Kathy Johns, (herein "Plaintiff"), resides in Blissfield, Lenawee County, Michigan.

4. Plaintiff is married to Plaintiff William Johns, who also resides in Blissfield, Lenawee County, Michigan.

5. Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

6. At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

3

7.  Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

8.  At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

9.  Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

10. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

11. At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

12. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

13. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a

4

principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

14. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

15. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

16. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. applied for and received U.S. marketing approval of Yasmin and YAZ by the FDA, and is the holder of approved New Drug Application ("NDA") for Yasmin and YAZ.

17. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

18. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

19. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio,

either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

20. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

21. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

22. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., and John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

23. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of

any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

24. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

26. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YAZ.

27. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of Yasmin and YAZ within this District.

28. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

## FACTS

### Yasmin and YAZ Background

29. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

30. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

31. Combination birth control pills are referred to as combined hormonal oral contraceptives.

32. Yasmin was approved by the FDA in April, 2001.

33. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

34. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

35. Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks and strokes.

36. During this time, new progestins were being developed, which became known as

"second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

37. During the 1990s, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

38. Yasmin and YAZ contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

39. However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and YAZ marketed under the trade name, Ocella.

40. Since drospirenone in birth control is new, there are not decades of data available to support its safe use as there are with second generation progestins. Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

41. One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

42. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses or bradycardia. If left untreated, hyperkalemia can be fatal.

43. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

44. Another effect is a substantially increased risk of gallbladder complications.

45. During the brief time that Yasmin and YAZ have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

46. In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

47. In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

48. In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and YAZ have been filed with the FDA.

49. These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism and stroke in women in their child bearing years.

50. Some deaths reported occurred in women as young as 17 years old.

51. Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or YAZ.

### Defendants' Over-Promotion, Fraud and Failures Regarding Yasmin and YAZ

52. Defendants market Yasmin and YAZ as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

53. However, because Yasmin and YAZ contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

54. Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

55. Indeed, the FDA felt Defendants' over-promotion of YAZ was so severe that it required Bayer to run new TV advertisements to correct the previous misleading YAZ advertisements.

56. Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all YAZ advertisements to the FDA for advanced screening for the next six years.

57. Defendants ignored the correlation between the use of Yasmin and YAZ and increased thrombosis formation despite the wealth of scientific information available.

58. Upon information and belief, Defendants knew or should have known about the correlation between the use of Yasmin and YAZ and a prothrombotic effect and still promoted, sold, advertised, and marketed the use of Yasmin and YAZ.

59. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that Yasmin and YAZ had been tested and was found to be safe and/or effective for its indicated use.

60. These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in

particular, and were made with the intent of inducing the public in general, and the medical and

healthcare community in particular, to recommend, dispense and/or purchase Yasmin and YAZ

for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference

to the health, safety and welfare of Plaintiff.

61. Defendants knew and were aware or should have been aware that Yasmin and YAZ

had not been sufficiently tested, was defective in its design and testing, and/or lacked adequate

and/or sufficient warnings.

62. Defendants knew or should have known that Yasmin and YAZ had a potential to,

could, and would cause severe and grievous injury and death to the users of said product, and

that it was inherently dangerous in a manner that exceeded any purported, inaccurate and/or

down-played warnings.

63. In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants

also fraudulently concealed and intentionally omitted the following material information:

a.      That Yasmin/YAZ is not as safe as other available contraceptives;

b.      That the risks of adverse events with Yasmin/YAZ (drospirenone and ethinyl
        estradiol) was higher than those of other available contraceptives;

c.      That the risks of adverse events with Yasmin/YAZ was not adequately tested
        and/or known by Defendants;

d.      Plaintiff was put at risk of experiencing serious and dangerous side effects
        including, but not limited to, deep vein thrombosis, pulmonary embolisms, as well
        as other severe and personal injuries, physical pain, and mental anguish;

e.      That patients needed to be monitored more regularly than normal while using
        Yasmin/YAZ; and/or

f.      That Yasmin/YAZ was designed, tested, manufactured, marketed, produced,
        distributed and advertised negligently, defectively, fraudulently and improperly.

64. Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals,

healthcare providers and/or the FDA the defective nature of Yasmin and YAZ.

65. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used Yasmin and YAZ, including Plaintiff.

66. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Yasmin and YAZ as a contraceptive.

67. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

68. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

69. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Yasmin and YAZ, as set forth herein.

70. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.    Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of Yasmin and YAZ.

71. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about

the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet they failed to provide such warning.

### FACTS REGARDING PLAINTIFF KATHY JOHNS

72. Plaintiff was prescribed YAZ by her health care provider in Maumee, Lucas County, Ohio.

73. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YAZ to her detriment.

74. As a result of using Defendants' product YAZ, in October of 2007, Plaintiff suffered serious and life-threatening side effects including but not limited to, deep vein thrombosis and a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

75. Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least June of 2009.

### CAUSES OF ACTION

#### COUNTS I-IV
**Defective Manufacturing/Construction (R.C. § 2307.74)**
**Defective Design/Formulation (R.C. § 2307.75)**
**Defective Warning/Instruction (R.C. § 2307.76)**
**Defective Due to Nonconformity with Representation (R.C. § 2307.77)**

76. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

77. At all times relevant to this action, Defendants were the manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drugs, Yasmin and YAZ, that were placed into the stream of commerce.

78. The Yasmin and YAZ birth control pills were expected to and did reach the ultimate users, including Plaintiff, without substantial change in the condition they were sold.

79. The Yasmin and YAZ birth control pills manufactured, designed, sold, distributed, supplied, promoted and/or place in the stream of commerce by Defendant were defective in their:

a. Manufacture and construction pursuant to the provisions of Ohio Revised Code § 2307.74;

b. Design pursuant to the provisions of Ohio Revised Code § 2307.75;

c. Inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, and/or

d. Failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

80. Specifically, Defendants' failures, which permitted defective drugs, Yasmin and YAZ, to be placed in the stream of commerce, include, but are not necessarily limited to:

a. Defendants' failure to exercise reasonable care in the manufacture, design and testing of Yasmin and YAZ;

b. Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the substantially increased risks and serious side effects of the drug;

c. Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

d. Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious increased side

15

effects, including, but not limited to, deep vein thrombosis, pulmonary embolisms, and other serious and life threatening side effects;

e.   Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, deep vein thrombosis, pulmonary embolisms and other serious and life threatening side effects;

f.   Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

g.   Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

h.   Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

81. Yasmin and YAZ were unsafe for normal or reasonably anticipated use.

82. Plaintiff was using the drug in the manner for which it was intended and/or in a reasonably foreseeable manner.

83. Plaintiff could not, through the exercise of reasonable care, have discovered the defects or perceived the dangers posed by the drug.

84. As a direct and proximate result of this defective product, Plaintiff has been injured and incurred substantial damages, including, but not limited to, deep vein thrombosis and a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

85. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to recover punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

<u>COUNT V</u>
**Fraudulent Misrepresentation**

86. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

87. Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of Yasmin and YAZ, owed a duty not to deceive the Plaintiff, her health care providers and the public regarding the character, safety, quality and/or effectiveness of their drug.

88. The duty not to deceive is distinct from than the duty to warn and thus, was not abrogated by the Ohio Product Liability Act found at Ohio R.C. § 2307.71 *et seq.*

89. Since the drug's approval in April of 2001, and on multiple occasions to the present date, Defendants fraudulently misrepresented and published information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality and/or effectiveness, including, but not limited to, the public ad campaigns which were the subject of the FDA's 2003, 2008 and 2009 warnings.

90. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

91. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding Yasmin and YAZ.

17

92. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

93. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

94. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered serious and life-threatening side effects including but not limited to, deep vein thrombosis and a pulmonary embolism, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

95. Defendants' conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety to patients/consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

## COUNTS VI-VII
### Civil Conspiracy and Commercial Bribery

96. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

97. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these

18

entities to use the drugs Yasmin and YAZ, and to convince their patients and others of the safety and effectiveness of Yasmin and YAZ.

## COUNT VIII
### Loss of Consortium

98. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

99. As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff, Plaintiff William Johns has suffered the loss of companionship, society, services, and consortium of his wife.

## COUNT IX
### Punitive Damages

100. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

101. Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the public.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.    For an award of compensatory damages, including damages against Defendants and each of them for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.    For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.     For reasonable attorneys' fees and costs;

D.     For pre-judgment interest; and

E.     For such further and other relief the court deems just, equitable, and proper.

Dated: July 21, 2009

Respectfully Submitted,

/s/David W. Zoll
David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

/s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com

/s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiffs*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

_/s/David W. Zoll_____
David W. Zoll (0008548)

N

Northern District of Ohio                                                          Page 1 of 3

Armstrong, Cat08

**U.S. District Court**
**Northern District of Ohio (Toledo)**
**CIVIL DOCKET FOR CASE #: 3:09-cv-01688-JZ**

Main et al v. Bayer Corporation et al                Date Filed: 07/21/2009
Assigned to: Judge Jack Zouhary                      Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury             Nature of Suit: 355 Motor Vehicle Prod.
                                                     Liability
                                                     Jurisdiction: Diversity

**Plaintiff**

**Saretta Main**                      represented by  **David W. Zoll**
                                                      Zoll, Kranz & Borgess
                                                      Ste. 200
                                                      6620 Central Avenue
                                                      Toledo , OH 43617
                                                      419-841-9623
                                                      Fax: 419-841-9719
                                                      Email: david@toledolaw.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Michelle L. Kranz**
                                                      Zoll, Kranz & Borgess
                                                      Ste. 200
                                                      6620 Central Avenue
                                                      Toledo , OH 43617
                                                      419-841-9623
                                                      Fax: 419-841-9719
                                                      Email: michelle@toledolaw.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Pamela A. Borgess**
                                                      Zoll, Kranz & Borgess
                                                      Ste. 200
                                                      6620 Central Avenue
                                                      Toledo , OH 43617
                                                      419-841-9623
                                                      Fax: 419-841-9719
                                                      Email: pamela@toledolaw.com

**Plaintiff**

**Christina Maniaci**                 represented by  **David W. Zoll**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Michelle L. Kranz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pamela A. Borgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**Bayer Corporation**

<u>Defendant</u>

**Bayer Healthcare, LLC**

<u>Defendant</u>

**Bayer Pharmaceuticals Corporation**

<u>Defendant</u>

**Bayer Healthcare Pharmaceuticals Inc.**

<u>Defendant</u>

**Berlex Laboratories, Inc.**

<u>Defendant</u>

**Berlex, Inc.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/21/2009 | 1 | **Complaint** with jury demand against Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.. Filing fee $ 350, receipt number 06470000000003656635, filed by Saretta Main, Christina Maniaci. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Bayer Corporation, # 3 Summons Bayer Healthcare, LLC, # 4 Summons Bayer Pharmaceuticals Corporation, # 5 Summons Bayer Healthcare Pharmaceuticals, Inc., # 6 Summons Berlex Laboratories, Inc., # 7 Summons Berlex, Inc.) (Borgess, Pamela) (Entered: 07/21/2009) |
| 07/22/2009 |   | Judge Jack Zouhary assigned to case. (M,C) (Entered: 07/22/2009) |

**PACER Service Center**

**Transaction Receipt**

| 07/22/2009 12:34:02 | | | |
|---|---|---|---|
| PACER Login: | bs1052 | Client Code: | yasmin |
| Description: | Docket Report | Search Criteria: | 3:09-cv-01688-JZ |
| Billable Pages: | 2 | Cost: | 0.16 |

**IN THE U.S. DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **SARETTA MAIN**<br>4010 LaRue Green Camp Rd.<br>Marion, OH 43302 )<br> )<br> ) | CASE NO. |
| )<br>and )<br> ) | JUDGE |
| )<br> ) | **COMPLAINT WITH JURY DEMAND** |
| **CHRISTINA MANIACI** )<br>4020 LaRue Green Camp Rd. )<br>Marion, OH 43302 ) | **ENDORSED HEREON** |
| ) | David W. Zoll  (0008548) |
| ) | Michelle L. Kranz (0062479) |
| Plaintiffs, ) | Pamela A. Borgess  (0072789) |
| ) | ZOLL, KRANZ & BORGESS, LLC |
| v. ) | 6620 W. Central Ave., Suite 200 |
| ) | Toledo, OH  43617 |
| ) | (419) 841-9623 |
| **BAYER CORPORATION** ) | Fax: (419) 841-9719 |
| c/o CSC-Lawyers Incorporating ) | Email: david@toledolaw.com |
| Service (Corporation Service ) | michelle@toledolaw.com |
| Company) ) | pamela@toledolaw.com |
| 50 W. Broad St. Suite 1800 ) | |
| Columbus, OH 43215 ) | *Counsel for Plaintiffs* |
| ) | |
| and ) | |
| ) | |
| **BAYER HEALTHCARE LLC,** ) | |
| c/o CSC-Lawyers Incorporating ) | |
| Service (Corporation Service ) | |
| Company) ) | |
| 50 W. Broad St. Suite 1800 ) | |
| Columbus, OH 43215 ) | |
| ) | |
| and ) | |
| ) | |
| **BAYER PHARMACEUTICALS** ) | |
| **CORPORATION,** ) | |
| c/o CSC-Lawyers Incorporating ) | |
| Service (Corporation Service ) | |

1

Company)                                    )
50 W. Broad St. Suite 1800                  )
Columbus, OH 43215                          )
                                            )
and                                         )
                                            )
**BAYER HEALTHCARE**                        )
**PHARMACEUTICALS INC.**                    )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
50 W. Broad St. Suite 1800                  )
Columbus, OH 43215                          )
                                            )
and                                         )
                                            )
**BERLEX LABORATORIES, INC.**               )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
340 Changebridge Road                       )
Montville, NJ 07045                         )
                                            )
and                                         )
                                            )
**BERLEX, INC.**                            )
c/o CSC-Lawyers Incorporating               )
Service (Corporation Service                )
Company)                                    )
340 Changebridge Road                       )
Montville, NJ 07045                         )
                                            )
and                                         )
                                            )
**JOHN DOE MANUFACTURERS**                  )
**A-Z**                                     )
[Real Names and Addresses                   )
Unknown]                                    )
                                            )
and                                         )
                                            )
**JOHN DOE DISTRIBUTORS A-Z**               )
[Real Names and Addresses                   )
Unknown]                                    )
                                            )
            Defendants.                     )

Now come Plaintiffs, by and through the undersigned counsel, and for their Complaint hereby aver and state as follows:

## NATURE OF THE ACTION

1.  This is an action for strict product liability (Ohio R.C. § 2307.71 *et seq.*), fraudulent misrepresentation, civil conspiracy and commercial bribery, loss of consortium, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug Yasmin, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2.  As a result of the ingestion of Yasmin, Plaintiff Saretta Main suffered injuries to her person including, but not limited to, deep vein thrombosis.

## THE PARTIES

3.  Plaintiff   Saretta   Main,   (herein   "Plaintiff"),   resides   in   the   city   of Marion, Marion County, Ohio.

4.  Plaintiff Christina Maniaci resides in the city of Marion, Marion County, Ohio.

5.  Plaintiff Christina Maniaci is the mother of Saretta Main, who was a minor when she first suffered injury as a result of Yasmin.

6.  Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

7.  At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or

introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

8.  Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

9.  At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

10. Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

11. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

12. At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

13. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

14. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

15. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

16. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

17. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. applied for and received U.S. marketing approval of Yasmin and YAZ by the FDA, and is the holder of approved New Drug Application ("NDA") for Yasmin and YAZ.

18. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

19. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

20. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.

21. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

22. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including Yasmin and YAZ into interstate commerce, including in the Northern District of Ohio, and derived substantial revenue from these activities.

23. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., and John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

24. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

25. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

26. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

27. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of Yasmin, as well as Plaintiff's resulting injuries.

28. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Northern District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of Yasmin and YAZ within this District.

29. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

## FACTS

### Yasmin and YAZ Background

30. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

31. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

32. Combination birth control pills are referred to as combined hormonal oral contraceptives.

33. Yasmin was approved by the FDA in April, 2001.

34. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

35. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

36. Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels

reduced, so too did the risk of blood clots, heart attacks and strokes.

37. During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

38. During the 1990s, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

39. Yasmin and YAZ contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

40. However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and YAZ marketed under the trade name, Ocella.

41. Since drospirenone in birth control is new, there are not decades of data available to support its safe use as there are with second generation progestins. Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

42. One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

43. Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses or bradycardia. If left untreated, hyperkalemia can be fatal.

44. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form, including deep vein thrombosis. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

45. Another effect is a substantially increased risk of gallbladder complications.

46. During the brief time that Yasmin and YAZ have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

47. In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

48. In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

49. In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and YAZ have been filed with the FDA.

50. These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism and stroke in women in their child bearing years.

51. Some deaths reported occurred in women as young as 17 years old.

52. Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or YAZ.

**Defendants' Over-Promotion, Fraud and Failures Regarding Yasmin and YAZ**

53. Defendants market Yasmin and YAZ as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

54. However, because Yasmin and YAZ contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

55. Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

56. Indeed, the FDA felt Defendants' over-promotion of YAZ was so severe that it required Bayer to run new TV advertisements to correct the previous misleading YAZ advertisements.

57. Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all YAZ advertisements to the FDA for advanced screening for the next six years.

58. Defendants ignored the correlation between the use of Yasmin and YAZ and increased thrombosis formation despite the wealth of scientific information available.

59. Upon information and belief, Defendants knew or should have known about the correlation between the use of Yasmin and YAZ and a prothrombotic effect and still promoted, sold, advertised, and marketed the use of Yasmin and YAZ.

60. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that Yasmin and YAZ had been

tested and was found to be safe and/or effective for its indicated use.

61. These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase Yasmin and YAZ for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

62. Defendants knew and were aware or should have been aware that Yasmin and YAZ had not been sufficiently tested, was defective in its design and testing, and/or lacked adequate and/or sufficient warnings.

63. Defendants knew or should have known that Yasmin and YAZ had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate and/or down-played warnings.

64. In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

   a.   That Yasmin/YAZ is not as safe as other available contraceptives;

   b.   That the risks of adverse events with Yasmin/YAZ (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

   c.   That the risks of adverse events with Yasmin/YAZ was not adequately tested and/or known by Defendants;

   d.   Plaintiff was put at risk of experiencing serious and dangerous side effects including, but not limited to, deep vein thrombosis, as well as other severe and personal injuries, physical pain, and mental anguish;

   e.    That patients needed to be monitored more regularly than normal while using Yasmin/YAZ; and/or

f.      That Yasmin/YAZ was designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

65. Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of Yasmin and YAZ.

66. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used Yasmin and YAZ, including Plaintiff.

67. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Yasmin and YAZ as a contraceptive.

68. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

69. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

70. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Yasmin and YAZ, as set forth herein.

71. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.     Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of Yasmin and

YAZ.

72. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet they failed to provide such warning.

## FACTS REGARDING PLAINTIFF SARETTA MAIN

73. Plaintiff Saretta Main was prescribed Yasmin by her health care provider.

74. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Yasmin to her detriment.

75. As a result of using Defendants' product Yasmin, Plaintiff Saretta Main sustained serious and life-threatening side effects including, but not limited to, deep vein thrombosis (DVT), in approximately August of 2004, when she was seventeen years old.  Thereafter, she suffered another DVT in September of 2006. Plaintiffs' injuries also include future thromboembolic events, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

76. Plaintiffs did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until only recently in June of 2009.

## CAUSES OF ACTION

### Counts I-IV
**Defective Manufacturing/Construction (R.C. § 2307.74)**
**Defective Design/Formulation (R.C. § 2307.75)**

**Defective Warning/Instruction (R.C. § 2307.76)**

**Defective Due to Nonconformity with Representation (R.C. § 2307.77)**

77. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

78. At all times relevant to this action, Defendants were the manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drugs, Yasmin and YAZ, that were placed into the stream of commerce.

79. The Yasmin and YAZ birth control pills were expected to and did reach the ultimate users, including Plaintiff, without substantial change in the condition they were sold.

80. The Yasmin and YAZ birth control pills manufactured, designed, sold, distributed, supplied, promoted and/or place in the stream of commerce by Defendant were defective in their:

    a.    Manufacture and construction pursuant to the provisions of Ohio Revised Code § 2307.74;

    b.    Design pursuant to the provisions of Ohio Revised Code § 2307.75;

    c.    Inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, and/or

    d.    Failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

81. Specifically, Defendants' failures, which permitted defective drugs, Yasmin and YAZ, to be placed in the stream of commerce, include, but are not necessarily limited to:

    a.    Defendants' failure to exercise reasonable care in the manufacture, design and testing of Yasmin and YAZ;

    b.    Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the substantially increased risks and serious side effects of the drug;

c.    Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

d.    Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious increased side effects, including, but not limited to, deep vein thrombosis, and other serious and life threatening side effects;

e.    Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, deep vein thrombosis and other serious and life threatening side effects;

f.    Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

g.    Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

h.    Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

82. Yasmin and YAZ were unsafe for normal or reasonably anticipated use.

83. Plaintiff was using the drug in the manner for which it was intended and/or in a reasonably foreseeable manner.

84. Plaintiff could not, through the exercise of reasonable care, have discovered the defects or perceived the dangers posed by the drug.

85. As a direct and proximate result of this defective product, Plaintiff has been injured and incurred substantial damages, including, but not limited to, deep vein thrombosis, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of

life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

86. Defendants' conduct was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to recover punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

**COUNT V**
**Fraudulent Misrepresentation**

87. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows.

88. Defendants, having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of Yasmin and YAZ, owed a duty not to deceive the Plaintiff, her health care providers and the public regarding the character, safety, quality and/or effectiveness of their drug.

89. The duty not to deceive is distinct from than the duty to warn and thus, was not abrogated by the Ohio Product Liability Act found at Ohio R.C. § 2307.71 *et seq.*

90. Since the drug's approval in April of 2001, and on multiple occasions to the present date, Defendants fraudulently misrepresented and published information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's character, safety, quality and/or effectiveness, including, but not limited to, the public ad campaigns which were the subject of the FDA's 2003, 2008 and 2009 warnings.

91. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

92. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding Yasmin and YAZ.

93. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

94. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

95. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered serious and life-threatening side effects including but not limited to, deep vein thrombosis, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

96. Defendants' conduct was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety to patients/consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish Defendants and deter them from similar conduct in the future.

## COUNTS VI-VII
### Civil Conspiracy and Commercial Bribery

97. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

98. Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the

same upon physicians, pharmacists, and insurance companies for the purpose of enticing these entities to use the drugs Yasmin and YAZ, and to convince their patients and others of the safety and effectiveness of Yasmin and YAZ.

## COUNT VIII
### (Loss of Consortium)

99. Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully restated herein.

100. Plaintiff Christina Maniaci incurred medical expenses and lost the affection, society, love, and companionship of her daughter Plaintiff Sareetta Main, as a direct and proximate result of the negligence of Defendants.

## COUNT IX
### Punitive Damages

102.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

103.  Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the public.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.    For an award of compensatory damages, including damages against Defendants and each of them for wrongful death, medical and hospital expenses, loss of income, loss of consortium, and other damages according to proof at trial in excess of $75,000;

B.    For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.      For reasonable attorneys' fees and costs;

D.      For pre-judgment interest; and

E.      For such further and other relief the court deems just, equitable, and proper.

Dated: July 21, 2009

Respectfully Submitted,

/s/David W. Zoll

David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

/s/Michelle Kranz

Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com

/s/Pamela A. Borgess

Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiffs*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

/s/David W. Zoll
David W. Zoll (0008548)

**O**

JURY

# U.S. District Court
## Southern District of Ohio (Cincinnati)
### CIVIL DOCKET FOR CASE #: 1:09-cv-00387-SSB-TSB

Riley v. Bayer Corporation et al                    Date Filed: 05/29/2009
Assigned to: Judge Sandra S Beckwith               Jury Demand: Plaintiff
Referred to: Magistrate Judge Timothy S. Black     Nature of Suit: 365 Personal Inj. Prod.
Cause: 28:1332 Diversity-Personal Injury           Liability
                                                    Jurisdiction: Diversity

**Plaintiff**

**Heather Riley**                    represented by **David W Zoll**
                                                    Zoll & Kranz
                                                    6620 W Central Avenue
                                                    Suite 200
                                                    Toledo , OH 43617
                                                    419-841-9623
                                                    Fax: 419-841-9719
                                                    Email: david@toledolaw.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Michelle L Kranz**
                                                    Zoll, Kranz & Borgess, LLC
                                                    6620 W. Central Avenue
                                                    Suite 200
                                                    Toledo , OH 43617
                                                    419-841-9623
                                                    Fax: 419-841-9719
                                                    Email: michelle@toledolaw.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Pamela A Borgess**
                                                    6620 W. Central Ave., Suite 200
                                                    Toledo , OH 43617
                                                    419 841 9623
                                                    Fax: 419 841 9719
                                                    Email: pamela@toledolaw.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**                    represented by **Sarah K Rathke**
                                                        4900 Key Tower
                                                        127 Public Square
                                                        Cleveland , OH 44114-1304
                                                        216-479-8379
                                                        Fax: 216-479-8777
                                                        Email: srathke@ssd.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Robert Alan Amicone , II**
                                                        Squire Sanders & Dempsey
                                                        221 E. Fourth St.
                                                        Suite 2900
                                                        Cincinnati , OH 45202
                                                        513-361-1200
                                                        Fax: 513-361-1201
                                                        Email: ramicone@ssd.com
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Bayer Healthcare, LLC**                represented by **Sarah K Rathke**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Robert Alan Amicone , II**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Bayer Pharmaceuticals Corporation**    represented by **Sarah K Rathke**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Robert Alan Amicone , II**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Bayer Healthcare Pharmaceuticals**     represented by **Sarah K Rathke**
**Inc**                                                 (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Robert Alan Amicone , II**
                                                        (See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**Berlex Laboratories Inc**

**Defendant**

**Berlex Inc**

**Defendant**

**Bayer Schering Pharma AG**

**Defendant**

**Bayer AG**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/29/2009 | 1 | COMPLAINT with JURY DEMAND against all defendants ( Filing fee $ 350 paid - receipt number: 0648000000002166317), filed by Heather Riley. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Form) (Borgess, Pamela) (Entered: 05/29/2009) |
| 06/02/2009 | | This case is referred to Magistrate Judge Timothy S. Black. (eh1, ) (Entered: 06/02/2009) |
| 06/02/2009 | 2 | Summons Issued as to Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc, Berlex Laboratories Inc, Berlex Inc, Bayer Schering Pharma AG, Bayer AG. (eh1, ) (Entered: 06/02/2009) |
| 06/17/2009 | 3 | SUMMONS Returned Executed by Plaintiff Heather Riley, Defendant Bayer Corporation. Bayer Corporation served on 6/11/2009, answer due 7/1/2009. (Borgess, Pamela) (Entered: 06/17/2009) |
| 06/17/2009 | 4 | SUMMONS Returned Executed by Plaintiff Heather Riley, Defendant Bayer Healthcare, LLC. Bayer Healthcare, LLC served on 6/11/2009, answer due 7/1/2009. (Borgess, Pamela) (Entered: 06/17/2009) |
| 06/17/2009 | 5 | SUMMONS Returned Executed by Plaintiff Heather Riley, Defendant Bayer Pharmaceuticals Corporation. Bayer Pharmaceuticals Corporation served on 6/11/2009, answer due 7/1/2009. (Borgess, Pamela) (Entered: 06/17/2009) |
| 06/17/2009 | 6 | SUMMONS Returned Executed by Plaintiff Heather Riley, Defendant Bayer Healthcare Pharmaceuticals Inc. Bayer Healthcare Pharmaceuticals Inc served on 6/11/2009, answer due 7/1/2009. (Borgess, Pamela) (Entered: 06/17/2009) |
| 06/17/2009 | 7 | Summons Returned Unexecuted by Plaintiff Heather Riley, Defendant Berlex Laboratories Inc as to Berlex Laboratories Inc. (Borgess, Pamela) (Entered: 06/17/2009) |
| 06/17/2009 | 8 | Summons Returned Unexecuted by Plaintiff Heather Riley, Defendant Berlex Inc as to Berlex Inc. (Borgess, Pamela) (Entered: 06/17/2009) |

| 06/30/2009 | 9 | MOTION for Extension of Time New date requested 9/1/2009. *Motion for Enlargement of Time to Move or Plead in Response to Complaint* by Defendants Bayer Corporation, Bayer Healthcare, LLC, Bayer Healthcare Pharmaceuticals Inc. (Amicone, Robert) (Entered: 06/30/2009) |
| --- | --- | --- |
| 07/01/2009 | 10 | ORDER granting 9 Motion for Extension of Time to move, plead or otherwise respond, 20 days from the date plaintiff files an amended complaint. Signed by Magistrate Judge Timothy S. Black on 7/1/09. (jl1, ) (Entered: 07/01/2009) |
| 07/01/2009 | 11 | MOTION for Extension of Time New date requested 9/1/2009. *Bayer Pharmaceuticals Corporation's Motion for Enlargement of Time to Move or Plead in Response to Complaint* by Defendant Bayer Pharmaceuticals Corporation. (Amicone, Robert) (Entered: 07/01/2009) |
| 07/01/2009 | 12 | NOTICE of Appearance by Robert Alan Amicone, II Defendants Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc (Amicone, Robert) (Entered: 07/01/2009) |
| 07/01/2009 | 13 | NOTICE by Defendants Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc *of Appearance of Sarah K. Rathke* (Amicone, Robert) (Entered: 07/01/2009) |
| 07/09/2009 | 14 | ORDER granting 11 Motion for Extension of Time to 20 days from the date plaintiff imminently files an amended complaint in this matter. Signed by Magistrate Judge Timothy S. Black on 7/8/09. (jl1, ) (Entered: 07/09/2009) |

| **PACER Service Center** | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 07/17/2009 16:23:06 | | | |
| PACER Login: | rn0030 | Client Code: | 9047/denture cream |
| Description: | Docket Report | Search Criteria: | 1:09-cv-00387-SSB-TSB |
| Billable Pages: | 3 | Cost: | 0.24 |

**IN THE U.S. DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| HEATHER RILEY<br>1213 Lytle Lane<br>Kettering, Ohio 45409 | ) CASE NO. 1:09 cv 387<br>)<br>) JUDGE<br>) |
|        Plaintiff, | ) **COMPLAINT WITH JURY DEMAND**<br>) **ENDORSED HEREON** |
|   v. | )<br>) David W. Zoll  (0008548) |
| **BAYER CORPORATION**<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | ) Michelle L. Kranz (0062479)<br>) Pamela A. Borgess  (0072789)<br>) ZOLL, KRANZ & BORGESS, LLC<br>) 6620 W. Central Ave., Suite 200<br>) Toledo, OH  43617<br>) (419) 841-9623<br>) Fax: (419) 841-9719 |
|   and | ) Email: david@toledolaw.com<br>)       michelle@toledolaw.com<br>)       pamela@toledolaw.com |
| BAYER HEALTHCARE LLC,<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | )<br>) *Counsel for Plaintiffs*<br>)<br>)<br>)<br>) |
|   and | )<br>) |
| BAYER PHARMACEUTICALS<br>CORPORATION,<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service<br>Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>)<br>) |
|   and | )<br>) |

1

BAYER HEALTHCARE                )
PHARMACEUTICALS INC.            )
c/o CSC-Lawyers Incorporating   )
Service (Corporation Service    )
Company)                        )
50 W. Broad St. Suite 1800      )
Columbus, OH 43215              )
                                )
and                             )
                                )
BERLEX LABORATORIES, INC.       )
340 Changebridge Road           )
Montville, NJ 07045             )
                                )
and                             )
                                )
BERLEX, INC.                    )
340 Changebridge Road           )
Montville, NJ 07045             )
                                )
and                             )
                                )
**BAYER SCHERING PHARMA AG**    )
MÜLLERSTRASSE 178               )
13353 BERLIN, GERMANY           )
                                )
and                             )
                                )
BAYER AG                        )
BAYERWERK, GEBÄUDE W11,         )
KAISER-WILHELM-ALLEE            )
51368 LEVERKUSEN, GERMANY       )
                                )
and                             )
                                )
JOHN DOE MANUFACTURERS          )
A-Z                             )
[Real Names and Addresses       )
Unknown]                        )
                                )
and                             )
                                )
                                )
                                )
                                )

2

JOHN DOE DISTRIBUTORS A-Z
[Real Names and Addresses
Unknown]

       Defendants.

---

Now comes Heather Riley, by and through the undersigned counsel, and for her Complaint hereby avers and states as follows:

## NATURE OF THE ACTION

1. This is an action for strict product liability (Ohio R. C. §§ 2307.71-2307.80), fraud, civil conspiracy and commercial bribery, and punitive damages brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug YAZ, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.

2. As a result of the ingestion of YAZ, Plaintiff Heather Riley has suffered injuries to her person including, but not limited to, the removal of her gallbladder.

## THE PARTIES

3. Plaintiff Heather Riley, (herein "Plaintiff"), resides in the city of Kettering, Montgomery County, Ohio.

4. Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

3

5. At all times relevant, Defendant BAYER CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

6. Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

7. At all times relevant, Defendant BAYER HEALTHCARE LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

8. Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

9. Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

10. At all times relevant, Defendant BAYER PHARMACEUTICALS CORPORATION was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

11. As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

12. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

13. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

14. At all times relevant, Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

15. Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YAZ.

16. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

17. Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

18. At all times relevant, Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

19. Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

20. Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

21. Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

22. Defendant BAYER SCHERING PHARMA AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

23. At all times relevant, Defendant BAYER SCHERING PHARMA AG was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

24. Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

25. Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

26. Defendant BAYER AG is the third largest pharmaceutical company in the world.

27. Defendant BAYER AG is the parent/holding company of all other named Defendants.

28. Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

29. At all times relevant, Defendant BAYER AG was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the State of Ohio, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ.

30. Defendants John Doe Manufacturers A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including YAZ into interstate commerce, including in the Southern District of Ohio, and derived substantial revenue from these activities.

31. Defendants John Doe Distributors A-Z (fictitious-name designations of one or more individuals, partnerships, corporations, and/or other entities whose actual identities have yet to be determined) at all times relevant hereto were in the business of developing, researching, selling, distributing, designing, manufacturing, testing, evaluating, licensing, labeling, marketing, and/or placing, either directly or indirectly through third parties or related entities, pharmaceutical drugs including YAZ into interstate commerce, including in the Southern District of Ohio, and derived substantial revenue from these activities.

32. Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex,

Inc., Bayer Schering Pharma AG, Bayer AG, John Doe Manufacturers and Distributors A-Z shall be referred to herein individually by name or jointly as "Defendants."

33. At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

34. At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

## JURISDICTION AND VENUE

35. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

36. Venue is proper in the Southern District of Ohio, Western Division, pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events giving rise to these claims occurred within this district, including the prescription and use of YAZ, as well as Plaintiff's resulting injuries.

37. The Court has personal jurisdiction over Defendants consistent with the Ohio and United States Constitution pursuant to Ohio R. C. § 2307.382(4) because Defendants caused tortious injury in Ohio by an act or omission outside Ohio by virtue of Defendants' regularly conducted business in Ohio from which they respectively derive substantial revenue. Defendants do substantial business in the State of Ohio and within the Southern

District of Ohio, advertise in this district, and receive substantial compensation and profits from sales of YAZ within this District.

38. Defendants expected or should have expected that their business activities could or would have consequences within the State of Ohio, as well as throughout the United States.

**FACTS**

39. Yasmin, (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC containing the hormones estrogen and progestin.

40. The estrogen is ethinyl estradiol and the progestin is drospirenone, (3 mg of drospirenone and 0.03 mg of ethinyl estradiol per tablet).

41. Combination birth control pills are referred to as combined hormonal oral contraceptives.

42. Yasmin was approved by the FDA in April, 2001.

43. In 2006, Bayer acquired Defendant BERLEX LABORATORIES, INC. and/or Defendant BERLEX, INC, and began marketing an almost identical drug, YAZ (which contains 3 mg of drospirenone and 0.02 mg of ethinyl estradiol per tablet).

44. The difference between YAZ/Yasmin and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

45. YAZ/YASMIN's use of drospirenone, a diuretic, creates unique risks for compared to other oral contraceptives and is known to cause problems with the gallbladder that may require surgical intervention.

46. Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for

misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.

47. Defendants ignored the correlation between the use of YAZ and significantly increased risk of gallbladder complications despite the wealth of scientific information available.

48. Defendants knew or should have known about the correlation between the use of YAZ and significantly increased risk of gallbladder complications and still promoted, sold, advertised, and marketed the use of YAZ.

49. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff, the FDA, and the public in general, that YAZ had been tested and was found to be safe and/or effective for its indicated use.

50. These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase YAZ for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

51. Defendants knew and were aware or should have been aware that YAZ had not been sufficiently tested, was defective in its design and testing, and/or that it lacked adequate and/or sufficient warnings.

52. Defendants knew or should have known that YAZ had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

53.   In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

A.   That YAZ is not as safe as other available contraceptives;

B.   That the risks of adverse events with YAZ (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

C.   That the risks of adverse events with YAZ was not adequately tested and/or known by Defendants;

D.   Plaintiff was put at risk of experiencing serious and dangerous side effects including, but not limited to, gallbladder complications, as well as other severe and personal injuries, physical pain, and mental anguish;

E.   That patients needed to be monitored more regularly than normal while using YAZ; and

F.   That YAZ was designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

54.   Defendants were under a duty to disclose to Plaintiff and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of YAZ.

55.   Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used YAZ, including Plaintiff.

56.   Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of YAZ with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting YAZ as a contraceptive.

57.   Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.

11

58. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.

59. Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding YAZ, as set forth herein.

60. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of YAZ.

61. Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of YAZ in a timely manner, yet they failed to provide such warning.

## FACTS REGARDING PLAINTIFF HEATHER RILEY

62. Plaintiff was first prescribed YAZ by her health care provider in 2006.

63. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YAZ to her detriment.

64. As a result of using Defendants' product YAZ, in the month of June 2007, Plaintiff suffered serious and life-threatening side effects including but not limited to, gallbladder removal, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

65. Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

## CAUSES OF ACTION
### Statutory Products Liability (R.C. § 2307.71-2307.80)

66. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

67. Defendants are manufacturers, as defined at Revised Code § 2307.71, and distributors, which designed, produced, created, made, constructed and/or assembled the drug, YAZ.

68. YAZ reached the ultimate users without substantial change in the condition it was sold.

69. The drug was defective due to inadequate warning or instruction pursuant to the provisions of Ohio Revised Code § 2307.76, in its design pursuant to the provisions of Ohio Revised Code § 2307.75 and/or in its failure to conform, when it left the control of Defendants, to their representations, pursuant to the provisions of Ohio Revised Code § 2307.77.

70. Said defect was a result of Defendants' failures including, but not limited to:

A. Defendants' failure to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects of the drug;

B. Defendants' failure to adequately and properly test and inspect the drug before placing the drug on the market;

C. Defendants' failure to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, gallbladder complications, and other serious and life threatening side effects;

D. Defendants' failure to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff of the potential risks and other serious side effects associated with the drug, including, among other things, gallbladder complications and other serious and life threatening side effects;

E.    Defendants' failure to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

F.    Defendants' failure to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

G.    Defendants' encouragement of misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to maximize profit from sales.

71.  Plaintiff was using YAZ in the manner for which it was intended and/or in a reasonably foreseeable manner.

72.  Plaintiff was not aware of and reasonably could not have discovered the dangerous nature of YAZ.

73.  As a result of the foregoing acts and omissions, Plaintiff suffered serious and life-threatening side effects including but not limited to, gallbladder removal, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

### Fraud

74.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

75.  Defendants having undertaken the manufacturing, marketing, prescription, dispensing, distribution and promotion of YAZ described herein, owed a duty not to deceive the public

regarding its drug's safety and to provide accurate and complete information regarding the product.

76. Since the drug's approval and on multiple occasions to the present date, Defendants fraudulently misrepresented information in various forms of media (including, but not limited to, ad campaigns, television, internet, etc.) regarding their product's safety.

77. At the time of Defendants' fraudulent misrepresentations, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

78. Defendants breached their duties to Plaintiff by providing false, incomplete and misleading information regarding their product.

79. Defendants acted with deliberate intent to deceive and mislead Plaintiff, her medical providers, and the public.

80. Plaintiff reasonably relied upon Defendants' deceptive, inaccurate and fraudulent misrepresentations.

81. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered serious and life-threatening side effects including but not limited to, gallbladder removal, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

### Civil Conspiracy and Commercial Bribery

82. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

83.   Defendants committed civil conspiracy, commercial bribery and conspiracy to commit commercial bribery in that fiduciaries of Defendants knowingly and/or intentionally offered, conferred, or agreed to confer benefits, gifts, and/or gratuities or conspired to do the same upon physicians, pharmacists, and insurance companies for the purpose of enticing these entities to use the drug YAZ, and to convince their patients and others of the safety and effectiveness of YAZ.

### Punitive Damages

84.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

85.   Defendants engaged in fraudulent and malicious conduct towards the Plaintiff, her medical providers and the public, and thereby acted with willful and wanton and/or conscious and reckless disregard for the safety of Plaintiff and the public.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.   For an award of compensatory damages, including damages against Defendants and each of them for medical and hospital expenses, loss of income, and other damages according to proof at trial in excess of $75,000;

B.   For an award of punitive or exemplary damages against Defendants and each of them in excess of $75,000;

C.   For reasonable attorneys' fees and costs;

D.   For pre-judgment interest; and

E.   For such further and other relief the court deems just, equitable, and proper.

Dated: May 27, 2009

Respectfully Submitted,

/s/David W. Zoll

16

David W. Zoll (0008548)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH 43617
(419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com

/s/Michelle Kranz
Michelle L. Kranz (0062479)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH 43617
(419) 841-9623
Fax: (419) 841-9719
Email: michelle@toledolaw.com

/s/Pamela A. Borgess
Pamela A. Borgess (0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH 43617
(419) 841-9623
Fax: (419) 841-9719
Email: pamela@toledolaw.com

*Counsel for Plaintiffs*


## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.


/s/David W. Zoll
David W. Zoll (0008548)

**P**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **VALERIE KOZAK, and**<br>**KEITH KOZAK**<br>**4121 White-Coppess Rd.**<br>**Ansonia, OH 45303** : | |
| **Plaintiffs,** : | Civil Action No. _____ |
| : | |
| **v.** : | |
| : | |
| **BAYER CORPORATION,**<br>an Indiana corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 : | |
| : | **COMPLAINT AND**<br>**JURY DEMAND** |
| **BAYER HEALTHCARE**<br>**PHARMACEUTICALS INC.,**<br>a Delaware corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 : | |
| : | |
| **BAYER HEALTHCARE, LLC,**<br>a Delaware corporation<br>c/o CSC-Lawyers Incorporating<br>Service (Corporation Service Company)<br>50 W. Broad St. Suite 1800<br>Columbus, OH 43215 : | |
| **Defendants.** : | |

Plaintiffs, by and through counsel, and for their Complaint against Defendants, allege as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Valerie Kozak is a resident and citizen of Ansonia, OH, located in Darke County.

2.      Plaintiff Keith Kozak is the husband of Plaintiff Valerie Kozak and is also a resident and citizen of Ansonia, OH, located in Darke County.

3.      Plaintiff Valerie Kozak was prescribed and ingested Yasmin in the State of Ohio, and while using Yasmin she suffered multiple bilateral pulmonary emboli on or about August 2, 2007 in the State of Ohio.

4.      Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5.      Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.   Defendant Bayer Corporation is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.   At all relevant times, Defendant Bayer Corporation conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Darke County.

6.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.   Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex Laboratories.   Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.   At all relevant times, Defendant

Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Darke County.

7.      Defendant Bayer Healthcare, LLC is a Delaware limited liability company, with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591. Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories. Defendant Bayer Healthcare, LLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin. At all relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Ohio by selling and distributing its products in Ohio and engaged in substantial commerce and business activity in Darke County.

8.      Berlex Laboratories International, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey. Berlex Laboratories International, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc. Prior to being integrated with Bayer Healthcare to create Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories International, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin. At all relevant times, Berlex Laboratories International, Inc. conducted regular and sustained business in Ohio by selling and distributing its

3

products in Ohio and engaged in substantial commerce and business activity in Darke County.

9.      Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., and Bayer Healthcare, LLC are collectively referred to herein as "Bayer" or "Defendants."

10.      This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.      Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in this district as Plaintiff Valerie Kozak was prescribed and used Yasmin in this district, and because she resided in this district at the time of her injuries.  Plaintiff Valerie Kozak and her husband Plaintiff Keith Kozak were married at the time of her injuries.

## FACTUAL BACKGROUND

### Nature of the Case

12.      Plaintiffs brings this case against Defendants for damages associated with Plaintiff Valerie Kozak's ingestion of the pharmaceutical drug Yasmin (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed, and distributed by Defendants.  Specifically, Plaintiff suffered multiple bilateral pulmonary emboli on or about August 2, 2007 as a direct result of her use of Yasmin.  Her husband, Keith Kozak has suffered a loss of consortium.

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

13.      Yasmin and Yaz are birth control pills manufactured and marketed by Bayer.  They are combination oral contraceptives, or "COCs," meaning that they contain

an estrogen component and a progestin component.   Together, these steroidal

components work together in COCs to suppress ovulation, fertilization, and implantation

and thus prevent pregnancy.

14.    Yasmin and Yaz were approved by the Food and Drug Administration for

marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

15.    The estrogen component in Yasmin and Yaz is known generically as

ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains

0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol.

Both products contain 3 milligrams of drospirenone.

16.    Yasmin and Yaz are different from other combined hormonal birth control

pills in that they contain drospirenone, a progestin that is unlike other progestins

available in the United States and was never before marketed in the United States prior

to its use in Yasmin.

17.    Shortly after the introduction of combined oral contraceptives in the

1960's, doctors and researchers found that women using birth control pills had a higher

risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result,

the various brands of birth control pills were reformulated to reduce the amounts of

estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots,

heart attacks, and strokes.

18.    During this time, new progestins were being developed, which became

known as "second generation" progestins (e.g. lovenorgestrel).   These second

generation progestins, when combined with the lower amounts of the estrogen, ethinyl

estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

19.   During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

20.   Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

21.   However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

22.   Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

23.   One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

24.   Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

25.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

26.     Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

27.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

28.     In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

29.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

30.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

31.     Some deaths reported occurred in women as young as 17 years old.

32.    Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

### Over-Promotion of Yasmin and Yaz

33.    Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

34.    However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

35.    For example, prior to its integration with Defendant Bayer in 2006, Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

36.    In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial. On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

37.    The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

38.    More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

39.     Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

40.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone ... which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

41.     The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

42.     Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

43.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

### Plaintiff's Use of Yasmin and Resulting Injuries

44.     As a result of Defendants' claim regarding the effectiveness and safety of Yasmin, Plaintiff Valerie Kozak's medical provider prescribed and Valerie Kozak began using Yasmin in September of 2004.  Plaintiff Valerie Kozak used Yasmin until August 2, 2007 when she suffered multiple bilateral pulmonary emboli.

45.     As a direct and proximate result of using Yasmin, Plaintiff Valerie Kozak suffered the injuries described above.

46.      Prior to Plaintiff's use of Yasmin, Defendants knew or should have known that use of Yasmin created a higher risk of pulmonary embolism than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

47.      Therefore, at the time Valerie Kozak used Yasmin Defendants knew or should have known that the use of Yasmin created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

48.      Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin, Defendants failed to adequately warn Valerie Kozak and/or her health care providers of said serious risks before she used the product.

49.      Had Valerie Kozak and/or her heath care providers known of the increased risks and dangers associated with Yasmin, she would not have used Yasmin and would not have suffered multiple bilateral pulmonary emboli on August 2, 2007.

50.      As a direct and proximate result of her use of Yasmin, Plaintiff Valerie Kozak suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her multiple bilateral pulmonary emboli.

51.      As a direct and proximate result of her use of Yasmin, Plaintiff Valerie Kozak has suffered and will continue to suffer pecuniary losses.

52.      As a direct and proximate result of Plaintiff Valerie Kozak's use of Yasmin and resulting injuries, her husband, Plaintiff Keith Kozak, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical

expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort.

## FIRST CAUSE OF ACTION

### Strict Products Liability
### Defective Manufacturing

53.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

54.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

55.     The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

56.     The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that it deviated from product specification such that it was unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

57.     As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Valerie Kozak suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

58.     As a direct and proximate result of Plaintiff Valerie Kozak's use of Yasmin and resulting injuries, her husband, Plaintiff Keith Kozak, has suffered damages and

harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

59.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Design Defect

60.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

61.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

62.    The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

63.    The Yasmin birth control pills manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

64.    The foreseeable risks associated with the design or formulation of the Yasmin birth control pills, include, but are not limited to, the fact that the design or

formulation of Yasmin is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

65.     As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Valerie Kozak suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

66.     As a direct and proximate result of Plaintiff Valerie Kozak's use of Yasmin and resulting injuries, her husband, Plaintiff Keith Kozak, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

67.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

**Strict Products Liability**
**Defect Due to Inadequate Warning**

68.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

69.     The Yasmin birth control pills manufactured and supplied by Defendants was defective due to inadequate warning or instruction and was unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have

known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

70.     The Yasmin birth control pills manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction and was unreasonably dangerous to the ordinary user or consumer because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yasmin, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

71.     As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Valerie Kozak suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

72.     As a direct and proximate result of Plaintiff Valerie Kozak's use of Yasmin and resulting injuries, her husband, Plaintiff Keith Kozak, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

73.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiffs' rights, so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence

74.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

75.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Yasmin into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

76.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin into interstate commerce in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

77.     Defendants also failed to exercise ordinary care in the labeling of Yasmin and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yasmin.

78.     Despite the fact that Defendants knew or should have known that Yasmin posed a serious increased risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin for use by consumers.

79.     Defendants knew or should have known that consumers such as Plaintiff Valerie Kozak would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

80.     As a direct and proximate result of Defendants' negligence, Plaintiff Valerie Kozak suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

81.     As a direct and proximate result of Plaintiff Valerie Kozak's use of Yasmin and resulting injuries, her husband, Plaintiff Keith Kozak, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

82.     Defendants' conduct as described above, including but not limited to its failure to adequately test Yasmin, to provide adequate warnings, and its continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences malicious actions, aggravated or egregious fraud, and/or intentional disregard of the rights of Plaintiffs, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

83.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

84.     Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and made representations to Plaintiff and her physician regarding the character or quality of Yasmin for guidance in their decision to select Yasmin.

85.     Specifically, Defendants represented that their product was just as safe or safer, and just as effective or more effective, than other birth control products on the market.

16

86.    Defendants' representations regarding the character or quality of Yasmin were untrue.

87.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yasmin created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

88.    Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

89.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her physician.

90.    Plaintiff Valerie Kozak and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff Valerie Kozak reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

91.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Valerie Kozak suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

92.     As a direct and proximate result of Plaintiff Valerie Kozak's use of Yasmin and resulting injuries, her husband, Plaintiff Keith Kozak, has suffered damages and harm, including but not limited to, emotional distress and has incurred other medical expenses and other economic harm, as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

93.     Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for relief as follows:

1.     Compensatory and punitive damages in excess of the jurisdictional amount, including, but not limited to non-economic damages in excess of $350,000.00;

2.     Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.     Attorneys' fees, expenses, and costs of this action;

4.     Punitive damages in excess of twice the compensatory damages award;

5.     Such further relief as this Court deems necessary, just, and proper.

Dated:  July 22, 2009                          Respectfully submitted,

                                               /s/ Janet G. Abaray
                                               Janet G. Abaray (0002943)
                                               Calvin S. Tregre, Jr. (0073454)
                                               BURG SIMPSON ELDREDGE
                                               HERSH & JARDINE, P.C.
                                               312 Walnut Street, Suite 2090
                                               Cincinnati, OH 45202
                                               (513) 852-5600
                                               (513) 852-5611 (fax)
                                               jabaray@burgsimpson.com
                                               ctregre@burgsimpson.com

**OF COUNSEL:**
Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Janet G. Abaray
Janet G. Abaray (0002943)

**Q**

United States District Court Eastern District of Pennsylvania                    Page 1 of 2

SPECIAL

## United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:09-cv-02086-JP

BRITTEN v. BAYER PHARMACEUTICALS
CORPORATION et al
Assigned to: HONORABLE JOHN R. PADOVA
related Cases: 5:09-cv-02739-JP
             2:09-cv-02740-JP
             2:09-cv-02238-JP
             2:09-cv-02753-JP
             2:09-cv-03114-JP

Date Filed: 05/14/2009
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

Cause: 28:1332 Diversity-Product Liability

**Plaintiff**

**ALYSSA S. BRITTEN**

represented by  **DANIEL N. GALLUCCI**
RODA & NAST PC
801 ESTELLE DRIVE
LANCASTER , PA 17601
717-892-3000
Email: dgallucci@rodanast.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BAYER PHARMACEUTICALS
CORPORATION**

**Defendant**

**BAYER HEALTHCARE
PHARMACEUTICALS, INC.**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/14/2009 | 1 | COMPLAINT against BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE PHARMACEUTICALS, INC. ( Filing fee $ 350 receipt number PPE000604.), filed by ALYSSA S. BRITTEN.(cw, ) (Entered: 05/14/2009) |
| 05/14/2009 | | Summons Issued as to BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE PHARMACEUTICALS, INC.. Two Forwarded To: |

United States District Court Eastern District of Pennsylvania                    Page 2 of 2

| | Counsel on 5/14/09 (cw, ) (Entered: 05/14/2009) |
|---|---|
| 05/14/2009 | DEMAND for Trial by Jury by ALYSSA S. BRITTEN. (cw, ) (Entered: 05/14/2009) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/17/2009 11:52:26 | | |
| PACER Login: | m0030 | Client Code: | 9031/yaz |
| Description: | Docket Report | Search Criteria: | 2:09-cv-02086-JP |
| Billable Pages: | 1 | Cost: | 0.08 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRIC OF PENNSYLVANIA

| | | |
|---|---|---|
| Alyssa S. Britten | : | Civil Action No: |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | COMPLAINT |
| | : | |
| Bayer Pharmaceuticals Corporation, | : | |
| Bayer Healthcare | : | |
| Pharmaceuticals, Inc., | : | Jury Trial Demanded |
| | : | |
| Defendants. | : | |

## COMPLAINT

AND COMES NOW Plaintiff for her multiple causes of action against

Defendants and alleges and states the following:

### THE PARTIES

1.      Plaintiff resides in Pennsylvania.

2.      Defendant Bayer Pharmaceuticals Corporation is, and at times

relevant was, a corporation organized under the laws of the State of Delaware with

its headquarters and principal place of business at 1400 Morgan Lane, West Haven,

Connecticut.

3.      At all times relevant, Defendant Bayer Pharmaceuticals Corporation

was engaged in the business of developing, designing, licensing, manufacturing,

distributing, selling, marketing, and/or introducing into interstate commerce,

including in the Commonwealth of Pennsylvania, either directly or indirectly

1

through third parties, subsidiaries or related entities, the oral contraceptive, YAZ and YASMIN.

4.     As of January 1, 2008, Defendant Bayer Pharmaceuticals Corporation was merged into Defendant Bayer Healthcare Pharmaceuticals, Inc.

5.     Defendant Bayer Healthcare Pharmaceuticals, Inc. is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

6.     At all times relevant, Defendant Bayer Healthcare Pharmaceuticals, Inc. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, including in the Commonwealth of Pennsylvania, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ and YASMIN.

7.     Defendant Bayer Healthcare Pharmaceuticals, Inc. is the holder of approved New Drug Application ("NDA") No. 21-676 for YAZ.

8.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venture of each of the remaining Defendants herein and were at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

2

## JURISDICTION AND VENUE

9.      Plaintiff alleges damages in excess of one hundred fifty thousand dollars ($150,000.00), exclusive of costs and interests.

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

11.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.A. §1391, as a substantial part of the events giving rise to these claims occurred within this district.  Further, Defendants marketed, advertised and distributed the dangerous product within this District, thereby receiving substantial financial benefit and profits from the dangerous product within this District.

## FACTUAL BACKGROUND

12.     Plaintiff took YAZ and/or YASMIN.

13.     Plaintiff suffered serious personal injuries caused by YAZ and/or YASMIN.

14.     At all relevant times, Defendants designed, manufactured; marketed, and distributed the pharmaceutical drugs YAZ and YASMIN, both which are oral contraceptives.

15.     YASMIN received FDA approval first in 2001.  It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen.

16.    YAZ received approval from the FDA in 2006 and is essentially the same as YASMIN, with the only difference being a slightly smaller amount of ethinyl estradiol.

17.    YAZ and YASMIN are indicated for the prevention of pregnancy in women who elect to use an oral contraceptive.

18.    Combination birth control pills are referred to as combined hormonal oral contraceptives.

19.    The difference between YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

20.    In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of YASMIN as a result of 40 cases of venous thrombosis among women taking YAZ/YASMIN.

21.    In February 2003, a paper entitled *Thromboembolism associated with the new contraceptive YAZ / YASMIN* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of additional reports of thromboembolism where YAZ/YASMIN was suspected as the cause, including two deaths.

22.    Defendants have twice been warned by the FDA, in 2003 and 2008, for misleading the public through the use of television advertisements which overstate the efficacy of the drugs and minimize the serious risks associated with the drugs.

23.     The use of YAZ/YASMIN has a prothrombotic effect resulting in the development of thromboses, such as pulmonary emboli and deep vein thrombosis.

24.     Defendants failed to recognize the correlation between the use of YAZ/YASMIN and increased thrombosis formation despite the wealth of scientific information available.

25.     Upon information and belief, Defendants knew or should have known about the correlation between YAZ/YASMIN use and a prothrombotic effect and still promoted, sold, advertised, and marketed the use of YAZ/YASMIN without sufficient warnings.

26.     YAZ/YASMIN use of drospirenone, a diuretic, creates unique risks for compared to other oral contraceptives.  These risks include heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death.

27.     The diuretic in YAZ/YASMIN is also known to cause problems with the gallbladder; the problems sometimes require surgical intervention.  The diuretic also causes kidney stone formation.

28.     The Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this complaint.

29.     As a result of the manufacture, marketing, advertising, promotion, distribution, the sale of YAZ/YASMIN without adequate warnings about the risks of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT

30.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

31.     Prior to Plaintiff's use of YAZ/YASMIN and during the period in which Plaintiff actually used YAZ/YASMIN, Defendants fraudulently suppressed material information regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, pre and post marketing deaths, a high rate of severe adverse event reports compared to other birth control pills, and the unique cardiovascular and gallbladder dangers.   Defendants also did not disclose the higher thrombtic risk associated with YAZ/YASMIN.  Furthermore, Defendants fraudulently concealed the safety information about the use of drospirenone, the only birth control pill using this ingredient.  As described above, drospirenone has several well known serious side effects that are not seen in other forms of birth control.  Plaintiff believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of YAZ/YASMIN strong.

32.     Defendants fraudulently concealed safety issues with YAZ/YASMIN in order to induce physicians to prescribe and patients, including Plaintiff, to purchase and use YAZ/YASMIN.

33.     At the time Defendants concealed the fact that YAZ/YASMIN was not safe, Defendants were under a duty to communicate this information to physicians,

the FDA, the Healthcare community, and the general public in such a manner that they could appreciate the risks associated with using YAZ/YASMIN.

34.    Plaintiff and the Plaintiff's prescribing doctor relied upon the Defendants' outrageous untruths regarding the safety of YAZ/YASMIN.

35.    As a direct and proximate result of Defendants' malicious and or intentional concealment of material life altering information from Plaintiff and Plaintiff's prescribing doctor, Defendants caused or contributed Plaintiff's injuries.

36.    It is unconscionable and outrageous that Defendants would risk the lives of consumers. Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct rises to the level necessary that Plaintiff should be award punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

37.    Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of YAZ/YASMIN as described herein. Defendants did not disclose this information to the Plaintiff, the prescribing doctor, the Healthcare community and the general public. Without full knowledge of the dangers of YAZ/YASMIN, Plaintiff and Plaintiff's lawyer could not evaluate whether a person who was injured by YAZ/YASMIN had a valid claim.

7

WHEREFORE, Plaintiff demands judgment against Defendants for such compensatory damages and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this Court, plus interest and costs.

## COUNT II
## STRICT LIABILITY

38. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

39. At the time of Plaintiff's injury, Defendants' pharmaceutical, YAZ/YASMIN, was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

40. The YAZ/YASMIN used by Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants.

41. Plaintiff did not misuse or materially alter the YAZ/YASMIN.

42. Defendants are strictly liable for Plaintiff's injury in the following ways:

    a.    The pharmaceutical YAZ/YASMIN as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

    b.    Defendants failed to properly market, design, manufacture, distribute, supply and sell YAZ/YASMIN;

c.    Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

d.    Defendants failed to adequately test YAZ/YASMIN;

e.    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of YAZ/YASMIN; and

f.    A feasible alternative design existed that was capable of preventing Plaintiff's injury.

43.    Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injury.

44.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

<u>**COUNT III**</u>
<u>**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**</u>

45.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

46.    At the time Defendants marketed, distributed and sold YAZ/YASMIN to Plaintiff, Defendants warranted that YAZ/YASMIN was merchantable and fit for the ordinary purposes for which it was intended.

47.    Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

48.    YAZ/YASMIN was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint.

49.    Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and free of defects and was a safe means of birth control.

50.    Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury.

51.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF FITNESS
### FOR A PARTICULAR PURPOSE

52.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

53.   Defendants sold YAZ/YASMIN with an implied warranty that it was fit for the particular purpose of safe birth control, which offered other benefits, such as reduced bloating, reduced mood swings, improved complexion, and reduced the severity of women's menstruation.

54.   Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

55.   YAZ/YASMIN was not fit for the particular purpose of a safe birth control pill without serious risk of personal injury, which risk is much higher than other birth control pills.

56.   Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and effective for use as a birth control method.

57.   Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injury.

58.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to

redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants'
outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an
amount in excess of $150,000.00, plus delay damages, interest, costs as allowed by
law and punitive damages.

### COUNT V
### NEGLIGENT FAILURE TO WARN

59.    Plaintiff incorporates by reference all preceding paragraphs as if fully
set forth herein and further alleges on information and belief as follows.

60.    Before Plaintiff used YAZ/YASMIN, and during the period in which
she used it, Defendants knew or had reason to know that YAZ/YASMIN was
dangerous and created an unreasonable risk of bodily harm to consumers.

61.    Defendants had a duty to exercise reasonable care to warn end users of
the dangerous conditions or of the facts that made YAZ/YASMIN likely to be
dangerous.

62.    Despite the fact that  Defendants knew or had reason to know that
YAZ/YASMIN was dangerous,  Defendants failed to exercise reasonable care in
warning the medical community and consumers, including Plaintiff, of the
dangerous conditions and facts that made YAZ/YASMIN likely to be dangerous.

63.    The Plaintiff's injury was a direct and proximate result of Defendants'
failure to warn of the dangers of YAZ/YASMIN.

64.    Defendants' conduct, as described above, was extreme and outrageous.
Defendants risked the lives of consumers and users of their products, including

12

Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

**COUNT VI**
**NEGLIGENCE**

65.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

66.    Defendants had a duty to exercise reasonable care in the manufacture, sale and distribution of YAZ/YASMIN, including a duty to assure that the product did not cause unreasonable, dangerous side effects to users.

67.    Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of YAZ/YASMIN in that Defendants knew or should have known that the drug created a high risk of unreasonable harm.

68.    Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of YAZ/YASMIN in that, among other things, they:

a.    Failed to use due care in designing and manufacturing YAZ/YASMIN so as to avoid the aforementioned risks to individuals;

13

b.    Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects. The warnings given did not reflect accurately the symptoms, scope or severity of the side effects;

c.    Failed to provide adequate training and instruction to medical care providers for appropriate use of YAZ/YASMIN;

d.    Placed an unsafe product into the stream of commerce; and

e.    Were otherwise careless or negligent.

69.    Despite the fact that Defendants knew or should have known that YAZ/YASMIN caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market YAZ/YASMIN to consumers, including the medical community and Plaintiff.

70.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

71.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

72.     Prior to Plaintiff first using YAZ/YASMIN and during the period in which she used YAZ/YASMIN, Defendants misrepresented that YAZ/YASMIN was a safe and effective means of birth control.   Defendants also failed to disclose material facts regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, harmful side effects, and results of clinical studies showing that use of the medication could be life threatening.

73.     Defendants had a duty to provide Plaintiff, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold.

74.     Defendants knew or should have known, based on their prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with YAZ/YASMIN, that their representations regarding YAZ/YASMIN were false, and that they had a duty to disclose the dangers of YAZ/YASMIN.

75.     Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiff, to act in reliance by purchasing YAZ/YASMIN.

76.     Plaintiff justifiably relied on Defendants' representations and nondisclosures by purchasing and using YAZ/YASMIN.

77.    Defendants' misrepresentations and omissions regarding the safety and efficacy of YAZ/YASMIN was the direct and proximate cause of Plaintiff's injuries.

78.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

**COUNT VIII**
**BREACH OF EXPRESS WARRANTY**

79.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

80.    Defendants expressly warranted that YAZ/YASMIN was safe and effective to members of the consuming public, including Plaintiff.

81.    Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

82.    Defendants marketed, promoted and sold YAZ/YASMIN as a safe method of birth control.

83.     YAZ/YASMIN does not conform to these express representations because YAZ/YASMIN is not safe and has serious side effects, including death.

84.     Defendants breached their express warranty in one or more of the following ways:

     a.     YAZ/YASMIN, as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

     b.     Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

     c.     Defendants failed to adequately test YAZ/YASMIN; and

     d.     Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from YAZ/YASMIN.

85.     Plaintiff reasonably relied upon Defendants' warranty that YAZ/YASMIN was safe and effective when she purchased and used the medication.

86.     Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranty.

87.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to

17

redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants'

outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an

amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed

by law.

**COUNT IX**
**FRAUD**

88.    Plaintiff incorporates by reference all preceding paragraphs as if fully

set forth herein and further alleges on information and belief as follows.

89.    Defendants widely advertised and promoted YAZ/YASMIN as a safe

and effective medication.

90.    Defendants had a duty to disclose material information about serious

side effects to consumers such as Plaintiff.

91.    Additionally, by virtue of Defendants' partial disclosures about the

medication, in which Defendants' touted YAZ/YASMIN as a safe and effective

medication, Defendants had a duty to disclose all facts about the risks associated

with use of the medication, including the risks described in this complaint.

Defendants intentionally failed to disclose this information for the purpose of

inducing consumers, such as Plaintiff, to purchase Defendants' dangerous product.

92.    Had Plaintiff been aware of the hazards associated with YAZ/YASMIN,

Plaintiff would not have consumed the product that led proximately to Plaintiff's

adverse health effects.

93.    Defendants' advertisements regarding YAZ/YASMIN made material misrepresentations to the effect that YAZ/YASMIN was a safe and effective medication, which misrepresentations Defendants knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiff, to purchase such product. Plaintiff relied on these material misrepresentations when deciding to purchase and consume YAZ/YASMIN.

94.    Upon information and belief, Plaintiff avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the hazards associated with YAZ/YASMIN with the purpose of preventing consumers, such as Plaintiff, from discovering these hazards.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.


Date: May 13, 2009                    Respectfully Submitted,



                                      /s/ DNG4046
                                      Daniel N. Gallucci (Atty. ID No. 81995)
                                      Joanne E. Matusko (Atty. ID No. 91059)
                                      RodaNast, P.C.
                                      801 Estelle Drive
                                      Lancaster, Pennsylvania 17601
                                      Telephone: (717) 892-3000
                                      Facsimile: (717) 892-1200

                                      *Counsel for Plaintiff*

**R**

United States District Court Eastern District of Pennsylvania                                          Page 1 of 3

SPECIAL

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:09-cv-02238-JP

| | |
|---|---|
| GAUTHREAUX et al v. BAYER CORPORATION et al | Date Filed: 05/19/2009 |
| Assigned to: HONORABLE JOHN R. PADOVA | Jury Demand: Plaintiff |
| related Case: 2:09-cv-02086-JP | Nature of Suit: 365 Personal Inj. Prod. |
| Cause: 28:1332 Diversity-Product Liability | Liability |
| | Jurisdiction: Diversity |

**Plaintiff**
**ADINE GAUTHREAUX**                          represented by   **DANIEL N. GALLUCCI**
                                                                RODA & NAST PC
                                                                801 ESTELLE DRIVE
                                                                LANCASTER , PA 17601
                                                                717-892-3000
                                                                Email: dgallucci@rodanast.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **DAVID W. ZOLL**
                                                                ZOLL KRANZ & BORGESS
                                                                6620 W CENTRAL AVE STE 200
                                                                TOLEDO , OH 43617
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**
**KERMICK GAUTHREAUX**                        represented by   **DANIEL N. GALLUCCI**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **DAVID W. ZOLL**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**
**BAYER CORPORATION**

**Defendant**

**BAYER HEALTHCARE, LLC**

**Defendant**

**BAYER PHARMACEUTICALS CORPORATION**

**Defendant**

**BAYER HEALTHCARE PHARMACEUTICALS, INC.**

**Defendant**

**BERLEX LABORATORIES, INC.**

**Defendant**

**BERLEX, INC.**

**Defendant**

**BAYER SCHERING PHARMA AG**

**Defendant**

**BAYER AG**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/19/2009 | 1 | COMPLAINT against BERLEX, INC., BAYER SCHERING PHARMA AG, BAYER AG, BAYER CORPORATION, BAYER HEALTHCARE, LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE PHARMACEUTICALS, INC., BERLEX LABORATORIES, INC. ( Filing fee $ 350 receipt number PPE001104), filed by ADINE GAUTHREAUX, KERMICK GAUTHREAUX.(jmv, ) (Entered: 05/20/2009) |
| 05/19/2009 | | DEMAND for Trial by Jury by ADINE GAUTHREAUX, KERMICK GAUTHREAUX. (jmv, ) (Entered: 05/20/2009) |
| 05/19/2009 | | Summons Issued as to BERLEX, INC., BAYER SCHERING PHARMA AG, BAYER AG, BAYER CORPORATION, BAYER HEALTHCARE, LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE PHARMACEUTICALS, INC., BERLEX LABORATORIES, INC. Forwarded To: 8 Origs mailed to counsel on 5/20/09 (jmv, ) (Entered: 05/20/2009) |
| 06/19/2009 | 2 | Application of David W. Zoll, Esq. to Appear Pro Hac Vice on behalf of ADINE GAUTHREAUX, KERMICK GAUTHREAUX, Statement, Certificate of Service ($40 Filing Fee Paid - Receipt# PPE3097). (fdc) (Entered: 06/19/2009) |
| 06/23/2009 | 3 | ORDER THAT THE APPLICATIONOF DAVID W. ZOLL, ESQ. TO PRACTICE IN THIS COURT IS GRANTED ON BEHALF OF PLFFS. ( SIGNED BY HONORABLE JOHN R. PADOVA ON 5/21/09. ) 6/23/09 ENTERED AND COPIES MAILED TO UNREPS, E-MAILED(gn, ) Modified on 6/23/2009 (gn, ). (Entered: 06/23/2009) |

United States District Court Eastern District of Pennsylvania                Page 3 of 3

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/17/2009 11:53:34 | | |
| PACER Login: | rn0030 | Client Code: | 9031/yaz |
| Description: | Docket Report | Search Criteria: | 2:09-cv-02238-JP |
| Billable Pages: | 2 | Cost: | 0.16 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Adine and Kermick Gauthreaux, | : | Civil Action No: |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | COMPLAINT |
| v. | : | |
| | : | |
| Bayer Corporation, | : | Jury Trial Demanded |
| Bayer Healthcare, LLC, | : | |
| Bayer Pharmaceuticals Corporation, | : | |
| Bayer Healthcare Pharmaceuticals, | : | |
|    Inc., | : | |
| Berlex Laboratories, Inc., | : | |
| Berlex, Inc., | : | |
| Bayer Schering Pharma AG, | : | |
| Bayer AG, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

NOW COME Plaintiffs for their multiple causes of action against Defendants and allege and state the following:

## THE PARTIES

1.     Plaintiff Adine Gauthreaux ("Plaintiff") resides in Gonzales, Louisiana.

2.     Plaintiff was prescribed and ingested YAZ and/or YASMIN and suffered injury, including, but not limited to, the removal of her gallbladder.

3.     At all times relevant hereto, Plaintiff Kermick Gauthreaux was married to Plaintiff.

4.     Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

5.     Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburg, PA 15205.

6.     Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

7.     Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

8.     As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

9.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

10.   Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

11.   Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YAZ.

12.   Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YASMIN.

13.   Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

14.   Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

15.   Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

16.   Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

3

17.     Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

18.     Defendant BAYER SCHERING PHARMA AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

19.     Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YASMIN.

20.     Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

21.     Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

22.     Defendant BAYER AG is the third largest pharmaceutical company in the world.

23.     Defendant BAYER AG is the parent/holding company of all other named Defendants.

24.     Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

25.     Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, and Bayer AG, shall be referred to herein individually by name or jointly as "Defendants."

26.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

27.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

28.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, YAZ and YASMIN.

## JURISDICTION AND VENUE

29.     Plaintiff alleges damages in excess of one hundred fifty thousand dollars ($150,000.00), exclusive of costs and interests.

30.     This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

31.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.A. §1391, as a substantial part of the events or omissions giving rise to the claim occurred, including, but not limited to, the development, design, licensing, labeling, manufacturing and/or marketing of the defective drug, as well as Defendant's fraud and conspiracy to actively concealed and/or misrepresent information concerning the safety and efficacy of YASMIN and YAZ with the intention and specific desire to mislead the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.

## FACTUAL BACKGROUND

32.     Plaintiff took YAZ and/or YASMIN.

33.     Plaintiff suffered serious personal injuries caused by YAZ and/or YASMIN, including, but not limited to, removal of her gallbladder.

34.     At all relevant times, Defendants designed, manufactured; marketed, and distributed the pharmaceutical drugs; YAZ and YASMIN, both which are oral contraceptives.

35.     YASMIN received FDA approval first in 2001.  It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen.

36.     YAZ received approval from the FDA in 2006 and is essentially the same as YASMIN, with the only difference being a slightly smaller amount of ethinyl estradiol.

37.     YAZ/YASMIN are indicated for the prevention of pregnancy in women who elect to use an oral contraceptive.

38.    Combination birth control pills are referred to as combined hormonal oral contraceptives.

39.    The difference between YASMIN/YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

40.    YAZ/YASMIN's use of drospirenone, a diuretic, creates unique risks compared to other oral contraceptives and is known to cause problems with the gallbladder that may require surgical intervention.

41.    Upon information and belief, Defendants knew or should have known about the correlation between the use of YASMIN and YAZ and significantly increased risk of gallbladder complications.

42.    Yet, despite the wealth of scientific information available, Defendant ignored the correlation between the use of YASMIN and YAZ and the significantly increased risk of gallbladder problems and still promoted, sold, advertised, and marketed the use of YAZ/YASMIN without sufficient warnings.

43.    Defendants have been warned at least three times by the FDA, in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YASMIN and YAZ, and minimize serious risks associated with the drug.

44.    Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this complaint.

45.    As a result of the manufacture, marketing, advertising, promotion, distribution, the sale of YAZ/YASMIN without adequate warnings about the risks of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

## FACTS REGARDING PLAINTIFF ADINE GAUTHREAUX

46.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YASMIN and/or YAZ to her detriment.

47.    As a result of using Defendants' product YASMIN and/or YAZ, on May 22, 2007, Plaintiff suffered serious and life-threatening side effects including but not limited to, gallbladder removal, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

48.    Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT

49.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

50.    Prior to Plaintiff's use of YAZ/YASMIN and during the period in which Plaintiff actually used YAZ/YASMIN, Defendants fraudulently suppressed material information regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, pre and post marketing deaths, a high rate of severe adverse event reports compared to other birth control pills, and the unique gallbladder dangers.  Furthermore, Defendants fraudulently concealed the safety information about the use of drospirenone, the only birth control pill using this ingredient.  As described above, drospirenone has several well known serious side effects that are not seen in other forms of birth control.  Plaintiff believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of YAZ/YASMIN strong.

51.    Defendants fraudulently concealed safety issues with YAZ/YASMIN in order to induce physicians to prescribe and patients, including Plaintiff, to purchase and use YAZ/YASMIN.

52.    At the time Defendants concealed the fact that YAZ/YASMIN was not safe, Defendants were under a duty to communicate this information to physicians, the FDA, the Healthcare community, and the general public in such a manner that they could appreciate the risks associated with using YAZ/YASMIN.

53.    Plaintiff and the Plaintiff's prescribing doctor relied upon the Defendants' outrageous untruths regarding the safety of YAZ/YASMIN.

54.    As a direct and proximate result of Defendants' malicious and or intentional concealment of material life altering information from Plaintiff and

Plaintiff's prescribing doctor, Defendants caused or contributed to Plaintiff's injuries.

55.     It is unconscionable and outrageous that Defendants would risk the lives of consumers.   Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct rises to the level necessary that Plaintiff should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

56.     Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of YAZ/YASMIN as described herein.  Defendants did not disclose this information to the Plaintiff, the prescribing doctor, the Healthcare community and the general public.   Without full knowledge of the dangers of YAZ/YASMIN, Plaintiff and Plaintiff's lawyer could not evaluate whether a person who was injured by YAZ/YASMIN had a valid claim.

WHEREFORE, Plaintiff demands judgment against Defendants for such compensatory damages and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this Court, plus interest and costs.

## COUNT II
## STRICT LIABILITY

57.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

58.   At the time of Plaintiff's injury, Defendants' pharmaceutical, YAZ/YASMIN, was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

59.   The YAZ/YASMIN used by Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants.

60.   Plaintiff did not misuse or materially alter the YAZ/YASMIN.

61.   Defendants are strictly liable for Plaintiff's injury in the following ways:

   a.   The pharmaceutical YAZ/YASMIN as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

   b.   Defendants failed to properly market, design, manufacture, distribute, supply and sell YAZ/YASMIN;

   c.   Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

   d.   Defendants failed to adequately test YAZ/YASMIN;

e.    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of YAZ/YASMIN; and

f.    A feasible alternative design existed that was capable of preventing Plaintiff's injury.

62.    Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injury.

63.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.    Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.    Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

64.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

65.    At the time Defendants marketed, distributed and sold YAZ/YASMIN to Plaintiff, Defendants warranted that YAZ/YASMIN was merchantable and fit for the ordinary purposes for which it was intended.

66.    Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

67.    YAZ/YASMIN was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint.

68.    Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and free of defects and was a safe means of birth control.

69.    Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury.

70.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE

71.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

13

72.     Defendants sold YAZ/YASMIN with an implied warranty that it was fit for the particular purpose of safe birth control, which offered other benefits, such as reduced bloating, reduced mood swings, improved complexion, and reduced the severity of women's menstruation.

73.     Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

74.     YAZ/YASMIN was not fit for the particular purpose of a safe birth control pill without serious risk of personal injury, which risk is much higher than other birth control pills.

75.     Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and effective for use as a birth control method.

76.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injury.

77.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs as allowed by law and punitive damages.

## COUNT V
## NEGLIGENT FAILURE TO WARN

78.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

79.    Before Plaintiff used YAZ/YASMIN, and during the period in which she used it, Defendants knew or had reason to know that YAZ/YASMIN was dangerous and created an unreasonable risk of bodily harm to consumers.

80.    Defendants had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made YAZ/YASMIN likely to be dangerous.

81.    Despite the fact that  Defendants knew or had reason to know that YAZ/YASMIN was dangerous,  Defendants failed to exercise reasonable care in warning the medical community and consumers, including Plaintiff, of the dangerous conditions and facts that made YAZ/YASMIN likely to be dangerous.

82.    The Plaintiff's injury was a direct and proximate result of Defendants' failure to warn of the dangers of YAZ/YASMIN.

83.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

### COUNT VI
### NEGLIGENCE

84.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

85.    Defendants had a duty to exercise reasonable care in the manufacture, sale and distribution of YAZ/YASMIN, including a duty to assure that the product did not cause unreasonable, dangerous side effects to users.

86.    Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of YAZ/YASMIN in that Defendants knew or should have known that the drug created a high risk of unreasonable harm.

87.    Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of YAZ/YASMIN in that, among other things, they:

   a.    Failed to use due care in designing and manufacturing YAZ/YASMIN so as to avoid the aforementioned risks to individuals;

   b.    Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects. The

16

warnings given did not reflect accurately the symptoms, scope or

severity of the side effects;

c.   Failed to provide adequate training and instruction to medical

care providers for appropriate use of YAZ/YASMIN;

d.   Placed an unsafe product into the stream of commerce; and

e.   Were otherwise careless or negligent.

88.   Despite the fact that Defendants knew or should have known that

YAZ/YASMIN caused unreasonable, dangerous side effects which many users would

be unable to remedy by any means, Defendants continued to market YAZ/YASMIN

to consumers, including the medical community and Plaintiff.

89.   Defendants' conduct, as described above, was extreme and outrageous.

Defendants risked the lives of the consumers and users of their products, including

Plaintiff, with the knowledge of the safety and efficacy problems and suppressed

this knowledge from the general public.   Defendants made conscious decisions not

to redesign, re-label, warn or inform the unsuspecting consuming public.

Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an

amount in excess of $150,000.00, plus delay damages, interest, costs and punitive

damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

90.   Plaintiff incorporates by reference all preceding paragraphs as if fully

set forth herein and further alleges on information and belief as follows.

17

91.   Prior to Plaintiff first using YAZ/YASMIN and during the period in which she used YAZ/YASMIN, Defendants misrepresented that YAZ/YASMIN was a safe and effective means of birth control.   Defendants also failed to disclose material facts regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, harmful side effects, and results of clinical studies showing that use of the medication could be life threatening.

92.   Defendants had a duty to provide Plaintiff, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold.

93.   Defendants knew or should have known, based on their prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with YAZ/YASMIN, that their representations regarding YAZ/YASMIN were false, and that they had a duty to disclose the dangers of YAZ/YASMIN.

94.   Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiff, to act in reliance by purchasing YAZ/YASMIN.

95.   Plaintiff justifiably relied on Defendants' representations and nondisclosures by purchasing and using YAZ/YASMIN.

96.   Defendants' misrepresentations and omissions regarding the safety and efficacy of YAZ/YASMIN was the direct and proximate cause of Plaintiff's injuries.

97.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.    Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.    Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

**COUNT VIII**
**BREACH OF EXPRESS WARRANTY**

98.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

99.    Defendants expressly warranted that YAZ/YASMIN was safe and effective to members of the consuming public, including Plaintiff.

100.    Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

101.    Defendants marketed, promoted and sold YAZ/YASMIN as a safe method of birth control.

102.    YAZ/YASMIN does not conform to these express representations because YAZ/YASMIN is not safe and has serious side effects, including death.

103.    Defendants breached their express warranty in one or more of the following ways:

a.   YAZ/YASMIN, as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b.   Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

c.   Defendants failed to adequately test YAZ/YASMIN; and

d.   Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from YAZ/YASMIN.

104.   Plaintiff reasonably relied upon Defendants' warranty that YAZ/YASMIN was safe and effective when she purchased and used the medication.

105.   Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranty.

106.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

**COUNT IX**
**FRAUD**

107.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

108.   Defendants widely advertised and promoted YAZ/YASMIN as a safe and effective medication.

109.   Defendants had a duty to disclose material information about serious side effects to consumers such as Plaintiff.

110.   Additionally, by virtue of Defendants' partial disclosures about the medication, in which Defendants' touted YAZ/YASMIN as a safe and effective medication, Defendants had a duty to disclose all facts about the risks associated with use of the medication, including the risks described in this complaint. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, such as Plaintiff, to purchase Defendants' dangerous product.

111.   Had Plaintiff been aware of the hazards associated with YAZ/YASMIN, Plaintiff would not have consumed the product that led proximately to Plaintiff's adverse health effects.

112.   Defendants' advertisements regarding YAZ/YASMIN made material misrepresentations to the effect that YAZ/YASMIN was a safe and effective medication, which misrepresentations Defendants knew to be false, for the purpose

of fraudulently inducing consumers, such as Plaintiff, to purchase such product. Plaintiff relied on these material misrepresentations when deciding to purchase and consume YAZ/YASMIN.

113.   Upon information and belief, Plaintiff avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the hazards associated with YAZ/YASMIN with the purpose of preventing consumers, such as Plaintiff, from discovering these hazards.

### COUNT X
### Loss of Consortium – Kermick Gauthreaux

114.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

115.   As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff, Plaintiff Kermick Gauthreaux suffered the loss of companionship, society, services, and consortium of his wife.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

Date: May 18, 2009                    Respectfully Submitted,

/s/ DNG4046
Daniel N. Gallucci (Atty. ID No. 81995)
Joanne E. Matusko (Atty. ID No. 91059)
RODANAST, P.C.
801 Estelle Drive

Lancaster, Pennsylvania 17601
Telephone: (717) 892-3000
Facsimile: (717) 892-1200


David W. Zoll (Atty. ID No. 0008548)
Michelle L. Kranz (Atty. ID No. 0062479)
Pamela A. Borgess (Atty. ID No. 0072789)
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Ave., Suite 200
Toledo, OH  43617
PH: (419) 841-9623
Fax: (419) 841-9719
Email: david@toledolaw.com
         michelle@toledolaw.com
         pamela@toledolaw.com
*(Subject to Granting of Attorney Admissions
 Application [Pro Hac Vice])*


*Counsel for Plaintiffs*


## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all triable issues.



/s/ DNG4046
Daniel N. Gallucci (Atty. ID No. 81995)

23

**S**

United States District Court Eastern District of Pennsylvania                Page 1 of 2

A/R, SPECIAL

## United States District Court
## Eastern District of Pennsylvania (Allentown)
## CIVIL DOCKET FOR CASE #: 5:09-cv-02739-JP

GALVAN et al v. BAYER CORPORATION et al           Date Filed: 06/17/2009
Assigned to: HONORABLE JOHN R. PADOVA           Jury Demand: Plaintiff
related Case: 2:09-cv-02086-JP                   Nature of Suit: 365 Personal Inj. Prod.
Cause: 28:1332 Diversity-Personal Injury         Liability
                                                 Jurisdiction: Diversity

**Plaintiff**

**SILVIA F. GALVAN**              represented by   **DANIEL N. GALLUCCI**
                                                   RODA & NAST PC
                                                   801 ESTELLE DRIVE
                                                   LANCASTER , PA 17601
                                                   717-892-3000
                                                   Email: dgallucci@rodanast.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**JAVIER GALVAN**                 represented by   **DANIEL N. GALLUCCI**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BAYER CORPORATION**

**Defendant**

**BAYER HEALTHCARE, LLC**

**Defendant**

**BAYER PHARMACEUTICALS
CORPORATION**

**Defendant**

**BAYER HEALTHCARE
PHARMACEUTICALS, INC.**

**Defendant**

United States District Court Eastern District of Pennsylvania                Page 2 of 2

**BERLEX LABORATORIES, INC.**

<u>Defendant</u>
**BERLEX, INC.**

<u>Defendant</u>
**BAYER SCHERING PHARMA AG**

<u>Defendant</u>
**BAYER AG**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2009 | 1 | COMPLAINT against all defendants ( Filing fee $ 350 receipt number 002916.), filed by SILVIA F. GALVAN, JAVIER GALVAN.(ks, ) (Entered: 06/17/2009) |
| 06/17/2009 |  | 8 Summonses Issued as to BERLEX, INC., BAYER SCHERING PHARMA AG, BAYER AG, BAYER CORPORATION, BAYER HEALTHCARE, LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE PHARMACEUTICALS, INC., BERLEX LABORATORIES, INC.. Forwarded To: Counsel on 6/17/09 (ks, ) (Entered: 06/17/2009) |
| 06/17/2009 |  | DEMAND for Trial by Jury by SILVIA F. GALVAN, JAVIER GALVAN. (ks, ) (Entered: 06/17/2009) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/17/2009 11:55:03 | | |
| PACER Login: | m0030 | Client Code: | 9031/yaz |
| Description: | Docket Report | Search Criteria: | 5:09-cv-02739-JP |
| Billable Pages: | 1 | Cost: | 0.08 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Silvia F. Galvan and | : | Civil Action No: |
| Javier Galvan, | : | |
| Plaintiffs, | : | |
| | : | |
| | : | COMPLAINT |
| | : | |
| v. | : | |
| | : | |
| Bayer Corporation, | : | Jury Trial Demanded |
| Bayer Healthcare, LLC, | : | |
| Bayer Pharmaceuticals Corporation, | : | |
| Bayer Healthcare Pharmaceuticals, | : | |
| Inc., | : | |
| Berlex Laboratories, Inc., | : | |
| Berlex, Inc., | : | |
| Bayer Schering Pharma AG, | : | |
| Bayer AG, | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

NOW COME Plaintiffs for their multiple causes of action against Defendants

and allege and state the following:

## **THE PARTIES**

1.      Plaintiff Silvia F. Galvan ("Plaintiff") resides in Lincoln, Nebraska

2.      Plaintiff was prescribed and ingested YAZ and/or YASMIN and

suffered injury, including, but not limited to, the removal of her gallbladder.

3.      At all times relevant hereto, Plaintiff Javier Galvan was married to

Plaintiff.

1

4.     Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

5.     Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, PA 15205.

6.     Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

7.     Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

8.     As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

9.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

10.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

11.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YAZ.

12.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YASMIN.

13.     Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

14.     Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

15.     Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

16.     Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

3

17.    Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

18.    Defendant BAYER SCHERING PHARMA AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

19.    Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YASMIN.

20.    Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

21.    Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

22.    Defendant BAYER AG is the third largest pharmaceutical company in the world.

23.    Defendant BAYER AG is the parent/holding company of all other named Defendants.

24.    Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

25.    Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, and Bayer AG, shall be referred to herein individually by name or jointly as "Defendants."

4

26.    At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

27.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

28.    At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptives, YAZ and YASMIN.

## JURISDICTION AND VENUE

29.    Plaintiff alleges damages in excess of one hundred fifty thousand dollars ($150,000.00), exclusive of costs and interests.

30.    This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

31.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.A. §1391, as a substantial part of the events or omissions giving rise to the claim occurred within this District, including, but not limited to, the development, design, licensing, labeling, manufacturing and/or marketing of the defective drug, as well as Defendant's fraud and conspiracy to actively concealed and/or misrepresent information concerning the safety and efficacy of YASMIN and YAZ with the intention and specific desire to mislead the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.

32.     Plaintiff suffered serious personal injuries caused by YAZ and/or YASMIN, including, but not limited to, removal of her gallbladder.

33.     At all relevant times, Defendants designed, manufactured, marketed, and distributed the pharmaceutical drugs YAZ and YASMIN, both which are oral contraceptives.

34.     YASMIN received FDA approval first in 2001.  It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen.

35.     YAZ received approval from the FDA in 2006 and is essentially the same as YASMIN, with the only difference being a slightly smaller amount of ethinyl estradiol.

36.     YAZ/YASMIN are indicated for the prevention of pregnancy in women who elect to use an oral contraceptive.

37.     Combination birth control pills are referred to as combined hormonal oral contraceptives.

38.    The difference between YASMIN/YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

39.    YAZ/YASMIN's use of drospirenone, a diuretic, creates unique risks compared to other oral contraceptives and is known to cause problems with the gallbladder that may require surgical intervention.

40.    Upon information and belief, Defendants knew or should have known about the correlation between the use of YASMIN and YAZ and significantly increased risk of gallbladder complications.

41.    Yet, despite the wealth of scientific information available, Defendant ignored the correlation between the use of YASMIN and YAZ and the significantly increased risk of gallbladder problems and still promoted, sold, advertised, and marketed the use of YAZ/YASMIN without sufficient warnings.

42.    Defendants have been warned at least three times by the FDA, in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YASMIN and YAZ, and minimize serious risks associated with the drug.

43.    Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this complaint.

44.     As a result of the manufacture, marketing, advertising, promotion, distribution, the sale of YAZ/YASMIN without adequate warnings about the risks of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

## FACTS REGARDING PLAINTIFF SILVIA F. GALVAN

45.     Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YASMIN and/or YAZ to her detriment.

46.     As a result of using Defendants' product YASMIN and/or YAZ, on or about July 11, 2008 Plaintiff suffered serious and life-threatening side effects including but not limited to, gallbladder removal, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

47.     Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT

48.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

49.     Prior to Plaintiff's use of YAZ/YASMIN and during the period in which Plaintiff actually used YAZ/YASMIN, Defendants fraudulently suppressed material information regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, pre and post marketing deaths, a high rate of severe adverse event reports compared to other birth control pills, and the unique gallbladder dangers.  Furthermore, Defendants fraudulently concealed the safety information about the use of drospirenone, the only birth control pill using this ingredient.  As described above, drospirenone has several well known serious side effects that are not seen in other forms of birth control.  Plaintiff believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of YAZ/YASMIN strong.

50.     Defendants fraudulently concealed safety issues with YAZ/YASMIN in order to induce physicians to prescribe and patients, including Plaintiff, to purchase and use YAZ/YASMIN.

51.     At the time Defendants concealed the fact that YAZ/YASMIN was not safe, Defendants were under a duty to communicate this information to physicians, the FDA, the Healthcare community, and the general public in such a manner that they could appreciate the risks associated with using YAZ/YASMIN.

52.     Plaintiff and the Plaintiff's prescribing doctor relied upon the Defendants' outrageous untruths regarding the safety of YAZ/YASMIN.

53.     As a direct and proximate result of Defendants' malicious and or intentional concealment of material life altering information from Plaintiff and

Plaintiff's prescribing doctor, Defendants caused or contributed to Plaintiff's injuries.

54.     It is unconscionable and outrageous that Defendants would risk the lives of consumers.  Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct rises to the level necessary that Plaintiff should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

55.     Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of YAZ/YASMIN as described herein.  Defendants did not disclose this information to the Plaintiff, the prescribing doctor, the Healthcare community and the general public.  Without full knowledge of the dangers of YAZ/YASMIN, Plaintiff and Plaintiff's lawyer could not evaluate whether a person who was injured by YAZ/YASMIN had a valid claim.

WHEREFORE, Plaintiff demands judgment against Defendants for such compensatory damages and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this Court, plus interest and costs.

## COUNT II
## STRICT LIABILITY

56.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

57.    At the time of Plaintiff's injury, Defendants' pharmaceutical, YAZ/YASMIN, was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

58.    The YAZ/YASMIN used by Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants.

59.    Plaintiff did not misuse or materially alter the YAZ/YASMIN.

60.    Defendants are strictly liable for Plaintiff's injury in the following ways:

   a.    The pharmaceutical YAZ/YASMIN as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

   b.    Defendants failed to properly market, design, manufacture, distribute, supply and sell YAZ/YASMIN;

   c.    Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

   d.    Defendants failed to adequately test YAZ/YASMIN;

11

e.    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of YAZ/YASMIN; and

f.    A feasible alternative design existed that was capable of preventing Plaintiff's injury.

61.    Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injury.

62.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

64.    At the time Defendants marketed, distributed and sold YAZ/YASMIN to Plaintiff, Defendants warranted that YAZ/YASMIN was merchantable and fit for the ordinary purposes for which it was intended.

12

65.   Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

66.   YAZ/YASMIN was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint.

67.   Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and free of defects and was a safe means of birth control.

68.   Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury.

69.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

70.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

13

71.    Defendants sold YAZ/YASMIN with an implied warranty that it was fit for the particular purpose of safe birth control, which offered other benefits, such as reduced bloating, reduced mood swings, improved complexion, and reduced the severity of women's menstruation.

72.    Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

73.    YAZ/YASMIN was not fit for the particular purpose of a safe birth control pill without serious risk of personal injury, which risk is much higher than other birth control pills.

74.    Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and effective for use as a birth control method.

75.    Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injury.

76.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs as allowed by law and punitive damages.

## COUNT V
## NEGLIGENT FAILURE TO WARN

77.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

78.    Before Plaintiff used YAZ/YASMIN, and during the period in which she used it, Defendants knew or had reason to know that YAZ/YASMIN was dangerous and created an unreasonable risk of bodily harm to consumers.

79.    Defendants had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made YAZ/YASMIN likely to be dangerous.

80.    Despite the fact that Defendants knew or had reason to know that YAZ/YASMIN was dangerous, Defendants failed to exercise reasonable care in warning the medical community and consumers, including Plaintiff, of the dangerous conditions and facts that made YAZ/YASMIN likely to be dangerous.

81.    The Plaintiff's injury was a direct and proximate result of Defendants' failure to warn of the dangers of YAZ/YASMIN.

82.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT VI
## NEGLIGENCE

83.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

84.     Defendants had a duty to exercise reasonable care in the manufacture, sale and distribution of YAZ/YASMIN, including a duty to assure that the product did not cause unreasonable, dangerous side effects to users.

85.     Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of YAZ/YASMIN in that Defendants knew or should have known that the drug created a high risk of unreasonable harm.

86.     Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of YAZ/YASMIN in that, among other things, they:

    a.     Failed to use due care in designing and manufacturing YAZ/YASMIN so as to avoid the aforementioned risks to individuals;

    b.     Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects.  The

16

warnings given did not reflect accurately the symptoms, scope or severity of the side effects;

c.     Failed to provide adequate training and instruction to medical care providers for appropriate use of YAZ/YASMIN;

d.     Placed an unsafe product into the stream of commerce; and

e.     Were otherwise careless or negligent.

87.    Despite the fact that Defendants knew or should have known that YAZ/YASMIN caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market YAZ/YASMIN to consumers, including the medical community and Plaintiff.

88.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

89.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

90.    Prior to Plaintiff first using YAZ/YASMIN and during the period in which she used YAZ/YASMIN, Defendants misrepresented that YAZ/YASMIN was a safe and effective means of birth control.   Defendants also failed to disclose material facts regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, harmful side effects, and results of clinical studies showing that use of the medication could be life threatening.

91.    Defendants had a duty to provide Plaintiff, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold.

92.    Defendants knew or should have known, based on their prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with YAZ/YASMIN, that their representations regarding YAZ/YASMIN were false, and that they had a duty to disclose the dangers of YAZ/YASMIN.

93.    Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiff, to act in reliance by purchasing YAZ/YASMIN.

94.    Plaintiff justifiably relied on Defendants' representations and nondisclosures by purchasing and using YAZ/YASMIN.

95.    Defendants' misrepresentations and omissions regarding the safety and efficacy of YAZ/YASMIN was the direct and proximate cause of Plaintiff's injuries.

96.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT VIII
## BREACH OF EXPRESS WARRANTY

97.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

98.     Defendants expressly warranted that YAZ/YASMIN was safe and effective to members of the consuming public, including Plaintiff.

99.     Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

100.   Defendants marketed, promoted and sold YAZ/YASMIN as a safe method of birth control.

101.   YAZ/YASMIN does not conform to these express representations because YAZ/YASMIN is not safe and has serious side effects, including death.

102.   Defendants breached their express warranty in one or more of the following ways:

    a.    YAZ/YASMIN, as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

    b.    Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

    c.    Defendants failed to adequately test YAZ/YASMIN; and

    d.    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from YAZ/YASMIN.

103.   Plaintiff reasonably relied upon Defendants' warranty that YAZ/YASMIN was safe and effective when she purchased and used the medication.

104.   Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranty.

105.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

## COUNT IX
## FRAUD

106.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

107.   Defendants widely advertised and promoted YAZ/YASMIN as a safe and effective medication.

108.   Defendants had a duty to disclose material information about serious side effects to consumers such as Plaintiff.

109.   Additionally, by virtue of Defendants' partial disclosures about the medication, in which Defendants' touted YAZ/YASMIN as a safe and effective medication, Defendants had a duty to disclose all facts about the risks associated with use of the medication, including the risks described in this complaint. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, such as Plaintiff, to purchase Defendants' dangerous product.

110.   Had Plaintiff been aware of the hazards associated with YAZ/YASMIN, Plaintiff would not have consumed the product that led proximately to Plaintiff's adverse health effects.

111.   Defendants' advertisements regarding YAZ/YASMIN made material misrepresentations to the effect that YAZ/YASMIN was a safe and effective medication, which misrepresentations Defendants knew to be false, for the purpose

of fraudulently inducing consumers, such as Plaintiff, to purchase such product. Plaintiff relied on these material misrepresentations when deciding to purchase and consume YAZ/YASMIN.

112.   Upon information and belief, Plaintiff avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the hazards associated with YAZ/YASMIN with the purpose of preventing consumers, such as Plaintiff, from discovering these hazards.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

### COUNT X
### LOSS OF CONSORTIUM –   JAVIER GALVAN

113.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

114.   As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff, Plaintiff Javier Galvan suffered the loss of companionship, society, services, and consortium of his wife.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

Date: June 17, 2009       Respectfully Submitted,

/s/ DNG4046
Daniel N. Gallucci (Atty. ID No. 81995)
Joanne E. Matusko (Atty. ID No. 91059)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone: (717) 892-3000
Facsimile: (717) 892-1200

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all triable issues.

/s/ DNG4046
Daniel N. Gallucci (Atty. ID No. 81995)

**T**

United States District Court Eastern District of Pennsylvania                    Page 1 of 2

SPECIAL

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:09-cv-02740-JP

CLEVELAND v. BAYER CORPORATION et al              Date Filed: 06/17/2009
Assigned to: HONORABLE JOHN R. PADOVA           Jury Demand: Plaintiff
related Case: 2:09-cv-02086-JP                             Nature of Suit: 365 Personal Inj. Prod.
Cause: 28:1332 Diversity-Personal Injury            Liability
                                                                          Jurisdiction: Diversity

**Plaintiff**

**LAKOLLIER R. CLEVELAND**          represented by   **DANIEL N. GALLUCCI**
                                                                          RODA & NAST PC
                                                                          801 ESTELLE DRIVE
                                                                          LANCASTER , PA 17601
                                                                          717-892-3000
                                                                          Email: dgallucci@rodanast.com
                                                                          *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BAYER CORPORATION**

**Defendant**

**BAYER HEALTHCARE, LLC**

**Defendant**

**BAYER PHARMACEUTICALS
CORPORATION**

**Defendant**

**BAYER HEALTHCARE
PHARMACEUTICALS, INC.**

**Defendant**

**BERLEX LABORATORIES, INC.**

**Defendant**

**BERLEX, INC.**

**Defendant**

United States District Court Eastern District of Pennsylvania                                Page 2 of 2

**BAYER SCHERING PHARMA AG**

**Defendant**
**BAYER AG**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2009 | 1 | COMPLAINT against all defendants ( Filing fee $ 350 receipt number 002916.), filed by LAKOLLIER R. CLEVELAND.(ks, ) (Entered: 06/17/2009) |
| 06/17/2009 | | 8 Summonses Issued as to BAYER AG, BAYER CORPORATION, BAYER HEALTHCARE, LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE PHARMACEUTICALS, INC., BERLEX LABORATORIES, INC., BERLEX, INC., BAYER SCHERING PHARMA AG. Forwarded To: Counsel on 6/17/09 (ks, ) (Entered: 06/17/2009) |
| 06/17/2009 | | DEMAND for Trial by Jury by LAKOLLIER R. CLEVELAND. (ks, ) (Entered: 06/17/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/17/2009 12:19:50 | | | |
| PACER Login: | m0030 | Client Code: | 9031/yaz |
| Description: | Docket Report | Search Criteria: | 2:09-cv-02740-JP |
| Billable Pages: | 1 | Cost: | 0.08 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LaKollier R. Cleveland | : | Civil Action No: |
| Plaintiff, | : | |
| | : | |
| | : | COMPLAINT |
| | : | |
| v. | : | |
| | : | |
| Bayer Corporation, | : | Jury Trial Demanded |
| Bayer Healthcare, LLC, | : | |
| Bayer Pharmaceuticals Corporation, | : | |
| Bayer Healthcare Pharmaceuticals, | : | |
| Inc., | : | |
| Berlex Laboratories, Inc., | : | |
| Berlex, Inc., | : | |
| Bayer Schering Pharma AG, | : | |
| Bayer AG, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

NOW COMES Plaintiff for her multiple causes of action against Defendants and alleges and states the following:

## THE PARTIES

1.  Plaintiff LaKollier R. Cleveland ("Plaintiff") resides in Memphis, Tennessee.

2.  Plaintiff was prescribed and ingested YAZ and/or YASMIN and suffered injury, including, but not limited to, the development of a deep vein thrombosis.

1

3.      Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

4.      Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, PA 15205.

5.      Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

6.      Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

7.      As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

8.      Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

9.      Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

10.      Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YAZ.

11.      Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YASMIN.

12.      Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

13.      Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

14.      Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

15.      Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

3

16.     Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

17.     Defendant BAYER SCHERING PHARMA AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

18.     Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YASMIN.

19.     Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

20.     Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

21.     Defendant BAYER AG is the third largest pharmaceutical company in the world.

22.     Defendant BAYER AG is the parent/holding company of all other named Defendants.

23.     Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

24.     Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, and Bayer AG, shall be referred to herein individually by name or jointly as "Defendants."

4

25.     At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

26.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

27.     At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptives, YAZ and YASMIN.

## JURISDICTION AND VENUE

28.     Plaintiff alleges damages in excess of one hundred fifty thousand dollars ($150,000.00), exclusive of costs and interests.

29.     This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

30.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.A. §1391, as a substantial part of the events or omissions giving rise to the claim occurred within this District, including, but not limited to, the development, design, licensing, labeling, manufacturing and/or marketing of the defective drug, as well as Defendant's fraud and conspiracy to actively concealed and/or misrepresent information concerning the safety and efficacy of YASMIN and YAZ with the intention and specific desire to mislead the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.

## FACTUAL BACKGROUND

31.    Plaintiff took YAZ and/or YASMIN.

32.    Plaintiff suffered serious personal injuries caused by YAZ and/or YASMIN, including, but not limited to, the development of a deep vein thrombosis.

33.    At all relevant times, Defendants designed, manufactured, marketed, and distributed the pharmaceutical drugs YAZ and YASMIN, both which are oral contraceptives.

34.    YASMIN received FDA approval first in 2001. It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen.

35.    YAZ received approval from the FDA in 2006 and is essentially the same as YASMIN, with the only difference being a slightly smaller amount of ethinyl estradiol.

36.    YAZ/YASMIN are indicated for the prevention of pregnancy in women who elect to use an oral contraceptive.

37.    Combination birth control pills are referred to as combined hormonal oral contraceptives.

38.    The difference between YASMIN/YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

39.    YAZ/YASMIN's use of drospirenone, a diuretic, creates unique risks compared to other oral contraceptives and is known to cause problems with the development of pulmonary embolism and deep vein thrombosis.

40.    Upon information and belief, Defendants knew or should have known about the correlation between the use of YASMIN and YAZ and the significantly increased risk of the development of pulmonary embolism and deep vein thrombosis.

41.    Yet, despite the wealth of scientific information available, Defendants ignored the correlation between the use of YASMIN and YAZ and the significantly increased risk of the development of pulmonary embolism and deep vein thrombosis and still promoted, sold, advertised, and marketed the use of YAZ/YASMIN without sufficient warnings.

42.    Defendants have been warned at least three times by the FDA, in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YASMIN and YAZ, and minimize serious risks associated with the drug.

43.     Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this complaint.

44.     As a result of the manufacture, marketing, advertising, promotion, distribution, the sale of YAZ/YASMIN without adequate warnings about the risks of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

**FACTS REGARDING PLAINTIFF LAKOLLIER R. CLEVELAND**

45.     Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YASMIN and/or YAZ to her detriment.

46.     As a result of using Defendants' product YASMIN and/or YAZ, on or about June 21, 2008 Plaintiff suffered serious and life-threatening side effects including but not limited to, the development of a deep vein thrombosis, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

47.     Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT

48.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

49.     Prior to Plaintiff's use of YAZ/YASMIN and during the period in which Plaintiff actually used YAZ/YASMIN, Defendants fraudulently suppressed material information regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, pre and post marketing deaths, a high rate of severe adverse event reports compared to other birth control pills, and the unique gallbladder dangers.  Furthermore, Defendants fraudulently concealed the safety information about the use of drospirenone, the only birth control pill using this ingredient.  As described above, drospirenone has several well known serious side effects that are not seen in other forms of birth control.  Plaintiff believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of YAZ/YASMIN strong.

50.     Defendants fraudulently concealed safety issues with YAZ/YASMIN in order to induce physicians to prescribe and patients, including Plaintiff, to purchase and use YAZ/YASMIN.

51.     At the time Defendants concealed the fact that YAZ/YASMIN was not safe, Defendants were under a duty to communicate this information to physicians,

the FDA, the Healthcare community, and the general public in such a manner that they could appreciate the risks associated with using YAZ/YASMIN.

52.     Plaintiff and the Plaintiff's prescribing doctor relied upon the Defendants' outrageous untruths regarding the safety of YAZ/YASMIN.

53.     As a direct and proximate result of Defendants' malicious and or intentional concealment of material life altering information from Plaintiff and Plaintiff's prescribing doctor, Defendants caused or contributed to Plaintiff's injuries.

54.     It is unconscionable and outrageous that Defendants would risk the lives of consumers.  Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct rises to the level necessary that Plaintiff should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

55.     Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of YAZ/YASMIN as described herein.  Defendants did not disclose this information to the Plaintiff, the prescribing doctor, the Healthcare community and the general public.  Without full knowledge of the dangers of YAZ/YASMIN, Plaintiff and Plaintiff's lawyer could not evaluate whether a person who was injured by YAZ/YASMIN had a valid claim.

WHEREFORE, Plaintiff demands judgment against Defendants for such compensatory damages and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this Court, plus interest and costs.

### COUNT II
### STRICT LIABILITY

56.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

57.     At the time of Plaintiff's injury, Defendants' pharmaceutical, YAZ/YASMIN, was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

58.     The YAZ/YASMIN used by Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants.

59.     Plaintiff did not misuse or materially alter the YAZ/YASMIN.

60.     Defendants are strictly liable for Plaintiff's injury in the following ways:

   a.     The pharmaceutical YAZ/YASMIN as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

   b.      Defendants failed to properly market, design, manufacture, distribute, supply and sell YAZ/YASMIN;

11

c.    Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

d.    Defendants failed to adequately test YAZ/YASMIN;

e.    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of YAZ/YASMIN; and

f.    A feasible alternative design existed that was capable of preventing Plaintiff's injury.

61.    Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injury.

62.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.    Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.    Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

64.    At the time Defendants marketed, distributed and sold YAZ/YASMIN to Plaintiff, Defendants warranted that YAZ/YASMIN was merchantable and fit for the ordinary purposes for which it was intended.

65.    Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

66.    YAZ/YASMIN was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint.

67.    Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and free of defects and was a safe means of birth control.

68.    Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury.

69.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE

70.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

71.     Defendants sold YAZ/YASMIN with an implied warranty that it was fit for the particular purpose of safe birth control, which offered other benefits, such as reduced bloating, reduced mood swings, improved complexion, and reduced the severity of women's menstruation.

72.     Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

73.     YAZ/YASMIN was not fit for the particular purpose of a safe birth control pill without serious risk of personal injury, which risk is much higher than other birth control pills.

74.     Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and effective for use as a birth control method.

75.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injury.

76.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to

redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants'
outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an
amount in excess of $150,000.00, plus delay damages, interest, costs as allowed by
law and punitive damages.

### COUNT V
### NEGLIGENT FAILURE TO WARN

77.    Plaintiff incorporates by reference all preceding paragraphs as if fully
set forth herein and further alleges on information and belief as follows.

78.    Before Plaintiff used YAZ/YASMIN, and during the period in which
she used it, Defendants knew or had reason to know that YAZ/YASMIN was
dangerous and created an unreasonable risk of bodily harm to consumers.

79.    Defendants had a duty to exercise reasonable care to warn end users of
the dangerous conditions or of the facts that made YAZ/YASMIN likely to be
dangerous.

80.    Despite the fact that Defendants knew or had reason to know that
YAZ/YASMIN was dangerous, Defendants failed to exercise reasonable care in
warning the medical community and consumers, including Plaintiff, of the
dangerous conditions and facts that made YAZ/YASMIN likely to be dangerous.

81.    The Plaintiff's injury was a direct and proximate result of Defendants'
failure to warn of the dangers of YAZ/YASMIN.

82.    Defendants' conduct, as described above, was extreme and outrageous.
Defendants risked the lives of consumers and users of their products, including

Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

### COUNT VI
### NEGLIGENCE

83.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

84.   Defendants had a duty to exercise reasonable care in the manufacture, sale and distribution of YAZ/YASMIN, including a duty to assure that the product did not cause unreasonable, dangerous side effects to users.

85.   Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of YAZ/YASMIN in that Defendants knew or should have known that the drug created a high risk of unreasonable harm.

86.   Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of YAZ/YASMIN in that, among other things, they:

        a.      Failed to use due care in designing and manufacturing YAZ/YASMIN so as to avoid the aforementioned risks to individuals;

16

b.      Failed to accompany the drug with proper warnings regarding

all possible adverse side effects associated with its use, and the

comparative severity and duration of such adverse effects.  The

warnings given did not reflect accurately the symptoms, scope or

severity of the side effects;

c.      Failed to provide adequate training and instruction to medical

care providers for appropriate use of YAZ/YASMIN;

d.      Placed an unsafe product into the stream of commerce; and

e.      Were otherwise careless or negligent.

87.     Despite the fact that Defendants knew or should have known that

YAZ/YASMIN caused unreasonable, dangerous side effects which many users would

be unable to remedy by any means, Defendants continued to market YAZ/YASMIN

to consumers, including the medical community and Plaintiff.

88.     Defendants' conduct, as described above, was extreme and outrageous.

Defendants risked the lives of the consumers and users of their products, including

Plaintiff, with the knowledge of the safety and efficacy problems and suppressed

this knowledge from the general public.   Defendants made conscious decisions not

to redesign, re-label, warn or inform the unsuspecting consuming public.

Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an

amount in excess of $150,000.00, plus delay damages, interest, costs and punitive

damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

89.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

90.     Prior to Plaintiff first using YAZ/YASMIN and during the period in which she used YAZ/YASMIN, Defendants misrepresented that YAZ/YASMIN was a safe and effective means of birth control.   Defendants also failed to disclose material facts regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, harmful side effects, and results of clinical studies showing that use of the medication could be life threatening.

91.     Defendants had a duty to provide Plaintiff, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold.

92.     Defendants knew or should have known, based on their prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with YAZ/YASMIN, that their representations regarding YAZ/YASMIN were false, and that they had a duty to disclose the dangers of YAZ/YASMIN.

93.     Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiff, to act in reliance by purchasing YAZ/YASMIN.

94.     Plaintiff justifiably relied on Defendants' representations and nondisclosures by purchasing and using YAZ/YASMIN.

18

95.     Defendants' misrepresentations and omissions regarding the safety and efficacy of YAZ/YASMIN was the direct and proximate cause of Plaintiff's injuries.

96.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

**COUNT VIII**
**BREACH OF EXPRESS WARRANTY**

97.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

98.     Defendants expressly warranted that YAZ/YASMIN was safe and effective to members of the consuming public, including Plaintiff.

99.     Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

100.    Defendants marketed, promoted and sold YAZ/YASMIN as a safe method of birth control.

101.   YAZ/YASMIN does not conform to these express representations because YAZ/YASMIN is not safe and has serious side effects, including death.

102.   Defendants breached their express warranty in one or more of the following ways:

a.   YAZ/YASMIN, as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b.   Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

c.   Defendants failed to adequately test YAZ/YASMIN; and

d.   Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from YAZ/YASMIN.

103.   Plaintiff reasonably relied upon Defendants' warranty that YAZ/YASMIN was safe and effective when she purchased and used the medication.

104.   Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranty.

105.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to

20

redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants'
outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an
amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed
by law.

### COUNT IX
### FRAUD

106.   Plaintiff incorporates by reference all preceding paragraphs as if fully
set forth herein and further alleges on information and belief as follows.

107.   Defendants widely advertised and promoted YAZ/YASMIN as a safe
and effective medication.

108.   Defendants had a duty to disclose material information about serious
side effects to consumers such as Plaintiff.

109.   Additionally, by virtue of Defendants' partial disclosures about the
medication, in which Defendants' touted YAZ/YASMIN as a safe and effective
medication, Defendants had a duty to disclose all facts about the risks associated
with use of the medication, including the risks described in this complaint.
Defendants intentionally failed to disclose this information for the purpose of
inducing consumers, such as Plaintiff, to purchase Defendants' dangerous product.

110.   Had Plaintiff been aware of the hazards associated with YAZ/YASMIN,
Plaintiff would not have consumed the product that led proximately to Plaintiff's
adverse health effects.

111. Defendants' advertisements regarding YAZ/YASMIN made material misrepresentations to the effect that YAZ/YASMIN was a safe and effective medication, which misrepresentations Defendants knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiff, to purchase such product. Plaintiff relied on these material misrepresentations when deciding to purchase and consume YAZ/YASMIN.

112. Upon information and belief, Plaintiff avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the hazards associated with YAZ/YASMIN with the purpose of preventing consumers, such as Plaintiff, from discovering these hazards.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

Date: June 17, 2009          Respectfully Submitted,

/s/ DNG4046
Daniel N. Gallucci (Atty. ID No. 81995)
Joanne E. Matusko (Atty. ID No. 91059)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone: (717) 892-3000
Facsimile: (717) 892-1200


*Counsel for Plaintiff*

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

/s/ DNG4046
Daniel N. Gallucci (Atty. ID No. 81995)

**U**

United States District Court Eastern District of Pennsylvania                    Page 1 of 2

SPECIAL

## United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:09-cv-02753-JP

HAYAT et al v. BAYER CORPORATION et al          Date Filed: 06/18/2009
Assigned to: HONORABLE JOHN R. PADOVA          Jury Demand: Plaintiff
related Case: 2:09-cv-02086-JP                  Nature of Suit: 365 Personal Inj. Prod.
Cause: 28:1332 Diversity-Product Liability      Liability
                                                Jurisdiction: Diversity

**Plaintiff**

**DANIELLE C. HAYAT**              represented by  **DANIEL N. GALLUCCI**
                                                  RODA & NAST PC
                                                  801 ESTELLE DRIVE
                                                  LANCASTER , PA 17601
                                                  717-892-3000
                                                  Email: dgallucci@rodanast.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**ADAM HAYAT**                     represented by  **DANIEL N. GALLUCCI**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BAYER CORPORATION**

**Defendant**

**BAYER HEALTHCARE, LLC**

**Defendant**

**BAYER PHARMACEUTICALS
CORPORATION**

**Defendant**

**BAYER HEALTHCARE
PHARMACEUTICALS, INC.**

**Defendant**

**BERLEX LABORATORIES, INC.**

**Defendant**
**BERLEX, INC.**

**Defendant**
**BAYER SCHERING PHARMA AG**

**Defendant**
**BAYER AG**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/18/2009 | 1 | COMPLAINT against all defendants ( Filing fee $ 350 receipt number 002991.), filed by DANIELLE C. HAYAT, ADAM HAYAT.(tj, ) (Entered: 06/18/2009) |
| 06/18/2009 | | Summons Issued; 8 Mailed to counsel 6/18/09 as to BERLEX, INC., BAYER SCHERING PHARMA AG, BAYER AG, BAYER CORPORATION, BAYER HEALTHCARE, LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE PHARMACEUTICALS, INC., BERLEX LABORATORIES, INC. (tj, ) (Entered: 06/18/2009) |
| 06/18/2009 | | DEMAND for Trial by Jury by DANIELLE C. HAYAT, ADAM HAYAT. (tj, ) (Entered: 06/18/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/17/2009 12:23:46 | | | |
| PACER Login: | rn0030 | Client Code: | 9031/yaz |
| Description: | Docket Report | Search Criteria: | 2:09-cv-02753-JP |
| Billable Pages: | 1 | Cost: | 0.08 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Danielle C. Hayat  and | : | Civil Action No: |
| Adam Hayat, | : | |
| Plaintiffs, | : | |
| | : | |
| | : | COMPLAINT |
| v. | : | |
| | : | |
| Bayer Corporation, | : | Jury Trial Demanded |
| Bayer Healthcare, LLC, | : | |
| Bayer Pharmaceuticals Corporation, | : | |
| Bayer Healthcare Pharmaceuticals, | : | |
| Inc., | : | |
| Berlex Laboratories, Inc., | : | |
| Berlex, Inc., | : | |
| Bayer Schering Pharma AG, | : | |
| Bayer AG, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

NOW COME Plaintiffs for their multiple causes of action against Defendants and allege and state the following:

### THE PARTIES

1.     Plaintiff Danielle C. Hayat ("Plaintiff") resides in Boca Raton, Florida.

2.     Plaintiff was prescribed and ingested YAZ and/or YASMIN and suffered injury, including, but not limited to, the removal of her gallbladder.

3.     At all times relevant hereto, Plaintiff Adam Hayat was married to Plaintiff.

1

4.      Defendant BAYER CORPORATION is, and at all times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Rd., Pittsburgh, Pennsylvania 15205.

5.      Defendant BAYER HEALTHCARE LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, PA 15205.

6.      Defendant BAYER HEALTHCARE LLC is wholly owned by Defendant BAYER CORPORATION.

7.      Defendant BAYER PHARMACEUTICALS CORPORATION is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 1400 Morgan Lane, West Haven, Connecticut.

8.      As of January 1, 2008, Defendant BAYER PHARMACEUTICALS CORPORATION was merged into Defendant BAYER HEALTHCARE PHARMACEUTICALS INC.

9.      Defendant BAYER HEALTHCARE PHARMACEUTICALS INC., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

10.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

11.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YAZ.

12.     Defendant BAYER HEALTHCARE PHARMACEUTICALS INC. is the holder of approved New Drug Application ("NDA") for YASMIN.

13.     Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. are, and at all times relevant were, foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey, 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.

14.     Defendants BERLEX LABORATORIES, INC. and BERLEX, INC. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

15.     Defendant BAYER SCHERING PHARMA AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

16.     Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

3

17.     Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

18.     Defendant BAYER SCHERING PHARMA AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

19.     Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YASMIN.

20.     Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

21.     Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

22.     Defendant BAYER AG is the third largest pharmaceutical company in the world.

23.     Defendant BAYER AG is the parent/holding company of all other named Defendants.

24.     Defendant BAYER AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

25.     Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, and Bayer AG, shall be referred to herein individually by name or jointly as "Defendants."

26.    At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

27.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

28.    At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptives, YAZ and YASMIN.

## JURISDICTION AND VENUE

29.    Plaintiff alleges damages in excess of one hundred fifty thousand dollars ($150,000.00), exclusive of costs and interests.

30.    This Court has jurisdiction over this action pursuant to 28 U.S.C.A. §1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

31.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.A. §1391, as a substantial part of the events or omissions giving rise to the claim occurred within this District, including, but not limited to, the development, design, licensing, labeling, manufacturing and/or marketing of the defective drug, as well as Defendant's fraud and conspiracy to actively concealed and/or misrepresent information concerning the safety and efficacy of YASMIN and YAZ with the intention and specific desire to mislead the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.

32.     Plaintiff suffered serious personal injuries caused by YAZ and/or YASMIN, including, but not limited to, removal of her gallbladder.

33.     At all relevant times, Defendants designed, manufactured, marketed, and distributed the pharmaceutical drugs YAZ and YASMIN, both which are oral contraceptives.

34.     YASMIN received FDA approval first in 2001. It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen.

35.     YAZ received approval from the FDA in 2006 and is essentially the same as YASMIN, with the only difference being a slightly smaller amount of ethinyl estradiol.

36.     YAZ/YASMIN are indicated for the prevention of pregnancy in women who elect to use an oral contraceptive.

37.     Combination birth control pills are referred to as combined hormonal oral contraceptives.

38.    The difference between YASMIN/YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

39.    YAZ/YASMIN's use of drospirenone, a diuretic, creates unique risks compared to other oral contraceptives and is known to cause problems with the gallbladder that may require surgical intervention.

40.    Upon information and belief, Defendants knew or should have known about the correlation between the use of YASMIN and YAZ and significantly increased risk of gallbladder complications.

41.    Yet, despite the wealth of scientific information available, Defendant ignored the correlation between the use of YASMIN and YAZ and the significantly increased risk of gallbladder problems and still promoted, sold, advertised, and marketed the use of YAZ/YASMIN without sufficient warnings.

42.    Defendants have been warned at least three times by the FDA, in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YASMIN and YAZ, and minimize serious risks associated with the drug.

43.    Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this complaint.

44.    As a result of the manufacture, marketing, advertising, promotion, distribution, the sale of YAZ/YASMIN without adequate warnings about the risks of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

### FACTS REGARDING PLAINTIFF DANIELLE C. HAYAT

45.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YASMIN and/or YAZ to her detriment.

46.    As a result of using Defendants' product YASMIN and/or YAZ, on or about June 21, 2007 Plaintiff suffered serious and life-threatening side effects including but not limited to, gallbladder removal, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

47.    Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

### CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT

48.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

49.     Prior to Plaintiff's use of YAZ/YASMIN and during the period in which Plaintiff actually used YAZ/YASMIN, Defendants fraudulently suppressed material information regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, pre and post marketing deaths, a high rate of severe adverse event reports compared to other birth control pills, and the unique gallbladder dangers.  Furthermore, Defendants fraudulently concealed the safety information about the use of drospirenone, the only birth control pill using this ingredient.  As described above, drospirenone has several well known serious side effects that are not seen in other forms of birth control.  Plaintiff believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of YAZ/YASMIN strong.

50.     Defendants fraudulently concealed safety issues with YAZ/YASMIN in order to induce physicians to prescribe and patients, including Plaintiff, to purchase and use YAZ/YASMIN.

51.     At the time Defendants concealed the fact that YAZ/YASMIN was not safe, Defendants were under a duty to communicate this information to physicians, the FDA, the Healthcare community, and the general public in such a manner that they could appreciate the risks associated with using YAZ/YASMIN.

52.     Plaintiff and the Plaintiff's prescribing doctor relied upon the Defendants' outrageous untruths regarding the safety of YAZ/YASMIN.

53.     As a direct and proximate result of Defendants' malicious and or intentional concealment of material life altering information from Plaintiff and

Plaintiff's prescribing doctor, Defendants caused or contributed to Plaintiff's injuries.

54.    It is unconscionable and outrageous that Defendants would risk the lives of consumers.  Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct rises to the level necessary that Plaintiff should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

55.    Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of YAZ/YASMIN as described herein.  Defendants did not disclose this information to the Plaintiff, the prescribing doctor, the Healthcare community and the general public.  Without full knowledge of the dangers of YAZ/YASMIN, Plaintiff and Plaintiff's lawyer could not evaluate whether a person who was injured by YAZ/YASMIN had a valid claim.

WHEREFORE, Plaintiff demands judgment against Defendants for such compensatory damages and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this Court, plus interest and costs.

## COUNT II
## STRICT LIABILITY

56.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

57.    At the time of Plaintiff's injury, Defendants' pharmaceutical, YAZ/YASMIN, was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

58.    The YAZ/YASMIN used by Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants.

59.    Plaintiff did not misuse or materially alter the YAZ/YASMIN.

60.    Defendants are strictly liable for Plaintiff's injury in the following ways:

    a.    The pharmaceutical YAZ/YASMIN as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

    b.    Defendants failed to properly market, design, manufacture, distribute, supply and sell YAZ/YASMIN;

    c.    Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

    d.    Defendants failed to adequately test YAZ/YASMIN;

e.    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of YAZ/YASMIN; and

f.    A feasible alternative design existed that was capable of preventing Plaintiff's injury.

61.    Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injury.

62.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.  Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

### COUNT III
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

64.    At the time Defendants marketed, distributed and sold YAZ/YASMIN to Plaintiff, Defendants warranted that YAZ/YASMIN was merchantable and fit for the ordinary purposes for which it was intended.

12

65.    Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

66.    YAZ/YASMIN was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint.

67.    Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and free of defects and was a safe means of birth control.

68.    Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury.

69.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

70.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

13

71.    Defendants sold YAZ/YASMIN with an implied warranty that it was fit for the particular purpose of safe birth control, which offered other benefits, such as reduced bloating, reduced mood swings, improved complexion, and reduced the severity of women's menstruation.

72.    Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

73.    YAZ/YASMIN was not fit for the particular purpose of a safe birth control pill without serious risk of personal injury, which risk is much higher than other birth control pills.

74.    Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and effective for use as a birth control method.

75.    Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injury.

76.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs as allowed by law and punitive damages.

## COUNT V
## NEGLIGENT FAILURE TO WARN

77.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

78.     Before Plaintiff used YAZ/YASMIN, and during the period in which she used it, Defendants knew or had reason to know that YAZ/YASMIN was dangerous and created an unreasonable risk of bodily harm to consumers.

79.     Defendants had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made YAZ/YASMIN likely to be dangerous.

80.     Despite the fact that Defendants knew or had reason to know that YAZ/YASMIN was dangerous, Defendants failed to exercise reasonable care in warning the medical community and consumers, including Plaintiff, of the dangerous conditions and facts that made YAZ/YASMIN likely to be dangerous.

81.     The Plaintiff's injury was a direct and proximate result of Defendants' failure to warn of the dangers of YAZ/YASMIN.

82.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

### COUNT VI
### NEGLIGENCE

83.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

84.    Defendants had a duty to exercise reasonable care in the manufacture, sale and distribution of YAZ/YASMIN, including a duty to assure that the product did not cause unreasonable, dangerous side effects to users.

85.    Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of YAZ/YASMIN in that Defendants knew or should have known that the drug created a high risk of unreasonable harm.

86.    Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of YAZ/YASMIN in that, among other things, they:

    a.    Failed to use due care in designing and manufacturing YAZ/YASMIN so as to avoid the aforementioned risks to individuals;

    b.    Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects.  The

warnings given did not reflect accurately the symptoms, scope or severity of the side effects;

c.    Failed to provide adequate training and instruction to medical care providers for appropriate use of YAZ/YASMIN;

d.    Placed an unsafe product into the stream of commerce; and

e.    Were otherwise careless or negligent.

87.    Despite the fact that Defendants knew or should have known that YAZ/YASMIN caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market YAZ/YASMIN to consumers, including the medical community and Plaintiff.

88.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

89.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

17

90.     Prior to Plaintiff first using YAZ/YASMIN and during the period in which she used YAZ/YASMIN, Defendants misrepresented that YAZ/YASMIN was a safe and effective means of birth control.   Defendants also failed to disclose material facts regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, harmful side effects, and results of clinical studies showing that use of the medication could be life threatening.

91.     Defendants had a duty to provide Plaintiff, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold.

92.     Defendants knew or should have known, based on their prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with YAZ/YASMIN, that their representations regarding YAZ/YASMIN were false, and that they had a duty to disclose the dangers of YAZ/YASMIN.

93.     Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiff, to act in reliance by purchasing YAZ/YASMIN.

94.     Plaintiff justifiably relied on Defendants' representations and nondisclosures by purchasing and using YAZ/YASMIN.

95.     Defendants' misrepresentations and omissions regarding the safety and efficacy of YAZ/YASMIN was the direct and proximate cause of Plaintiff's injuries.

96.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT VIII
## BREACH OF EXPRESS WARRANTY

97.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

98.   Defendants expressly warranted that YAZ/YASMIN was safe and effective to members of the consuming public, including Plaintiff.

99.   Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

100.   Defendants marketed, promoted and sold YAZ/YASMIN as a safe method of birth control.

101.   YAZ/YASMIN does not conform to these express representations because YAZ/YASMIN is not safe and has serious side effects, including death.

102.   Defendants breached their express warranty in one or more of the following ways:

a.     YAZ/YASMIN, as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b.     Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

c.     Defendants failed to adequately test YAZ/YASMIN; and

d.     Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from YAZ/YASMIN.

103.   Plaintiff reasonably relied upon Defendants' warranty that YAZ/YASMIN was safe and effective when she purchased and used the medication.

104.   Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranty.

105.   Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

## COUNT IX
## FRAUD

106.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

107.   Defendants widely advertised and promoted YAZ/YASMIN as a safe and effective medication.

108.   Defendants had a duty to disclose material information about serious side effects to consumers such as Plaintiff.

109.   Additionally, by virtue of Defendants' partial disclosures about the medication, in which Defendants' touted YAZ/YASMIN as a safe and effective medication, Defendants had a duty to disclose all facts about the risks associated with use of the medication, including the risks described in this complaint. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, such as Plaintiff, to purchase Defendants' dangerous product.

110.   Had Plaintiff been aware of the hazards associated with YAZ/YASMIN, Plaintiff would not have consumed the product that led proximately to Plaintiff's adverse health effects.

111.   Defendants' advertisements regarding YAZ/YASMIN made material misrepresentations to the effect that YAZ/YASMIN was a safe and effective medication, which misrepresentations Defendants knew to be false, for the purpose

of fraudulently inducing consumers, such as Plaintiff, to purchase such product. Plaintiff relied on these material misrepresentations when deciding to purchase and consume YAZ/YASMIN.

112.    Upon information and belief, Plaintiff avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the hazards associated with YAZ/YASMIN with the purpose of preventing consumers, such as Plaintiff, from discovering these hazards.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

### COUNT X
### LOSS OF CONSORTIUM – ADAM HAYAT

113.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

114.    As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff, Plaintiff Adam Hayat suffered the loss of companionship, society, services, and consortium of his wife.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

Date:  June 18, 2009                    Respectfully Submitted,

                                        /s/ DNG4046
                                        Daniel N. Gallucci (Atty. ID No. 81995)
                                        Joanne E. Matusko (Atty. ID No. 91059)
                                        RODANAST, P.C.
                                        801 Estelle Drive
                                        Lancaster, Pennsylvania 17601
                                        Telephone: (717) 892-3000
                                        Facsimile: (717) 892-1200

                                        *Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all triable issues.

                                        /s/ DNG4046
                                        Daniel N. Gallucci (Atty. ID No. 81995)

V

United States District Court Eastern District of Pennsylvania                 Page 1 of 2

SPECIAL

## United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:09-cv-03114-JP

LANE-CHRISTIAN et al v. BAYER CORPORATION et al       Date Filed: 07/14/2009
Assigned to: HONORABLE JOHN R. PADOVA                 Jury Demand: Plaintiff
related Case: 2:09-cv-02086-JP                        Nature of Suit: 365 Personal Inj. Prod.
Cause: 28:1332 Diversity-Product Liability            Liability
                                                      Jurisdiction: Diversity

**Plaintiff**

**DEBORAH KAY LANE-**              represented by   **DANIEL N. GALLUCCI**
**CHRISTIAN**                                       RODA & NAST PC
                                                    801 ESTELLE DRIVE
                                                    LANCASTER , PA 17601
                                                    717-892-3000
                                                    Email: dgallucci@rodanast.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARK D. CHRISTIAN**              represented by   **DANIEL N. GALLUCCI**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BAYER CORPORATION**

**Defendant**

**BAYER HEALTHCARE, LLC**

**Defendant**

**BAYER PHARMACEUTICALS**
**CORPORATION**

**Defendant**

**BAYER HEALTHCARE**
**PHARMACEUTICALS, INC.**

**Defendant**

United States District Court Eastern District of Pennsylvania                    Page 2 of 2

**BERLEX LABORATORIES, INC.**

<u>Defendant</u>
**BERLEX, INC.**

<u>Defendant</u>
**BAYER SCHERING PHARMA AG**

<u>Defendant</u>
**BAYER AG**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/14/2009 | 1 | COMPLAINT against all defendants ( Filing fee $ 350 receipt number 005170.), filed by MARK D. CHRISTIAN, DEBORAH KAY LANE-CHRISTIAN.(tj, ) (tj, ). (Entered: 07/14/2009) |
| 07/14/2009 | | Summons Issued; 8 Mailed to counsel 7/14/09 as to BAYER AG, BAYER CORPORATION, BAYER HEALTHCARE, LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER HEALTHCARE PHARMACEUTICALS, INC., BERLEX LABORATORIES, INC., BERLEX, INC., BAYER SCHERING PHARMA AG. (tj, ) (Entered: 07/14/2009) |
| 07/14/2009 | | DEMAND for Trial by Jury by MARK D. CHRISTIAN, DEBORAH KAY LANE-CHRISTIAN. (tj, ) (Entered: 07/14/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/17/2009 12:24:22 | | |
| PACER Login: | m0030 | Client Code: | 9031/yaz |
| Description: | Docket Report | Search Criteria: | 2:09-cv-03114-JP |
| Billable Pages: | 1 | Cost: | 0.08 |



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Deborah Kay Lane-Christian and<br>Mark D. Christian, | : | Civil Action No: |
| | : | **09   3114** |
| Plaintiffs, | : | |
| | : | |
| | : | COMPLAINT |
| v. | : | |
| | : | |
| Bayer Corporation, | : | Jury Trial Demanded |
| Bayer Healthcare, LLC, | : | |
| Bayer Pharmaceuticals Corporation, | : | |
| Bayer Healthcare Pharmaceuticals,<br>      Inc., | : | |
| Berlex Laboratories, Inc., | : | |
| Berlex, Inc., | : | |
| Bayer Schering Pharma AG, | : | |
| Bayer AG, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

NOW COME Plaintiffs for their multiple causes of action against Defendants

and allege and state the following:

## THE PARTIES

1.    Plaintiff Deborah Kay Lane-Christian ("Plaintiff") resides in West

Peoria, Illinois.

the Federal Republic of German, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

16.   Defendant BAYER SCHERING PHARMA AG is a corporate successor to Schering AG.

17.   Schering AG was renamed BAYER SCHERING PHARMA AG effective December 29, 2006.

18.   Defendant BAYER SCHERING PHARMA AG'S headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

19.   Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YASMIN.

20.   Defendant BAYER SCHERING PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

21.   Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

22.   Defendant BAYER AG is the third largest pharmaceutical company in the world.

23.   Defendant BAYER AG is the parent/holding company of all other named Defendants.

24.   Defendant BAYER AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania, 15205.

25.    Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. and Berlex, Inc., Bayer Schering Pharma AG, and Bayer AG, shall be referred to herein individually by name or jointly as "Defendants."

26.    At all times alleged herein, Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

27.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

28.    At all times relevant, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptives, YAZ and YASMIN.

5

## JURISDICTION AND VENUE

29.     Plaintiff alleges damages in excess of one hundred fifty thousand dollars ($150,000.00), exclusive of costs and interests.

30.     This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

31.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.A. §1391, as a substantial part of the events or omissions giving rise to the claim occurred within this District, including, but not limited to, the development, design, licensing, labeling, manufacturing and/or marketing of the defective drug, as well as Defendant's fraud and conspiracy to actively concealed and/or misrepresent information concerning the safety and efficacy of YASMIN and YAZ with the intention and specific desire to mislead the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.

## FACTUAL BACKGROUND

32.     Plaintiff took YAZ and/or YASMIN.

33.     Plaintiff suffered serious personal injuries caused by YAZ and/or YASMIN, including, but not limited to, the development of bilateral pulmonary embolism.

34.   At all relevant times, Defendants designed, manufactured, marketed, and distributed the pharmaceutical drugs YAZ and YASMIN, both which are oral contraceptives.

35.   YASMIN received FDA approval first in 2001.  It is a combination of drospirenone, a progestin, and ethinyl estradiol, an estrogen.

36.   YAZ received approval from the FDA in 2006 and is essentially the same as YASMIN, with the only difference being a slightly smaller amount of ethinyl estradiol.

37.   YAZ/YASMIN are indicated for the prevention of pregnancy in women who elect to use an oral contraceptive.

38.   Combination birth control pills are referred to as combined hormonal oral contraceptives.

39.   The difference between YASMIN/YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

40.   YAZ/YASMIN's use of drospirenone, a diuretic, creates unique risks compared to other oral contraceptives and is known to cause problems with the development of pulmonary embolism and deep vein thrombosis.

41.   Upon information and belief, Defendants knew or should have known about the correlation between the use of YASMIN and YAZ and the significantly increased risk of the development of pulmonary embolism and deep vein thrombosis.

7

42.     Yet, despite the wealth of scientific information available, Defendants ignored the correlation between the use of YASMIN and YAZ and the significantly increased risk of the development of pulmonary embolism and deep vein thrombosis and still promoted, sold, advertised, and marketed the use of YAZ/YASMIN without sufficient warnings.

43.     Defendants have been warned at least three times by the FDA, in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YASMIN and YAZ, and minimize serious risks associated with the drug.

44.     Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this complaint.

45.     As a result of the manufacture, marketing, advertising, promotion, distribution, the sale of YAZ/YASMIN without adequate warnings about the risks of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

## FACTS REGARDING PLAINTIFF DEBORAH KAY LANE-CHRISTIAN

46.     Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest YASMIN and/or YAZ to her detriment.

47.     As a result of using Defendants' product YASMIN and/or YAZ, on or about July 20, 2007, Plaintiff suffered serious and life-threatening side effects

including but not limited to, the development of bilateral pulmonary embolism, as well as other severe and personal injuries, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for ongoing medical treatment, monitoring and/or medications, and the fear of developing other health consequences.

48.     Plaintiff did not discover, nor did she have any reason to discover that her injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at least April of 2009.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT

49.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

50.     Prior to Plaintiff's use of YAZ/YASMIN and during the period in which Plaintiff actually used YAZ/YASMIN, Defendants fraudulently suppressed material information regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, pre and post marketing deaths, a high rate of severe adverse event reports compared to other birth control pills, and the unique gallbladder dangers.  Furthermore, Defendants fraudulently concealed the safety information about the use of drospirenone, the only birth control pill using this ingredient.  As described above, drospirenone has several well known

serious side effects that are not seen in other forms of birth control.  Plaintiff

believes that the fraudulent misrepresentation described herein was intentional to

keep the sales volume of YAZ/YASMIN strong.

51.    Defendants fraudulently concealed safety issues with YAZ/YASMIN in

order to induce physicians to prescribe and patients, including Plaintiff, to purchase

and use YAZ/YASMIN.

52.    At the time Defendants concealed the fact that YAZ/YASMIN was not

safe, Defendants were under a duty to communicate this information to physicians,

the FDA, the Healthcare community, and the general public in such a manner that

they could appreciate the risks associated with using YAZ/YASMIN.

53.    Plaintiff and the Plaintiff's prescribing doctor relied upon the

Defendants' outrageous untruths regarding the safety of YAZ/YASMIN.

54.    As a direct and proximate result of Defendants' malicious and/or

intentional concealment of material life altering information from Plaintiff and

Plaintiff's prescribing doctor, Defendants caused or contributed to Plaintiff's

injuries.

55.    It is unconscionable and outrageous that Defendants would risk the

lives of consumers.  Despite this knowledge, the Defendants made conscious

decisions not to redesign, label, warn or inform the unsuspecting consuming public.

Defendants' outrageous conduct rises to the level necessary that Plaintiff should be

awarded punitive damages to deter Defendants from this type of outrageous

conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

56.    Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of YAZ/YASMIN as described herein.  Defendants did not disclose this information to the Plaintiff, the prescribing doctor, the Healthcare community and the general public.  Without full knowledge of the dangers of YAZ/YASMIN, Plaintiff and Plaintiff's lawyer could not evaluate whether a person who was injured by YAZ/YASMIN had a valid claim.

WHEREFORE, Plaintiff demands judgment against Defendants for such compensatory damages and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this Court, plus interest and costs.

## COUNT II
## STRICT LIABILITY

57.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

58.    At the time of Plaintiff's injury, Defendants' pharmaceutical, YAZ/YASMIN, was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

59.    The YAZ/YASMIN used by Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants.

11

60.     Plaintiff did not misuse or materially alter the YAZ/YASMIN.

61.     Defendants are strictly liable for Plaintiff's injury in the following

ways:

    a.     The pharmaceutical YAZ/YASMIN as designed, manufactured,

sold and/or supplied by the Defendants, was defectively designed

and placed into the stream of commerce by Defendants in a

defective and unreasonably dangerous condition;

    b.     Defendants failed to properly market, design, manufacture,

distribute, supply and sell YAZ/YASMIN;

    c.     Defendants failed to warn and/or place adequate warnings and

instructions on YAZ/YASMIN;

    d.     Defendants failed to adequately test YAZ/YASMIN;

    e.     Defendants failed to provide timely and adequate post-

marketing warnings and instructions after they knew of the risk

of injury associated with the use of YAZ/YASMIN; and

    f.     A feasible alternative design existed that was capable of

preventing Plaintiff's injury.

62.     Defendants' actions and omissions were the direct and proximate cause

of Plaintiff's injury.

63.     Defendants' conduct, as described above, was extreme and outrageous.

Defendants risked the lives of the consumers and users of their products, including

Plaintiff, with knowledge of the safety and efficacy problems and suppressed this

knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

64.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

65.    At the time Defendants marketed, distributed and sold YAZ/YASMIN to Plaintiff, Defendants warranted that YAZ/YASMIN was merchantable and fit for the ordinary purposes for which it was intended.

66.    Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

67.    YAZ/YASMIN was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described in this complaint.

68.    Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and free of defects and was a safe means of birth control.

69.    Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury.

13

70. Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

72. Defendants sold YAZ/YASMIN with an implied warranty that it was fit for the particular purpose of safe birth control, which offered other benefits, such as reduced bloating, reduced mood swings, improved complexion, and reduced the severity of women's menstruation.

73. Members of the consuming public, including Plaintiff, were intended third party beneficiaries of the warranty.

14

74.     YAZ/YASMIN was not fit for the particular purpose of a safe birth control pill without serious risk of personal injury, which risk is much higher than other birth control pills.

75.     Plaintiff reasonably relied on Defendants' representations that YAZ/YASMIN was safe and effective for use as a birth control method.

76.     Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injury.

77.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs as allowed by law and punitive damages.

**COUNT V**
**NEGLIGENT FAILURE TO WARN**

78.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

79.     Before Plaintiff used YAZ/YASMIN, and during the period in which she used it, Defendants knew or had reason to know that YAZ/YASMIN was dangerous and created an unreasonable risk of bodily harm to consumers.

15

80.     Defendants had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made YAZ/YASMIN likely to be dangerous.

81.     Despite the fact that Defendants knew or had reason to know that YAZ/YASMIN was dangerous, Defendants failed to exercise reasonable care in warning the medical community and consumers, including Plaintiff, of the dangerous conditions and facts that made YAZ/YASMIN likely to be dangerous.

82.     The Plaintiff's injury was a direct and proximate result of Defendants' failure to warn of the dangers of YAZ/YASMIN.

83.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

**COUNT VI**
**NEGLIGENCE**

84.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

85.   Defendants had a duty to exercise reasonable care in the manufacture, sale and distribution of YAZ/YASMIN, including a duty to assure that the product did not cause unreasonable, dangerous side effects to users.

86.   Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, and distribution of YAZ/YASMIN in that Defendants knew or should have known that the drug created a high risk of unreasonable harm.

87.   Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of YAZ/YASMIN in that, among other things, they:

    a.    Failed to use due care in designing and manufacturing YAZ/YASMIN so as to avoid the aforementioned risks to individuals;

    b.    Failed to accompany the drug with proper warnings regarding all possible adverse side effects associated with its use, and the comparative severity and duration of such adverse effects.  The warnings given did not reflect accurately the symptoms, scope or severity of the side effects;

    c.    Failed to provide adequate training and instruction to medical care providers for appropriate use of YAZ/YASMIN;

    d.    Placed an unsafe product into the stream of commerce; and

    e.    Were otherwise careless or negligent.

88.     Despite the fact that Defendants knew or should have known that YAZ/YASMIN caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market YAZ/YASMIN to consumers, including the medical community and Plaintiff.

89.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

90.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

91.     Prior to Plaintiff first using YAZ/YASMIN and during the period in which she used YAZ/YASMIN, Defendants misrepresented that YAZ/YASMIN was a safe and effective means of birth control.   Defendants also failed to disclose material facts regarding the safety and efficacy of YAZ/YASMIN, including information regarding increased adverse events, harmful side effects, and results of clinical studies showing that use of the medication could be life threatening.

18

92.     Defendants had a duty to provide Plaintiff, physicians, and other consumers with true and accurate information and warnings of any known risks and side effects of the pharmaceuticals they marketed, distributed and sold.

93.     Defendants knew or should have known, based on their prior experience, adverse event reports, studies and knowledge of the efficacy and safety failures with YAZ/YASMIN, that their representations regarding YAZ/YASMIN were false, and that they had a duty to disclose the dangers of YAZ/YASMIN.

94.     Defendants made the representations and failed to disclose the material facts with the intent to induce consumers, including Plaintiff, to act in reliance by purchasing YAZ/YASMIN.

95.     Plaintiff justifiably relied on Defendants' representations and nondisclosures by purchasing and using YAZ/YASMIN.

96.     Defendants' misrepresentations and omissions regarding the safety and efficacy of YAZ/YASMIN was the direct and proximate cause of Plaintiff's injuries.

97.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.   Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   Defendants' outrageous conduct warrants an award of punitive damages.

19

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, costs and punitive damages.

**COUNT VIII**
**BREACH OF EXPRESS WARRANTY**

98.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

99.   Defendants expressly warranted that YAZ/YASMIN was safe and effective to members of the consuming public, including Plaintiff.

100.   Members of the consuming public, including consumers such as Plaintiff, were intended third party beneficiaries of the warranty.

101.   Defendants marketed, promoted and sold YAZ/YASMIN as a safe method of birth control.

102.   YAZ/YASMIN does not conform to these express representations because YAZ/YASMIN is not safe and has serious side effects, including death.

103.   Defendants breached their express warranty in one or more of the following ways:

  a.   YAZ/YASMIN, as designed, manufactured, sold and/or supplied by the Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b.    Defendants failed to warn and/or place adequate warnings and instructions on YAZ/YASMIN;

c.    Defendants failed to adequately test YAZ/YASMIN; and

d.    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from YAZ/YASMIN.

104.    Plaintiff reasonably relied upon Defendants' warranty that YAZ/YASMIN was safe and effective when she purchased and used the medication.

105.    Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranty.

106.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the lives of the consumers and users of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

<u>COUNT IX</u>
<u>FRAUD</u>

107.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

21

108.   Defendants widely advertised and promoted YAZ/YASMIN as a safe and effective medication.

109.   Defendants had a duty to disclose material information about serious side effects to consumers such as Plaintiff.

110.   Additionally, by virtue of Defendants' partial disclosures about the medication, in which Defendants' touted YAZ/YASMIN as a safe and effective medication, Defendants had a duty to disclose all facts about the risks associated with use of the medication, including the risks described in this complaint. Defendants intentionally failed to disclose this information for the purpose of inducing consumers, such as Plaintiff, to purchase Defendants' dangerous product.

111.   Had Plaintiff been aware of the hazards associated with YAZ/YASMIN, Plaintiff would not have consumed the product that led proximately to Plaintiff's adverse health effects.

112.   Defendants' advertisements regarding YAZ/YASMIN made material misrepresentations to the effect that YAZ/YASMIN was a safe and effective medication, which misrepresentations Defendants knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiff, to purchase such product. Plaintiff relied on these material misrepresentations when deciding to purchase and consume YAZ/YASMIN.

113.   Upon information and belief, Plaintiff avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession

regarding the hazards associated with YAZ/YASMIN with the purpose of preventing consumers, such as Plaintiff, from discovering these hazards.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

**COUNT X**
**LOSS OF CONSORTIUM – MARK D. CHRISTIAN**

114.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows.

115.   As a result of the foregoing acts and omissions, and the resulting injuries, including but not limited to, personal injuries, medical expenses, and pain and suffering sustained by Plaintiff, Plaintiff Mark D. Christian suffered the loss of companionship, society, services, and consortium of his wife.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of $150,000.00, plus delay damages, interest, and costs as allowed by law.

Date: July 14, 2009          Respectfully Submitted,

_Daniel N. Gallucci_

Daniel N. Gallucci (Atty. ID No. 81995)
Joanne E. Matusko (Atty. ID No. 91059)
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone: (717) 892-3000
Facsimile: (717) 892-1200

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

Daniel N. Gallucci (Atty. ID No. 81995)

**W**

## United States District Court
## Eastern District of Wisconsin (Green Bay)
## CIVIL DOCKET FOR CASE #: 1:09-cv-00663-WCG

Becker v. Bayer Corporation et al                     Date Filed: 07/07/2009
Assigned to: Judge William C Griesbach                Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury              Nature of Suit: 365 Personal Inj. Prod.
                                                      Liability
                                                      Jurisdiction: Diversity

**Plaintiff**

**Marie Becker**                    represented by  **Brian K Matise**
                                                    Burg Simpson Eldredge Hersh &
                                                    Jardine PC
                                                    40 Inverness Dr E
                                                    Englewood , CO 80112
                                                    303-792-5595
                                                    Fax: 303-708-0527
                                                    Email: bmatise@burgsimpson.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bayer Corporation**
*an Indiana corporation*

**Defendant**

**Bayer Healthcare Pharmaceuticals
Inc**
*a Delaware corporation*

**Defendant**

**Bayer Healthcare LLC**
*a Delaware corporation*

**Defendant**

**Berlex Laboratories International Inc**

*a Delaware corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/07/2009 | 1 | COMPLAINT (Summons(es) issued) against all defendants filed by Marie |

| | | |
|---|---|---|
| | | Becker. Consent Forms Distributed for Magistrate Judge Patricia J Gorence. Jury Demand. (Filing Fee PAID $350). (Attachments: # 1 Civil Cover Sheet)(mec) |
| 07/07/2009 | 2 | CERTIFICATE of Interest by Marie Becker. (mec) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/17/2009 15:29:58 | | | |
| PACER Login: | m0030 | Client Code: | 9047/denture cream |
| Description: | Docket Report | Search Criteria: | 1:09-cv-00663-WCG |
| Billable Pages: | 1 | Cost: | 0.08 |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**(GREEN BAY DIVISION)**

| | | |
|---|---|---|
| **MARIE BECKER** | : | |
| **Plaintiff,** | : | Civil Action No. _____ |
| | : | |
| **v.** | : | |
| | : | |
| **BAYER CORPORATION,** | : | |
| an Indiana corporation | : | |
| | : | **COMPLAINT AND** |
| **BAYER HEALTHCARE** | : | **JURY DEMAND** |
| **PHARMACEUTICALS INC.,** | : | |
| a Delaware corporation | : | |
| | : | |
| **BAYER HEALTHCARE, LLC,** | : | |
| a Delaware corporation | : | |
| | : | |
| **BERLEX LABORATORIES** | : | |
| **INTERNATIONAL, INC.,** | : | |
| a Delaware corporation | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

Plaintiff, by and through counsel, and for her Complaint against Defendants, alleges as follows:

**PARTIES AND JURISDICTION**

1.     Plaintiff Marie Becker is a resident and citizen of Egg Harbor, Wisconsin, located in Door County.

2.     Plaintiff Marie Becker was prescribed and ingested Yasmin, and while using Yasmin suffered a stroke on July 8, 2006.

3.     Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4.      Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.   Defendant Bayer Corporation is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.   At all relevant times, Defendant Bayer Corporation conducted regular and sustained business in Wisconsin by selling and distributing its products in Wisconsin and engaged in substantial commerce and business activity in Door County.

5.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.   Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex Laboratories.     Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.   At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Wisconsin by selling and distributing its products in Wisconsin and engaged in substantial commerce and business activity in Door County.

6.      Defendant Bayer Healthcare, LLC is a Delaware limited liability company, with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591. Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and

Berlex Laboratories.  Defendant Bayer Healthcare, LLC is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.  At all relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Wisconsin by selling and distributing its products in Wisconsin and engaged in substantial commerce and business activity in Door County.

7.     Defendant Berlex Laboratories International, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey.  Berlex Laboratories International, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc.  Defendant Berlex Laboratories International, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yasmin.  At all relevant times, Defendant Berlex Laboratories International, Inc. conducted regular and sustained business in Wisconsin by selling and distributing its products in Wisconsin and engaged in substantial commerce and business activity in Door County.

8.     Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, and Berlex Laboratories International, Inc. are collectively referred to herein as "Bayer" or "Defendants."

9.     This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.    Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in the district as Plaintiff was prescribed and used Yasmin in this district, and because she resided in this district at the time of her injuries.

## FACTUAL BACKGROUND

### Nature of the Case

11.    Plaintiff brings this case against Defendants for damages associated with her ingestion of the pharmaceutical drug Yasmin (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed, and distributed by Defendants.  Specifically, Plaintiff suffered a stroke on July 8, 2006 as a direct result of her use of Yasmin.

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

12.    Yasmin and Yaz are birth control pills manufactured and marketed by Bayer.  They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component.   Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

13.    Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

14.     The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol. The progestin component is known as drospirenone. Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

15.     Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

16.     Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

17.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

18.     During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein

5

thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

19.     Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

20.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

21.     Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

22.     One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

23.     Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

24.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to

6

the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

25.    Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

26.    In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

27.    These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

28.    Some deaths reported occurred in women as young as 17 years old.

29.    Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

30.    Indeed, in April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

### Over-Promotion of Yasmin and Yaz

31.    Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

32.     However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

33.     For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

34.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives, and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

35.     The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

36.     More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

37.     Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

38.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA

8

approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone ... which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

39.     The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

40.     Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

41.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

### Plaintiff's Use of Yasmin and Resulting Injuries

42.     As a result of Defendants' claim regarding the effectiveness and safety of Yasmin, Plaintiff Marie Becker's medical provider prescribed and Marie Becker began using Yasmin in March of 2006.  Marie Becker used Yasmin patch until July 8, 2006 when she suffered a stroke.

43.     As a direct and proximate result of using Yasmin, Marie Becker suffered the injuries described above.

44.     Prior to July 8, 2006, Defendants knew or should have known that use of Yasmin created a higher risk of stroke than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

9

45.     Therefore, at the time Marie Becker used Yasmin in March of 2006, Defendants knew or should have known that the use of Yasmin created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

46.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin, Defendants failed to warn Marie Becker and/or her health care providers of said serious risks before she used the product.

47.     Had Marie Becker and/or her heath care providers known the risks and dangers associated with Yasmin, she would not have used Yasmin and would not have suffered a stroke on July 8, 2006.

48.     As a direct and proximate result of her use of Yasmin, Marie Becker suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her stroke.

49.     As a direct and proximate result of her use of Yasmin, Marie Becker has suffered and will continue to suffer pecuniary losses.

### FIRST CAUSE OF ACTION

**Strict Products Liability**
**Defective Manufacturing**

50.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

51.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

52.     The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

53.     The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that it deviated from product specification such that it was unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

54.     As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marie Becker suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

55.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Design Defect

56.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

57.     Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

11

58.    The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer without any alterations or changes.

59.    The Yasmin birth control pills manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

60.    The foreseeable risks associated with the design or formulation of the Yasmin birth control pills, include, but are not limited to, the fact that the design or formulation of Yasmin is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

61.    As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marie Becker suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

62.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

**Strict Products Liability**
**Defect Due to Inadequate Warning**

63.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

12

64.    The Yasmin birth control pills manufactured and supplied by Defendants was defective due to inadequate warning or instruction and was unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

65.    The Yasmin birth control pills manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction and was unreasonably dangerous to the ordinary user or consumer because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yasmin, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

66.    As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Marie Becker suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

67.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

### FOURTH CAUSE OF ACTION

**Negligence**

68.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

69.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Yasmin into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

70.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin into interstate commerce in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

71.     Defendants also failed to exercise ordinary care in the labeling of Yasmin and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yasmin.

72.     Despite the fact that Defendants knew or should have known that Yasmin posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin for use by consumers.

73.     Defendants knew or should have known that consumers such as Plaintiff Marie Becker would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

74.     As a direct and proximate result of Defendants' negligence, Plaintiff Marie Becker suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

75.     Defendants' conduct as described above, including but not limited to its failure to adequately test Yasmin, to provide adequate warnings, and its continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences malicious actions and/or intentional disregard of the rights of Plaintiff, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

76.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

77.     Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and made representations to Plaintiff and her physician regarding the character or quality of Yasmin for guidance in their decision to select Yasmin.

78.     Defendants' representations regarding the character or quality of Yasmin were untrue.

79.     Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yasmin created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

80.     Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled,

promoted and advertised its product as safer than other types of oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

81.   In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her physician.

82.   Plaintiff Marie Becker and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product.   Plaintiff Marie Becker reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

83.   As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Marie Becker suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

84.   Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

**SIXTH CAUSE OF ACTION**

**Violation of Wisconsin's Deceptive Trade Practices Act**
**Wis. Stat. § 100.18**

85.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

86.     Plaintiff is a person within the meaning of the Wisconsin Deceptive Trade Practices Act (the "Act").

87.     Defendants are persons, firms and/or corporations within the meaning of the Act for all purposes therein.

88.     Plaintiff is a person entitled to bring a claim pursuant to the Act.

89.     The false, deceptive and misleading statements and representations made by Defendants alleged above to Plaintiff, her physicians, and the public are deceptive trade practices with the meaning of the Act.

90.     Defendants engaged in the deceptive trade practices alleged above, and those deceptive trade practices occurred or were committed in the course, vocation or occupation of Defendants' pharmaceutical business.

91.     The deceptive trade practices that Defendants committed as alleged above significantly impacts the public as actual or potential customers of Defendants.

92.     As a direct and proximate result of the deceptive trade practices committed by Defendants as alleged above, Plaintiff suffered injuries, damages, and loses as alleged herein.

93.     Plaintiff is entitled to all damages permitted by Wis. Stat. § 101.18 of the Act, including pecuniary damages, attorneys' fees, and costs of this action.


**WHEREFORE**, Plaintiff prays for relief as follows:

1.     Compensatory and punitive damages in excess of the jurisdictional amount; including, but not limited to, pain, suffering, emotional distress, loss of

enjoyment of life and other non-economic damages in an amount to be determined at trial of this action;

2. Medical expenses and other economic damages in an amount to be determined at trial of this action;

3. Attorneys' fees, expenses, and costs of this action;

4. Punitive damages; and

5. Such further relief as this Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  July 6, 2009                          Respectfully submitted,


   _s/Brian K. Matise_____
Brian K. Matise
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
bmatise@burgsimpson.com


**OF COUNSEL:**

Janet G. Abaray
Calvin S. Tregre, Jr.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (fax)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

18

**X**

## SCHEDULE OF ACTIONS

## In re Yasmin / Yaz Products Liability Litigation

| Caption | Civil Action Number | District Court | Judge |
|---|---|---|---|
| *Candace L. Fries, Individually and as Administratrix of the Estate of Stephanie R. Hoover v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 3:09-cv-01085 | N.D. Ohio (Toledo) | The Honorable James G. Carr |
| *Angela Beck and Martin Beck v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 3:09-cv-01207 | N.D. Ohio (Toledo) | The Honorable James G. Carr |
| *Bridget Shafer and Paul Shafer v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 3:09-cv-01315 | N.D. Ohio (Toledo) | The Honorable James G. Carr |
| *Marlene Meadows v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation; Berlex Laboratories International, Inc., a Delaware corporation* | 1:09-cv-01574 | N.D. Ohio (Cleveland) | The Honorable James S. Gwin |

| | | | |
|---|---|---|---|
| *Anne Marie Eakins and Jonathan Eakins v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation; Berlex Laboratories International, Inc., a Delaware corporation* | 1:09-cv-1579 | N.D. Ohio (Cleveland) | The Honorable Solomon Oliver, Jr. |
| *Lauren L. Murphy v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation; Berlex Laboratories International, Inc., a Delaware corporation* | 1:09-cv-1582 | N.D. Ohio (Cleveland) | The Honorable James S. Gwin |
| *Marie Claire Keultjes v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation* | 1:09-cv-1659 | N.D. Ohio (Cleveland) | The Honorable James S. Gwin |
| *Gail Brinker and Kenneth Brinker v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.* | 3:09-cv-1682 | N.D. Ohio (Toledo) | The Honorable James G. Carr |
| *Carla Leigh Brazzel v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 3:09-cv-1684 | N.D. Ohio (Toledo) | The Honorable Jack Zouhary |
| *Kathy Johns and William Johns v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.* | 3:09-cv-1685 | N.D. Ohio (Toledo) | The Honorable David A. Katz |

| Brenda Ellyson v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc. | 3:09-cv-1687 | N.D. Ohio (Toledo) | The Honorable David A. Katz |
|---|---|---|---|
| Saretta Main and Christina Maniaci v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc. | 3:09-cv-1688 | N.D. Ohio (Toledo) | The Honorable Jack Zouhary |
| Patti Bradish and Gary Bradish v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc. | 3:09-cv-1689 | N.D. Ohio (Toledo) | The Honorable Jack Zouhary |
| Lauren Cathis v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc. | 3:09-cv-690 | N.D. Ohio (Toledo) | The Honorable Jack Zouhary |
| Heather Riley v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG | 1:09-cv-0387 | S.D. Ohio (Cincinnati) | The Honorable Sandra S. Beckwith |
| Valerie Kozak and Keith Kozak v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Bayer Healthcare LLC | 3:09-cv-0281 | S.D. Ohio (Dayton) | The Honorable Thomas M. Rose |
| Alyssa S. Britten v. Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc. | 2:09-cv-2086 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |
| Adine Gauthreaux and Kermick Gauthreaux v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG | 2:09-cv-2238 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |

| | | | |
|---|---|---|---|
| *Silvia F. Galvan and Javier Galvan v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 5:09-cv-2739 | E.D. Pennsylvania (Allentown) | The Honorable John R. Padova |
| *LaKollier R. Cleveland v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 2:09-cv-2740 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |
| *Danielle C. Hayat and Adam Hayat v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 2:09-cv-2753 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |
| *Deborah Kay Lane-Christian and Mark D. Christian v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 2:09-cv-3114 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |
| *Marie Becker v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation; Berlex Laboratories International, Inc., a Delaware corporation* | 1:09-cv-0663 | E.D. Wisconsin (Green Bay) | The Honorable William C. Griesbach |

| | | | |
|---|---|---|---|
| *Bridget Renee Tanner and Russell Tanner, wife and husband v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-1558 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |
| *Stephanie D. Ivey, an individual v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-1904 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |
| *Dawn Voss, an individual v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-1905 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |

| | | | |
|---|---|---|---|
| *Tamera Jirbi, an individual v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-2416 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |
| *Bieanca White, an individual, v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-2417 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |
| *Nichole Brownfield, an individual; and Kiera Chambers, and individual, on behalf of themselves and all others similarly situated v. Bayer Corporation; Bayer Healthcare Pharmaceuticals, Inc.; Bayer Pharmaceuticals Corporation; Bayer Healthcare LLC; Bayer Healthcare A.G.; Berlex Laboratories, Inc.* | 2:09-cv-0444 | E.D. California (Sacramento) | The Honorable John A. Mendez |
| *Debra Casali v. Bayer Corporation (terminated 7/6/09), Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare, LLC (terminated 7/6/09), Berlex Laboratories (terminated 7/6/09), Bayer Schering Pharma AG (terminated 7/6/09), and Bayer AG (terminated 7/6/09)* | 2:09-cv-0686 | E.D. New York (Central Islip) | The Honorable Sandra J. Feuerstein |

| | | | |
|---|---|---|---|
| *James Parivechio III and Rhonda C. Parivechio v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., as successor to Bayer Pharmaceuticals Corporation, Bayer Healthcare, LLC, Berlex Laboratories, Inc., Berlex Inc., Bayer Schering Pharma AG, Bayer Healthcare, AG* | 3:09-cv-0081 | N.D. Georgia (Newnan) | The Honorable Jack T. Camp |
| *Maria Isabel Pujals Torregrosa v. Berlex, Inc., Berlex Laboratories, Inc.* | 3:07-cv-1271 | D. Puerto Rico (San Juan) | The Honorable Carmen C. Cerezo |

Respectfully Submitted,

*Janet G. Abaray*

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and
Jonathan Eakins; Lauren L. Murphy; Marie Claire
Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the
Administratrix of the Estate of Stephanie R. Hoover;
Angela and Martin Beck; Bridget and Paul Shafer;
Pattie and Gary Bradish; Gail and Kenneth Brinker;
Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson;
William and Kathy Johns; Saretta Main and Christina
Maniaci; Heather Riley*

8

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*

**Y**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARLENE MEADOWS** | : | |
| **Plaintiff,** | : | **Civil Action No. 1:09-cv-1574** |
| v. | : | |
| | : | **NOTICE OF COMPLEX** |
| **BAYER CORPORATION, et al.** | : | **LITIGATION** |
| **Defendants.** | : | |

Pursuant to Rule 16.3(c) of the Local Rules for the Northern District of Ohio, Plaintiff hereby gives Notice that this action should be designated as a Complex Litigation. This matter is related to two other matters pending in the Northern District of Ohio involving the same defendants, same product, and similar claims. The two related matters are *Candace L. Fries v. Bayer Corporation, et al.*; Case No. 3:09CV1085 and *Angela Beck, et al. v. Bayer Corporation, et al.*; Case No. 3:09CV1207, both of which are pending before the Honorable James G. Carr.

This action is related to the *Fries* and *Beck* matters in that they involve claims by the plaintiffs for strict liability, negligence, and other claims against the defendants for damages sustained as a result of the plaintiffs' use of the oral contraceptives Yasmin and/or Yaz. At this time, Plaintiff's counsel is unaware of the identities of the attorneys who will be appearing on behalf of the defendants.

For the reasons described above, Plaintiff respectfully submits that this case should be designated as a Complex Litigation and assigned to the Honorable James Carr as a related matter.

Respectfully submitted,


/s/ Janet G. Abaray
Janet G. Abaray (0002943)
Calvin S. Tregre, Jr. (0073454)
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (fax)
jabaray@burgsimpson.com
ctregre@burgsimpson.com


Steven M. Goldberg (0041344)
STEVEN M. GOLDBERG, CO., L.P.A.
34055 Solon Rd., Suite 103
Solon, OH 44139
(440) 519-9900
(887) 464-4652 (fax)
steven@smglegal.com


**OF COUNSEL:**

Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com

2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ANNE MARIE EAKINS** | : | |
| **Plaintiff,** | : | **Civil Action No. 1:09-cv-1579** |
| | : | |
| **v.** | : | |
| | : | **NOTICE OF COMPLEX** |
| **BAYER CORPORATION, et al.** | : | **LITIGATION** |
| | : | |
| **Defendants.** | : | |

Pursuant to Rule 16.3(c) of the Local Rules for the Northern District of Ohio, Plaintiff hereby gives Notice that this action should be designated as a Complex Litigation. This matter is related to two other matters pending in the Northern District of Ohio involving the same defendants, same product, and similar claims. The two related matters are *Candace L. Fries v. Bayer Corporation, et al.*; Case No. 3:09CV1085 and *Angela Beck, et al. v. Bayer Corporation, et al.*; Case No. 3:09CV1207, both of which are pending before the Honorable James G. Carr.

This action is related to the *Fries* and *Beck* matters in that they involve claims by the plaintiffs for strict liability, negligence, and other claims against the defendants for damages sustained as a result of the plaintiffs' use of the oral contraceptives Yasmin and/or Yaz. At this time, Plaintiff's counsel is unaware of the identities of the attorneys who will be appearing on behalf of the defendants.

For the reasons described above, Plaintiff respectfully submits that this case should be designated as a Complex Litigation and assigned to the Honorable James Carr as a related matter.

Respectfully submitted,

/s/ Janet G. Abaray
Janet G. Abaray (0002943)
Calvin S. Tregre, Jr. (0073454)
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (fax)
jabaray@burgsimpson.com
ctregre@burgsimpson.com


Steven M. Goldberg (0041344)
STEVEN M. GOLDBERG, CO., L.P.A.
34055 Solon Rd., Suite 103
Solon, OH 44139
(440) 519-9900
(887) 464-4652 (fax)
steven@smglegal.com


**OF COUNSEL:**

Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **LAUREN MURPHY** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 1:09-cv-1582** |
| | : | |
| **v.** | : | |
| | : | **NOTICE OF COMPLEX** |
| **BAYER CORPORATION, et al.** | : | **LITIGATION** |
| | : | |
| **Defendants.** | : | |

Pursuant to Rule 16.3(c) of the Local Rules for the Northern District of Ohio, Plaintiff hereby gives Notice that this action should be designated as a Complex Litigation. This matter is related to two other matters pending in the Northern District of Ohio involving the same defendants, same product, and similar claims. The two related matters are *Candace L. Fries v. Bayer Corporation, et al.*; Case No. 3:09CV1085 and *Angela Beck, et al. v. Bayer Corporation, et al.*; Case No. 3:09CV1207, both of which are pending before the Honorable James G. Carr.

This action is related to the *Fries* and *Beck* matters in that they involve claims by the plaintiffs for strict liability, negligence, and other claims against the defendants for damages sustained as a result of the plaintiffs' use of the oral contraceptives Yasmin and/or Yaz. At this time, Plaintiff's counsel is unaware of the identities of the attorneys who will be appearing on behalf of the defendants.

For the reasons described above, Plaintiff respectfully submits that this case should be designated as a Complex Litigation and assigned to the Honorable James Carr as a related matter.

Respectfully submitted,

/s/ Janet G. Abaray
Janet G. Abaray (0002943)
Calvin S. Tregre, Jr. (0073454)
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (fax)
jabaray@burgsimpson.com
ctregre@burgsimpson.com


Steven M. Goldberg (0041344)
STEVEN M. GOLDBERG, CO., L.P.A.
34055 Solon Rd., Suite 103
Solon, OH 44139
(440) 519-9900
(887) 464-4652 (fax)
steven@smglegal.com


**OF COUNSEL:**

Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARIE CLAIRE KEULTJES** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 1:09-1659** |
| | : | |
| **v.** | : | |
| | : | **NOTICE OF COMPLEX** |
| **BAYER CORPORATION, et al.** | : | **LITIGATION** |
| | : | |
| **Defendants.** | : | |

Pursuant to Rule 16.3(c) of the Local Rules for the Northern District of Ohio, Plaintiff hereby gives Notice that this action should be designated as a Complex Litigation. This matter is related to two other matters pending in the Northern District of Ohio involving the same defendants, same product, and similar claims. The two related matters are *Candace L. Fries v. Bayer Corporation, et al.*; Case No. 3:09CV1085 and *Angela Beck, et al. v. Bayer Corporation, et al.*; Case No. 3:09CV1207, both of which are pending before the Honorable James G. Carr.

This action is related to the *Fries* and *Beck* matters in that they involve claims by the plaintiffs for strict liability, negligence, and other claims against the defendants for damages sustained as a result of the plaintiffs' use of the oral contraceptives Yasmin and/or Yaz. At this time, Plaintiff's counsel is unaware of the identities of the attorneys who will be appearing on behalf of the defendants.

For the reasons described above, Plaintiff respectfully submits that this case should be designated as a Complex Litigation and assigned to the Honorable James Carr as a related matter.

Respectfully submitted,

/s/ Janet G. Abaray
Janet G. Abaray (0002943)
Calvin S. Tregre, Jr. (0073454)
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (fax)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

**OF COUNSEL:**

Michael S. Burg, Esq.
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80111
(303) 792-5595
(303) 708-0527 (fax)
mburg@burgsimpson.com

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

In Re:  YASMIN / YAZ       )
          PRODUCTS LIABILITY LITIGATION  )
                       )

MDL Docket No.: _____

**BRIEF IN SUPPORT OF MOTION FOR TRANSFER OF RELATED ACTIONS
TO THE NORTHERN DISTRICT OF OHIO PURSUANT TO 28 U.S.C. § 1407
FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the

Judicial Panel on Multidistrict Litigation, the Movants submit the following Brief in

Support of their Motion for Transfer of Actions to the Northern District of Ohio and for

Coordinated or Consolidated Pretrial Proceedings.  All related actions, including those

actions filed by Movants, by other Plaintiffs, and by future Plaintiffs, involve common

questions of law and fact and arise from Plaintiffs' use of the Defendants' prescription

oral contraceptives Yasmin and Yaz, and their resulting development of serious

personal injuries and/or death.  Movants are Plaintiffs in 23 of the 32 related cases filed

in federal district courts throughout the United States.   Jointly, Movants respectfully

request an Order transferring all related actions to the United States District Court for

the Northern District of Ohio for coordinated or consolidated pre-trial proceedings. Proceedings are already advanced in this venue, and more than twice as many cases have been filed there than in any other single venue.  Transfer to the Northern District of Ohio will promote the convenience of the litigation and serve judicial economy.

All of the related cases share complex factual issues including:

1. Whether Yasmin/Yaz cause serious injuries including deep vein thrombosis ("DVT"), pulmonary embolism ("PE"), heart attack, stroke, kidney failure, seizure, gall bladder injury, and, in some cases, death; and

2. Whether the manufacturers of Yasmin/Yaz provided adequate warnings about the health risks associated with the products.

These two issues are the gravamen of any personal injury mass tort, and they are both common to all related Yasmine/Yaz personal injury cases.  Therefore, Movants respectfully request that these cases be transferred to the United States District Court for the Northern District of Ohio for coordinated and consolidated proceedings.

## I. BACKGROUND

### A. Personal Injuries and Deaths Caused by Yasmin/Yaz

In light of medical and scientific literature indicating a causal connection between the use of Yasmin/Yaz and injuries including DVT, PE, heart attack, stroke, kidney failure, seizure, gall bladder injury, and death, injured Plaintiffs have filed individual product liability actions in federal district courts across the country.  Both Yasmin and Yaz are prescription birth control pills manufactured by Defendants Bayer Corporation, its affiliates, predecessors, and/or successors (herein collectively referred to as "Bayer Defendants").  They are combination oral contraceptives ("COC's"), meaning that they

contain both an estrogen and a progestin.  These steroidal components work together to suppress ovulation, fertilization, and implantation, thus preventing pregnancy.

Ocella is a generic form of Yasmin/Yaz that was recently approved by the Federal Food and Drug Administration ("FDA").  It works similarly to Yasmin and Yaz and may also cause personal injury and death.  Cases alleging injuries caused by Ocella would properly be consolidated with cases involving Yasmin/Yaz.

### 1.    History of Combined Oral Contraceptives

Historically, certain COC's have been connected with blood clots, heart attacks, and strokes.  Shortly after the introduction of birth control pills in the early 1960's, physicians discovered that women using steroidal birth control had a higher risk of such medical complications and death than women who were not using steroidal birth control. As a result, various brands of COC's were reformulated to reduce their estrogen quantities.  As the estrogen levels in COC's were reduced throughout the 1970's and 1980's, the risk of blood clots, strokes, and heart attacks also fell.

Contemporaneously, new progestins were developed, which became known as "second generation" progestins.  These progestins, particularly levonorgestrel, when combined with lower levels of the estrogen ethinyl estradiol, helped reduce the risk of blood clots, strokes, and heart attacks, making COC's much safer for women.

During the 1990's, new "third generation" progestins were developed with the hope that they would improve the safety of COC's.  Unfortunately, although the "third generation" progestins (gestodene and desogestrel) appeared to have less androgenic activity, they have been associated with a greater risk of blood clots in the deep veins

(DVT's) and lungs (PE's).  The increased risk prompted the FDA to include a warning of the potentially increased risk of blood clots.

### 2.   Yasmin and Yaz – Combination Oral Contraceptives containing a "Fourth Generation" Progestin

Yasmin and Yaz were approved by the FDA as prescription oral contraceptives in 2001 and 2006 respectively.  They both contain the estrogen ethinyl estradiol.  However, the progestin component common to both pills is a new "fourth generation" progestin called drospirenone.  Yasmin, Yaz, and the similar generic drug, Ocella, are the only birth control pills that contain drospirenone.  One other product, a newly-approved hormonal product for menopause called Angeliq, also contains drospirenone.

Although drospirenone is a new progestin, studies performed prior to FDA approval indicate that it is potentially more dangerous than traditional second generation progestins.  Specifically, drospirenone uniquely causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.  Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.

If left untreated, hyperkalemia can be fatal.  This is because hyperkalemia disrupts the normal heart rhythms, which can slow the flow of blood through the heart and permit blood clots to form.  Blood clots in the heart can result in heart attacks, or clots can break off and travel to the lungs, deep veins, or brain where they can cause PE's, DVT's, or strokes respectively.

In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that second generation birth control pills were preferable to Yasmin as a result of 40 cases of venous thrombosis among women

taking Yasmin. In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism, including two deaths where Yasmin was the suspected cause.

In addition to those scientific studies, adverse event reports filed with the FDA have provided further evidence of the risks associated with Yasmin and Yaz. During the brief time the products have been on the market, hundreds of reports of injury and death have been voluntarily reported to the FDA. In fact, in less than a five year period spanning from the first quarter of 2004 through the third quarter of 2008, the FDA received reports of over fifty deaths among Yasmin and Yaz users. These reports include numerous deaths with reported cardiac arrhythmia, cardiac arrest, intracardiac thrombus (blood clots in the heart), PE, and stroke in women in their child-bearing years. Some of the deaths occurred in women as young as 17 years old. Significantly, reports of elevated potassium levels are frequently included among the symptoms of those patients who died while using Yasmin or Yaz.

Twice, the FDA has issued warning letters to the Defendants regarding their marketing and over-promotion of their drospirenone-containing products. On July 10, 2003, the FDA ordered the Defendants to immediately discontinue a misleading advertisement for Yasmin. In part, the FDA stated that "FDA is aware of the added clinical risks associated with drospirenone" and the advertisement "fails to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous." Then, on October 3, 2008, the FDA issued a warning letter to the Defendants regarding its false advertisement of Yaz. FDA found that the Defendants

were promoting Yaz for medical conditions beyond the limits of FDA approval. Also, the FDA found that the Defendants failed to disclose that "YAZ has additional risks because it contains the progestin, drospirenone . . . which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

### B.      History of Yasmin and Yaz Personal Injury / Wrongful Death Claims

The undersigned firms of Burg Simpson Eldredge Hersh & Jardine PC, Zoll, Kranz, & Borgess, LCC, and Roda Nast, P.C., have filed fourteen separate lawsuits in the United States District Court for the Northern District of Ohio captioned as follows:

a. *Candace L. Fries, Individually and as the Administratrix of the Estate of Deceased Stephanie R. Hoofer v. Bayer Corporation, et al.*, Case No. 3:09-cv-01085, filed on May 11, 2009 and pending before the Honorable James G. Carr (Docket sheet and Complaint attached hereto as Ex. A).

b. *Angela and Martin Beck v. Bayer Corporation, et al.*, Case No. 3:09-cv-01207, filed on May 27, 2009 and pending before Honorable James G. Carr (Docket sheet and Complaint attached hereto as Ex. B).

c. *Bridget and Paul Shafer v. Bayer Corporation, et al.*, Case No. 3:09-cv-01315, filed on June 9, 2009 and pending before the Honorable James G. Carr (Docket sheet and Complaint attached hereto as Ex. C).

d. *Marlene Meadows v. Bayer Corporation, et al.*, Case No. 1:09-cv-01574, filed on July 9, 2009 and pending before the Honorable James S. Gwin (Docket sheet and Complaint attached hereto as Ex. D);

e.  *Anne Marie and Jonathan Eakins v. Bayer Corporation, et al.*, Case No. 1:09-cv-01579, filed on July 10, 2009 and pending before the Honorable Solomon Oliver, Jr. (Docket sheet and Complaint attached hereto as Ex. E);

f.  *Lauren L. Murphy v. Bayer Corporation, et al.*, Case No. 1:09-cv-01582, filed on July 10, 2009 and pending before the Honorable James S. Gwin (Docket sheet and Complaint attached hereto as Ex. F);

g.  *Marie Claire Keultjes v. Bayer Corporation, et al.,* Case No. 1:09-cv-01659, filed on July 17, 2009 and pending before the Honorable James S. Gwin (Docket sheet and Complaint attached hereto as Ex. G);

h.  *Patti and Gary Bradish v. Bayer Corporation, et al.*, Case No. 3:09-cv-01689, filed on July 21, 2009 and pending before the Honorable Jack Zouhary (Docket sheet and Complaint attached hereto as Ex. H);

i.  *Gail and Kenneth Brinker v. Bayer Corporation, et al.*, Case No. 3:09-cv-01682, filed on July 21, 2009 and pending before the Honorable James G. Carr (Docket sheet and Complaint attached hereto as Ex. I);

j.  *Carla Leigh Brazzel v. Bayer Corporation, et al.*, Case No. 3:09-cv-01684, filed on July 21, 2009 and pending before the Honorable Jack Zouhary (Docket sheet and Complaint attached hereto as Ex. J);

k.  *Lauren Cathis v. Bayer Corporation, et al.*, Case No. 3:09-cv-01690, filed on July 21, 2009 and currently before the Honorable Jack Zouhary (Docket sheet and Complaint attached hereto as Ex. K);

l.   *Brenda Ellyson v. Bayer Corporation, et al.*, Case No. 3:09-cv-01687, filed on July 21, 2009 and pending before the Honorable David A. Katz (Docket sheet and Complaint attached hereto as Ex. L);

m.   *William and Kathy Johns v. Bayer Corporation, et al.*, Case No. 3:09-cv-01685, filed on July 21, 2009 and pending before the Honorable David A. Katz (Docket sheet and Complaint attached hereto as Ex. M); and

n.   *Saretta Main and Christina Maniaci v. Bayer Corporation, et al.*, Case No. 3:09-cv-01688, filed on July 21, 2009 and pending before the Honorable Jack Zouhary (Docket sheet and Complaint attached hereto as Ex. N).

The undersigned law firms have also filed cases in other jurisdictions.  These Plaintiffs support transfer to the Northern District of Ohio and join this Motion and supporting Brief as Movants.  These additional cases are as follows:

- Southern District of Ohio:

    a.   *Heather Riley v. Bayer Corporation, et al.*, Case No.  1:09-cv-00387, filed on May 29, 2009 and pending before the Honorable Sandra S. Beckwith (Docket sheet and Complaint attached hereto as Ex. O);

    b.   *Valerie and Keith Kozak v. Bayer Corporation, et al.,* Case No.  3:09-cv-00281, filed on July 22, 2009 and pending before the Honorable Thomas M. Rose (Docket sheet and Complaint attached hereto as Ex. P);

- Eastern District of Pennsylvania:

a. *Alyssa S. Britten v. Bayer Pharmaceuticals Corporation, et al.*, Case No. 2:09-cv-02086, filed on May 14, 2009 and pending before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. Q);

b. *Adine and Kermick Gauthreaux v. Bayer Corporation, et al.,* Case No. 2:09-cv-02238, filed on May 19, 2009 and pending before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. R);

c. *Silvia F. and Javier Galvan v. Bayer Corporation, et al.*, Case No. 5:09-cv-02739, filed on June 17, 2009 and pending before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. S);

d. *Lakollier R. Cleveland v. Bayer Corporation, et al.,* Case No. 2:09-cv-02740, filed on June 17, 2009 and pending before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. T);

e. *Danielle C. and Adam Hayat v. Bayer Corporation, et al.*, Case No. 2:09-cv-02753, filed on June 18, 2009 and pending before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. U); and

f. *Deborah Kay Lane-Christian and Mark D. Christian v. Bayer Corporation, et al.*, Case No. 2:09-cv-03114, filed on July 14, 2009 and pending before the Honorable John R. Padova (Docket sheet and Complaint attached hereto as Ex. V).

- <u>Eastern District of Wisconsin</u>:

a. *Marie Becker v. Bayer Corporation, et al.*, Case No. 1:09-cv-00663, filed on July 7, 2009 and pending before the Honorable William C. Griesbach (Docket sheet and Complaint attached hereto as Ex. W).

Collectively, Movants are the Plaintiffs in 23 of the 32 total related cases filed in Federal District Courts throughout the country.   Fourteen of the Movants' cases are pending in the United States District Court for the Northern District of Ohio, where three of the cases have been consolidated before Chief Judge James G. Carr.

## II. ARGUMENT

### A. Summary of the Argument

Pursuant to 28 U.S.C. § 1407, the transfer and consolidation of products liability cases involving Plaintiffs' use of Yasmin or Yaz and their resulting injuries is appropriate because the cases involve common questions of fact and law.   Furthermore, transfer and consolidation of these cases for discovery purposes will promote judicial economy and the just and efficient resolution of these actions.   Movants respectfully request that these cases be transferred to the United States District Court for the Northern District of Ohio for coordinated and consolidated proceedings.

### B. Consolidation and Coordination of Pretrial Proceedings is Proper

Pursuant to 28 U.S.C. § 1407 on Multidistrict Litigations, the transfer of actions to a single jurisdiction for coordinated or consolidated pretrial proceedings is proper when the civil actions pending in various districts involve one or more common questions of fact, and transfer and consolidation "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."   28 U.S.C. § 1407(a). Centralization under 28 U.S.C. § 1407 is necessary when it will, "eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."   *In re Vioxx Products Liability Litigation*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005).   Pretrial consolidated or coordinated proceedings provide

for many benefits while preserving the assigned Transferee Judge's flexibility in managing the issues that arise:

> We point out that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that:  1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues; and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

*In re Vioxx*, 360 F. Supp. 2d at 1354 (internal citations omitted).

The Judicial Panel on Multidistrict Litigation has long recognized in similar circumstances that multidistrict consolidation of prescription drug product liability litigation serves the interests of convenience, justice, and efficiency.  Thus, by judicious case management, experienced district judges have successfully overseen the resolution of other major medical drug and device cases.  *See, e.g. In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, 990 F. Supp. 834 (J.P.M.L. 1997); *In re Silicone Gel Breast Implants Products Liability Litigation*, 793 F. Supp. 1099, 1100 (J.P.M.L. 1992).  In each of these complex cases, common issues of fact concerning the conduct of the Defendants in the manufacturing and marketing of the product, as well as common issues of fact concerning the scientific aspects of product defect and causation, have been considered in a single forum, thus achieving the economies envisioned under 28 U.S.C. § 1407.  The Panel has consistently consolidated cases where, "[c]entralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary."  *In re: Heparin Products Liability Litigation,* 559 F. Supp. 2d 1403 (J.P.M.L. 2008); *see also In re Diet Drugs*, 990 F. Supp. at 835.

Similarly, consolidation of the related Yasmin/Yaz cases will promote judicial economy and prevent undue imposition upon witnesses for repetitive discovery demands.

The Panel should not hesitate to consolidate all cases alleging injuries caused by Yasmin, Yaz, and Ocella together to avoid wasting judicial resources.   Substantial precedent supports consolidating multiple cases involving similar prescription drugs before the same transferee court in order to streamline overlapping issues.   *In re Gadolinium Contrast Dyes Products Liability Litigation,* 536 F. Supp. 2d 1380 (J.P.M.L. 2008); *In re Managed Care Litigation*, 2000 U.S. Dist. LEXIS 15927 (J.P.M.L. 2000); *In re Bextra and Celebrex Products Liability Litigation,* 391 F. Supp. 2d 1377 (J.P.M.L. 2005).   Yasmin, Yaz, and the generic product Ocella all contain the same relevant active ingredient, drospirenone.   Plaintiffs allege that Yasmin, Yaz, and Ocella are defective in their design, formulation, and labeling in that the Defendants failed to make a safe and effective product.   All related actions seek damages for personal injury and/or economic damages on behalf of individuals who used these products, asserting various state law claims such as negligence, products liability, breach of warranty, and negligent misrepresentation, fraud, and/or consumer protection causes of action. Irrespective of whether a specific Plaintiff used Yasmin, Yaz, or both, all of the related actions allege that the Plaintiff suffered injury related, at least in part, to the progestin drospirenone.   Therefore, the major prerequisite to multidistrict transfer, the existence of common issues of fact, is satisfied in the Yasmin/Yaz products liability litigation.   *See In re Diet Drugs,* 990 F. Supp. at 835-36; *In re Japanese Electronic Products Antitrust Litigation*, 338 F. Supp. 565 (J.P.M.L. 1975).

The related cases contain common issues of law and fact justifying transfer to a

single district and consolidation and coordination of the pretrial proceedings.   In the event that the transferee court later determines that the remand of specific claims or actions is appropriate, the mechanisms for such remand are available to the transferee court.   Rule 7.6, R.P.J.P.M.L.; 199 F.R.D. at 436-38; *See, e.g., In re Kugel Mesh Hernia Patch Products Liability Litigation*, 493 F. Supp. 2d 1371 (J.P.M.L. 2007).

### C. The Northern District of Ohio is the Appropriate Forum.

Although 28 U.S.C. § 1407 does not specifically set forth the factors for determining the appropriate MDL transferee forum, the Panel has established some factors for consideration in recent case law.   The Panel considers: (a) whether the pretrial proceedings in actions in a particular forum are significantly more advanced than other jurisdictions; (b) the forum where most of the actions were filed; (c) a geographically central location that is relatively convenient for the parties; (d) a court that has the necessary resources and time available to manage the litigation; and (e) a court that is not currently over taxed with other multidistrict dockets.   *In re L.E. Lay & Co. Antitrust Litig.,* 391 F. Supp. 1054, 1056 (J.P.M.L. 1975); *In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004); *In re Wireless Telephone 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003); *In re GMAC Ins. Mgm't Corp. Overtime Pay Litig.*, 342 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004); *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003). The Northern District of Ohio satisfies each of these factors.

### 1. Pretrial proceedings in the Northern District of Ohio are significantly advanced, and more than twice as many related cases are pending in that District than in any other single venue.

As to the initial factor of advanced pretrial proceedings, the cases pending in the

Northern District of Ohio have advanced procedurally. The Panel has provided for transfer to a particular venue when, "[p]retrial proceedings are advancing well there and about one-third of all pending actions are already in this district." *In re Pet Food Products Liability Litigation,* 499 F. Supp. 2d 1346, 1347 (J.P.M.L. 2007).

Additionally, the Panel often selects a transferor forum because a significant number of cases are pending there. As noted in *In re Columbia*, the Panel decided to "assign the litigation to a district i) in which half of the actions are pending; and ii) that is presently equipped with the resources likely required by the complex docket." 313 F. Supp.2d at 1385. This factor also favors transfer to the Northern District of Ohio, where 14 cases are currently pending. Nearly half of the total 32 related cases pending in federal district courts are in the Northern District of Ohio.

Moreover, The Panel has selected a Transferee Jurisdiction because economy and efficiency, the hallmarks of § 1407, were best served by transfer to a jurisdiction where multiple cases had already been consolidated and procedures were being established by the court to organize and coordinate that proceeding. *In re Ephedra Products Liability Litigation*, 314 F. Supp. 2d 1373 (J.P.M.L. 2004) (establishing the MDL before Judge Jed S. Rakoff in the Southern District of New York because he was already presiding over the Twinlab defendants' consolidated bankruptcy proceeding).

Chief Judge Carr has already has the unique opportunity to investigate and manage the issues of fact and law relevant to this case. The cases pending before him are more advanced than other federal proceedings and have been pending in federal court since May of 2009. Not only are fourteen cases pending in the Northern District of Ohio, but three of those cases, *Fries, Beck, and Shafer*, have already been

consolidated before Chief Judge James G. Carr.  Both *Fries* and *Beck* were the subject of a joint case management conference in the Northern District of Ohio on June 22, 2009.  A scheduling order was entered, and the cases were jointly designated to follow a complex track.  *Fries*, No. 3:09-cv-01085 at 17 (N.D. Ohio); *Beck*, No. 3:09-cv-01207 at 12 (N.D. Ohio).  *Shafer,* which was initially assigned to another Judge, was recently transferred to Chief Judge Carr.  Since that time, the same Order on Preservation of Evidence was entered in all three cases.  *Fries,* at 21; *Beck*, at 14; *Shafer*, No. 3:09-cv-01315 at 12 (N.D. Ohio).

The *Brinker* matter was also recently assigned to Chief Judge Carr.  Movants anticipate that the ten additional cases filed in the Northern District of Ohio will soon be transferred to Chief Judge Carr.   Plaintiffs in these matters have recently filed Complaints alleging personal injuries related to Yasmin/Yaz.  Specifically, the Plaintiffs in *Meadows, Murphy, Keutljes, and Eakins* all filed complex litigations notices with their Complaints, thereby notifying the Northern District of Ohio that their cases were related to *Fries, Beck, and Shafer*.  (Complex Litigation Notices in *Meadows, Murphy, Keutljes, and Eakins* attached hereto as Ex. Y).  As such, Movants anticipate those cases will be transferred to Judge Carr in the near future, where they can be consolidated with the cases already pending before him.

Therefore, transfer and consolidation before Chief Judge Carr would promote judicial economy and inure to the benefit of the parties and their counsel.  *In re Mirapex Products Liability Litigation*, 493 F. Supp. 2d 1376 (J.P.M.L. 2007) (consolidating the MDL based on the prescription drug Mirapex before the Honorable James M. Rosenbaum in the District of Minnesota because the district had become most

advanced, the judge had the opportunity to become familiar with the litigation, and Minnesota is geographically accessible).

### 2. The Northern District of Ohio is a convenient and central location for the parties and their counsel.

When possible, the Panel has expressed a preference for selecting a geographic "focal point" as a transferee forum, where a significant quantity of current and anticipated actions will proceed and an experienced judge can steer the litigation on a steady and expeditious course. *In re Zyprexa Products Liability Litigation*, 314 F. Supp. 2d 1380 (J.P.M.L. 2004). The Panel has already recognized Ohio as a "relatively central situs in regard to geographic dispersal of the constituent and potential tag-along actions," in a similar proceeding where Ohio was selected for that reason and also because the litigation was progressing well in an Ohio federal court. *In re Ortho Evra Products Liability Litigation,* 422 F. Supp. 2d 1379, (J.P.M.L. 2006). Over the last several years, the Panel has repeatedly selected Ohio, and the Northern District of Ohio in particular, as an appropriate and convenient forum for consolidated proceedings. *Id.* (transferred to Judge David A. Katz in the Northern District of Ohio, Eastern Division); *In re: Heparin,* 559 F. Supp. 2d at 1403 (transferred to Chief Judge James G. Carr in the Northern District of Ohio); *In re Gadolinium,* 536 F. Supp. 2d at 1380 (transferred to Judge Dan A. Polster in the Northern District of Ohio); *In re: Oral Sodium Phosphate Solution-Based Products Liability Litigation*, (MDL No. 2066, June 23, 2009) (transferred to Judge Ann Aldrich in the Northern District of Ohio).

Ohio is also centrally located. The courthouse is 45 minutes from the Detroit Metropolitan Airport, which is the home to a state of the art Northwest Airlines hub. The airport is served by every major airline, and it boasts non-stop service to every major

U.S. city as well as many oversees destinations.  Transfer to Ohio creates much less of a travel burden on Midwestern and West Coast counsel than travel to the East Coast, and yet it can be easily reached by East Coast counsel in about two hours.

### 3. The Northern District of Ohio has the resources to manage this multidistrict litigation, and its docket is not overtaxed.

The Panel has also considered what resources the transferee Court has available to dedicate to pretrial matters required by an MDL proceeding in that jurisdiction, including a consideration of the other MDL dockets, if any, already pending in that jurisdiction.  *In re Teflon Products Liability Litigation,* 416 F. Supp. 2d 1364 (J.P.M.L. 2006).  Significantly, the dockets in the Northern District of Ohio compare favorably with the most efficient venues, and proceed more quickly than many.  In addition, when evaluating a jurisdiction as the potential location for an MDL, the Panel has considered the extent to which the Transferee Judge is, "a jurist experienced in complex multidistrict products liability litigation and sitting in a district with the capacity to handle [the] litigation."  *In re Vioxx,* 360 F. Supp. 2d at 1355.  The Northern District of Ohio and Chief Judge Carr in particular exceed expectations in both regards.

Caseload statistics are down in the Northern District of Ohio.  While Judge Carr's civil docket has slowed recently, he has the invaluable experience of overseeing another multidistrict litigation regarding injuries related to contaminated heparin.  *In re Heparin,* 559 F. Supp. 2d. at 1403.  While the Heparin MDL provides Chief Judge Carr with experience in managing multidistrict litigations, it does not exhaust the Court's resources, as it is a relatively small consolidated proceeding that consists of only approximately 150 cases.  Judge Carr has the resources to handle this matter, including three law clerks, active senior judge status, and other experienced judges in his District.

17

The federal district judges in the Northern District are well respected and experienced in managing complex litigation. The practice in the District between and among the judges is an excellent example of assistance and cooperation. The judges are accustomed to aiding one another where conflicts arise, in the unlikely event that the management of Judge Carr's other cases would generate a conflict. Moreover, the facilities themselves are fully equipped with the latest in presentation equipment and new technology, and the District is one of the pioneers in electronic case management.

The Northern District of Ohio is both friendly and accessible to out of town counsel. Judge Carr and his staff are courteous, friendly, and attentive to lawyers and clients alike. Similarly, the local bar prides itself on its exercise of civility and good will towards counsel and litigants, creating a collegial atmosphere for this coordinated case.

Therefore, the judicial, technical, and professional resources of the District make it appropriate for transfer of this consolidated action.

## III. CONCLUSION

Movants submit that transfer and consolidation of the Yasmin/Yaz Products Liability Litigation for pretrial purposes will serve the interests of judicial economy, and Movants respectfully request that the Panel enter an Order transferring all related actions to the United States District Court for the Northern District of Ohio for consolidated pretrial proceedings.

Dated:  July 24, 2009

Respectfully Submitted,

*Janet S. Abaray*

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and Jonathan Eakins; Lauren L. Murphy; Marie Claire Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the Administratrix of the Estate of Stephanie R. Hoover; Angela and Martin Beck; Bridget and Paul Shafer; Pattie and Gary Bradish; Gail and Kenneth Brinker; Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson; William and Kathy Johns; Saretta Main and Christina Maniaci; Heather Riley*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

2009 JUL 24 A 10: 03

CLERK'S OFFICE
RECEIVED

19

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 30 2009

FILED
CLERK'S OFFICE

## REVISED SCHEDULE OF ACTIONS

## In re Yasmin / Yaz Products Liability Litigation

| Caption | Civil Action Number | District Court | Judge |
|---|---|---|---|
| *Candace L. Fries, Individually and as Administratrix of the Estate of Stephanie R. Hoover v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 3:09-cv-01085 | N.D. Ohio (Toledo) | The Honorable James G. Carr |
| *Angela Beck and Martin Beck v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 3:09-cv-01207 | N.D. Ohio (Toledo) | The Honorable James G. Carr |
| *Bridget Shafer and Paul Shafer v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 3:09-cv-01315 | N.D. Ohio (Toledo) | The Honorable James G. Carr |
| *Marlene Meadows v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation; Berlex Laboratories International, Inc., a Delaware corporation* | 1:09-cv-01574 | N.D. Ohio (Cleveland) | The Honorable James S. Gwin |

RECEIVED
CLERK'S OFFICE
2009 JUL 29  A 10: 20
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | | |
|---|---|---|---|
| *Anne Marie Eakins and Jonathan Eakins v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation; Berlex Laboratories International, Inc., a Delaware corporation* | 1:09-cv-1579 | N.D. Ohio (Cleveland) | The Honorable Solomon Oliver, Jr. |
| *Lauren L. Murphy v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation; Berlex Laboratories International, Inc., a Delaware corporation* | 1:09-cv-1582 | N.D. Ohio (Cleveland) | The Honorable James S. Gwin |
| *Marie Claire Keultjes v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation* | 1:09-cv-1659 | N.D. Ohio (Cleveland) | The Honorable James S. Gwin |
| *Gail Brinker and Kenneth Brinker v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.* | 3:09-cv-1682 | N.D. Ohio (Toledo) | The Honorable James G. Carr |
| *Carla Leigh Brazzel v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 3:09-cv-1684 | N.D. Ohio (Toledo) | The Honorable Jack Zouhary |
| *Kathy Johns and William Johns v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.* | 3:09-cv-1685 | N.D. Ohio (Toledo) | The Honorable David A. Katz |

| | | | |
|---|---|---|---|
| *Brenda Ellyson v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.* | 3:09-cv-1687 | N.D. Ohio (Toledo) | The Honorable David A. Katz |
| *Saretta Main and Christina Maniaci v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.* | 3:09-cv-1688 | N.D. Ohio (Toledo) | The Honorable Jack Zouhary |
| *Patti Bradish and Gary Bradish v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.* | 3:09-cv-1689 | N.D. Ohio (Toledo) | The Honorable Jack Zouhary |
| *Lauren Cathis v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc.* | 3:09-cv-1690 | N.D. Ohio (Toledo) | The Honorable Jack Zouhary |
| *Heather Riley v. Bayer Corporation, Bayer Healthcare LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 1:09-cv-0387 | S.D. Ohio (Cincinnati) | The Honorable Sandra S. Beckwith |
| *Valerie Kozak and Keith Kozak v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Bayer Healthcare LLC* | 3:09-cv-0281 | S.D. Ohio (Dayton) | The Honorable Thomas M. Rose |
| *Alyssa S. Britten v. Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc.* | 2:09-cv-2086 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |
| *Adine Gauthreaux and Kermick Gauthreaux v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 2:09-cv-2238 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |

| | | | |
|---|---|---|---|
| *Silvia F. Galvan and Javier Galvan v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 5:09-cv-2739 | E.D. Pennsylvania (Allentown) | The Honorable John R. Padova |
| *LaKollier R. Cleveland v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 2:09-cv-2740 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |
| *Danielle C. Hayat and Adam Hayat v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 2:09-cv-2753 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |
| *Deborah Kay Lane-Christian and Mark D. Christian v. Bayer Corporation, Bayer Healthcare, LLC, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG* | 2:09-cv-3114 | E.D. Pennsylvania (Philadelphia) | The Honorable John R. Padova |
| *Marie Becker v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware corporation; Berlex Laboratories International, Inc., a Delaware corporation* | 1:09-cv-0663 | E.D. Wisconsin (Green Bay) | The Honorable William C. Griesbach |

| | | | |
|---|---|---|---|
| *Bridget Renee Tanner and Russell Tanner, wife and husband v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-1558 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |
| *Stephanie D. Ivey, an individual v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-1904 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |
| *Dawn Voss, an individual v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-1905 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |

| | | | |
|---|---|---|---|
| *Tamera Jirbi, an individual v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-2416 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |
| *Bieanca White, an individual, v. Bayer Corporation, an Indiana corporation; Bayer Healthcare Pharmaceuticals Inc., a Delaware corporation; Bayer Healthcare, LLC, a Delaware limited liability company; Berlex Laboratories International, Inc., a Delaware corporation; Bayer Schering Pharma AG, a German corporation; Bayer AG, a German corporation; Schering AG, a German corporation; McKesson Corporation, a Delaware corporation* | 4:09-cv-2417 | N.D. California (Oakland) | The Honorable Saundra Brown Armstrong |
| *Nichole Brownfield, an individual; and Kiera Chambers, and individual, on behalf of themselves and all others similarly situated v. Bayer Corporation; Bayer Healthcare, Inc.; Bayer Pharmaceuticals Corporation; Bayer Healthcare LLC; Bayer Healthcare A.G.; Berlex Laboratories, Inc.* | 2:09-cv-0444 | E.D. California (Sacramento) | The Honorable John A. Mendez |
| *Debra Casali v. Bayer Corporation (terminated 7/6/09), Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare, LLC (terminated 7/6/09), Berlex Laboratories (terminated 7/6/09), Bayer Schering Pharma AG (terminated 7/6/09), and Bayer AG (terminated 7/6/09)* | 2:09-cv-0686 | E.D. New York (Central Islip) | The Honorable Sandra J. Feuerstein |

| James Parivechio III and Rhonda C. Parivechio v. Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., as successor to Bayer Pharmaceuticals Corporation, Bayer Healthcare, LLC, Berlex Laboratories, Inc., Berlex Inc., Bayer Schering Pharma AG, Bayer Healthcare, AG | 3:09-cv-0081 | N.D. Georgia (Newnan) | The Honorable Jack T. Camp |
|---|---|---|---|
| Maria Isabel Pujals Torregrosa v. Berlex, Inc., Berlex Laboratories, Inc. | 3:07-cv-1271 | D. Puerto Rico (San Juan) | The Honorable Carmen C. Cerezo |

Respectfully Submitted,

*Janet G. Abaray imo*

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and Jonathan Eakins; Lauren L. Murphy; Marie Claire Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the Administratrix of the Estate of Stephanie R. Hoover; Angela and Martin Beck; Bridget and Paul Shafer; Pattie and Gary Bradish; Gail and Kenneth Brinker; Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson; William and Kathy Johns; Saretta Main and Christina Maniaci; Heather Riley*

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com
rnast@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In Re:  YASMIN / YAZ  )
        PRODUCTS LIABILITY LITIGATION  )
                                        )

MDL Docket No.: _____

## REQUEST FOR ORAL ARGUMENT

Movants respectfully request the opportunity to present oral argument in support of Plaintiffs' Motion for Transfer and Consolidation of related actions to the Northern District of Ohio.  Oral argument is necessary so that the parties may further inform the Panel concerning the complex issues involved in the Yasmine / Yaz litigation as well as the reasons for transfer and consolidation to the Northern District of Ohio.

Dated:  July 24, 2009

Respectfully Submitted,

*Janet G. Abaray*

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and Jonathan Eakins; Lauren L. Murphy; Marie Claire Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the Administratrix of the Estate of Stephanie R. Hoover; Angela and Martin Beck; Bridget and Paul Shafer; Pattie and Gary Bradish; Gail and Kenneth Brinker; Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson; William and Kathy Johns; Saretta Main and Christina Maniaci; Heather Riley*

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2009 JUL 24   A 10: 03

CLERK'S OFFICE
RECEIVED

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| In Re: **YASMIN / YAZ** | ) |
| **PRODUCTS LIABILITY LITIGATION** | ) |

**MDL Docket No.:** _____

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2009, I caused a true and accurate copy of the following documents to be served upon all Clerks of Court, Counsel, and/or Parties identified in the attached Service List via regular U.S. Mail:

1. Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings;

2.  Brief in Support of Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings;

3.  Exhibits in Support of Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings including the Schedule of Actions;

4.  Request for Oral Argument; and

5.  This Proof of Service and attached Service List.

Respectfully Submitted,

*Janet G. Abaray*

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and Jonathan Eakins; Lauren L. Murphy; Marie Claire Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the Administratrix of the Estate of Stephanie R. Hoover; Angela and Martin Beck; Bridget and Paul Shafer; Pattie and Gary Bradish; Gail and Kenneth Brinker; Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson; William and Kathy Johns; Saretta Main and Christina Maniaci; Heather Riley*



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
2009 JUL 24  A 10: 03
CLERK'S OFFICE
RECEIVED

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

## SERVICE LIST

## SERVICE UPON COURTS

Michael E. Kunz, Clerk
United States District Court
Eastern District of Pennsylvania
United States Courthouse
601 Market Street, Room 2609
Philadelphia, Pennsylvania 19106-1797

James Bonini, Clerk
United States District Court
Southern District of Ohio
Potter Stewart U.S. Courthouse, Room 103
100 East Fifth Street
Cincinnati, Ohio 45202

Geri M. Smith, Clerk
United States District Court
Northern District of Ohio
114 James M. Ashley and Thomas W.L. Ashley U.S. Courthouse
1716 Spielbusch Avenue
Toledo, Ohio 43604-5383

Geri M. Smith, Clerk
United States District Court
Northern District of Ohio
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113-1830

Jon W. Sanfilippo, Clerk of Court
United States District Court
Eastern District of Wisconsin
125 South Jefferson Street
P.O. Box 24490
Green Bay, Wisconsin 54305-2490

Richard W. Wieking, Clerk of Court
United States District Court
Northern District of California
1301 Clay Street, Suite 400 S.
Oakland, California 94612-5212

Victor C. Minor, Clerk
United States District Court
Eastern District of California
4th Floor, United States Courthouse
501 "I" Street
Sacramento, California 95814

Robert C. Heinemann, Clerk
United States District Court
Eastern District of New York
Alfonse M. D'Amato U.S. Courthouse
100 Federal Plaza
Central Islip, New York 11722

James N. Hatten, Clerk
United States District Court
Northern District of Georgia
352 Lewis R. Morgan Federal Bldg.
and U.S. Courthouse
18 Greenville Street
Newnan, Georgia 30263

Frances Rios de Moran, Clerk
United States District Court
District of Puerto Rico
150 Federico Degetau Federal Bldg.
150 Carlos Chardon Avenue
San Juan, Puerto Rico 00918-1767


**SERVICE UPON COUNSEL:**

**Plaintiffs' Counsel**

Daniel N. Gallucci, Esq.
Joanne E. Matusko, Esq.
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601

> *Counsel for Plaintiffs Alyssa S. Britten, Silvia F. Galvan and Javier Galvan,
> LaKollier R. Cleveland, Danielle C. Hayat and Adam Hayat, Deborah Kay Lane-
> Christian, Carla Leigh Brazzel*

David W. Zoll, Esq.
Michelle L. Kranz, Esq.
Pamela A. Borgess, Esq.
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Avenue, Suite 200
Toledo, Ohio 43617

> *Counsel for Plaintiffs Adine Gautreaux and Kermick Gauthreaux, Heather Riley, Candace L. Fries, individually and as Administratrix of the Estate of Stephanie R. Hoover, Angela Beck and Martin Beck, Bridget Shafer and Paul Shafer, Gail Brinker and Kenneth Brinker, William Johns and Kathy Johns, Brenda Ellyson, Saretta Main and Christina Maniaci, Patti Bradish and Gary Bradish, Lauren Cathis*

Janet G. Abaray, Esq.
Calvin S. Tregre, Jr., Esq.
BURG SIMPSON ELDREDGE HERSH JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, Ohio 45202

> *Counsel for Plaintiffs Marlene Meadows, Anne Marie Eakins and Jonathan Eakins, Lauren L. Murphy, Marie Claire Keultjes, Valerie Kozak and Keith Kozak*

Michael S. Burg, Esq.
Seth A. Katz, Esq.
Brian K. Matise, Esq.
BURG SIMPSON EDLREDGE HERSH & JARDINE, P.C.
40 Inverness Drive E
Englewood, Colorado 80112

> *Counsel for Plaintiff Marie Becker*

Steven M. Goldberg, Esq.
STEVEN M. GOLDBERG, CO., L.P.A.
34055 Solon Rd., Suite 103
Solon, Ohio 44139

> *Additional counsel for Plaintiffs Marlene Meadows, Anne Marie Eakins and Jonathan Eakins, Lauren L. Murphy*

Lowell W. Finson, Esq.
PHILLIPS & ASSOCIATES
Qwest Building, 26th Floor
20 East Thomas Road, Suite 2600
Phoenix, Arizona 85012

*Counsel for Plaintiffs Bridget Renee Tanner and Russell Tanner, Stephanie D. Ivey, Dawn Voss, Tamera Jirbi, Bienca White*

Robert F. Clarke, Esq.
CLARKE LAW OFFICES
2701 E. Camelback Road, Suite 140
Phoenix, Arizona 85016

*Additional Counsel for Plaintiffs Bridget Renee Tanner and Russell Tanner*

Robert Frederick Arentz, Esq.
PHILLIPS & ASSOCIATES
3030 North Third Street, Suite 1100
Phoenix, Arizona 85012

*Additional Counsel for Plaintiff Stephanie D. Ivey, Dawn Voss, Tamera Jirbi, Bienca White*

Gene Joseph Stonebarger, Esq.
LINDSAY & STONEBARGER
620 Coolidge Drive, Suite 225
Folsom, California 95630

*Counsel for Plaintiffs Nichole Brownfield and Kiera Chambers*

Christopher L. Schnieders, Esq.
WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112

Gerald B. Taylor, Esq.
THE TAYLOR LAW FIRM
7208 Fairwoods Place
Montgomery, Alabama 36117

Steven D. Gacovino, Esq.
GACOVINO, LAKE & ASSOCIATES, P.C.
270 West Main Street
Sayville, New York 11782

    *Counsel for Plaintiff Debra Casali*

Joseph H. Fowler, Esq.
HARTLEY ROWE & FOWLER
P.O. Box 489
6622 East Broad Street
Douglasville, Georgia 30133-0489

    *Counsel for Plaintiffs James Parivechio, III and Rhonda C. Parivechio*

Ralph Vallone Jr., Esq.
RALPH VALLONE, JR. LAW OFFICE
1319 Ashford Avenue
Son Sid Cond., Suite 1
Santurce, Puerto Rico 00907

    *Counsel for Plaintiff Maria Isabel Pujals-Torregrosa*

## Service on Defendants

Robert Alan Amicone, II, Esq.
SQUIRE SANDERS & DEMPSEY
221 E. Fourth St., Suite 2900
Cincinnati, Ohio 45202

Timothy S. Coon, Esq.
44th Floor
600 Grant Street
Pittsburgh, Pennsylvania 15219

David Anthony Gabianelli, Esq.
Julie Erin Schwartz, Esq.
Mark Craig Goodman, Esq.
SQUIRE, SANDERS & DEMPSEY LLP
One Maritime Plaza, Suite 300
San Francisco, California 94111-3294

Adam L. Hoeflich, Esq.
BARTLIT BECK HERMAN PALENCHAR & SCOTT
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610

Frank LaFontaine, Esq.
Maria C. Cartagena-Cancel, Esq.
Eduardo A. Zayas-Marxuach, Esq.
Manuel A. Moreda-Toledo, Esq.
MCCONNELL VALDES
P.O. Box 364225
San Juan, Puerto Rico 00936-4225

Sarah K. Rathke, Esq.
SQUIRE SANDERS & DEMPSEY
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114-1304

Bernard Taylor, Esq.
Debra A.R. Sydnor, Esq.
ALSTON & BIRD
1201 West Peachtree Street
One Atlantic Center
Atlanta, Georgia 30309-3424

Joseph C. Weinstein, Esq.
SQUIRE, SANDERS & DEMPSEY
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114

Shirli Fabbri Weiss, Esq.
DLA PIPER LLP (US)
401 B. Street, Suite 1700
San Diego, California 92101

Christopher Munro Young, Esq.
DLA PIPER, US LLP
4365 Executive Drive, Suite 1100
San Diego, California 92101-2133

Scott Michael Zimmerman, Esq.
HEIDELL, PITTONI, MURPHY & BACH, LLP
99 Park Avenue
New York, New York 10016

> *Counsel for Defendants Bayer Corporation, Bayer Pharmaceuticals Corporation,*
> *Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals, Inc., Berlex*
> *Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG,*
> *McKesson Corporation*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In Re:  YASMIN / YAZ            )
      PRODUCTS LIABILITY LITIGATION   )
                              )

MDL Docket No.: _____

### CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2009, I caused a true and accurate copy of the following documents to be served upon all Clerks of Court, Counsel, and/or Parties identified in the attached Service List by regular U.S. Mail:

1. Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings;

2. Brief in Support of Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings;

3. Exhibits in Support of Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings including the Schedule of Actions;

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 30 2009

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

_____ )
In Re:  YASMIN / YAZ                          )          MDL Docket No.: _____
       PRODUCTS LIABILITY LITIGATION    )
_____ )

**REVISED CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2009, I caused a true and accurate copy of the

following documents to be served upon all Court Clerks, Counsel, and/or Parties

identified in the attached Revised Service List by regular U.S. Mail:

1.   Revised Schedule of Actions;

2.   This Revised Certificate of Service and attached Revised Service List; and

3.   Supplemented Certificate of Service.

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2009 JUL 29  A 10: 20

RECEIVED
CLERK'S OFFICE

Respectfully Submitted,

*Janet G. Abaray* ums

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and Jonathan Eakins; Lauren L. Murphy; Marie Claire Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the Administratrix of the Estate of Stephanie R. Hoover; Angela and Martin Beck; Bridget and Paul Shafer; Pattie and Gary Bradish; Gail and Kenneth Brinker; Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson; William and Kathy Johns; Saretta Main and Christina Maniaci; Heather Riley*

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com
rnast@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

## REVISED SERVICE LIST

## SERVICE UPON COURTS

Michael E. Kunz, Clerk
United States District Court
Eastern District of Pennsylvania
United States Courthouse
601 Market Street, Room 2609
Philadelphia, Pennsylvania 19106-1797

James Bonini, Clerk
United States District Court
Southern District of Ohio
Potter Stewart U.S. Courthouse, Room 103
100 East Fifth Street
Cincinnati, Ohio 45202

Geri M. Smith, Clerk
United States District Court
Northern District of Ohio
114 James M. Ashley and Thomas W.L. Ashley U.S. Courthouse
1716 Spielbusch Avenue
Toledo, Ohio 43604-5383

Geri M. Smith, Clerk
United States District Court
Northern District of Ohio
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113-1830

Jon W. Sanfilippo, Clerk of Court
United States District Court
Eastern District of Wisconsin
125 South Jefferson Street
P.O. Box 24490
Green Bay, Wisconsin 54305-2490

Richard W. Wieking, Clerk of Court
United States District Court
Northern District of California
1301 Clay Street, Suite 400 S.
Oakland, California 94612-5212

Victor C. Minor, Clerk
United States District Court
Eastern District of California
4th Floor, United States Courthouse
501 "I" Street
Sacramento, California 95814

Robert C. Heinemann, Clerk
United States District Court
Eastern District of New York
Alfonse M. D'Amato U.S. Courthouse
100 Federal Plaza
Central Islip, New York 11722

James N. Hatten, Clerk
United States District Court
Northern District of Georgia
352 Lewis R. Morgan Federal Bldg.
and U.S. Courthouse
18 Greenville Street
Newnan, Georgia 30263

Frances Rios de Moran, Clerk
United States District Court
District of Puerto Rico
150 Federico Degetau Federal Bldg.
150 Carlos Chardon Avenue
San Juan, Puerto Rico 00918-1767


**SERVICE UPON COUNSEL:**

**Plaintiffs' Counsel**

Daniel N. Gallucci, Esq.
Joanne E. Matusko, Esq.
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601

> *Counsel for Plaintiffs Alyssa S. Britten, Silvia F. Galvan and Javier Galvan,*
> *LaKollier R. Cleveland, Danielle C. Hayat and Adam Hayat, Deborah Kay Lane-*
> *Christian, Carla Leigh Brazzel*

David W. Zoll, Esq.
Michelle L. Kranz, Esq.
Pamela A. Borgess, Esq.
ZOLL, KRANZ & BORGESS, LLC
6620 W. Central Avenue, Suite 200
Toledo, Ohio 43617

> *Counsel for Plaintiffs Adine Gautreaux and Kermick Gauthreaux, Heather Riley, Candace L. Fries, individually and as Administratrix of the Estate of Stephanie R. Hoover, Angela Beck and Martin Beck, Bridget Shafer and Paul Shafer, Gail Brinker and Kenneth Brinker, William Johns and Kathy Johns, Brenda Ellyson, Saretta Main and Christina Maniaci, Patti Bradish and Gary Bradish, Lauren Cathis*

Janet G. Abaray, Esq.
Calvin S. Tregre, Jr., Esq.
BURG SIMPSON ELDREDGE HERSH JARDINE, P.C.
312 Walnut Street, Suite 2090
Cincinnati, Ohio 45202

> *Counsel for Plaintiffs Marlene Meadows, Anne Marie Eakins and Jonathan Eakins, Lauren L. Murphy, Marie Claire Keultjes, Valerie Kozak and Keith Kozak*

Michael S. Burg, Esq.
Seth A. Katz, Esq.
Brian K. Matise, Esq.
BURG SIMPSON EDLREDGE HERSH & JARDINE, P.C.
40 Inverness Drive E
Englewood, Colorado 80112

> *Counsel for Plaintiff Marie Becker*

Steven M. Goldberg, Esq.
STEVEN M. GOLDBERG, CO., L.P.A.
34055 Solon Rd., Suite 103
Solon, Ohio 44139

> *Additional counsel for Plaintiffs Marlene Meadows, Anne Marie Eakins and Jonathan Eakins, Lauren L. Murphy*

Lowell W. Finson, Esq.
PHILLIPS & ASSOCIATES
Qwest Building, 26th Floor
20 East Thomas Road, Suite 2600
Phoenix, Arizona 85012

*Counsel for Plaintiffs Bridget Renee Tanner and Russell Tanner, Stephanie D. Ivey, Dawn Voss, Tamera Jirbi, Bienca White*

Robert F. Clarke, Esq.
CLARKE LAW OFFICES
2701 E. Camelback Road, Suite 140
Phoenix, Arizona 85016

*Additional Counsel for Plaintiffs Bridget Renee Tanner and Russell Tanner*

Robert Frederick Arentz, Esq.
PHILLIPS & ASSOCIATES
3030 North Third Street, Suite 1100
Phoenix, Arizona 85012

*Additional Counsel for Plaintiff Stephanie D. Ivey, Dawn Voss, Tamera Jirbi, Bienca White*

Gene Joseph Stonebarger, Esq.
LINDSAY & STONEBARGER
620 Coolidge Drive, Suite 225
Folsom, California 95630

*Counsel for Plaintiffs Nichole Brownfield and Kiera Chambers*

Christopher L. Schnieders, Esq.
WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112

Gerald B. Taylor, Esq.
THE TAYLOR LAW FIRM
7208 Fairwoods Place
Montgomery, Alabama 36117

Steven D. Gacovino, Esq.
GACOVINO, LAKE & ASSOCIATES, P.C.
270 West Main Street
Sayville, New York 11782

   *Counsel for Plaintiff Debra Casali*

Joseph H. Fowler, Esq.
HARTLEY ROWE & FOWLER
P.O. Box 489
6622 East Broad Street
Douglasville, Georgia 30133-0489

   *Counsel for Plaintiffs James Parivechio, III and Rhonda C. Parivechio*

Ralph Vallone Jr., Esq.
RALPH VALLONE, JR. LAW OFFICE
1319 Ashford Avenue
Son Sid Cond., Suite 1
Santurce, Puerto Rico 00907

   *Counsel for Plaintiff Maria Isabel Pujals-Torregrosa*

## Service on Defendants

Robert Alan Amicone, II, Esq.
SQUIRE SANDERS & DEMPSEY
221 E. Fourth St., Suite 2900
Cincinnati, Ohio 45202

Timothy S. Coon, Esq.
44th Floor
600 Grant Street
Pittsburgh, Pennsylvania 15219

David Anthony Gabianelli, Esq.
Julie Erin Schwartz, Esq.
Mark Craig Goodman, Esq.
SQUIRE, SANDERS & DEMPSEY LLP
One Maritime Plaza, Suite 300
San Francisco, California 94111-3294

Adam L. Hoeflich, Esq.
BARTLIT BECK HERMAN PALENCHAR & SCOTT
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610

Frank LaFontaine, Esq.
Maria C. Cartagena-Cancel, Esq.
Eduardo A. Zayas-Marxuach, Esq.
Manuel A. Moreda-Toledo, Esq.
MCCONNELL VALDES
P.O. Box 364225
San Juan, Puerto Rico 00936-4225

Sarah K. Rathke, Esq.
SQUIRE SANDERS & DEMPSEY
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114-1304

Bernard Taylor, Esq.
Debra A.R. Sydnor, Esq.
ALSTON & BIRD
1201 West Peachtree Street
One Atlantic Center
Atlanta, Georgia 30309-3424

Joseph C. Weinstein, Esq.
SQUIRE, SANDERS & DEMPSEY
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114

Shirli Fabbri Weiss, Esq.
DLA PIPER LLP (US)
401 B. Street, Suite 1700
San Diego, California 92101

Christopher Munro Young, Esq.
DLA PIPER, US LLP
4365 Executive Drive, Suite 1100
San Diego, California 92101-2133

Scott Michael Zimmerman, Esq.
HEIDELL, PITTONI, MURPHY & BACH, LLP
99 Park Avenue
New York, New York 10016

*Counsel for Defendants Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc., Berlex, Inc., Bayer Schering Pharma AG, Bayer AG, McKesson Corporation, and Bayer Healthcare AG*

## SERVICE UPON PARTIES

Berlex Laboratories International, Inc.
c/o CSC-Lawyers Incorporating Service Company
50 W. Broad Street, Suite 1800
Columbus, OH 43215

Schering AG
Müllerstr. 178
13353 Berlin
Germany

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 3 0 2009

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re:  YASMIN / YAZ<br>         PRODUCTS LIABILITY LITIGATION | MDL Docket No.: _____ |

### SUPPLEMENTAL CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2009, I caused a true and accurate copy of the following documents to be served via Ordinary U.S. Mail upon all parties on the Revised Certificate of Service who were not served on July 23, 2009 pursuant to the original Certificate of Service:

1. Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings;

2. Brief in Support of Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings;

3.  Exhibits in Support of Motion for Transfer of Related Actions to the Northern District of Ohio Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings including the Schedule of Actions;

4.  Request for Oral Argument; and

5.  This Proof of Service and attached Service List.

Respectfully Submitted,

*Janet G. Abaray mr*

Janet G. Abaray (OH – 0002943)
Calvin S. Tregre (OH – 0073454)
Burg Simpson Eldredge Hersh & Jardine PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
(513) 852-5600
(513) 852-5611 (facsimile)
jabaray@burgsimpson.com
ctregre@burgsimpson.com

Michael S. Burg (CO – 10149)
Seth A. Katz (CO – 37205)
Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
(303) 708-0527 (facsimile)
mburg@burgsimpson.com
skatz@burgsimpson.com

*Counsel for Marlene Meadows; Anne Marie and Jonathan Eakins; Lauren L. Murphy; Marie Claire Keultjes; Valarie and Keith Kozak; Marie Becker*

David W. Zoll, Esq. (OH – 0008548)
Michelle N. Kranz (OH – 0062479)
Pamela A. Borgess (OH – 0072789)
Zoll, Kranz & Borgess, LCC
6620 W. Central Avenue, Suite 200
Toledo, OH 43617
(419) 841-9623
(419) 841-9719 (facsimile)
david@toledolaw.com
michelle@toledolaw.com
pamela@toledolaw.com

*Counsel for Candace L. Fries, Individually and as the Administratrix of the Estate of Stephanie R. Hoover; Angela and Martin Beck; Bridget and Paul Shafer; Pattie and Gary Bradish; Gail and Kenneth Brinker; Carla Leigh Brazzel; Lauren Cathis; Brenda Ellyson; William and Kathy Johns; Saretta Main and Christina Maniaci; Heather Riley*

Dianne M. Nast (PA – 24424)
Daniel N. Gallucci (PA – 81995)
Roda Nast, P.C.
801 Estelle Drive
Lancaster, PA 17601
(717) 892-3000
(717) 892-1200 (facsimile)
dgallucci@rodanast.com
rnast@rodanast.com

*Counsel for Allyssa S. Britten; Adine and Kermick Gauthreaux; Silvia F. Galvan; LaKollier R. Cleveland; Danielle C. and Adam Hayat; Deborah Kay Lane-Christian and Mark D. Christian*